WILLIAM G. MALCOLM, #129271
NATHAN F. SMITH, #264635
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive
Irvine, CA 92612
Phone: (949) 252-9400
Fax: (949) 252-1032
Email: nathan@mclaw.org

*Attorneys for Chapter 11 Trustee, A. Cisneros*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 8:22-bk-11556-TA |
| STONEBRIDGE VENTURES, LLC, | Chapter 11 |
| Debtor. | **CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION OF SALE PROCEEDS; (5) DETERMINING THAT THE PROPOSED BUYER IS A "GOOD FAITH PURCHASER" UNDER 11 U.S.C. § 363(m); AND (6) WAIVING 14 DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h); DECLARATIONS OF A. CISNEROS, BRIAN THOMPSON, DONALD T. FIFE, AND PROPOSED BUYER IN SUPPORT HEREOF** |
| | **[5 Makena Lane, Rancho Mirage, California 92270 – Assessor's Parcel Number 682-031-005]** |
| | **Hearing:** Date: January 11, 2023 Time: 10:00 a.m. Place: Via Zoom Teleconference |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR, DEBTOR'S COUNSEL, AND OTHER INTERESTED PARTIES:**

A. Cisneros, in his capacity as Chapter 11 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Stonebridge Ventures, LLC ("Debtor"), hereby moves the Court for an Order: (1) Authorizing the Sale of the Property Commonly Known as 5 Makena Lane, Rancho Mirage, California 92270 [APN: 682-031-005] ("Property") Free And Clear of Liens and Interests Pursuant To 11 U.S.C. § 363(f)[1]; (2) Approving Overbid Procedures; (3) Approving Broker Compensation; (4) Authorizing Distribution of Sale Proceeds; (5) Determining that the Proposed Buyer is a "Good Faith Purchaser" Under § 363(m); and (6) Waiving the 14-day stay of Federal Rule of Bankruptcy Procedure ("FRBP") 6004(h) ("Motion").  In support hereof, Trustee submits the following:

## I.    SUMMARY.

Subject to Court approval and overbid, Trustee has accepted an offer from Roll Sparrow, LLC ("Buyer"), to purchase the Property for $2,800,000.

In Trustee's business judgment, the Property has a fair market value of at least $2,800,000.

The sale of the Property is in the best interests of creditors and the Estate.  Predicated on the granting of the Motion, and if no overbids are received, the Estate will receive net proceeds of approximately $257,000, and perhaps more after payment of costs of sale (which includes a reduced Broker's commission of 4%, as negotiated by Trustee), two liens of record against the Property and delinquent property taxes.

Debtor objects to the first-priority deed of trust in favor of the Baiocchi Family Limited Partnership ("BFLP") and has asserted claims against BFLP.  Trustee is negotiating the amount of BFLP's claim, but if an agreement is not reached, then Trustee will fully investigate Debtor's claims which could result in delayed payment to and a reduced payoff of BFLP's lien.

///

///

---

[1] Unless otherwise indicated, all statutory references herein pertain to Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure.

Motion to Sell

## II.    BACKGROUND.

### A.    The Filing of the Petition and Pre-Petition Transfers.

1.      This case was commenced on September 9, 2022, with the filing of a skeletal petition under Chapter 11 of the Bankruptcy Code ("Petition").   *See* DE 1.

2.      On or about January 6, 2015, Debtor obtained title to the Property.

3.      Prior to the filing of the Petition, on or about September 1, 2022, Debtor transferred its interest in 1, 2, 4, and 7 Makena ("Transfers") to AB Capital LFD, Inc. ("AB LFD").  *See* DE 13.

### B.    The Appointment of Trustee.

4.      On September 23, 2022, Debtor and the Office of the United States Trustee ("OUST") entered into a stipulation to the appointment of a Chapter 11 Trustee based on *inter alia* the Transfers.  *See* DE 13.

5.      On September 29, 2022, Trustee was appointed as the Chapter 11 Trustee of the Estate.  *See* DE 19.

6.      On September 29, 2022, Trustee attended Debtor's initial debtor interview.

7.      Trustee is the appointed, qualified, and acting Chapter 11 Trustee for Debtor's bankruptcy estate ("Estate").  *See* DE 19.

### C.    The Motion for Relief and Foreclosure in Connection with the Property.

8.      On October 11, 2022, BFLP filed a Motion for Relief with regard to the Property ("MFR").  A hearing on the MFR was initially set for November 1, 2022; however, Trustee, through counsel, negotiated a continuance of the hearing to January 10, 2023.  *See* DE 55.

///
///
///
///
///
///
///
///

Motion to Sell

9.      According to BFLP's Motion for Relief, it was owed approximately $1,867,501.95 as of September 9, 2022.  Recently, BFLP provided a payoff quote good through January 8, 2023 to Trustee, which reflects that BFLP is allegedly owed $1,947,386.45, an increase of $79,884.50.[2]  The respective payoffs are comprised of the following amounts:

| **Motion for Relief (9/9/22)** | | **Payoff Quote (1/8/23)** | |
|---|---|---|---|
| Principal | $1,650,000 | Principal | $1,650,000 |
| Interest (9%) | $141,900 | Interest (9%) | $191,812.50 |
| Default Interest (12%) | $51,425 | Default Interest (12%) | $68,062.50 |
| Late Charges | $12,375 | Late Charges | $13,612.50 |
| Costs (Attorney/Foreclosure Fees/Costs) | $11,801.95 | Costs (Attorney/Foreclosure Fees/Costs) | $23,898.95 |
| **TOTAL** | **$1,867,501.95** | **TOTAL** | **$1,947,386.45** |

10.     On December 7, 2021, BFLP recorded a Notice of Default against the Property.  BFLP recorded a Notice of Trustee's Sale on July 15, 2022 and set a trustee's sale for August 10, 2022.  Based on the filing of Debtor's petition, Trustee's sale has been postponed; however, BFLP is seeking relief from stay to proceed with a trustee's sale of the Property.  *See* DE 55.

**D.      Trustee's Negotiations to Address the Transfers and the Conveyances to the Estate.**

11.     Immediately upon his appointment, Trustee commenced negotiations to address the Transfers and effectuate the transfer of legal title to 1, 2, 4, and 7 Makena back to the Estate.

12.     Based on Trustee's negotiations with AB LFD, AB LFD quitclaimed its interest in 1, 2, 4, and 7 Makena to the Estate.  The deeds were recorded on October 25, 2022.

///

///

///

///

---

[2] A true and correct copy of a payoff quote that Trustee received from BFLP is attached hereto as Exhibit "3." According to the quote, it is good through January 8, 2023.

Motion to Sell

**E.    The Property and the Alleged Liens Against It According to Debtor.**

13.    On September 23, 2022, Debtor filed its Schedules, wherein it identified its ownership interest in the Property.[3]  *See* DE 15.

14.    In its Amended Schedule D, Debtor identified the following liens against the Property:

        a.    BFLP in the amount of $1,748,536.64;

        b.    FTC in the amount of $50,000 (based on a fractional interest in a deed of trust against the Property);

        c.    Geoffrey P. Field in the amount of $50,000 (based on a fractional interest in a deed of trust against the Property);

        d.    Jean Himmelstein in the amount of $200,000 (based on a fractional interest in a deed of trust against the Property);

        e.    Mainstar Trust Custodian in the amount of $200,000 (based on a fractional interest in a deed of trust against the Property);

        f.    Riverside County Tax Collector in the amount of $18,028.01

*See* DE 34.

**F.    The Claims Against Baiocchi Family Limited Partnership.**

15.    In Debtor's Schedule A/B, it identified claims against BFLP and its principal for various claims including *inter alia* "business interference and wrongful foreclosure."  *See* DE 15, p. 6.  Trustee is currently negotiating with BFLP regarding the amount of its allowed secured claim.  If such negotiations are not successful, then Trustee will investigate the Estate's potential claims against BFLP.

**G.    Trustee's Employment of a Real Estate Broker.**

16.    On November 7, 2022, Trustee filed an application to employ Brian Thompson ("Broker") as his real estate broker for the purposes of selling 1, 5, and 7 Makena.  The application

---

[3] Debtor's Grant Deed conveying 1 Makena to AB LFD references "Lots 1-10."  Therefore, to the extent that this transfer impacted legal title to the Property, the quitclaim deed from AB LFD to Trustee included "Lots 1-10."  Trustee also undertook the effort of obtaining approval of the quitclaim deeds from AB LFD to him by a title company to ensure that title to each of the properties is marketable.

Motion to Sell

was approved on November 28, 2022.  *See* DE 57 and 70, respectively.

**H.**    **The Unsecured Claims Against the Estate.**

17.    In its Schedule E/F, Debtor identified approximately $144,950 in unsecured claims. As of the filing of this Report, $4,051,307.40 in unsecured claims have been filed.  *See* Claims Register No. 1-1 through 5-1.

**I.**    **The Lawsuit in Connection with the Property.**

18.    On or about September 6, 2022, Mr. Lewis and Sanna Akhtanova ("Plaintiffs") filed suit against *inter alia* Debtor and Mr. Pukini in Riverside County Superior Court ("Lawsuit") and recorded a Notice of Pending Action ("NPA") against the Property.  The Lawsuit concerns Plaintiffs' alleged purchase of the Property.  Through their Complaint, Plaintiffs seek damages in excess of $2,900,000 and specific performance in the form of a deed conveying title to the Property to Plaintiffs.

19.    On October 31, 2022, Plaintiffs removed the Lawsuit to this Court as Adversary Proceeding number 8:22-ap-01093-TA.  Plaintiffs have not effectuated service of the Lawsuit.

20.    Trustee, through counsel, discussed a potential resolution to the Lawsuit and a sale of the Property to Plaintiffs; however, Plaintiffs rejected Trustee's offer.  Based on the rejection of Trustee's offer, Trustee directed Broker to list the Property.

21.    On September 21, 2022, Plaintiffs filed a proof of claim in the amount of $3,600,000 as Claims Register No. 2-1.

**J.**    **The Marketing of the Property and Acceptance of Buyer's Offer.**

22.    Trustee's Broker listed the Property on the Multiple Listing Services (MLS) on November 26, 2022 and showed the Property to interested parties prior to listing it.  Thereafter, on November 28, 2022, Trustee received and accepted Buyer's offer.  True and correct copies of the Residential Purchase Agreement and Counter-Offer ("Purchase Agreement") are attached to Declaration of A. Cisneros, filed concurrently herewith ("Trustee Declaration") as Exhibit "1."

///

///

///

Motion to Sell

### III.    <u>THE OFFER TO PURCHASE.</u>

23.    In summary, the Purchase Agreement provides as follows:

a.    <u>Purchase Price</u>:  Buyer has agreed to pay $2,800,000 for the Property.

b.    <u>Closing of Sale</u>:  The sale shall close as quickly as possible, but not later than 30 days after entry of a Bankruptcy Court order approving the sale.

c.    "<u>As Is</u>" and "<u>Where-As</u>":  The Property is being sold, "as-is – where-as," with no contingencies; thus, Trustee is not making any representations, warranties, either express or implied, as to the Property's condition, uses (prior, present or future), or otherwise.

d.    <u>Transfer of the Property</u>: Trustee will convey title to Buyer via a Trustee's Quitclaim Deed.

e.    <u>Acknowledgement of Trustee's Capacity</u>:  Buyer is expressly aware and fully informed that Trustee is selling the Property exclusively in his capacity as Chapter 11 Trustee of the Estate.  No personal liability for costs, fees or other charges on Trustee's part is intended, and any liability is strictly the liability of the Estate.

f.    <u>Approval of the Bankruptcy Court</u>:  Buyer is aware that the sale is expressly conditioned on approval by the Court and subject to overbid.

g.    <u>Bankruptcy Jurisdiction</u>:  Trustee is selling the Property in his capacity as Chapter 11 Trustee of the Estate.  As such, resolution of any and all disputes between Trustee and Buyer (or any over-bidders) shall be resolved by the Bankruptcy Court.

24.    Trustee shall approve, in writing, all disbursements of sale proceeds.  Escrow shall not be authorized to disburse any funds without Trustee's prior written approval.

25.    If Trustee is unable to close escrow because of unknown title defects, because the liens and encumbrances exceed the amount known to Trustee, by being divested of title by the Court, because of the Lawsuit, or because the tax consequences of the sale are excessive, Buyer's sole damages shall be limited to a refund of its deposit less escrow and bond charges.

///

///

///

Motion to Sell

## IV.    SALE FREE AND CLEAR OF LIENS AND INTERESTS.

26.    According to a Preliminary Title Report obtained by Trustee, the Property is encumbered by the following liens:

        a.       $26,815.98 in real property taxes owed to Riverside County;

        b.       A first priority deed of trust in favor of BFLP in the original, principal amount of $1,650,000; and

        c.       A second priority deed of trust in favor of FTC in the original, principal amount of $400,000; of which $50,000 is owed to FTC; $50,000 is owed to Geoffrey P. Field; $200,000 is owed to Jean Himmelstein; and $100,000 is owed to Mainstar Trust Custodian FBO Richard W. Walker.

A true and correct copy of the Preliminary Title Report is attached to Trustee Declaration as Exhibit "2."

27.    The Preliminary Title Report also reflects the NPA recorded against the Property by Plaintiffs on September 6, 2022. *See* Trustee Declaration, Exhibit "2," ¶ 17.

28.    Trustee seeks authority to sell the Property "free and clear of any interest in such property of an entity..." § 363(f) allows such a sale if any of the five following conditions are met:

"(1)    applicable non bankruptcy law permits sale of such property free
        and clear of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be
        sold is greater than the aggregate value of all liens on such
        property;
(4)    such interest is in bona fide dispute; or
(5)    such entity could be compelled, in a legal or equitable proceeding,
        to accept a money satisfaction of such interest."
11 U.S.C. § 363(f).

Section 363(f) is written in the disjunctive, such that satisfaction of any one of the five conditions is sufficient to allow Trustee to sell property of the estate free and Clear of Liens and Interests. *In re Gerwer,* 898 F.2d 730 (9th Cir. 1990).

///

///

///

## A.  The Liens Against the Property.

29.    Trustee's sale of the Property satisfies § 363(f)(3) because the Property is being sold for $2,800,000, which exceeds the amount owed to Riverside County, BFLP, and FTC.

Notwithstanding the foregoing, Trustee disputes BFLP's entitlement to the following amounts:

a.    "Default Interest," which, according to a recent payoff that Trustee received from BFLP, totals $68,062.50;

b.    "Late Charges," in the amount of $13,612.50;

c.    "Legal" and "Trustee Foreclosure Fees" in the amount of $23,613.95.

In addition to the foregoing, BFLP's Motion for Relief alleges accrued interest of $141,900 and default interest of $51,425 through September 9, 2022.  However, BFLP's recent payoff reflects interest of $191,812.50 and default interest of $68,062.50, an increase of approximately $66,550. Therefore, it appears that BFLP may be duplicating its accounting of default interest.  Trustee intends to segregate all amounts in excess of the $1,650,000 principal balance of BFLP's claim pending an agreement of the parties or adjudication of the Estate's claims against BFLP through an adversary proceeding.  Following closing, should it become necessary because of failed negotiations, Trustee intends to proceed with discovery regarding BFLP's alleged claim, including, but not limited to, a FRBP 2004 examination of BFLP's principal and FRCP 30(b)(6) witness regarding the loan.

## B.  The Notice of Pending Action.

30.    A trustee may sell free and clear of a lien or other competing property interest under § 363(f)(4) when that interest is subject to bona fide dispute. *See Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627 (8th Cir. BAP 2004).   "Bona fide dispute" is not defined in section 363(f)(4) or anywhere else in the Bankruptcy Code. The term 'bona fide dispute' is also found in section 303, and the Ninth Circuit, in interpreting the phrase for purposes of that section, defines it as the existence of 'an objective basis for either a factual or a legal dispute as to the validity of the debt.' *In re Vortex Fishing Sys., Inc.,* 277 F.3d 1057, 1064 (9th Cir. 2002)." *In re GGW Brands, LLC,* 2013 WL 6906375 at *24 (Bankr. C.D. Cal. November 15, 2013).

"[T]he purpose of § 363(f)(4) is to permit property of the estate to be sold free and clear of

Motion to Sell

interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated." *Moldo v. Clark (In re Clark),* 266 B.R. 163, 171 (B.A.P. 9th Cir.2001).

Irreparable harm cannot be established for purposes of issuing an injunction where "the extent of the harm ... is calculable in money damages. *See, e.g., Fox Broad. Co., Inc. v. Dish Network, LLC,* 905 F.Supp.2d 1088, 1110–11 (C.D.Cal.2012); *In re Am. Land Acquisition Corp.,* 2013 WL 2481534, at \*7 (Bankr. E.D.N .Y. 2013) ("[A]bsent special circumstances, the sale of commercial property does not create an irreparable harm, since any harm due to the sale of the property or interference with the business can be remedied with monetary damages.").

Trustee's sale of the Property satisfies § 363(f)(4) because the purported interest of Plaintiffs in connection with the Lawsuit is in bona fide dispute. In fact, despite the fact that the purchase contract in question expired in August, 2021, Plaintiffs failed to file suit until September, 2022, have failed to serve their Complaint, and have failed to attach a complete copy of their Complaint to their proof of claim. Nevertheless, Trustee submits that Plaintiffs claims are unmeritorious. Alternatively, the Property may be sold free and clear of any alleged interst of Plaintiffs pursuant to § 363(f)(5), because Plaintiffs could be compelled to accept a money satisfaction of their interest in a legal or equitable proceeding. In fact, in their Complaint, Plaintiffs appear to acknowledge this fact, as they seek damages against Debtor in excess of the purported purchase price of the Property under the expired contract and have filed a proof of claim in the amount of $3,600,000.

31.    To the extent that any additional liens are discovered, Trustee proposes that the sale be approved free and clear of said liens pursuant to § 363(f), with same to attach to the proceeds of sale in the same order of priority, extent, and validity.

## V.    THE PROPOSED SALE IS FOR FAIR MARKET VALUE.

32.    The Property was listed on the Multiple Listing Service ("MLS") as well as several other real estate websites and was actively marketed by the Broker for $2,900,000. The Broker's marketing efforts resulted in the receipt the Buyer's offer of $2,800,000.

33.    As further evidence that the Property is being sold for fair market value, it continues to be marketed for overbids and will be marketed up to the time of the hearing on this Motion.

Motion to Sell

## VI.    THE REQUESTED OVERBID PROCEDURES SHOULD BE APPROVED.

34.    In order to obtain the highest and best offer for the benefit of creditors of the Estate, Trustee proposes that the following overbid procedures be approved.  Notice is being provided of the opportunity for overbidding to all interested parties in this matter.

a)    Only Qualified Bidders may submit an overbid.  A "Qualified Bidder" is one who provides a financial statement, credit report, and such business and banking references as are required in Trustee's reasonable discretion, sufficient to assure Trustee of the bidder's ability (based on availability of financing, experience or other conditions) to consummate the purchase of the Property, and one who can consummate the purchase of the Property on the same terms and conditions, other than price, as those proposed in the Offer.

b)    Each bid must be received by Trustee and his counsel no later than 2 business days prior to the hearing.

c)    The initial overbid must exceed the Offer by a minimum $20,000.  However, because Broker represents both Buyer and Trustee, he has agreed to accept a reduced commission of 4%, instead of the 5% that Broker agreed to accept if he represented only Trustee.  Here, the first overbid must be at least $2,820,000, or $2,848,200 if Broker does not represent the prospective overbidder.  Each subsequent bid must then be in increments of at least $10,000.  For instance, the first subsequent bid must be at least $2,830,000 or $2,858,300 if Broker does not represent the prospective overbidder.

d)    Each bid must be non-contingent, and on the same terms and conditions, other than price, as those proposed in the Purchase Agreement.

e)    Each bidder must match all terms and conditions of the Offer.  Thus, an "earnest money" deposit of at least $84,000 must be made.  Said deposit must be received by Trustee at 3403 10th Street, Suite 714, Riverside, California 92501 by no later than 2 business days prior to the hearing.  Said deposit must be in the form of a cashier's check or certified check.

Motion to Sell

f)    Should a bidder fail to qualify for financing or timely close escrow, the $84,000 deposit is non-refundable.  However, in the event that an overbidder becomes the successful purchaser, Buyer's deposit will be returned to Buyer.

g)    In the event there are no overbids received by Trustee, Buyer shall, subject to Court approval, be deemed the successful bidder, and the Estate's right, title and interest in the Property shall be sold to Buyer for the sum of $2,800,000, as-is, where-as, without representations or warranties.

35.    The foregoing procedures will provide for an orderly completion of the sale of the Property by permitting all bidders to compete on similar terms, and will allow interested parties and the Court to compare competing bids in order to realize the highest benefit for the Estate.

## VII.   <u>THE COURT HAS AUTHORITY TO APPROVE THE OVERBID PROCEDURES.</u>

36.    Implementation of the bidding procedures is an action outside the ordinary course of business. A trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." § 363(b)(1). Furthermore, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." § 105(a). Thus, pursuant to §§ 363(b)(1) and 105(a), this Court may authorize the implementation of overbidding procedures.

37.    The Ninth Circuit has recognized the power of a Bankruptcy Court to issue orders determining the terms and conditions for overbids with respect to a sale of estate assets. *In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982). The *Crown Corporation* Court entered an order specifying the minimum consideration required for an overbid as well as the particular contractual terms required to be offered by overbidders. *Id* at 777. The *Crown Corporation* decision also approves of an order requiring and setting the amount of potential overbidders' deposits and authorized courts to determine the disposition of such deposits. *Id*. While the discussion is not extensive, the *Crown Corporation* decision recognizes the inherent authority of Bankruptcy Courts to order the implementation of bidding procedures such as those proposed in the present case.

///

Motion to Sell

**A.**      **The Proposed Procedures are Untainted by Self-Dealing.**

38.      The proposed overbid procedures have been presented in good faith and have been negotiated on an "arm's-length" basis. Therefore, the dealings between Trustee and the Proposed Buyer (or any successful Buyer) are not tainted.

**B.**      **The Proposed Procedures Encourage Bidding and are Fair in Amount.**

39.      The overbid procedures are designed to encourage, not hamper, bidding and are reasonable under the circumstances. This Motion is intended to provide potential overbidders with adequate information to make an informed decision as to the amount of their bid.

**C.**      **The Proposed Bidding Procedures are Fair, Reasonable and Serve the Best Interests of the Estate.**

40.      The proposed bidding procedures serve the Estate in several ways. First, the procedures themselves are fair, reasonable, and productive.  They will permit Trustee to conduct an orderly sale of the Property and obtain the best possible price on the best possible terms. Second, the bidding procedures are a necessary component of Trustee's sale of the Property.  The bidding procedures will ensure that all bids will be comparable. If competing bids are received, Trustee will determine which bid is the highest and best for the Estate. The comparability requirement of the bidding procedures will make it possible to accomplish this task.

41.      The bidding procedures will help Trustee to obtain the highest and best price for the Property. The procedures institute minimum overbid increments that Trustee believes are reasonable. Thus, if competing bids are received, Trustee will be able to obtain substantial benefit for this Estate from the sale of the Property. The bidding procedures require potential bidders to deposit certified funds prior to the hearing. It would be a serious loss to the Estate if Trustee surrendered the opportunity to sell the Property to the Proposed Buyer in favor of a competing bidder, only to later discover that the bidder is incapable of consummating the transaction. Thus, requiring bidders to make a substantial deposit will protect the Estate from such a loss.

///

///

///

Motion to Sell

**VIII.    THE BROKER'S COMPENSATION SHOULD BE APPROVED.**

42.    On November 28, 2022, Trustee was authorized to employ Broker.

43.    Trustee and Broker have agreed that Broker will be compensated at a reduced commission of 4% of the purchase price or overbid, as negotiated by Trustee, because Broker is representing both Trustee and Buyer in this transaction.

44.    Due to the facts of this case, Trustee has determined that the commission of 4% is reasonable and appropriate.

**IX.    THE PROPOSED SALE SUBSTANTIALLY BENEFITS THE ESTATE.**

45.    The sale of the Property will benefit the estate as follows, without taking into account a reduced payout BFLP:

| Estimated Equity Analysis | |
| --- | --- |
| Offer Received | $2,800,000 |
| Property Taxes – Riverside County | Estimated ($26,815.98) |
| First Priority Deed of Trust – BFLP | Disputed Demand ($1,947,386.45) |
| Second Priority Deed of Trust - FTC | Estimated ($400,000) |
| Broker Commissions (4%) | ($112,000) |
| Estimated Costs of Sale (2%) | ($56,000) |
| **Net Proceeds the Estate** | **$257,797.57** |

**X.    TAX CONSEQUENCES OF THE SALE.**

46.    Based on the review of Trustee's accountant, Donald T. Fife, CPA, the only potential tax consequence to the Estate from Trustee's sale of the Property is the California Gross Receipts Tax of $6,000.  *See* Declaration of Donald T. Fife, filed concurrently herewith.

**XI.    PROPOSED DISTRIBUTION OF SALE PROCEEDS.**

47.    Trustee seeks authority for distribution of sale proceeds as follows:

a)    For normal/customary escrow and closing costs;

b)    Estimated $26,815.98 to Riverside County;

c)    Estimated $1,820,000 to BFLP;

d)    Estimated $50,000 is owed to Geoffrey P. Field; $200,000 is owed to Jean Himmelstein; and $100,000 is owed to Mainstar Trust Custodian FBO Richard W. Walker.

e)    $112,000 to Broker; and

Motion to Sell

f)    Estimated closing costs of approximately $56,000.

## XII.    DETERMINATION OF GOOD FAITH PURCHASER.

48.    Trustee further seeks an Order determining that Buyer is a "Good Faith Purchaser" under § 363(m), such that any appeal of the Order granting this Motion, even if successful, will not affect the validity of the sale unless a stay pending appeal is obtained.

49.    Buyer participated in the negotiation of the Purchase Agreement.    Buyer is not an "insider" under § 101(31), in that neither Buyer nor its representative is a relative or general partner of Debtor, nor is Debtor a partner, director, officer, or person in control of Buyer.

50.    There is no relationship between Trustee and Buyer.    Thus, the proposed sale is an arms-length transaction and is in good faith.    However, Broker is representing both Trustee and Buyer in this transaction.    *See* Buyer's Declarations filed herewith.

## XIII.    WAIVER OF THE STAY IS APPROPRIATE.

51.    The waiver of the stay imposed by FRBP 6004(h) is appropriate.    Time is of the essence because Buyer is able to close within 30 days of entry of the order approving this Motion and BFLP is seeking relief from stay in order to conduct a trustee's sale of the Property.    Trustee believes that it is likely that the Estate will receive nothing if BFLP forecloses its first priority deed of trust.    Accordingly, Trustee requests that the Court waive the stay of FRBP 6004(h).

**WHEREFORE,** Trustee requests that the Court enter an order:

a)    Authorizing the sale of the Property to Buyer pursuant to §§ 363(b) and (f);

b)    Approving the overbid procedures;

c)    Approving the Broker's compensation;

d)    Authorizing the distributions as proposed herein;

e)    Determining that Buyer, or any overbidders, is a "Good Faith Purchaser" under § 363(m);

f)    Waiving the 14-day stay of FRBP 6004(h);

g)    Authorizing Trustee to sign any and all documents necessary, and to undertake any non-material amendments and modifications necessary, to complete the sale to the highest, qualified bidder without further notice, hearing, or Court order; and

h)    For such other and further orders as the Court deems just and proper.

DATED: December 21, 2022                Respectfully Submitted,
                                        MALCOLM ♦ CISNEROS, A Law Corporation

                                        */s/ Nathan F. Smith*
                                        NATHAN F. SMITH, #264635
                                        *Attorneys for Chapter 11 Trustee, A. Cisneros*

16

Motion to Sell

## DECLARATION OF A. CISNEROS

I, A. Cisneros, declare as follows:

1.      I am the duly appointed and acting Chapter 11 Trustee for the bankruptcy estate ("Estate") of Stonebridge Ventures, LLC ("Debtor"), Case No. 8:22-bk-11556-TA.

2.      In this capacity, I have personal knowledge of the facts stated herein or believe them to be true based upon information and belief, and, if called upon to testify thereto, I could and would do so competently and truthfully.

3.      I make this declaration in support of the Motion for Order (1) Authorizing Trustee to Sell Real Property Free and Clear of Liens and Interests Pursuant to § 363(f); (2) Approving Overbid Procedures; (3) Approving Broker Compensation; (4) Authorizing Distribution of Sale Proceeds; (5) Determining that the Proposed Buyer is a "Good Faith Purchaser" Under § 363(m); and (6) Waiving 14-Day Stay of FRBP 6004(h) ("Motion").   Unless otherwise noted, capitalized terms in this Declaration have the meaning set forth in the Motion.  I have read and I am aware of the contents of the Motion and the accompanying Memorandum of Points and Authorities.  The facts stated in the Motion and the Memorandum of Points and Authorities are true and correct to the best of my knowledge.

4.      The Estate includes the real property commonly known as 5 Makena Lane, Rancho Mirage, California 92270 [APN: 682-031-005] ("Property").

5.      On November 7, 2022, I filed an application to Employ Real Estate Agent Brian Thompson of Winterstone Real Estate and Development ("Broker").  The Application was granted on November 28, 2022.

6.      Subject to Court approval and overbids, I have accepted an offer from the Roll Sparrow, LLC to purchase the Property for $2,800,000.  A true and correct copy of the Residential Purchase Agreement and Counter-Offer ("Purchase Agreement") is attached hereto as Exhibit "1" and incorporated herein by reference.

7.      The sale is in the best interest of creditors and the Estate and should be approved. Assuming the Court approves the Motion and no overbids are received, the Estate will receive approximately $257,797.57 from the sale for the benefit of creditors of the Estate following payment

of costs of sale, including Broker's commission, real property taxes, and liens against the Property. Additionally, the net to the Estate may increase based on litigation or settlement of the Estate's claims against BFLP.

8.      Buyer has tendered a $84,000 deposit to the escrow agent handling the sale of the Property in the form of a cashier's check.

9.      In summary, the Purchase Agreement provides as follows:

    a.      <u>Purchase Price</u>:  Buyer has agreed to pay $2,800,000 for the Property.

    b.      <u>Closing of Sale</u>:  The sale shall close as quickly as possible, but not later than 30 days after Bankruptcy Court approval of the sale.

    c.      <u>"As Is" and "Where As"</u>:  The Property is being sold, "as-is – where-as," thus Trustee is not making any representations, warranties, either express or implied, as to the Property's condition, uses (prior, present or future), or otherwise.

    d.      <u>Transfer of the Property</u>: I will convey title to Buyer via a Trustee's Quitclaim Deed.

    e.      <u>Acknowledgement of Trustee's Capacity</u>:  Buyer is expressly aware and fully informed that I am selling the Property exclusively in my capacity as Chapter 11 Trustee of the Estate.  No personal liability for costs, fees or other charges on my part is intended, and any liability is strictly the liability of the Estate.

    f.      <u>Approval of the Bankruptcy Court</u>:  Buyer is aware that the sale is expressly conditioned on approval by the Court and subject to overbid.

    g.      <u>Bankruptcy Jurisdiction</u>:  I am selling the Property in my capacity as Chapter 11 of the Estate.  As such, resolution of any and all disputes between Trustee and Buyer (or any over-bidders) shall be resolved by the Court.

10.      I shall approve in writing all disbursements to be made on the sale of the Property. Escrow shall not be authorized to disburse any funds to anyone without my prior written approval.

11.      If I am unable to close escrow because of unknown title defects, because the liens and encumbrances exceed the amount known to me, by being divested of title by the Court, because of

Motion to Sell

the Lawsuit, or because the tax consequences of the sale are excessive, Buyer's sole damages shall be limited to a refund of its deposit less escrow and bond charges.

12.     In my business judgment the sale of the Property should be approved.

13.     Pursuant to the Preliminary Title Report, the Property is encumbered by the following liens:

a.     $26,815.98 in real property taxes owed to Riverside County;

b.     A first priority deed of trust in favor of BFLP in the original, principal amount of $1,650,000; and

c.     A second priority deed of trust in favor of FTC in the original, principal amount of $400,000, of which $50,000 is owed to Geoffrey P. Field; $200,000 is owed to Jean Himmelstein; and $100,000 is owed to Mainstar Trust Custodian FBO Richard W. Walker.

A true and correct copy of a Preliminary Title Report for the Property is attached hereto as Exhibit "2."

14.     The Preliminary Title Report also reflects the NPA recorded against the Property by Plaintiffs on September 6, 2022.

15.     I do not believe the Property is subject to any further liens or encumbrances. However, in an abundance of caution and to provide assurances to Buyer, I seek authority to sell the Property "free and clear of any interest in such property of an entity..."

16.     Fair market value for the Property is being realized.  The Property was initially listed for $2,900,000 and the offer received is $2,800,000.  The Property will continue to be marketed pending an order on the Motion to Sell and Buyer's offer is subject to overbid.

17.     In preparing to market the Property for sale, the Property was placed on the Multiple Listing Service ("MLS") as well as multiple other real estate websites.  The marketing efforts resulted in the receipt of the Buyer's offer, which I accepted (subject to overbid and court approval). As of the date of this Declaration, I have not received any other offers to purchase the Property.

18.     In order to obtain the highest and best offer for the benefit of creditors of the Estate, I propose that the foregoing Offer be approved along with the proposed overbid procedures.  Notice is

being provided of the opportunity for overbidding to all interested parties in this matter.

19.    The proposed overbid procedures as set forth in the foregoing Motion will provide for an orderly completion of the sale of the Property by permitting all bidders to compete on similar terms, and will allow interested parties and the Court to compare competing bids in order to realize the highest benefit for the estate.

20.    I negotiated an agreement with the Broker, whereby he will be compensated at a reduced commission of 4% of the approved purchase price or overbid because he is representing both the Buyer and the Estate in this transaction.

21.    Due to the facts of this case, I have determined that the proposed commission is reasonable and appropriate, and I am requesting authorization to pay such commission.

22.    I am further seeking an Order determining that Buyer is a "Good Faith Purchaser" under § 363(m), such that any appeal of the Order granting this Motion, even if successful, will not affect the validity of the sale unless a stay pending appeal is obtained.

23.    Buyer participated in the negotiation of the Purchase Agreement.  I am informed and believe that Buyer is not an "insider" as defined in § 101(31), in that Buyer is neither a relative nor a general partner of Debtor, nor is Debtor its partner, director, officer, or person in control of Buyer.

24.    There is no relationship between Buyer and me and it is a non-"insider."  Thus, the proposed sale is an arms-length transaction negotiated in good faith between the parties.  However, Broker is representing me and the Buyer in this transaction.

25.    The sale of the Property would benefit the estate as follows; without taking into account a reduced payout to BFLP:

| Estimated Equity Analysis | |
|---|---|
| Offer Received | $2,800,000 |
| Property Taxes – Riverside County | Estimated ($26,815.98) |
| First Priority Deed of Trust – BFLP | Estimated ($1,947,386.45) |
| Second Priority Deed of Trust - FTC | Estimated ($400,000) |
| Broker Commissions (4%) | ($112,000) |
| Estimated Costs of Sale (2%) | ($56,000) |
| **Net Proceeds the Estate** | **$257,797.57** |

26.    My accountant, Donald T. Fife, CPA, has determined that the only potential tax consequence to the Estate from Trustee's sale of the Property is the California Gross Receipts Tax of

Motion to Sell

$6,000. *See* Declaration of Donald T. Fife, filed concurrently herewith.

27.    With respect to the waiver of the stay imposed by FRBP 6004(h), time is of the essence because Buyer is able to close within 30 days of entry of the order approving this Motion and BFLP is seeking relief from stay in order to conduct a trustee's sale of the Property.  I believe that it is likely that the Estate will receive nothing if BFLP forecloses its first priority deed of trust. Accordingly, I am requesting that the Court waive the stay imposed by FRBP 6004(h).

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 21st day of December, 2022, at Riverside, California.

A. Cisneros

Motion to Sell

## DECLARATION OF BRIAN THOMPSON

I, Brian Thompson, declare as follows:

1.      I am a real estate agent employed by Winterstone Real Estate and Development, the real estate broker for A. Cisneros, the Chapter 11 Trustee for the bankruptcy estate of Stonebridge Ventures, LLC ("Debtor"), Case No. 8:22-bk-11556-TA.    In this capacity, I have personal knowledge of the facts stated herein, and, if called upon to testify thereto, I could and would do so competently and truthfully.

2.      I listed the property commonly known as 5 Makena Lane, Rancho Mirage, California 92270 [APN: 682-031-005] ("Property") for $2,950,000, on November 26, 2022 and showed the Property to interested parties prior to listing it.

3.      On November 28, 2022, I received an offer from Roll Sparrow, LLC ("Buyer") to purchase the Property for $2,800,000.  Trustee responded with a counteroffer that was also accepted that same day.

4.      As of the date of this declaration, I have received one other offer to purchase the Property that was significantly lower than our currently accepted contract.  The second offer was received a week or so after we were under contract and was for $2,655,000.

5.      The Property was listed on the MLS as well as websites, including but not limited to Zillow.com, Redfin.com, and Truila.com.

6.      The Property was made available for showings to any and all interested individuals or entities.  My marketing efforts resulted in numerous groups touring the development and home, I estimate at least 25 at this point, which number continues to grow.  During the course of listing I responded to hundreds of emails, calls and texts that along with the detailed listing resulted in the offers to purchase.

7.      As stated, I have continued to market the Property since receipt of Buyer's offer and will continue to market the Property pending a ruling on Trustee's Motion to Sell the Property.  My marketing efforts will include continued showings to interested parties, communications via email and phone with interested parties, and continuing marketing efforts to attract interest in the Property and overbids.

///

1    I declare under penalty of perjury according to the laws of the United States that the

2  foregoing is true and correct and that this declaration was executed on the _21_ day of December,

3  2022, at _Lake Forest_, California.

4

5                                                          Brian Thompson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Sell

## **DECLARATION OF JOEY ARSANTO**

I, Joey Arsanto, declare as follows:

1.       I am the managing member of Roll Sparrow, LLC ("Buyer"), the proposed buyer of the real property commonly known as 5 Makena Lane, Rancho Mirage, California 92270 [APN: 682-031-005] ("Property").  In this capacity, I have personal knowledge of the facts stated herein, and, if called upon to testify thereto, I could and would do so competently and truthfully.

2.       Neither Buyer nor I am a relative or a general partner of Debtor, Trustee, or Trustee's Broker.  However, Trustee's Broker is also representing Buyer in this transaction.

3.       Neither Buyer nor I am part of a partnership in which Debtor, Trustee, or Trustee's Broker, are a general partner, director, officer, or person in control.

4.       I participated in the negotiation of the Residential Purchase Agreement and Joint Escrow Instructions and Counter Offer through my broker Brian Thompson of Winterstone Real Estate and Development, which is also Trustee's Broker.

5.       The proposed sale of the Property is an arms-length transaction and is in good faith.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct and that this declaration was executed on the ___ day of December, 2022, at _____, California.

_____
Joey Arsanto

Motion to Sell

## DECLARATION OF DONALD T. FIFE

I, Donald T. Fife, declare as follows:

1.      I am a duly-licensed certified public accountant in the State of California and a partner in the accounting firm of Hahn Fife & Company, LLP ("Hahn Fife").

2.      A. Cisneros, trustee of the bankruptcy estate of Stonebridge Ventures, LLC ("Trustee"), has engaged Hahn Fife as his accountants in this case.

3.      I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify thereto, I could and would do so competently and truthfully.

4.      Debtor is a limited liability company, organized under the laws of the State of California.

5.      In California, income or losses from the sale of real property owned by a limited liability company flow through to the members of the limited liability company.

6.      Trustee's sale of Debtor's real property, which is commonly known as 5 Makena Lane, Rancho Mirage, California 92270 ("Property"), will not result in any income tax or capital gains tax to Debtor. However, Debtor may be subject to the California Gross Receipts tax, which is approximately $6,000.

7.      There will be no other negative tax consequences to Debtor from the sale of the Property by Trustee.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 21st day of December, 2022, at Pasadena, California.

_____
Donald T. Fife, Hahn Fife & Co., LLP

Motion to Sell

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**2112 Business Center Dr., Irvine, CA 92612**

A true and correct copy of the foregoing document entitled (*specify*):  **CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION OF SALE PROCEEDS; (5) DETERMINING THAT THE PROPOSED BUYER IS A "GOOD FAITH PURCHASER" UNDER 11 U.S.C. § 363(m); AND (6) WAIVING 14 DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h); DECLARATIONS OF A. CISNEROS,  BRIAN THOMPSON, DONALD T. FIFE, AND PROPOSED BUYER IN SUPPORT HEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 21, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**OFFICE OF U.S. TRUSTEE: United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
**CHAPTER 11 TRUSTEE: Arturo Cisneros (TR)    amctrustee@mclaw.org, acisneros@iq7technology.com; ecf.alert+Cisneros@titlexi.com**
**DEBTOR'S ATTORNEY: Summer M Shaw    ss@shaw.law, shawsr70161@notify.bestcase.com; shawsr91811@notify.bestcase.com**

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **December 21, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR: Stonebridge Ventures, LLC, 15 Corporate Plaza Drive, Suite 200, Newport Beach, CA 92660**
**NOTICE: Shaw & Hanover, PC, 42-600 Cook Street, Suite 210, Palm Desert, CA 92211**
**NOTICE: Hahn Fife & Company, 790 E Colorado Blvd 9th Fl, Pasadena, CA 91101**
**NOTICE: Brian Thompson, Winterstone Real Estate Development, 23792 Rockfield Blvd., Ste. 101, Lake Forest, CA 92630**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 21, 2022 | Erica F. Pedraza | /s/ Erica F. Pedraza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**SECTION 1 CONT.**
NOTICE: James C Bastian    jbastian@shulmanbastian.com
NOTICE: Arturo Cisneros    arturo@mclaw.org, CACD_ECF@mclaw.org
NOTICE: Michael J Hauser    michael.hauser@usdoj.gov
NOTICE: Rika Kido    rkido@shulmanbastian.com, avernon@shulmanbastian.com
NOTICE: William Malcolm    bill@mclaw.org, cvalenzuela@mclaw.org
NOTICE: W. Derek May    wdmlaw17@gmail.com, r48266@notify.bestcase.com
NOTICE: David W. Meadows    david@davidwmeadowslaw.com
NOTICE: Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com; r59042@notify.bestcase.com
NOTICE: Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
NOTICE: Lee S Raphael    ecfcca@ecf.courtdrive.com, cmartin@pralc.com
NOTICE: Timothy M Ryan    tryan@theryanfirm.com, ecf@theryanfirm.com
NOTICE: Allan D Sarver    ADS@asarverlaw.com
NOTICE: Nathan F Smith    nathan@mclaw.org, CACD_ECF@mclaw.org; mcecfnotices@ecf.courtdrive.com; cvalenzuela@mclaw.org
NOTICE: Diana Torres-Brito    dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com

**SECTION 2 CONT.**
NOTICE: Baiocchi Family, LP, 600 Hudson Lane, Aptos CA 95003
NOTICE: Forge Trust Company CFB, Donald Suskind IRA, 1160 Industrial Road, #1, San Carlos CA 94070
NOTICE: Geoffrey P. Field, Trustee of the Geoffrey P. Field Living Trust, 2100 Camino Vida Roble, Ste A, Carlsbad CA 92011
NOTICE: Jeannette Himmerlstein Living Trust, 10100 Galaxy Way #2240, Los Angeles CA 90067
NOTICE: Mainstar Trust Custodian FBO, Richard W. Walker IRA, 18124 Wedge Parkway #530, Reno NV 89511
NOTICE: Riverside County Tax Collector, Matt Jennings, Treasurer – Tax Collect, 4080 Lemon Street, 1st Floor Riverside CA 92501

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**