Thomas J. Polis, Esq. (SBN 119326)
**POLIS & ASSOCIATES, APLC**
19800 MacArthur Blvd., Suite 1000
Irvine, California 92612
Telephone: (949) 862-0040
Facsimile:  (949) 862-0041
Email: tom@polis-law.com

Counsel for Secured Creditors/Pre-Petition Buyers, Darryl Lewis and Sanna Akhtanova

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| **In re** <br><br> **Stonebridge Ventures, LLC,** <br><br> Debtor/Debtor-In-Possession. | Case No. 8:22-bk-11556-TA <br><br> Chapter 11 <br><br> **SECURED CREDITORS AND PRE-PETITION BUYERS DARRYL LEWIS AND SANNA AKHTANOVA'S OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION RE 5 MAKENA LANE, RANCHO MIRAGE, CA 92270 (ECF No. 81); AND DECLARATION IN SUPPORT OF OPPOSITION** <br><br> **Hearing**: <br> Date:    **January 11, 2023** <br> Time    10:00 a.m. <br> Ctrm:    5B, Fifth Floor <br>             U.S. Bankruptcy Court <br>             411 Fourth Street <br>             Santa Ana, CA 92701 <br> **(via ZoomGov per Court's website)** |

**TO THE HONORABLE THEODOR C. ALBERT, U.S. BANKRUPTCY JUDGE; THE DEBTOR AND ITS COUNSEL OF RECORD; THE CHAPTER 11 TRUSTEE AND HIS COUNSEL OF RECORD; THE SANTA ANA OFFICE OF THE U.S. TRUSTEE; AND OTHER PARTIES ENTITLED TO NOTICE:**

The Debtor's secured creditors and pre-petition buyers, Darryl Lewis and Sanna Akhtanova (collectively "Lewis/Akhtanova" or "Pre-Petition Buyers") submit the following *Opposition re: Chapter 11 Trustee's Sale Motion re: 5 Makena Lane, Rancho Mirage, CA 92270* (ECF NO. 81)("Makena Property").  Specifically, as detailed herein, Lewis/Akhtanova

respectfully request that the Court either deny the Trustee's *Sale Motion* since the Trustee's *Sale Motion* is completely silent as to how the proposed net sales proceeds from the sale of the Makena Property will pay Lewis/Akhtanova's Vendee's senior secured lien in the approximate amount of $582,000 pursuant to Section 3050 of the California Civil Code. Specifically, pursuant to Section 3050 Buyers Lewis/Akhtanova hold a statutory Vendee's Lien that in this case is senior in priority to The Baiocchi Family Trust's Deed of Trust and the AB Capital's Junior Priority Deed of Trust. As provided for under California Civil Code 3050 Lewis/Akhtanova's senior Vendee's Lien in the approximate amount of $582,000 is comprised of the following components:

i) $369,750 for the amount of Lewis/Akhtanova's purchase deposits in escrow and to Luna Construction in August 2020 and through January 2022 all related to the purchase of the Makena Property;

ii) $85,093.15 comprised of interest at 10% per annum since Lewis/Akhtanova deposited $369,750 in escrow pursuant to the initial *August 2020 Purchase Agreement* and paid to Luna Construction all for the intended purchase of the Makena Property;

iii) $62,722.45 up to and including December 28, 2022 comprised of the reasonable attorneys' fees and costs incurred by Lewis/Akhtanova's State Court Counsel (Garcia, Rainey Blank & Bowerbank, LLP) and Bankruptcy Court Counsel (Polis & Associates, APLC) all related to Debtor/Seller's breaches of the purchase of the Makena Property;

iv) $5,484.55 comprised of insurance and utilities paid by Buyers Lewis/Akhtanova for the Makena Property; and

v) Approximately an additional $50,000 for expenses incurred by Pre-Petition Buyer, Lewis/Akhtanova in anticipation of purchasing the Makena Property.

///

///

Overall, unless the Chapter 11 Trustee amends his *Sale Motion* to provide for payment in full directly from the close of escrow of approximately $582,000 for the senior secured Vendee's Lien held by Buyers Lewis/Akhtanova, the Court should deny the Chapter 11 Trustee's *Sale Motion*. Secondly, in the event the Court is inclined to approve the Chapter 11 Trustee's *Sale Motion re Makena Property*, pursuant to Section 363(f) of the Bankruptcy Code, the sale order entered in conjunction with the Makena Property shall provide for either adequate protection or a replacement lien to protect Lewis/Akhtanova's $582,000 senior priority Vendee's Lien encumbering the Debtor's Makena Property.

Dated: December 28, 2022                POLIS & ASSOCIATES, APLC


                                        By:    /s/ Thomas J. Polis
                                               **Thomas J. Polis, Esq.**
                                               **Counsel for Secured Creditors,**
                                               **Darryl Lewis and Sanna Akhtanova**

# I.

## FACTUAL SUMMARY IN SUPPORT OF PRE-PETITION BUYERS LEWIS/AKHTANOVA'S OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION RE MAKENA PROPERTY RE CHAPTER 11 TRUSTEE COMPLETELY IGNORES PRE-PETITION BUYERS' VENDEE'S LIEN PURSUANT TO SECTION 3050 OF THE CALIFORNIA CIVIL CODE

1. On or about August 31, 2020, Pre-Petition Buyers Lewis/Akhtanova, along with the Debtor, Stonebridge Ventures, LLC ("Debtor" or "Seller") entered into the New Construction Residential Purchase Agreement And Joint Escrow Instructions ("*August 2020 Purchase Agreement*") for the Buyers to purchase the Makena Property.  The *August 2020 Purchase Agreement* provided that the Buyers would pay $2,895,000 the Makena Property to be completed in its entirety when a Certificate of Occupancy was issued on or about November 30, 2020. The *August 2020 Purchase Agreement* also provided that the Pre-Petition Buyers would initially deposit $144,750 into escrow.  Thereafter, on or about September 18, 2020, the Debtor's representative formally accepted the Buyers' Offer. Consequently, as a result of the Debtor's acceptance, on September 24, 2020 Buyers deposited $10,000 into the segregated account at Escrow Experts and the remaining $134,750 deposited on October 2, 2020 into Escrow Experts.  Attached hereto as Exhibits "A" and "B" are the fully executed *August 2020 Purchase Agreement*, along with proof of the Buyers' $10,000 and $134,750 escrow deposits.  *See*, ¶2 of the Darryl Lewis Declaration attached hereto.

2. Despite the express contractual language of the *August 2020 Purchase Agreement* that required the Debtor/Seller to complete the Makena Property on or before November 30, 2020, the Debtor/Seller, however breached that provision and the Makena Property was not completed. *See*, ¶3 of the Darryl Lewis Declaration attached hereto.

3. Consequently, on or about May 20, 2021, Buyers Lewis/Akhtanova and Debtor/Seller entered into *Extension of Time Addendum*, extending the close of escrow for the Buyers to purchase the Makena Property until on or before August 15, 2021.  Attached

hereto the Darryl Lewis Declaration as Exhibit "C" is a true and correct copy of the May 2021 Extension Agreement. *See*, ¶4 of the Darryl Lewis Declaration attached hereto.

4. In conjunction with the *May 2021 Extension Agreement*, Buyers Lewis/Akhtanova at the specific request of the Debtor/Seller's representative Joshua Pukini deposited an additional $50,000 with Luna Construction in relation to completion of the Makena Property ($25,000 on December 10, 2021 and an additional $25,000 on December 15, 2021). Buyers Lewis/Akhtanova were informed that Luna Construction was the general contractor on the Makena Property. *See*, ¶5 of the Darryl Lewis Declaration, along with Exhibit "D" evidencing Buyers' additional deposits of $50,000 with Luna Construction related to the Buyers' purchase of the Makena Property.

5. Yet again in early 2022, the Debtor/Seller had not completed nor obtained a Certificate of Occupancy for the Makena Property, consequently, the Debtor/Seller's representative requested that the closing for the Buyers' purchase of the Makena Property be further extended. Moreover, the Debtor/Seller's representative required the Buyers Lewis/Akhtanova deposit with Luna Construction at the direct request of the Debtor/Seller on January 20, 2022 an additional $175,000 ($30,250 and $144,750) in conjunction with the Buyers' purchase of the Makena Property. *See*, ¶6 of the Darryl Lewis Declaration, along with Exhibit "E" evidencing Buyers' additional deposits with Luna Construction of $175,000 related to the Buyers' purchase of the Makena Property.

6. In March 2022, despite the Debtor/Seller's representative's constant representations, albeit fraudulent, however, unbeknownst to the Buyers, the Buyers released approximately $369,750 from escrow at Luna Construction based on Debtor/Seller's representations that the escrow funds and Luna Construction funds were needed in conjunction with completion of the Makena Property and the Buyers' purchase of the Makena Property. *See*, ¶7 of the Darryl Lewis Declaration attached hereto.

7. It is undisputed that the Debtor/Seller Stonebridge Ventures, LLC never complied with its contractual obligations to the Buyers completing construction of the Makena Property nor was the Debtor/Seller able to obtain a Certificate of Occupancy for the Makena

Property pursuant to *the August 2020 Purchase Agreement* and any amendments and/or extensions thereto. *See*, ¶8 of the Darryl Lewis Declaration attached hereto.

8. Attached to Darryl Lewis's Declaration is a true and correct copy of the updated Preliminary Title Report, dated July 11, 2022, for the Makena Property. Specifically, page 6 of the July 2022 Makena Property Title Report shows the following:

i) The Baiocchi Family Trust recorded its Deed of Trust against the Makena Property on or about July 16, 2021 subsequent to Buyers Lewis/Akhtanova's *August 2020 Purchase Agreement* for the Makena Property; and

ii) The Forge Trust Company and/or AB Capital on behalf of Creditors, Susskind, Field, Himmelstein, and Walker recorded its Deed of Trust against the Makena Property on or about August 9, 2021, also subsequent to Buyers Lewis/Akhtanova's *August 2020 Purchase Agreement* for the Makena Property.

A true and correct copy of the July 2022 Updated Preliminary Title Report is attached as Exhibit "F" to the Darryl Lewis Declaration. *See*, ¶9 of the Darryl Lewis Declaration attached hereto

9. Prior to The Baiocchi Family Trust recording its Deed of Trust in July 2021 encumbering the Makena Property, along with recording the Junior Priority Deed of Trust holders' interest in August 2021 (Susskind, Field, Himmelstein and Walker) they were all familiar with and had express knowledge of Lewis/Akhtanova's *August 2020 Purchase Agreement* for the Makena Property. Moreover, The Baiocchi Family Trust's principal, Alan Baiochhi expressly told Buyer Darryl Lewis that he (Baiocchi) was well aware of Lewis/Akhtanova's *August 2020 Purchase Agreement* before he made the loan of $1,650,000 to Debtor/Seller Stonebridge Ventures, LLC. *See*, ¶10 of the Darryl Lewis Declaration attached hereto.

10. Prior to the Debtor's Chapter 11 Petition being filed, on or about September 9, 2022, Buyers Lewis/Akhtanova commenced an action in the California Superior Court for the County of Riverside, Palms Springs Courthouse, *Darryl Lewis, et al v. Stonebridge Ventures, LLC*, Case No; CVPS2203502. A true and correct copy of the Buyers' State Court Complaint

**OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION**

is attached as Exhibit "G" to the Lewis Declaration filed herewith. *See*, ¶11 of the Darryl Lewis Declaration attached hereto

11. Also, in conjunction with the Buyers' State Court Complaint, at about 1:42 p.m. on September 9, 2022, prior to the Debtor's Chapter 11 Petition filed later that same day at approximately 8:55 p.m., the Buyers recorded their *Notice of Pendency of Action* (Lis Pendens). A true and correct copy of the Buyers' recorded *Notice of Pendency of Action* is attached as Exhibit "H" to the Lewis Declaration filed herewith. *See*, ¶12 of the Darryl Lewis Declaration attached hereto

12. As a result of the Debtor/Seller's numerous breaches of the *August 2020 Purchase Agreement* and all extensions and/or amendments thereto, Buyers Lewis/Akhtanova have incurred the following damages:

    a) $369,750 of funds deposited into escrow and paid to Luna Construction at the specific request of the Debtor/Seller by the Buyers between September 24, 2020 and January 20, 2022;

    b) $85,093.15 interest for the Buyers' funds deposited in escrow and paid to Luna Construction at 10% per annum from September 20, 2022 until January 15, 2023, with a daily per diem of $101.30 on and after January 16, 2023;

    c) But for the breaches of the Debtor/Seller, the Buyers incurred additional damages of $1,398.55 for electrical monthly bills paid for the Makena Property from August 2022 until December 2022 at the specific request of the Debtor/Seller's principals;

    d) Buyers' payment of $4,086 to USAA Insurance Company to insure the Makena Property at the specific request of the Debtor/Seller's principals;

    e) But for the breaches of the Debtor/Seller, the Buyers incurred total legal fees as of December 28, 2022 of $62,722.45, comprised of $22,430.35 for the Buyers' State Court Counsel, Garcia Rainey; $38,505.60 for Polis & Associates' and $1,813.50 for Charles Poche;

f)  But for the breaches of the Debtor/Seller, the Buyers incurred extraordinary storage fees of $18,007.50 due to the Debtor/Seller's breach of the *August 2020 Purchase Agreement* and all amendments thereto;

g)  But for the breaches of the Debtor/Seller, the Buyers incurred additional excess housing costs of $23,406 (in excess of the $3,974 the Buyers were paying in rent when the Debtor/Seller were contractually obligated to tender possession of the Makena Property to them); and

h)  But for the breaches of the Debtor/Seller, the Buyers incurred $18,034.49 ($15,514.65 for custom made bar stools that only fit the unique countertop for the Makena Property and $2,519.84 for a LG Tower Washer/Dryer that was purchased for the Makena Property.

Consequently, as a result of the Debtor/Seller's breaches of the *August 2020 Purchase Agreement* and all subsequent amendments thereto, the Buyers Lewis/Akhtanova incurred damages no less than $582,000.

13. On or about September 9, 2022, Buyers Lewis/Akhtanova, through their counsel of record filed their timely proof of claim in the approximate amount of $3,600,000. No objection had been filed to Buyers Lewis/Akhtanova's Proof of Claim (Proof of Claim No. 2-1). A true and correct copy of the Buyers' Proof of Claim is attached hereto as Exhibit "I" incorporated in ¶14 of the Darryl Lewis Declaration.

14. On or about October 31, 2022, Buyers Lewis/Akhtanova, through their counsel of record removed their State Court Litigation from the California Superior Court for the County of Riverside to the above-captioned Court. A true and correct copy of the Notice of Removal is attached hereto as Exhibit "J" and incorporated in the ¶15 of the Darryl Lewis Declaration.

///
///
///
///
///

OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION

8

II.

## BUYERS LEWIS/AKHTANOVA'S POINTS AND AUTHORITIES IN OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION RE MAKENA PROPERTY

A. SECTION 3050 OF THE CALIFORNIA CIVIL CODE IMPOSES A VENDEE'S LIEN IN FAVOR OF A BUYER OF REAL PROPERTY WHEN THE SELLER/VENDOR FAILS TO COMPLETE THE TRANSACTION THROUGH NO FAULT OF THE BUYER/VENDEE

Section 3050 of the California Civil Code provides:

> One who pays to the owner and part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration. (Emphasis added.)

In effect, California Civil Code Section 3050 gives the buyer an equitable interest in the property as security for the reimbursement of any consideration paid, including any down payment and consequential expenditures for improvements, taxes and insurance. *See generally McCall v. Superior Court*, 1 Cal. 2d. 527, 534-535 (1934); and *Soderling v. Tomlin*, 170 Cal. App. 2d 169, 174 (1959). The Bankruptcy Court in *In re Trubnikov*, Northern District of California, Bankruptcy Judge Alan Jaroslovsky, Case No. 01-11202, issued a *Memorandum on Motion to Avoid Lien* regarding a Vendee's Lien under Section 3050. In analyzing the effectiveness of a vendee's statutory lien under California Civil Code 3050, Bankruptcy Judge Jaroslovsky stated the following:

> California Civil Code § 3050 gives a purchaser of realty who rescinds a contract for a vendor's fraud a lien on the property for the portion of the purchase price paid before rescission. *Montgomery v. Meyerstein* (1921) 186 Cal. 459. Since the creditors in this case had such a lien by statute prior to the commencement of their state court lawsuit, their lien is a statutory lien rather than a judicial lien and is accordingly not avoidable under § 522(f)(1)(A) of the Bankruptcy Code. Their use of the courts to enforce their lien did not transform it into a judicial lien. (Emphasis added.)

///

///

///

Case 8:22-bk-11556-TA    Doc 91    Filed 12/28/22    Entered 12/28/22 21:32:40    Desc
Main Document    Page 10 of 19

Further, California cases have explained that a vendee's lien under Section 3050 secures the amounts paid on the purchase price, including principal and interest, and the amounts paid for taxes and insurance and other consequential damages as a result of the seller/vendor's breach. *See*, generally *Garcia v. Atmajian*, 113 Cal. App. 3d, 516, 521 (1980); *Lockie v. Cooperative Land Co.*, 207 Cal. 624, 628-629; and *Montgomery v. Meyerstein*, 186 Cal. 459, 464-465 (1921).

In this case, Buyers Lewis/Akhtanova are requesting the Court order that they hold a senior security vendee's lien in the aggregate amount of $582,496.15 as of January 15, 2023, with per diem interest accruing thereafter at the daily rate of $159.58. Specifically, the components of Lewis/Akhtanova's Vendee's Lien are comprised of the following"

i) $369,750 for funds deposited by Lewis/Akhtanova towards the purchase price for the Makena Property;

ii) $85,093.15 of interest at the statutory rate of 10% per annum for the funds deposited by Lewis/Akhtanova for the Makena Property;

iii) $1,398.55 for the monthly electrical bills for the Makena Property paid by Lewis/Akhtanova;

iv) $4,086 for the insurance for the Makena Property paid by Lewis/Akhtanova;

v) $62,722.45 in total attorneys' fees as of December 28, 2022 incurred by Lewis/Akhtanova as a result of the Debtor/Seller's breach of the *August 2020 Purchase Agreement*;

vi) $18,007.50 in extraordinary storage fees incurred by Lewis/Akhtanova as a direct result of the Debtor/Seller's breach of the *August 2020 Purchase Agreement*;

vii) $23,406 in extraordinary living costs incurred by Lewis/Akhtanova as direct result of the Debtor/Seller's breach of the *August 2020 Purchase Agreement*; and

viii) $18,034.39 for custom items purchased by Lewis/Akhtanova for the Makena Property.

OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION

10

Consequently, Pre-Petition Buyers Lewis/Akhtanova respectfully request that the Court order that they are entitled to a Vendee's Lien in the amount of $582,496.15 as of January 15, 2023, with per diem interest accruing at the daily rate of $159.58 on and after January 16, 2023.

**B.    IN ADDITION TO PRE-PETITION BUYERS LEWIS/AKHTANOVA'S VENDEE'S LIEN PURSUANT TO SECTION 3050 OF THE CALIFORNIA CIVIL CODE, LEWIS/AKHTANOVA'S VENDEE'S LIEN SHOULD BE ELEVATED TO A SENIOR PRIORITY LIEN PURSUANT TO SECTION 3048 OF THE CALIFORNIA CIVIL CODE**

Section 3048 of the California Civil Code provides:

> The liens defined in Sections 3046 and <u>3050 are valid against every one claiming under the debtor, except a purchaser or incumbrancer in good faith and for value</u>. (Emphasis added.)

The California Court of Appeals in *Brock v. First South Savings Association*, 8 Cal. App. 4th 661 (1992), addressed the issue of the priority under Section 3048 of the California Civil Code between a bank's deed of trust and a vendor's lien under Section 3046 (the mirror image of a vendee's lien under Section 3050). In *Brock*, the California Court of Appeals addressed at page 662 the disputed lien priority issue between the purchase money lender and the vendor in the context of Section 3048 of the California Civil Code:

> In addition, a "good faith" encumbrancer is one who acts without knowledge or notice of the competing liens on the subject property (citations).
>
> In this case, the trial court expressly found that First South [purchase money lender] had knowledge of the details of the financing of the property and that a vendor's lien rights would accrue at closing. . . We therefore conclude that, because First South had notice and knowledge of the creation of a vendor's lien upon the close of escrow, First South [purchase money lender] is not an encumbrancer in good faith.

In our case, the declaration testimony of Pre-Petition Darryl Lewis clearly shows that purported senior priority deed of trust holder, The Baiocchi Family Trust, had express knowledge in July 2021 of the Pre-Petition Buyers Lewis/Akhtanova's *August 2020 Purchase Agreement* for 5 Makena Property. In fact, Pre-Petition Buyer Darryl Lewis testified in his Declaration attached hereto that he personally spoke to Senior Lender's principal, Alan

Baiocchi, prior to his family trust making the loan for $1,650,000 secured by the Makena Property that he (Alan Baiocchi) was more motivated to make the loan since the Makena Property was under contract and in escrow with Pre-Petition Buyers Darryl Lewis and Sanna Akhtanova. Consequently, purported senior lender, The Baiocchi Family Trust was not a good faith encumbrancer but in fact had express knowledge of Pre-Petition Buyers Lewis/Akhtanova and their rights of a vendee.

Secondly, the purported junior priority lender, Forged Trust Company was likewise not a "good faith" encumbrancer since the Forged Trust Company's Deed of Trust was arranged by AB Capital, an entity controlled by the Debtor's insiders, Joshua Pukini and Ryan Young. Certainly, the Debtor's insiders, Joshua Pukini and Ryan Young in their dual role with AB Capital cannot be characterized as "good faith" encumbrancers in light of their obvious knowledge of Pre-Petition Buyers Darryl Lewis and Sanna Akhtanova's *August 2020 Purchase Agreement*.

Consequently, pursuant to California Civil Code Section 3048, Pre-Petition Buyers Darryl Lewis and Sanna Akhtanova's Vendee's Lien of $582,496.15 should be characterized as the senior most lien encumbering the Makena Property, thus unless and until the Chapter 11 Trustee proposes to pay the Lewis/Akhtanova's Vendee's Lien in full, the Chapter 11 Trustee's *Sale Motion* should be denied.

## III.

## CONCLUSION

For the reasons detailed herein, Pre-Petition Buyers, Darryl Lewis and Sanna Akhtanova respectfully requests that the Bankruptcy Court deny the Chapter 11 Trustee's *Sale Motion* unless and until the Lewis/Akhtanova's Vendee's Lien of no less than $582,000 is paid directly from escrow as a senior first priority lien.

**Dated: December 28, 2022**     **POLIS & ASSOCIATES, APLC**

         By:   **/s/ Thomas J. Polis**
               **Thomas J. Polis, Esq.**
               **Counsel for Secured Creditors,**
               **Darryl Lewis and Sanna Akhtanova**

# DECLARATION OF DARRYL LEWIS

I, Darryl Lewis, declare as follows:

1. I, along with my wife Sanna Akhtanova are secured creditors of the above-captioned Debtor Stonebridge Ventures, LLC, Case No. 22-bk-11556-TA. I make this declaration in support of our *Opposition to Chapter 11 Trustee's Sale Motion*. If compelled to do so, I would be able to competently testify under the penalty of perjury of the laws of the United States to all of the factual statements herein.

2. On or about August 31, 2020, my wife and I, along with the Debtor, Stonebridge Ventures, LLC ("Debtor" or "Seller") pre-petition entered into the New Construction Residential Purchase Agreement And Joint Escrow Instructions ("*August 2020 Purchase Agreement*") for the purchase of the Makena Property. The *August 2020 Purchase Agreement* provided that my wife and I would pay $2,895,000 the Makena Property to be completed in its entirety when a Certificate of Occupancy was issued on or about November 30, 2020. The *August 2020 Purchase Agreement* also provided that my wife and I would initially deposit $144,750 into escrow. Thereafter, on or about September 18, 2020, the Debtor's representative formally accepted our Offer. Consequently, as a result of the Debtor's acceptance, on September 24, 2020 my wife and I deposited $10,000 into the segregated account at Escrow Experts and the remaining $134,750 deposited on October 2, 2020 into Escrow Experts. Attached hereto as Exhibits "A" and "B" are the fully executed *August 2020 Purchase Agreement*, along with proof of the $10,000 and $134,750 escrow deposits.

3. Despite the express contractual language of the *August 2020 Purchase Agreement* that required the Debtor/Seller to complete the Makena Property on or before November 30, 2020, the Debtor/Seller, however breached that provision and the Maken Property was not completed.

4. Consequently, on or about May 20, 2021, my wife and I and Debtor/Seller entered into *Extension of Time Addendum*, extending the close of escrow for my wife and I to purchase the Makena Property until on or before August 15, 2021. Attached as Exhibit "C" is a true and correct copy of the May 2021 Extension Agreement.

5. In conjunction with the *May 2021 Extension Agreement*, my wife and I at the specific request of the Debtor/Seller's representative Joshua Pukini, deposited an additional $50,000 with Luna Construction in relation to completion of the Makena Property ($25,000 on December 10, 2021 and an additional $25,000 on December 15, 2021). We were informed that Luna Construction was the general contractor on the Makena Property. Attached as Exhibit "D" is evidence of the additional deposits of $50,000 with Luna Construction related to our purchase of the Makena Property.

6. Yet again in early 2022, the Debtor/Seller had not completed nor obtained a Certificate of Occupancy for the Makena Property, consequently, the Debtor/Seller's representative requested that the closing for our purchase of the Makena Property be further extended. Moreover, the Debtor/Seller's representative required my wife and I deposit with Luna Construction at the direct request of the Debtor/Seller on January 20, 2022 an additional $175,000 ($30,250 and $144,750) in conjunction with our purchase of the Makena Property. Attached hereto as Exhibit "E" is evidence of the additional deposits with Luna Construction of $175,000 related to the purchase of the Makena Property.

7. In March 2022, despite the Debtor/Seller's representative's constant representations, albeit fraudulent, however, unbeknownst to my wife and I, we released approximately $369,750 from escrow at Luna Construction abased on Debtor/Seller's representations that the escrow funds and Luna Construction were needed in conjunction with completion of the Makena Property and the purchase of the Makena Property.

8. It is undisputed that the Debtor/Seller, Stonebridge Ventures, LLC never complied with its contractual obligations to my wife and I completing construction of the Makena Property nor was the Debtor/Seller able to obtain a Certificate of Occupancy for the Makena Property pursuant to the August 2020 Purchase Agreement and any amendments and/or extensions thereto.

9. Attached is a true and correct copy of the updated Preliminary Title Report dated July 11, 2022, for the Makena Property. Specifically, page 6 of the July 2022 Makena Property Title Report shows the following:

i) The Baiocchi Family Trust recorded its Deed of Trust against the Makena Property on or about July 16, 2021 subsequent to our *August 2020 Purchase Agreement* for the Makena Property; and

ii) The Forge Trust Company and/or AB Capital on behalf of Creditors, Susskind, Field, Himmelstein, and Walker recorded its Deed of Trust against the Makena Property on or about August 9, 2021, also subsequent to our *August 2020 Purchase Agreement* for the Makena Property.

A true and correct copy of the July 2022 Updated Preliminary Title Report is attached hereto as Exhibit "F".

10. Prior to The Baiocchi Family Trust recording its Deed of Trust in July 2021 encumbering the Makena Property, along with recording the Junior Priority Deed of Trust holders' interest in August 2021 (Susskind, Field, Himmelstein and Walker) they were all familiar with and had express knowledge of Lewis/Akhtanova's August 2020 Purchase Agreement for the Makena Property. Moreover, The Baiocchi Family Trust's principal, Alan Baiocchi expressly told me that he (Baiocchi) was well aware of our *August 2020 Purchase Agreement* before he made the loan of $1,650,000 to Debtor/Seller Stonebridge Ventures, LLC.

11. Prior to the Debtor's Chapter 11 Petition being filed, on or about September 9, 2022, my wife and I commenced an action in the California Superior Court for the County of Riverside, Palms Springs Courthouse, *Darryl Lewis, et al v. Stonebridge Ventures, LLC*, Case No; CVPS2203502. A true and correct copy of the State Court Complaint is attached hereto as Exhibit "G".

12. Also, in conjunction with our State Court Complaint, at about 1:42 p.m. on September 9, 2022, prior to the Debtor's Chapter 11 Petition filed later that same day at approximately 8:55 p.m., my wife and I recorded our *Notice of Pendency of Action* (Lis Pendens). A true and correct copy of the recorded *Notice of Pendency of Action* is attached as Exhibit "H".

13. As a result of the Debtor/Seller's numerous breaches of the *August 2020 Purchase Agreement* and all extensions and/or amendments thereto, my wife and I have incurred the following damages:

a) $369,750 of funds deposited into escrow and paid to Luna Construction at the specific request of Debtor/Seller between September 24, 2020 and January 20, 2022;

b) $85,093.15 interest for funds deposited in escrow and paid to Luna Construction at 10% per annum from September 20, 2022 until January 15, 2023, with a daily per diem of $101.30 on and after January 16, 2023;

c) But for the breaches of the Debtor/Seller, incurred additional damages of $1,398.55 for electrical monthly bills paid for the Makena Property from August 2022 until December 2022 at the specific request of the Debtor/Seller's principals;

d) Payment of $4,086 to USAA Insurance Company to insure the Makena Property at the specific request of the Debtor/Seller's principals;

e) But for the breaches of the Debtor/Seller, incurred total legal fees as of December 28, 2022 of $62,722.45, comprised of $22,430.35 for State Court Counsel, Garcia Rainey; $38,505.60 for Polis & Associates' and $1,813.50 for Charles Poche;

f) But for the breaches of the Debtor/Seller, incurred extraordinary storage fees of $18,007.50 due to the Debtor/Seller's breach of *the August 2020 Purchase Agreement* and all amendments thereto;

g) But for the breaches of the Debtor/Seller, incurred additional excess housing costs of $23,406 (in excess of the $3,974 in rent when the Debtor/Seller were contractually obligated to tender possession of the Makena Property to them); and

h) But for the breaches of the Debtor/Seller, incurred $18,034.49 ($15,514.65 for custom made bar stools that only fit the unique countertop for the Makena

Case 8:22-bk-11556-TA    Doc 91    Filed 12/28/22    Entered 12/28/22 21:32:40    Desc
Main Document    Page 17 of 19

Property and $2,519.84 for a LG Tower Washer/Dryer that was purchased for the Makena Property.

Consequently, as a result of the Debtor/Seller's breaches of the *August 2020 Purchase Agreement* and all subsequent amendments thereto, my wife and I have incurred damages no less than $582,000.

14. On or about September 9, 2022, my wife and I through our counsel of record filed the Proof of Claim (Proof of Claim No. 2-1). A true and correct copy of the Proof of Claim is attached hereto as Exhibit "I".

15. On or about October 31, 2022, Buyers Lewis/Akhtanova, through their counsel of record removed their State Court Litigation from the California Superior Court for the County of Riverside to the above-captioned Court. A true and correct copy of the Notice of Removal is attached hereto as Exhibit "J".

I declare under the penalty of perjury of the laws of the United States that all of my factual statements are true and correct.

Executed this 28th day of December, 2022.

                                                                  /s/ Darryl Lewis
                                                                  Darryl Lewis

**OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION**

17

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **POLIS & ASSOCIATES, 19800 MacArthur Boulevard, Suite 1000, Irvine, California 92612-2433**

A true and correct copy of the foregoing document **SECURED CREDITORS AND PRE-PETITION BUYERS DARRYL LEWIS AND SANNA AKHTANOVA'S OPPOSITION TO CHAPTER 11 TRUSTEE'S SALE MOTION RE 5 MAKENA LANE, RANCHO MIRAGE, CA 92270 (ECF No. 81); AND DECLARATION IN SUPPORT OF OPPOSITION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>** Pursuant to controlling General Order(s) and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 28, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**SEE ATTACHED PAGE**

Service information continued on attached page

**2. <u>SERVED BY U.S. MAIL</u>:**
On **December 28, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Theodor C. Albert, US Bankruptcy Court, 411 W. Fourth St., Suite 5085, Santa Ana, CA 92701

Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (<u>state method for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on
, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 28, 2022 | Cristina Allen | /s/ Cristina Allen |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

# PROOF OF SERVICE CONTINUED PAGE

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- **James C Bastian**   jbastian@shulmanbastian.com
- **Arturo Cisneros**   arturo@mclaw.org, CACD_ECF@mclaw.org
- **Arturo Cisneros (TR)**   amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **Rika Kido**   rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **William Malcolm**   bill@mclaw.org, cvalenzuela@mclaw.org
- **W. Derek May**   wdmlaw17@gmail.com, r48266@notify.bestcase.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Thomas J Polis**   tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- **Hamid R Rafatjoo**   hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Lee S Raphael**   ecfcca@ecf.courtdrive.com, cmartin@pralc.com
- **Timothy M Ryan**   tryan@theryanfirm.com, ecf@theryanfirm.com
- **Allan D Sarver**   ADS@asarverlaw.com
- **Summer M Shaw**   ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Nathan F Smith**   nathan@mclaw.org, CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com;cvalenzuela@mclaw.org
- **Diana Torres-Brito**   dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov