1  ALLAN D. SARVER SBN106282
   LAW OFFICES OF ALLAN D. SARVER
2  16000 Ventura Boulevard
   Suite 1000
3  Encino, California 91436

4  Telephone No.: (818) 981-0581
   Facsimile No.: (818) 981-0026
5  E-Mail: ADS@asarverlaw.com

6  Attorney for Creditor
   Richard Walker-IRA
7

8
                    UNITED STATES BANKRUPTCY COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10
                         SANTA ANA DIVISION
11

12

13  In re                           CHAPTER 11

14  STONEBRIDGE VENTURES, LLC.       CASE NO. 8:22-bk-11556-TA

15                     Debtor.       OPPOSITION TO CHAPTER 11
                                     TRUSTEE'S MOTION FOR ORDER (1)
16                                   AUTHORIZING SALE OF REAL PROPERTY
                                     FREE AND CLEAR OF LIENS AND
17                                   INTERESTS PURSUANT TO 11
                                     U.S.C.§363(f); (2) APPROVING
18                                   OVERBID PROCEDURES; (3) APPROVING
                                     BROKER COMPENSATION; (4)
19                                   AUTHORIZING DISTRIBUTION OF SALE
                                     PROCEEDS; DETERMINING THAT THE
20                                   PROPOSED BUYERS ARE "GOOD FAITH
                                     PURCHASERS" UNDER 11 U.S.C.
21                                   §363(m); AND (6) WAIVING 14 DAY
                                     STAY IMPOSED BY FEDERAL RULE OF
22                                   BANKRUPTCY PROCEDURE 6004(h).
                                     DECLARATION IN SUPPORT
23  _____

24                                   Date: February 1, 2023
                                     Time: 10:00 a.m.
25                                   Courtroom: 5B
                                     Place: U.S. Bankruptcy Court
26                                           411 West Fourth Street
                                             Santa Ana, CA. 92501
27

28  Opposition to Motion for Order Authorizing
    Sale of Real Property, etc

1      **COMES NOW** Secured Creditor, Richard W. Walker-IRA ("Walker") in

2  its conditional Opposition to the motion by the Chapter 11 Trustee A.

3  Cisneros ("Trustee") as above captioned, and contends and objects as

4  follows:

5  **I. STATEMENT OF FACTS AND INTRODUCTION:**

6      1.   Debtor filed for relief under chapter 11 on September 9,

7  2022.

8      2. Richard Walker-IRA ("Walker") is the holder of a fractional

9  interest in a deed of trust which encumbers the real property commonly

10  known as 7 McKenna Lane, Rancho Mirage, California 92270 (the

11  "Property").  True and correct copies of the Promissory Note Secured

12  by Deed of Trust and Deed of Trust and Assignment are a part of that

13  certain proof of Claim filed by Walker and included in Claim No. 8

14  (Exhibit "2 thereto), a true and correct copy of which is Exhibit "A"

15  hereto. (See Sarver Declaration).  Judicial Notice of said Proof of

16  Claim is requested pursuant to BR201.

17      3. The Trustee's Motion to Sell Free and Clear of Liens, Claims

18  and Encumbrances acknowledges that Richard W. Walker-IRA holds a

19  beneficial interest in a deed of trust which encumbers the 7 Makena

20  property in the sum of $60,000.00.  (Mtn. @P.4, Lines 12-14).

21      4. The Motion seeks authority to pay certain lienholders,

22  inclusive of the Walker "fractional interest in a deed of trust in the

23  amount of $60,000.00."

24      5. Mr. Walker has no opposition to the sale of the Property so

25  long as he is paid in accordance with the terms of the supporting

26  Promissory Note Secured by said $60,000.00 deed of trust, which would

27  include interest in accordance with the Note's terms, which amount has

28  Opposition to Motion for Order Authorizing
Sale of Real Property, etc              - 2 -

1     yet to be determined, directly from escrow.  A formal demand will be

2     submitted to escrow upon receipt of same.  Interest on the obligation

3     dated August 11, 2021 is at the rate of 10.00 percent per annum

4     through the date of payment of the underlying obligation, plus late

5     charges, costs and attorney fees. Absent full payment, Mr. Walker

6     objects to the Motion.

7     **II.   MEMORANDUM OF POINTS AND AUTHORITIES**

8     **A.   RICHARD WALKER RESPECTFULLY REQUESTS THIS COURT CONDITION ANY SALE**

9     **ON PAYMENT OF ITS SECURED PROMISSORY NOTE IN FULL**

10    11 U.S.C. §363(e)-(f) provides in part:

11       "(e65) Notwithstanding any other provision of this section, at

12    any time, on request of an entity that has an interest in property

13    used, sold, or leased, or proposed to be used, sold, or leased, by the

14    trustee, the court, with or without a hearing, shall prohibit or

15    condition such use, sale, or lease as is necessary to provide adequate

16    protection of such interest. This subsection also applies to property

17    that is subject to any unexpired lease of personal property (to the

18    exclusion of such property being subject to an order to grant relief

19    from the stay under section 362)."

20       "(f) The trustee may sell property under subsection (b) or (c)

21    of this section free and clear of any interest in such property of an

22    entity other than the estate, only if-

23       (1) applicable nonbankruptcy law permits sale of such

24    property free and clear of such interest;

25       (2) such entity consents;

26

27

28 Opposition to Motion for Order Authorizing
    Sale of Real Property, etc        - 3 -

1           (3) such interest is a lien and the price at which such

2    property is to be sold is greater than the aggregate value of all

3    liens on such property;

4           (4) such interest is in bona fide dispute; or

5           (5) such entity could be compelled, in a legal or equitable

6    proceeding, to accept a money satisfaction of such interest.

7    <u>11 U.S.C. Sec. 363</u>

8    **III.   CONCLUSION:**

9        For all of the foregoing reasons, it is respectfully requested

10   that the Trustee's Motion for Order Approving the Sale of Real

11   Property of the Estate Free and Clear of Liens and other interests if

12   granted as prayed for be conditioned upon payment of the Richard

13   Walker obligation, in full.

14

15   Dated: January 18, 2023

16                            ALLAN D. SARVER, ESQ.
                         Attorney for Richard Walker

17

18

19

20

21

22

23

24

25

26

27

28   Opposition to Motion for Order Authorizing
Sale of Real Property, etc       - 4 -

**DECLARATION OF ALLAN D. SARVER**

I, ALLAN D. SARVER declare that:

1. I am an attorney, duly licensed to practice law before this court. I am the attorney for the secured creditors, Dick Walker-IRA.

2. If called upon as a witness, I would testify competently and under oath that the within declaration is true and correct with the exception of those matters stated on information and belief, which I believe to be true and correct.

3. The bankruptcy papers submitted herewith are true and correct copies of those obtained by me from PACER, and are true and correct copies of documents filed by Debtor in the pending chapter 11 proceeding or otherwise downloaded from the PACER system by your Declarant in furtherance of the preparation of this Objection.

4. Attached hereto and incorporated herein by reference as Exhibit "A" are true and correct copies of the attachments to the Walker Proof of Claim, No. 8 (Exhibit 2 thereto) filed by Dick Walker IRA which identifies the interest in the Property which is the subject of the Trustee's Motion to Sell.

5. I declare under penalty of perjury that the within declaration is true and correct and that this declaration was executed in the City of Encino, California, on the 18th day of January, 2023.


ALLAN D. SARVER
Declarant

Opposition to Motion for Order Authorizing
Sale of Real Property, etc                    - 5 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

16000 Ventura Blvd., Suite 1000, Encino, CA. 91436

A true and correct copy of the foregoing document entitled (*specify*): OPPOSITION TO CHAPTER 11  TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTEREST PURSUANT TO 11 U.S.C. §363(f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION OF SALE PROCEEDS; (5) DETERMINING THAT THE PROPOSED  BUYERS ARE "GOOD FAITH PURCHASERS" UNDER 11 U.S.C. §363(m); and (6) WAIVING 14 DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 1/18/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **James C Bastian**   jbastian@shulmanbastian.com
- **Arturo Cisneros**   arturo@mclaw.org, CACD_ECF@mclaw.org
- **Arturo Cisneros (TR)**   amctrustee@mclaw.org,
  acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **Rika Kido**   rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **William Malcolm**   bill@mclaw.org, cvalenzuela@mclaw.org
- **W. Derek May**   wdmlaw17@gmail.com, r48266@notify.bestcase.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Thomas J Polis**   tom@polis-law.com, paralegal@polis-
  law.com;r59042@notify.bestcase.com
- **Hamid R Rafatjoo**   hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Lee S Raphael**   ecfcca@ecf.courtdrive.com, cmartin@pralc.com
- **Timothy M Ryan**   tryan@theryanfirm.com, ecf@theryanfirm.com
- **Allan D Sarver**   ADS@asarverlaw.com
- **Summer M Shaw**   ss@shaw.law,
  shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Nathan F Smith**   nathan@mclaw.org,
  CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com;cvalenzuela@mclaw.org
- **Diana Torres-Brito**   dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 1/18/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)1/18/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/18/2023 | M. Swanston | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

In Re: Stonebridge Ventures LLC
    Chapter 11 Case No. 8:22-bk-11556-TA

Attachment Proof of Service

2. Service Via U.S. Mail
**Debtor**
Stonebridge Ventures LLC
15 Corporate Plaza Drive,
Suite 200
Newport Beach, CA.92660

**Counsel for Debtor**
Summer M. Shaw
Shaw & Hanover PC
42-600 Cook Street, Suite 210
Palm Desert, CA. 92211

Agent for Chapter 11 Trustee
Brian Thompson
Winterstone Real Estate Development
23792 Rockland Blvd Suite 101
Lake Forest, CA. 92630

AB Capital LLC
Attn: Officer, Director or Managing Agent
15 Corporate Plaza, Suite 200
Newport Beach, CA. 92660

United States Trustee
411 W. Fourth Street, Suite 7160
Santa Ana, CA. 92701-4593

Brad and Doreen Bunten
9241 Copenhaver Drive
Potomac, MD 20854

Christine Burrill
156 Wadsworth Avenue
Santa Monica, CA. 90405

Jeffrey McNutt
6311 Sierra Elena Rosa
Irvine, CA. 92603

Koonce Family Enterprises LP
Barbara Holt Advisor
517 E. Calle Laureles
Santa Barbara, CA. 93105



Riverside County Tax Collector
Matt Jennings Treasurer-Tax Collector
4080 Lemon Street 1st Floor
Riverside, CA. 92501

# EXHIBIT "A"

10

**U.S. Bankruptcy Court**

**Central District of California**

Notice of Electronic Claims Filing

The following transaction was received from Sarver, Allan on 1/13/2023 at 2:33 PM PST

File another claim

| | |
|---|---|
| **Case Name:** | Stonebridge Ventures, LLC |
| **Case Number:** | 8:22-bk-11556-TA |
| **Creditor Name:** | Richard Walker |
| | 18124 Wedge Parkway #530 |
| | Reno, NV 89511 |
| **Claim Number:** | 8   Claims Register |

**Amount Claimed:** $244,958.34
**Amount Secured:** $244958.34
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**FiledProofClaimPt1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=1/13/2023] [FileNumber=103579349
-0] [a4efa8b6b5baa997524157bb125256de0ec9d85afb9e58ffbc0d982c406d12044
8a8235d57457b823193a57d9031ba675c045376a90dc3638b0556888803627d]]
**Document description:**Exhibit Exhibit 1
**Original filename:**C:\fakepath\FiledProofClaimPt2.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=1/13/2023] [FileNumber=103579349
-1] [7f42601e0c861ebd00b8b4cb85ad6d8d01dc8896a0b5a2ab6d21ff06972566d2f
697d2b402b7a39c58bb277fde844bad3c156814c3d781484966fab7c6b1895e]]
**Document description:**Exhibit Exhibit 2
**Original filename:**C:\fakepath\FiledProofClaimPt3.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=1/13/2023] [FileNumber=103579349
-2] [bc9578786aabce2fd65345c176ec00112efdb21548ece6ad508613022dfa77a76
568dff57357e29de2f81b9198a340d24077853ee01470e9785126706727ca9d]]
**Document description:**Exhibit Exhibit 4
**Original filename:**C:\fakepath\FiledProofClaimPt4.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=1/13/2023] [FileNumber=103579349
-3] [5befd0a8a3261464b7569b0802b08d4f7df314a0c97a5ef36e9a136cd1d07c3f2
05414cc7f51f30b845364263b56a4cc784c89c3657c91f7cc733bc3cfd29725]]

LIVE DATABASE

# EXHIBIT "2"

DocuSign Envelope ID: A2D0A2B8-B2E5-4E35-9B7E-458E2217FF7E

Loan #CN-7MAKENA-1

# SUMMARY OF COMPANY NOTE TERMS

### (This Summarizes the terms of Your Company Loan to AB Capital, LLC)

Borrower:  AB Capital, LLC, 15 Corporate Plaza, Ste 200, Newport Beach, CA 92660; (800) 976-0999

Interest Only With Balloon Payment: X

Gross Loan Amount: $2,000,000.00

Interest Rate: 10.00% (Per Annum)

Loan Purpose: Fund Collateral Note for Construction of Custom SFR

Term of Loan: 18 months + per diem days from the date of the initial funding to the end of that month

Next Due Date: 10/01/2021          Maturity Date: 03/01/2023

Monthly Payment Amount: $16,666.66   Estimated Balloon Payment:  $2,016,666.66

Prepayment Premium:  6 Months of interest payments from the funding date are guaranteed regardless of the date of payoff.

Maximum Prepayment Premium: $100,000.00

Late Charge Days: 15                    Late Charge Percentage:  Up to 2.50%

Security:  Assignment of Promissory Note and Deed of Trust executed by Stonebridge Ventures, LLC, in favor of AB Capital, LLC, regarding the real property at 7 Makena Lane, Rancho Mirage, CA 92270

Loan Servicer: Del Toro Loan Servicing, Inc., 2300 Boswell Road, Suite 215, Chula Vista, CA 91914; (619) 474-5400

Escrow Officer/Custodian: Escrow Experts, Jennifer Davidson, 24800 Chrisanta Drive, Suite 100, Mission Viejo, CA 92691; (949) 458-3919

*The above terms are just the basic terms of the loan investment.  You need to review all loan documentation to understand all of the terms that conditions the loan investment.*



# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
### INTEREST ONLY BALLOON PAYMENT NOTE

Loan Number: SBV-7MAKENA-1
Property Address: 7 MAKENA LANE, RANCHO MIRAGE, CA 92270

Loan Amount: $2,000,000.00                              Date: August 11, 2021

**FOR VALUE RECEIVED, STONEBRIDGE VENTURES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,** ("Maker"), promises to pay to **SEE ATTACHED LENDER VESTING ADDENDUM**, or its order or assign ("**Holder**"), having a mailing address of C/O DEL TORO LOAN SERVICING INC., PO BOX 211000, CHULA VISTA, CA 91921, or at such other place as Holder may from time to time designate in writing, the principal sum of **TWO MILLION DOLLARS EXACTLY ($2,000,000.00)**, or as much thereof as has been advanced to Maker from time to time pursuant to the terms of that certain Construction Loan Agreement executed by Maker in favor of Holder concurrently herewith (the **"Construction Loan Agreement"**), together with interest from the date hereof on the unpaid principal balance from time to time outstanding as hereafter provided, plus all costs and expenses payable hereunder. Capitalized terms not defined herein shall have the definitions given to them in the Construction Loan Agreement.

1.      Construction Loan Agreement. Each advance of the principal sum hereunder or any portion thereof by Holder to Maker shall be made in accordance with and pursuant to the terms and conditions of the Construction Loan Agreement executed herewith, and which is expressly incorporated herein and made a part of this Note.

2.      Interest. Interest shall accrue as follows:

2.1      Fixed Rate. Interest on the daily average unpaid principal balance of this Note shall accrue at a rate at all times equal to the sum of **TEN PERCENT EXACTLY (10.00%)** per annum.

2.2      Interest Calculation Method. Except as otherwise stated in this Section, all monthly interest payments on this Note shall be calculated based on a 30-day month and 360-day year. (E.g., outstanding principal amount, multiplied by the stated fixed annual interest rate, and divided by twelve). However, should any per diem interest calculations be required, interest shall be calculated based on a 365-day year and the actual number of days elapsed. (E.g., outstanding principal amount, multiplied by the stated fixed annual interest rate, divided by 365, multiplied by the actual number of days the per diem interest is charged).

2.2      Interest on Interest. If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

3.      Payments of Principal and Interest. Maturity Date.

1

3.1    Per Diem Interest. Interest from the date of funding through the end of the month shall be due and payable to Holder and paid through escrow at closing.

3.2    Interest Advance. Intentionally deleted.

3.3    Monthly Payments. Beginning on 10/01/2021 through 02/01/2023, interest-only payments of 16,666.66 by Maker shall be due and payable, in arrears, MONTHLY ON THE FIRST DAY OF EACH MONTH. Such payments shall be made to Del Toro Loan Servicing, Inc., PO Box 211000, Chula Vista, CA 91921, or at such other place as Holder may from time to time designate in writing.

3.4    Balloon Payment. Maker shall pay to Holder a balloon payment estimated to be $2,016,666.66 on the Maturity Date, 03/01/2023, which is comprised of the unpaid principal balance in the amount of $2,000,000.00 and the unpaid interest only payment in the amount of 16,666.66 for the period from 02/01/2023 through 02/28/2023. This balloon payment is more than double the amount of the regular payments. Such payment shall be made to Del Toro Loan Servicing, Inc., PO Box 211000, Chula Vista, CA 91921, or at such other place as Holder may from time to time designate in writing.

3.5    Order of Application of Payments. Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Holder or payable to Holder and interest under any provision of this Note or Deed of Trust, in such order as Holder, in its sole and absolute discretion, elects, (b) interest payable under this Note, and (c) principal under the Note.

4.    Prepayments.

4.1    Prepayment in Whole. Maker may prepay this Note in full or in part on any Interest Payment Date upon not less than thirty (30) days advance written notice to Holder, however, if Maker prepays this Note before SIX months after the closing date, Maker will pay a Prepayment Premium equal to the balance of the advance interest which would be due and payable to Holder through SIX months after the closing date ("Prepayment Premium"). After the Prepayment Premium period has elapsed, Maker may prepay this Note in whole or in part at any time without paying a premium. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid. Maker acknowledges and agrees that the calculation of the Prepayment Premium is a fair and reasonable amount to compensate Holder for the loss that Holder may incur as a result of prepayment of the Note.

4.2    Prepayment Upon Acceleration. Maker acknowledges and agrees that if the Maturity Date is accelerated by reason of an Event of Default, including without limitation, any default in the payment of sums due under this Note, prior to the date on which the full amount of the balance of principal and interest shall be due, or by reason of sale, conveyance, further encumbrance or other event specified in the Construction Loan Agreement, Deed of Trust or any of the other Loan Documents as giving rise to a right in favor of Holder to accelerate the maturity of this Note (which acceleration by reason of such Event of Default, sale, conveyance, further encumbrance or other event shall be at Holder's sole discretion), such acceleration shall constitute a prepayment hereunder and the Prepayment Penalty shall be due and payable. Maker hereby expressly waives any right it may have under California Civil Code § 2954.10 to prepay this Note in whole or in part, without penalty,

2



upon acceleration of the Maturity Date of this Note.

Maker's Initials: _____

5.    Security. This Note and all amounts due hereunder are secured by, among other things, a Construction Deed of Trust, Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith executed by Maker in favor of Holder (the "**Deed of Trust**") cross encumbering certain real and personal property commonly known as **7 MAKENA LANE, RANCHO MIRAGE, CA 92270, APN 682-031-007** (the "**Property**") located in the County of Riverside, State of California, and by any other instruments and agreements executed in connection herewith.

6.    Default. Maker's failure to pay any installment or other sum due under this Note when due and payable, an event of default under, and as defined in, the Construction Loan Agreement, or any breach of any other promise or obligation provided for in the Loan Documents, this Note or in any other instrument securing the indebtedness evidenced by the Note (an "**Event of Default**"), shall constitute a default under the terms hereof, the Deed of Trust, and the Construction Loan Agreement. Upon the occurrence of an Event of Default, or at any time thereafter, the entire principal balance of this Note, irrespective of the Maturity Date specified herein, together with accrued and unpaid interest thereon and other charges payable hereunder, and all other sums secured by the Deed of Trust, shall, at the election of Holder, and without notice of such election, become immediately due and payable.

7.    Default Rate. Notwithstanding any other provision in this Note, upon the occurrence of an Event of Default, and at the election of Holder and without notice of such election, the entire unpaid principal sum, together with all costs and expenses payable hereunder, shall bear interest at the lesser of (a) the highest annual rate which may lawfully be charged and collected under applicable law or (b) 3.00% percent above the then applicable interest rate hereunder, computed from the date on which said amount was due and payable until paid (such higher rate to be called the "**Default Rate**"). Additionally, interest at the Default Rate shall continue to accrue on any unpaid amounts, if any, from and after the date of any foreclosure sale until actual payment of said unpaid amounts is made to Holder. The Default Rate constitutes a fair approximation of the loss to Holder of the use of the amount due, the frustration to Holder in meetings its other financial commitments, and the additional costs incurred and absorbed by Holder to address the Event of Default. The Default Rate, when and if applicable, shall be due and payable immediately to Holder without notice or demand.

Maker's Initials: _____

8.    Costs of Collection. Upon the occurrence of an Event of Default, all costs of collection, including, but not limited to, reasonable attorneys' fees (whether or not suit is required, on appeal, and in connection with any bankruptcy case or proceeding and in connection with enforcing any judgment) and all expenses incurred in connection with protection of, or realization on, the security for this Note, may be added to the principal due hereunder, and shall accrue interest at the Default Rate.

9.    Late Charge. Maker recognizes that in addition to the Default Rate, default by it in making the payments of principal or interest hereunder when due will result in Holder incurring additional expense in servicing and administering the loan evidenced hereby. Maker agrees that, if for any reason it fails to pay any amount due under this Note when due, Holder shall be entitled to

3



damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages. Maker therefore agrees that, if any installment of principal or interest payable hereunder is not paid within fifteen (15) days following the due date thereof, then, in addition to all other rights set forth herein, Holder shall have the right to collect a late charge up to five percent (5.00%) of the delinquent payment, which late charge is a reasonable estimate of Holder's damages resulting from such delinquency. Such late charge shall be immediately due and payable without notice or demand.

Maker's Initials:

10.    Non-Waiver by Holder. Holder shall at all times have the right to proceed against any portion of the security for this Note in such order and in such manner as Holder may consider appropriate, without waiving any rights with respect to any of the security. Any delay or omission on the part of Holder in exercising any right hereunder, under the Deed of Trust, the Construction Loan Agreement or the other Loan Documents, or under any deed of trust, mortgage, loan, security pledge or assignment agreement, guaranty or any other document or agreement (collectively, the **"Collateral Agreements"**) shall not operate as a waiver of such right, or of any other right. No single or partial exercise of any right or remedy hereunder or under the Collateral Agreements or any other document or agreement shall preclude other or further exercises thereof, or the exercise of any other right or remedy. The acceptance of payment of any sum payable hereunder, or part thereof, after the due date of such payment, shall not be a waiver of Holder's right to either require prompt payment when due of all other sums payable hereunder or to declare an Event of Default for failure to make prompt or complete payment.

11.    Waivers. Maker waives: (a) all applicable exemption rights, presentment for payment, demand for payment, notice of demand, notice of nonpayment or dishonor, protest, notice of protest, notice of intent to accelerate and notice of acceleration of any amount due under this Note and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note; and (b) the right to interpose any set-off or counterclaim of any nature or description. Maker agrees that its liability shall be unconditional, without regard to the liability of any other party, and shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker consents to any and all extensions of time, renewals, waivers or modifications that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of the collateral therefor, or any part thereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties may become parties to this Note without notice to them or affecting their liability under this Note.

12.    Arbitration.

12.1    Mutual Agreement to Arbitrate. Maker and Holder agree that any and all Disputes involving this Note, the Deed of Trust, Construction Loan Agreement, or other Loan Documents being executed herewith, or the transactions contemplated thereby, including, but not limited to, claims arising from the making, arranging, origination, documentation, disclosures, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Note, shall be resolved exclusively by binding arbitration under the terms of this arbitration agreement. This arbitration agreement shall also be binding on the agents, spouses, executors, administrators, successors and assigns of the parties.

4

12.2     Dispute Defined.  "Dispute" shall include, but not be limited, to: (1) Any claimed wrongdoing including, but not limited to, misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices; and, (2) Any claimed violation of local, state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement laws, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practice acts.  "Dispute" shall not include: (1) Actions by the Holder of the Note and Deed of Trust to judicially or non-judicially foreclose deed of trust (or mortgage) securing the Loan, to enjoin waste, to collect rents, interpleader actions or actions for a receiver, to recover possession, ejectment or relief from the automatic stay in bankruptcy, or to obtain relief through governmental agencies;  and  (2) Actions for provisional remedies such as set forth a temporary restraining order or preliminary injunction or for a permanent injunction based upon an arbitration award.

12.3     Small Claims Exception.  No party to this agreement shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction.

12.4     Arbitration of Disputes.  Binding Arbitration shall be conducted under the rules of American Arbitration Association ("AAA").  Arbitration shall be filed at the office of the AAA nearest to the real property securing the Loan, and be conducted before a single Arbitrator.    The Arbitrator's award shall be a reasoned decision in accordance with applicable law.  The award shall be in writing and provide a concise statement of the essential findings and conclusions on which the award is based.  The remedy awarded by the Arbitrator shall not be different from that which could be awarded by a court.   In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute, or other matter(s) in question would be barred by the applicable statute of limitations, and the Arbitrator shall reject any claim that is not based upon a timely filed demand. Discovery shall be conducted pursuant to the provisions of Section 1283.05 of the California Code of Civil Procedure.  Judgment on the award may be entered in any court of competent jurisdiction.

12.5     Fees and Costs.  The costs of the Arbitrator shall be split equally by the parties, but shall be a recoverable cost for the party prevailing in arbitration.  Each party is otherwise to bear its own attorneys' fees and costs in connection with the arbitration, however, such fees and costs shall also be recoverable by the prevailing party in arbitration.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT
DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF
DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

Maker's Initials:

13.    Joint and Several. If this Note is now, or hereinafter shall be, signed by more than one
party or person, it shall be the joint and several obligation of such parties or persons (including,
without limitation, any makers, partners, endorsers, guarantors and sureties), and shall be binding
upon such parties and upon their respective successors and assigns.

14.    Successors and Assigns. Whenever reference is made herein to "Maker" or "Holder,"
such reference shall be deemed to refer to and include the legal representatives, successors and
assigns, the same as if in each case expressed, it being expressly agreed that the rights and obligations
of all parties named herein or liable hereunder shall inure to the benefit of and be binding upon such
parties and their respective legal representatives, successors and assigns, provided that this shall not
be construed as permitting any assignment or transfer by Maker not otherwise specifically permitted
in this Note or in the other Loan Documents.

15.    Usury. It is the intention of Maker and Holder to conform strictly to the Interest Law,
as defined below, applicable to this loan transaction. Accordingly, it is agreed that notwithstanding
any provision to the contrary in this Note, or in any of the documents securing payment hereof or
otherwise relating hereto, the aggregate of all interest and any other charges or consideration
constituting interest under applicable Interest Law that is taken, reserved, contracted for, charged or
received under this Note, or under any of the other aforesaid agreements or otherwise in connection
with this loan transaction, shall under no circumstances exceed the maximum amount of interest
allowed by the Interest Law applicable to this loan transaction. If any excess of interest in such
respect is provided for in this Note, or in any of the documents securing payment hereof or otherwise
relating hereto, then, in such event: (a) the provisions of this paragraph 15 shall govern and control;
(b) neither Maker nor Maker's heirs, legal representatives, successors or assigns shall be obligated to
pay the amount of such interest to the extent that it is in excess of the maximum amount of interest
allowed by the Interest Law applicable to this loan transaction; (c) any excess shall be deemed
canceled automatically and, if already paid, shall be credited on this Note by Holder, or, if this Note
shall have been paid in full, shall be refunded to Maker; and (d) the effective rate of interest shall be
automatically subject to reduction to the Maximum Legal Rate of Interest (as defined below), allowed
under such Interest Law, as now or hereafter construed by courts of appropriate jurisdiction. To the
extent permitted by the Interest Law applicable to this loan transaction, all sums paid or agreed to be
paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall be
amortized, prorated, allocated and spread throughout the full term of this Note. For purposes of this
Note, **"Interest Law"** shall mean any present or future law of the State of California, the United
States of America or any other jurisdiction which has application to the interest and other charges
under this Note. The **"Maximum Legal Rate of Interest"** shall mean the maximum rate of interest
that Holder may from time to time charge and collect from Maker, and under which Maker would
have no claim or defense of usury under the Interest Law. One specific current Interest Law is
California Civil Code Section 1916.1 which provides, in relevant part, that: "The restrictions upon
rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to
any loan or forbearance made or arranged by any person licensed as a real estate broker by the State
of California, and secured, directly or collaterally, in whole or in part by liens on real property."

6

16.     Costs of Enforcement.  Maker agrees to pay upon demand all reasonable costs and expenses (whether or not suit is required and on appeal and in any bankruptcy case or proceeding), incurred by Holder to enforce the terms hereof, including, without limitation, all reasonable attorneys' fees, costs and expenses incurred in connection with: (a) the collection or enforcement of this Note; (b) representing Holder in any bankruptcy, reorganization, receivership, or other proceeding affecting Holder's rights or involving a claim under this Note; (c) protecting the lien of the Deed of Trust; and (d) in any appeals or enforcement actions related to the foregoing.

17.     Modifications.  Except as otherwise expressly specified herein, this Note may not be changed, modified, amended or terminated except in writing and executed by both Maker and Holder.

18.     Time of Essence.  Time is of the essence with respect to each and every provision hereof.

19.     Governing Law.  This Note shall be construed and governed by the laws of the State of California for all purposes.

20.     Severability.  If any term or provision of this Note or its application to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this instrument, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected and it shall be valid and enforceable to the fullest extent permitted by law.

21.     Construction.  Headings at the beginning of each paragraph are solely for the convenience of Maker and Holder and are not a part of this Note. Any reference to a paragraph in this Note shall include all subparagraphs thereof. This Note shall not be strictly construed in favor of or against any party for any reason.

22.     Enforceable Obligation.  Maker represents and warrants that this Note constitutes a binding obligation of Maker, enforceable in accordance with its terms.

23.     Assignment.  Maker may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Holder's prior written consent in each instance. Holder may assign or transfer this Note and/or designate any other person or entity as the holder thereof, in its sole discretion and without notice to or the consent of Maker.

24.     Cooperation.  Maker acknowledges that Holder and its successors and assigns may (a) sell, transfer, or assign the Deed of Trust, this Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by the Deed of Trust to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Deed of Trust, this Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Loan or interest therein to investors in a rated or unrated public offering or private placement. ((a)-(d) of this paragraph 24 shall hereinafter be referred to as "Secondary Market Transactions.")  Maker shall, at Holder's expense, cooperate in good faith with Holder in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a Rating Agency and/or an institutional purchaser, participant, or investor) including, without limitation, all

7



structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the Rating Agency or such other purchasers, participants or investors, and addressing such matters as the Rating Agency or such other purchasers, participants, or investors may require; provided, however, that the Maker shall not be required to modify any documents evidencing or securing the Loan that would modify (i) the interest rate payable under this Note, (ii) the state maturity of this Note, (iii) the amortization of principal of this Note, or (iv) any other material terms or covenants of the Loan. Maker shall provide such information and documents relating to Maker and the Property as Holder or the Rating Agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Holder shall have the right to provide to the Rating Agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Maker and the Property. Maker acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

25.    Recourse Obligations.  Maker acknowledges that the obligations of Maker to Holder under or in connection with this Promissory Note are **FULL RECOURSE** to Maker. Without limiting the foregoing Maker shall also be fully and personally liable and subject to legal action to the extent of any loss, damage (including damage resulting from the diminution in value of the Property), cost, expense, liability, damage, claim or other obligation incurred by Holder (including attorneys' fees and costs reasonably incurred) arising out of or in connection with all matters concerning this transaction in addition to the following (together with the obligations of Maker to Holder under or in connection with this Promissory Note, collectively, the "**Recourse Obligations**"):

25.1    fraud or material misrepresentation or failure to disclose a material fact by Maker, any of Maker's officers, agents, attorneys, principals, managing members or employees, or Guarantor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Maker's obligations under the Loan Documents;

25.2    the gross negligence or willful misconduct by or on behalf of Maker or Guarantor or any of their respective agents or representatives in connection with the Loan;

25.3    physical waste of the Property;

25.4    the breach of any representation, warranty, covenant or indemnification provision in the Loan Documents concerning environmental laws, hazardous substances or asbestos;

25.5    the misapplication or conversion by Maker of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (iii) any Rents following an Event of Default, or (iv) any Rents paid more than one month in advance; AND

25.6    any and all tenant security deposits held by Maker not being properly applied, returned to tenants when due or delivered to Holder, any receiver or any person or entity purchasing the Property at a foreclosure sale or other transfer of the Property, or upon the taking of possession of the Property by Holder, such receiver or other person or entity as provided in the Loan Documents.

26.    Due on Sale.  Except as provided in this paragraph 26, in the event of (i) any sale, conveyance, transfer, lease, pledge or further encumbrance or disposition of the Property, or any

8

interest in or any part of the Property, (ii) any sale, conveyance, or transfer of any interest in Maker, or (iii) any further assignment of rents from or leases of the Property, whether voluntary or involuntary, or otherwise, without the prior written consent of Holder then, at Holder's option, Holder may declare the outstanding principal amount of the Note and the accrued but unpaid interest thereon, and all other sums secured hereby, to be due and payable immediately, and upon such declaration, such principal and interest and other sums shall immediately become and be due and payable without demand or notice.

Notwithstanding anything to the contrary in this Note or any of the Loan Documents, Holder shall not be deemed to have waived any right which Holder may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Indebtedness secured by the Deed of Trust or to require that all collateral shall continue to secure all of the Indebtedness owing to Holder in accordance with the Loan Documents.

IN WITNESS WHEREOF, Maker, intending to be legally bound hereby, has caused this Note to be executed and delivered on the date first above written.

MAKER:

STONEBRIDGE VENTURES, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY

CAL-PAC DISTRESSED REAL ESTATE FUND I,
LLC, ITS MANAGER

By: _____
CALPAC MANAGEMENT, INC., ITS MANAGER,
JOSHUA PUKINI, VICE PRESIDENT

DO NOT DESTROY THIS NOTE: When paid, this Note, with Deed of Trust securing same, must be surrendered to the Trustee for cancellation before reconveyance or Trustee's Deed.

9



LENDER VESTING ADDENDUM

Loan #: SBV-7MAKENA-1

Property Address: 7 Makena Lane, Rancho Mirage, CA 92270

APN: 682-031-007

---

AB Capital, LLC to retain and undivided 750,000/2,000,000 interest;

Brad and Doreen Bunten as to an undivided 50,000/2,000,000 interest;

Christine R. Burrill, Trustee of the Burrill Trust UTD July 1, 2014 as to an undivided
100,000/2,000,000 interest

Hold On To Your Music, a 501(c)(3) nonprofit organization as to an undivided
150,000/2,000,000 interest;

Jaclyn Maduff, Trustee of the Jaclyn Maduff Family Trust UTD January 31, 1991 as to an
undivided 100,000/2,000,000 interest;

Jeffrey McNutt and Felicia Peng as to an undivided 100,000/2,000,000 interest;

Koonce Family Enterprises, LP as to an undivided 200,000/2,000,000 interest;

Mainstar Trust Custodian FBO Richard W. Walker IRA as to an undivided 60,000/2,000,000
interest;

65/23

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Stonebridge Ventures, LLC
15 Corporate Plaza #200
Newport Beach, CA 92660
Attention: Post Closing

**CONSTRUCTION DEED OF TRUST,**
**ABSOLUTE ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

THIS CONSTRUCTION DEED OF TRUST, ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this **"Deed of Trust"**) is made as of August 11, 2021 by and between STONEBRIDGE VENTURES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY (**"Trustor"**), whose address is 15 CORPORATE PLAZA DRIVE, SUITE 200, NEWPORT BEACH, CA 92660, FIRST AMERICAN TITLE COMPANY (**"Trustee"**), having an address at 4 FIRST AMERICAN WAY, SANTA ANA, CA 92707 for the benefit of SEE ATTACHED LENDER VESTING ADDENDUM (**"Beneficiary"**), having an address at C/O DEL TORO LOAN SERVICING, INC., PO BOX 211000, CHULA VISTA, CA 91921.

Beneficiary is making a construction loan to Trustor in the maximum principal amount of TWO MILLION DOLLARS EXACTLY ($2,000,000.00) (the **"Loan"**). The Loan is to be disbursed pursuant to the provisions of a Construction Loan Agreement of even date herewith by and between Trustor and Beneficiary (the **"Construction Loan Agreement"**). Capitalized terms not defined herein shall have the definitions given to them in the Construction Loan Agreement. THIS IS A CONSTRUCTION DEED OF TRUST FOR THE PURPOSE OF CALIFORNIA CIVIL CODE SECTION 8034 AND 8100, ET. SEQ.

TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, IN TRUST, WITH POWER OF SALE, AND RIGHT TO ENTRY AND POSSESSION, IN:

All that property now or hereafter acquired in the City of Rancho Mirage, County of Riverside, State of California, with the address of 7 MAKENA LANE, RANCHO MIRAGE, CA 92270, APN 682-031-007, described in the attached Exhibit A (the **"Property"**);

TOGETHER WITH, and including, without limitation:

A.     All buildings and improvements now or hereafter erected or placed on the Property; all Trustor's estate, right, title and interest in and to any buildings and improvements; all of Trustor's now owned or hereafter acquired right, title and interest in and to the fee title to the Property; all easements, rights-of-way, passages, franchises, water rights, water courses, riparian rights, appurtenances, tenements, hereditaments and all other rights, liberties and privileges now or hereafter belonging to, or in any way appertaining, or in any way being a means of access, to the Property, including, without limitation, (i) homestead or any other claim at law or in equity, and (ii) any after

1

acquired title, franchise, license, right, interest or privilege and the reversion(s) and remainder(s) thereof.

B.      All income, rents, issues, profits, revenues, royalties, proceeds, room rentals, concession revenues, license revenues, credits, deposits and options arising out of, under or relating to the use and operation of the Property, and all leases, subleases, subtenancies, occupancy agreements, licenses, concessions or other agreements affecting the Property, including, without limitation, the right, power and authority given to and conferred upon Trustor under any assignment of leases to collect and apply such income, rents, issues, profits and proceeds; SUBJECT, HOWEVER, to the absolute assignment of leases and rents in favor of Beneficiary set forth in paragraph 11 herein;

C.      All general intangibles arising from, used or held in connection with, or relating to the Property or the ownership, use, occupancy, enjoyment, operation, management, development or improvement thereof, including, without limitation, all governmental permits relating to construction, all subdivision maps and applications therefor, all subdivision public reports and applications therefor, all disposition and development agreements or right and applications therefor, all disposition and development agreements or right and applications therefor, all architectural and engineering drawings, plans and specifications, soil tests, feasibility studies, engineering reports, environmental, building and other permits, certificates of occupancy, construction, management and other contracts, franchises, licenses and all names under or by which the Property or any present or future improvements on the Property may at any time be operated or known, and all rights to carry on business under any such names, or any variant thereof, and all trademarks and goodwill in any way relating to the Property;

D.      All right, title and interest of Trustor in and to the beds of the ways, roads, streets, avenues and alleys adjoining the Property, including, without limitation, any after-acquired title or reversionary interest;

E.      All deposits made with or other security given to utility companies or governmental branches or agencies by or on behalf of Trustor with respect to the Property and all advance payments of insurance premiums made by or on behalf of Trustor;

F.      All Trustor's right, title and interest in and to all gas, oil, water and mineral rights now or hereafter derived from, appurtenant to, or pertaining to the Property (and any and all shares of stock evidencing the same and profits relating thereto) and all air rights and development rights or credits relating to the Property;

G.      All causes of action, claims and proceeds relating to or arising on account of any damage to or condemnation or other taking of the Property or any improvements thereon or any part thereof, or for conveyance in lieu of condemnation, including, without limitation, insurance proceeds or condemnation or public improvement proceeding awards or compensation which Trustor now has or may hereafter acquire with respect to the Property or any improvements now or hereafter erected or placed thereon or any part thereof;

H.      All Collateral (as defined in paragraph 21 hereof); and

I.      All proceeds (including claims or demands thereto or therefor) of any of the foregoing, including, without limitation, any warranty or service contract relating to said collateral, proceeds of

2

67/25

all present and future fire, hazard, or casualty insurance policies and all condemnation awards or payments in lieu thereof made by any public body, or decreed by any court or negotiated with any governmental agency for a taking or for degradation of value in any condemnation or eminent domain proceedings, and all causes of action and the proceeds thereof for any damage or injury to the Property, or any part thereof, including, but not limited to, causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact.

All of the foregoing, whether now owned or hereafter acquired, shall be deemed to be and shall remain a part of the Property encumbered by this Deed of Trust, and all of the foregoing, together with the Property, are hereinafter referred to collectively as the **"Premises."**

TO HAVE AND TO HOLD the Premises unto Trustee, its successors and assigns.

FOR THE PURPOSE OF SECURING, in such order of priority as Beneficiary, in its absolute discretion, may determine (collectively the **"Indebtedness"**):

A.     Payment of an indebtedness in the maximum principal sum of TWO MILLION DOLLARS EXACTLY ($2,000,000.00) evidenced by a Secured Promissory Note of even date herewith (the **"Note"**) executed by Trustor and payable to Beneficiary or order, and any and all modifications, amendments, extensions, renewals or replacements thereof (whether evidenced by the Note or otherwise); together with the payment of interest, extension and other fees, late charges, attorneys' fees and all other sums (with interest as therein provided) according to the terms of the Note, and any and all modifications, extensions, renewals or replacements thereof; and

B.     Payment of any other sums, with interest as herein provided, becoming due or payable under the provisions of this Deed of Trust to Trustee or Beneficiary including, without limitation, all money expended by Beneficiary pursuant to the terms hereof or the Construction Loan Agreement, or to preserve any rights or remedies of Beneficiary hereunder or under the Construction Loan Agreement, or to protect or preserve the Premises or any part thereof; and

C.     Due, prompt and complete payment, observance, performance and discharge of each and every condition, obligation, covenant and agreement contained in this Deed of Trust, the Note, the Construction Loan Agreement, and in any document or instrument supplementing, modifying, amending or replacing same, or otherwise evidencing, securing or pertaining to the indebtedness and obligations evidenced thereby (collectively, the **"Loan Documents"**); provided, however, this Deed of Trust is not intended to, and shall not be deemed or construed as, securing that certain unsecured Environmental Indemnity of even date herewith executed by Trustor in favor of Beneficiary; and

D.     Payment of such additional sums (with interest thereon) as may hereafter be borrowed from Beneficiary, or its successors or assigns, by Trustor or the then record owner of the Property and evidenced by one or more promissory notes, security agreements or other documents, and discharge and performance of such other obligations and guaranties of Trustor or the then record owner, which documents or obligations by their terms are secured by this Deed of Trust, and all modifications, amendments, extensions and renewals thereof.

TO PROTECT AND MAINTAIN THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

3



1.    Payment Of Indebtedness.    Trustor shall promptly pay when due, whether by acceleration or otherwise, the Indebtedness.

2.    General Representations, Covenants And Warranties.    Trustor represents, covenants and warrants that:

2.1    Fee Simple Interest.    Trustor is seized of an indefeasible fee simple estate in and to the Property and has good, absolute, and marketable title therein, and has good right, full power and lawful authority to mortgage and pledge the same as provided herein, and Beneficiary may, following an Event of Default (as defined in the Construction Loan Agreement), peaceably and quietly enter upon, hold, occupy and enjoy the Premises in accordance with the terms hereof;

2.2    No Liens.    To Trustor's best knowledge, the Premises are free and clear of all liens, security interests, charges, encumbrances and encroachments whatsoever except those described on the Title Report being obtained in connection with this loan;

2.3    Priority.    Trustor will maintain and preserve the lien and priority of this Deed of Trust until the Indebtedness, no matter how evidenced, and other sums secured hereby, have been fully paid and performed;

2.4    Solvency.    Trustor and Guarantor have, and subsequent to the execution hereof will have, capital sufficient to conduct their business; are solvent and able to meet their debts as they mature; the fair market value of their assets exceeds their liabilities; no bankruptcy or insolvency proceedings are pending or contemplated by or against Trustor or Guarantor; and Trustor and Guarantor will not be rendered insolvent as a result of incurring the Indebtedness or the obligations and indebtedness described in any guaranty;

2.5    Accuracy of Representations.    To Trustor's best knowledge, all reports, statements and other data furnished by Trustor and Guarantor to Beneficiary in connection with the Indebtedness are true, correct and complete in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading;

2.6    Enforceable Documents.    This Deed of Trust, the Note, the Construction Loan Agreement and all other documents and instruments evidencing or securing the Indebtedness or otherwise executed in connection therewith (including, without limitation, all guaranties) are valid and binding obligations enforceable in accordance with their respective terms, subject to applicable law, and the execution and delivery thereof do not contravene any contract or agreement to which Trustor or Guarantor is a party or by which Trustor or Guarantor or any of their respective properties may be bound and do not contravene any law, order, decree, rule or regulation to which Trustor or Guarantor is subject.

2.7    No Pending Actions.    There are no actions, suits or proceedings pending or threatened against or affecting Trustor, Guarantor or the Premises;

2.8    Payment of Costs.    All costs arising from construction of the Improvements (as defined in the Construction Loan Agreement) and the purchase of all equipment located on the Property have been paid or will be paid as and when due subject to Trustor's right to in good faith contest same to the extent provided in the Construction Loan Agreement;

4

2.9    Access and Utilities. The Property has frontage on, and direct access for ingress and egress to, the street(s) contiguous thereto, and electric, gas, sewer and water facilities and any other necessary utilities are, and at all times hereafter shall be, available in sufficient capacity to service the Property satisfactorily, and any easements necessary to the furnishing of such utility service by Trustor have been obtained and duly recorded or will be obtained and duly recorded prior to the completion of the construction of the improvements on the Property as contemplated in the Construction Loan Agreement;

2.10    No Default. Neither Trustor nor Guarantor is in material default under the terms of any instrument evidencing or securing any indebtedness of Trustor or Guarantor, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, passage of time, or both;

2.11    Accounts Current. All payments, accounts and other obligations of Trustor of every nature whatsoever with respect to or relating to the Premises are current and are not in default, and there has occurred no event which would, if uncured or uncorrected, constitute a default with respect thereto with the giving of notice, passage of time, or both;

2.12    Regulatory Compliance. The Improvements as and when constructed and the use and occupancy thereof will comply with all applicable federal, state and local laws, ordinances, rules, codes, regulations and restrictions including, without limitation, building, zoning, platting, land use and environmental laws, ordinances and regulations, and all necessary governmental permits and approvals with respect to the use and occupancy of the Property have been obtained (or will be obtained as and when improvements are constructed), including, without limitation, a certificate of occupancy (or, if the jurisdiction in which the Property is located does not regularly issue certificates of occupancy, the functional equivalent thereof).

2.13    Consent Required. Without the prior written consent of Beneficiary, Trustor will not seek, make or consent to any change in the zoning or conditions of use of the Property. Trustor will comply with and make all payments required under the provisions of any covenants, conditions or restrictions affecting the Property, including, but not limited to, those contained in any declaration and constituent documents of any condominium, cooperative or planned development project on the Property. Trustor will comply with all existing and future requirements of all governmental authorities having jurisdiction over the Property;

2.14    Financial Statements. Trustor shall furnish within ten (10) days after Beneficiary's request, a duly acknowledged written statement setting forth all amounts due on the Indebtedness and stating whether any offsets or defenses exist, and containing such other matters as Beneficiary may reasonably require;

2.15    Books and Records. Trustor will keep adequate books and records of account pertaining to the Premises and its own financial affairs sufficient to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles. Beneficiary shall have the right to examine, copy and audit Trustor's records and books of account at Trustor's expense at all reasonable times. Trustor shall deliver to Beneficiary, upon request, financial statements and profit-and-loss statements for Trustor and the Premises prepared in accordance with generally accepted accounting principles consistently applied and such other information reasonably requested by Beneficiary, all as further set forth in the Loan Agreement;

5

2.16    Hazardous Materials.  With respect to Hazardous Materials (as hereinafter defined):

2.16.1 Regulatory Definition.    For purposes of this Deed of Trust, **"Hazardous Materials"** means and includes any hazardous, toxic or dangerous waste, substance or material defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601, et seq.); the Hazardous Materials Transportation Act (49 U.S.C. § 1801, et seq.); the Resource Conservation and Recovery Act (42 U.S.C. § 6901, et seq.); the Toxic Substance Control Act; the Clean Air Act; the Federal Water Pollution Control Act; the Hazardous Substance Control Act; the Hazardous Substance Act; the Occupational Health and Safety Act; the Porter-Cologne Water Control Act; the Waste Management Act of 1980; the Toxic Pit Cleanup Act; the Underground Tank Act of 1984; any so-called "Super-Fund" or "Super-Lien" law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material, as of now or at any time hereafter in effect (collectively, the **"Hazardous Materials Laws"**).    The term "Hazardous Materials" shall include without limitation (i) any chemical, material or substance defined as or included in the definition of "hazardous wastes," "hazardous materials," "hazardous substance," "extremely hazardous substance," "pollutants," "restricted hazardous waste," or "toxic substances" or words of similar import under any applicable Hazardous Materials Laws, (ii) any oil, petroleum, or petroleum derived substance, any drilling fluids, produced waters and other wastes or products associated with the exploration, development or production of crude oil, any wastes or products associated with mining or extraction of any material, any flammable substances or explosives, any radioactive materials, or any other materials which cause any Premises to be in violation of any applicable environmental laws and (iii) asbestos in any form which is friable, urea formaldehyde foam insulation, electrical equipment that contains any oil or dielectric fluid containing levels of polychlorinated biphenyls in excess of fifty parts per million, mold or other multicellular fungi, or radon gas;

2.16.2 No Hazardous Materials.  Trustor represents and warrants that, except as disclosed to Beneficiary in writing, to Trustor's actual knowledge, no Hazardous Materials exist on, under about or within the Premises, any property immediately adjacent to the Premises, or any part thereof, and the Premises are not in violation of the Hazardous Materials Laws or any other federal, state or local law, ordinance or regulation relating to Hazardous Materials or industrial hygiene;

2.16.3 Indemnification.  Trustor shall be solely responsible for, and agrees to indemnify, defend and hold Beneficiary and its directors, officers, trustees, advisors, administrators, employees, agents, attorneys, successors and assigns, free and harmless of, from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever incurred or suffered by, or asserted against, or paid by (including without limitation reasonable attorneys' fees, costs and expenses, including on appeal) Beneficiary for, or with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release on, in, under, around or from the Premises of any Hazardous Materials (including without limitation any losses, liabilities, damages, injuries, costs, expenses or claims asserted or arising under any Hazardous Materials Laws), regardless of whether caused by, or within the control of, Trustor. This indemnity shall include, without limitation: (A) all foreseeable and unforeseeable consequential damages including third-party claims; (B) the costs of any required or necessary repair, cleanup or detoxification of the Premises, including the soil and

6

ground water thereof, and the preparation and implementation of any closure, remedial or other required plans; (C) damage to any natural resources; and (D) all costs and expenses incurred by Beneficiary in connection with the foregoing, including but not limited to, reasonable attorneys' and consultants' fees. Any costs, expenses or liability incurred by Beneficiary for which Trustor is responsible or for which Trustor has indemnified Beneficiary under this Deed of Trust shall be added to the Indebtedness and earn interest at the Default Rate (as defined in the Note) until paid in full;

2.16.4 Tenants. Trustor shall, and Trustor shall cause all tenants, employees, agents, contractors and subcontractors of Trustor and any other persons present on or occupying the Premises, to keep and maintain at its sole cost and expense the Premises, including the soil and ground water thereof, in compliance with, and not cause or permit the Premises, including the soil and ground water thereof, to be in violation of, the Hazardous Materials Laws, or any other federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions thereon. Neither Trustor nor any tenants, employees, agents, contractors and subcontractors of Trustor nor any other persons occupying or present on the Premises shall use, generate, manufacture, store or dispose of on, under or about the Premises or transport to or from the Premises any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, or any other Hazardous Materials in violation of Hazardous Materials Laws;

2.16.5 Notices. Trustor shall immediately advise Beneficiary in writing of: (A) all notices from whatever source (whether such notices are received from the Environmental Protection Agency, the Occupational Safety and Health Agency, the Department of Health Services, the State Water Quality Control Board, the Department of Sanitation, the Department of Public Works or any other federal, state or local governmental agency or regional office thereof) received by Trustor of any violation or potential violation of any Hazardous Materials Laws; (B) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any Hazardous Materials Laws; (C) all claims made or threatened by any third party against Trustor or the Premises relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (A), (B) and (C) above are hereinafter referred to as "**Environmental Complaint**"); and (D) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Premises that could cause the Premises or any part thereof to be classified as "border-zone property" under applicable law or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Premises under any Hazardous Materials Laws. Beneficiary shall have the right, but shall not be obligated, to join and participate as a party in any legal proceedings or actions initiated in connection with any Environmental Complaint and to have its reasonable attorneys' and consultants' fees in connection therewith paid by Trustor upon demand;

2.16.6 Consent Required. Without Beneficiary's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed, Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, under or about the Premises, or enter into any settlement agreement, consent decree or other compromise in respect to any Environmental Complaint, which remedial action, settlement, consent or compromise might, in Beneficiary's good faith reasonable judgment, impair the value of Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary if the presence of Hazardous Materials on, under or about the Premises either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is

7

necessary and it is not possible to obtain Beneficiary's consent before taking such action, provided that in such event Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary agrees not to withhold its consent, where such consent is required hereunder, if either (A) a particular remedial action is ordered by a court of competent jurisdiction, or (B) Trustor establishes to the satisfaction of Beneficiary that no alternative to such remedial action exists that would result in less impairment of Beneficiary's security hereunder;

2.16.7 Beneficiary's Rights. Without limitation of Beneficiary's rights under this Deed of Trust, Beneficiary shall have the right, but not the obligation, to enter onto the Premises or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Material or Environmental Complaint upon its receipt of any notice from any person or entity asserting the existence of any Hazardous Material or an Environmental Complaint on or pertaining to the Premises that, if true, could result in an order, suit or other action against Trustor affecting the Premises or any part of the Premises by any governmental agency or otherwise that, in the sole opinion of Beneficiary, could jeopardize its security under this Deed of Trust. All costs and expenses incurred by Beneficiary in the exercise of any such rights, including the reasonable fees of consultants and attorneys, shall be secured by this Deed of Trust and shall be payable by Trustor upon demand together with interest thereon at the Default Rate. No rights or remedies granted to Beneficiary under this Deed of Trust with respect to Hazardous Materials or Environmental Complaints, or any action or inaction of Beneficiary or Trustee in connection therewith, shall be deemed, construed or interpreted as, or infer, participation by Beneficiary in the management or operation of Trustor or of the Premises. Such rights and remedies are granted in the ordinary course of business merely to protect Beneficiary's security interest in the Premises;

2.17    No Liens. There are no judgments, attachments, tax liens (for delinquent taxes) or mechanic's liens against Trustor, the Premises or any of Trustor's other properties; and

2.18    No Additional Debt. Trustor shall not incur any additional secured or unsecured debt following the date hereof without the prior written consent of Beneficiary, which consent shall be in Beneficiary's sole and absolute discretion.

3.    Maintenance Of Premises. Trustor shall:

3.1    Maintenance and Repairs. Maintain and keep the Premises in good condition and repair and shall not commit or permit waste of the whole or part or any material item consisting of a part of the Premises. Trustor shall keep the Premises free of termites, dry rot, fungus, beetles and all other harmful or destructive insects, and keep all plants, trees and shrubs on the Property pruned and in good condition. Trustor shall also keep the Premises free of rubbish and unsightly and unhealthful conditions;

3.2    Material Alterations. Not materially alter, remove or demolish any buildings, improvements, appliances or fixtures now or hereafter on the Property without the prior written consent of Beneficiary except as necessary to construct the Improvements; provided, however, Trustor may replace appliances or fixtures if such appliances and fixtures are immediately replaced with items of equal or greater value;

8

3.3    Regulatory Compliance. Promptly repair, replace or restore in a good, workmanlike manner and in compliance with all laws, ordinances, governmental rules and regulations, easements, agreements, covenants, conditions and restrictions affecting the Premises, all buildings, improvements, appliances and fixtures now or hereafter on the Property in the event of damage to or destruction of same;

3.4    Performance of Obligations. Perform, if all or any portion of the Premises constitutes a leasehold estate belonging to Trustor, each and every obligation of Trustor under the terms of the lease agreement relating to the Premises;

3.5    Legal Compliance. Not commit, suffer or permit any act upon the Premises in violation of any laws, ordinances, governmental rules and regulations, easements, agreements, covenants, conditions and restrictions affecting the Premises or use of the Premises, and promptly comply with all such laws and other restrictions requiring alterations or improvements to the Premises;

3.6    Preservation of Security. Perform in a timely and proper manner any and all other acts which from the character or use of the Premises are reasonably necessary to protect and preserve the security of this Deed of Trust; and

3.7    Payment of Expenses. Promptly pay when due all expenses incurred pursuant to this paragraph 3, or otherwise relating to the Premises, and promptly pay, discharge or otherwise release all claims for labor performed on and materials furnished to the Premises, subject to Trustor's right to in good faith contest same to the extent provided in the Loan Agreement.

4.    Insurance.

4.1    Insurance Types. Trustor, at its sole cost and expense (to be paid in accordance with paragraph 15 below), shall maintain the following types of insurance:

4.1.1    All Risk Insurance. Insurance now known as Builder's All Risk and Course of Construction Insurance or All Risk Replacement Cost Insurance, as applicable, insuring against loss or damage to the Premises (exclusive of excavations, foundations and footings below the lowest basement floor) by fire, lightning, wind, storm, explosion, collapse, underground hazard, glass breakage, riot and civil commotion, vandalism, malicious mischief, burglary, theft and mysterious disappearance (with sprinkler leakage and earthquake sprinkler leakage if the Premises contains a fire sprinkler system), and against such other risks or hazards as Beneficiary from time to time reasonably may designate. Such insurance shall be in an amount sufficient to prevent Beneficiary from becoming a co-insurer, and shall not be less than the full replacement cost of the Premises (or 125% of the gross loan amount, whichever is greater), without deduction for depreciation. Such insurance shall be prepaid and include (A) an endorsement for earthquake, (B) an endorsement for broad form property damage, breach of warranty, demolition costs and debris removal, and (C) a Replacement Cost Endorsement with a waiver of depreciation. Such insurance shall include full waiver of subrogation in favor of Beneficiary;

4.1.2    Rental Loss Insurance. Rental loss insurance if the Premises are leased in an amount equal to or greater than one hundred percent (100%) of the aggregate annual amount of all rents and additional rents payable by all of the tenants under the Leases (as defined herein) (whether or not such Leases are terminable in the event of a fire or casualty), such rental loss insurance

9

to cover rental losses for a period of at least one year after the date of the fire or casualty in question. The amount of such rental loss insurance shall be increased from time to time during the term of this Deed of Trust as and when new Leases and renewal Leases are entered into in accordance with the terms of this Deed of Trust, to reflect all increased rent and increased additional rent payable by all of the tenants under such renewal Leases and all rent and additional rent payable by all of the tenants under such new Leases;

4.1.3 Liability Insurance. Commercial general liability insurance on an "occurrence basis" in amounts and with deductibles and containing coverages and exclusions satisfactory to Beneficiary against claims and liabilities for injury or damage to persons or property occurring on or near the Premises. Such policy shall include supplementary coverage of Blanket Contractual Liability (specifically including Trustor's indemnity obligations under the Loan Documents), Broad Form Property Damage, Personal Injury Liability and Advertising Liability with the "employee" and "contractual" exclusions deleted, Products and Completed Operations Liability, Fire Legal Liability, Host Liquor Liability and Business Automobile Bodily Injury and Property Damage Liability extending to owned, non-owned and hired vehicles of Trustor used in connection with Trustor's business or the Premises.

4.1.4 Flood Insurance. Flood insurance if the Premises are located in an area identified by the Secretary of Housing and Urban Development as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any successor act thereto) in an amount at least equal to the then "full replacement cost" of the Premises, without deduction for physical depreciation, or the maximum limit of coverage available with respect to the Premises under said Act, whichever is less;

4.1.5 Boiler and Machinery Insurance. Insurance against loss or damage from explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Premises on such basis and in such amount as Beneficiary or Trustee may require;

4.1.6 Workers' Compensation Insurance. Workers' Compensation Insurance in the statutory amount, or if there is none, in an amount that is reasonably satisfactory to Beneficiary, and employer's liability insurance in an amount not less than $1,000,000 per occurrence, with deductible not exceeding $5,000 per occurrence;

4.1.7 Completed Value Risk Insurance. Builder's Completed Value Risk Insurance during the course of any construction or repair of the Premises against "all risks of physical loss" covering the total replacement cost of work performed and equipment, supplies and materials furnished, with deductible not exceeding $5,000 per occurrence or $25,000 per annual policy period;

4.1.8 Terrorism Insurance: Insurance from and against all losses, damages, costs, expenses, claims and liabilities related to or arising from acts of terrorism, of such types, in such amounts, with such deductibles, issued by such companies, and on such forms of insurance policies as Beneficiary or Trustee may require; and

4.1.9 Other Insurance. Such other insurance as may from time to time be reasonably required by Beneficiary.

10

4.2     Form of Insurance. All policies of insurance required hereby shall be in form approved by Beneficiary, shall be issued by companies which have a Best's Insurance Reports general policy Beneficiary's rate of A- or better and have a financial size category of Class X or larger and which are licensed to do business in the state in which the Premises are located, shall contain policy limits and deductibles satisfactory to Beneficiary, shall contain a provision that, notwithstanding any contrary agreement between Trustor and the insurance company, such policy will not be canceled, allowed to lapse without renewal, surrendered or materially amended (including, but not limited to, any reduction in the scope or limits of coverage) without at least thirty (30) days prior written notice to Beneficiary, and shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Trustor or any party holding under Trustor which might otherwise result in forfeiture of said insurance and the further agreement of the insurer waiving all rights of setoff, counterclaim or deduction against Trustor. Each policy of casualty insurance shall have attached thereto a lender's loss payable endorsement approved by Beneficiary and showing Beneficiary as first beneficiary without contribution. Each policy of liability insurance shall name Beneficiary as an additional insured pursuant to an endorsement satisfactory to Beneficiary. If any portion of the insured risks are reinsured, the policy shall contain a "cut-through" endorsement.

4.3     Evidence of Insurance. Upon Beneficiary's request, Trustor shall furnish to Beneficiary with either, at the option of Beneficiary, an original of all policies of insurance required under this paragraph 4 or a certificate of insurance for each required policy setting forth the coverage, the limits of liability, the name of the carrier, the policy number and the period of coverage. Trustor may provide any of the required insurance through blanket policies carried by Trustor and covering more than one location, or by policies procured by a tenant or other party holding under Trustor; provided, however, all such policies shall be furnished together with a certificate indicating that Beneficiary is the insured under said policy and otherwise in form and substance and issued by companies satisfactory to Beneficiary.

4.4     Deed of Trust to Govern. Notwithstanding the foregoing, if any of Trustor's obligations under this paragraph 4 are inconsistent with or greater than those contained in any Lease, then Trustor shall take such acts as may be necessary or expedient to cause such insurance policies to comply with this paragraph 4.

4.5     Evidence of Renewal. At least thirty (30) days prior to the expiration of each required policy, Trustor shall deliver to Beneficiary evidence reasonably satisfactory to Beneficiary of the payment of premium and the renewal or replacement of such policy continuing insurance in the form required by this Deed of Trust. If Trustor fails to provide, maintain, keep in force or deliver to Beneficiary, or cause to be provided, maintained, kept in force or delivered to Beneficiary, the insurance policies required by this Deed of Trust or any other Loan Document, Beneficiary may (but shall have no obligation to) procure such insurance or single interest insurance for such risks covering Beneficiary's interest, and Trustor will pay (or cause to be paid) all premiums thereon promptly upon demand by Beneficiary, and until such payment is made by Trustor to Beneficiary, the amount of all such premiums shall bear interest at the Default Rate.

4.6     Casualty. After the happening of any casualty to or in connection with the Premises or any part thereof, whether or not such casualty is covered by insurance, Trustor shall give prompt written notice thereof to Beneficiary. Trustor shall promptly pay over any insurance proceeds it receives to Beneficiary, and Trustor authorizes and directs any affected insurance company to make

11

payment of such proceeds directly to Beneficiary. Trustor covenants that, until paid over to Beneficiary, Trustor shall hold such proceeds in trust for the benefit of Beneficiary and shall not commingle such proceeds with any other funds or assets of Trustor or any other party. Beneficiary is authorized and empowered by Trustor to settle, adjust or compromise any and all claims for loss, damage or destruction under any policy or policies of insurance with or without the consent of Trustor. Without waiving or curing any Event of Default, and without regard to the adequacy of its security, Beneficiary may, in its absolute discretion: (a) apply the proceeds of such insurance to the payment of any Indebtedness; and/or (b) in such order, in such manner and according to such terms and conditions as Beneficiary may determine, release all or portions of such proceeds to Trustor for the repair, replacement, or restoration of the Premises (it being expressly agreed that Beneficiary may condition disbursement of such proceeds for restoration upon satisfaction of the conditions set forth in this paragraph or in the Construction Loan Agreement), and any balance of such proceeds shall be paid over to (or retained by) Beneficiary and applied to the Indebtedness. The application or release by Beneficiary of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

4.7    Insurance Proceeds. If the insurance proceeds are disbursed by Beneficiary to Trustor for the cost of restoration and repair of the Premises, the Premises shall be restored to the equivalent of its original condition or such other condition as Beneficiary may approve in writing. Beneficiary may, at Beneficiary's sole option, condition disbursement of the proceeds on Trustor's deposit with Beneficiary of any amount by which the cost of repair and restoration, as reasonably estimated by Beneficiary, exceeds the available insurance proceeds, on Beneficiary's approval of such plans and specification of an architect satisfactory to Beneficiary, contractor's cost estimates, architect's certificates, waivers of liens, payment and performance bonds, sworn statements of mechanics and materialmen and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Beneficiary may reasonably require. At Beneficiary's sole option, such insurance proceeds and Trustor's funds, if any, deposited with Beneficiary shall be disbursed following the same procedures for the disbursement of loan proceeds set forth in the Construction Loan Agreement and subject to all agreements, conditions, covenants, warranties and representations of Trustor set forth therein. Beneficiary may withhold disbursement of any or all of such proceeds if there then exists an Event of Default, or if there then exists any event which would, if uncured or uncorrected, constitute an Event of Default with the giving of notice, passage of time, or both. Nothing set forth in this paragraph, and no authority given to Trustor to repair, rebuild or restore the Premises or any portion thereof, shall be deemed to constitute Trustor the agent of Beneficiary for any purpose, or to create, either expressly or by implication, any liens or claims or rights on behalf of laborers, mechanics, materialmen or other lien Beneficiarys which could in any way be superior to the lien or claim of Beneficiary, or which could be construed as creating any third party rights of any kind or nature to any insurance proceeds in Beneficiary's possession.

4.8    Foreclosure. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Premises in extinguishment, in whole or in part, of the debt secured hereby, all right, title and interest of Trustor in and to all policies of insurance required in this Deed of Trust shall inure to the benefit of and pass to the successor in interest to Trustor or the purchaser or grantee of the Premises.

5.    Payment Of Taxes, Liens And Assessments. Trustor shall pay and discharge prior to delinquency in accordance with paragraph 15 below: (a) all taxes, assessments and charges of every kind and nature, including, without limitation, real and personal property taxes; (b) all general and

12

special assessments, including, without limitation, common area maintenance assessments and assessments on appurtenant water stock; (c) all levies, permit, inspection, license, and other fees; (d) all water and sewer rents, connection fees and charges; and (e) all other public and private charges whether of a like or different nature imposed upon or assessed against Trustor, Beneficiary (excluding Beneficiary's income, gift, estate and franchise taxes) or the Premises, or any part thereof or upon the revenues, rents, issues, income, or profits thereof or upon the inventory of goods maintained or stored thereon or therein (collectively, **"Taxes"**). Trustor shall, within ten (10) days following such payment or discharge, provide Beneficiary with receipts therefor. Notwithstanding the foregoing, Trustor shall have the right to contest the validity or amount of any such tax, assessment or charge, provided that (a) the validity or amount thereof is contested diligently and in good faith; (b) Trustor shall protect the Premises against any lien arising out of any such tax, assessment or charge, or out of any such contest thereof, by obtaining a bond or other security, in form, substance, amount, and issued by a surety, reasonably satisfactory to Beneficiary; and (c) Trustor's title to, and right to use, the Premises is not adversely affected. Trustor shall also pay and discharge, prior to the due date thereof, all liens and encumbrances, including, without limitation, any debt secured by a deed of trust or otherwise, ground rents, and other charges, together with interest and other costs as provided, on or affecting the Premises or any part thereof, whether such lien or encumbrance is senior or junior to the lien of this Deed of Trust.

6.    Litigation, Etc. Trustor shall promptly give written notice to Beneficiary of, and appear in and defend, at its sole cost and expense, any action or proceeding affecting or purporting to affect Beneficiary's interest in the Premises, the security of this Deed of Trust, or the rights and powers of Beneficiary and Trustee hereunder. Beneficiary and Trustee shall have the right to appear in and participate in all such proceedings at Trustor's expense.

7.    Performance Of Obligations By Beneficiary Or Trustee. Should Trustor fail to make any payment, perform any obligation or do any act set forth in or secured by this Deed of Trust, Beneficiary (or Trustee at the request of Beneficiary) may, but without obligation to do so, and without releasing Trustor from making such future payments, performing such future obligations or doing such future acts, make such payment, perform such obligation or do such act in such manner and to such extent as Beneficiary or Trustee may deem necessary to protect the security of this Deed of Trust. Without limiting the foregoing, Beneficiary or Trustee may pay, purchase, contest or compromise any encumbrance, charge, lien, claim or debt which, in the sole judgment of Beneficiary or Trustee, appears to be prior or superior to this Deed of Trust or which may affect or appear to affect the security of this Deed of Trust, the interests of Beneficiary, or the rights, powers and duties of Trustee or Beneficiary hereunder. Beneficiary, Trustee, and their agents, representatives and workers are authorized to enter the Premises or any part thereof at any time for the purpose of inspecting same, and for the purpose of performing any act authorized under this Deed of Trust.

8.    Condemnation. Any award of damages or other form of compensation awarded to Trustor in connection with any condemnation for public use of, or injury to, the Premises or any part thereof is assigned and shall be paid directly to Beneficiary, to be used, held, paid, applied or released in the absolute discretion of Beneficiary and without regard to the adequacy of its security, in the same manner and with the same effect as provided herein for the disposition of insurance proceeds. In this regard, Trustor waives the benefit of any statute, rule or law which may be contrary thereto, and Trustor agrees to execute such further assignments therefor as Beneficiary may require.

13

7 4/36

9.  General Rights Of Beneficiary And Trustee. At any time and from time to time, without liability therefor, without notice and without affecting the liability of any person, including, without limitation, Trustor or any guarantor, for the payment or performance of any Indebtedness, or the lien of this Deed of Trust on the Premises or any portion thereof:

9.1  Release of Substitution. Beneficiary may: (i) release any person liable for the payment of any Indebtedness; (ii) extend the time or otherwise alter the terms of payment of any Indebtedness and make compositions or other arrangements with any debtor in relation thereto; (iii) alter, substitute, increase or release any portion of the Premises or any other collateral securing any Indebtedness; and (iv) grant such other indulgences as Beneficiary may determine in its sole discretion; and

9.2  Consent. Trustee may, upon the written consent of Beneficiary: (i) consent to the making of any map or plot of the Property; (ii) join in granting any easements or creating any restrictions on the Property; and (iii) join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust.

10.  Reconveyance Of This Deed Of Trust. Upon written request of Beneficiary stating that all Indebtedness has been paid and performed, upon surrender of this Deed of Trust and the documents evidencing such Indebtedness to Trustee for cancellation and retention, and upon payment to Trustee of its fee, costs and expenses incurred or to be incurred thereby, Trustee shall reconvey, without warranty, the Premises then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

11.  Absolute Assignment Of Rents And Leases. Trustor absolutely and unconditionally assigns, transfers and sets over to Beneficiary all right, title, and interest in and to all rents, royalties, issues, profits, revenue, income, license and concession revenue and other benefits of the Premises at any time arising from the use and enjoyment of all or any portion thereof, and any and all leases, subleases, subtenancies, occupancy agreements, licenses or concessions relating to or affecting the Premises now existing or hereafter executed, together with all extensions, renewals, modifications, replacements, or cancellations thereof, and any and all guaranties of the lessee's obligations under any provisions thereof and under any and all extensions and renewals thereof (hereinafter referred to individually and collectively as the "Leases"). With respect to the foregoing:

11.1  Rents and Profits. Beneficiary grants to Trustor a revocable license to collect, subject to the provisions herein, such rents, royalties, issues, profits, revenue, income and other benefits accruing by virtue of the Leases or otherwise from the Premises ("Rents and Profits") as they respectively become due, but not more than thirty (30) days in advance, and to enforce the agreements of the Leases, so long as there is no Event of Default;

11.2  Absolute Assignment. This absolute and present assignment shall be fully operative without any further action on the part of Trustor or Beneficiary and, specifically, Beneficiary shall be entitled, at its sole option, to all Rents and Profits whether or not Beneficiary takes possession of the Premises. Upon any Event of Default, Beneficiary may, in its absolute discretion, at any time and without notice (either in person, by agent or representative, or by a receiver appointed by a court) and without regard to the adequacy of any security for the Indebtedness: (i) enter upon and take possession of the Premises or any part thereof, in its own name or in the name

14

of Trustor (provided, however, such entering upon and taking possession of the Premises shall not be a condition precedent or limitation of Beneficiary's right to collect the Rents and Profits); (ii) sue for or otherwise collect the Rents and Profits (including those past due and unpaid) and apply such Rents and Profits, less costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, and costs of upkeep, maintenance, repair and operation of the Premises, to the payment of the Indebtedness in such order and in proportions as Beneficiary in its absolute discretion may determine; (iii) take all steps which may be desirable in Beneficiary's judgment to complete any unfinished construction, and to operate, sell and manage the Premises; and (iv) perform such other acts or repairs or protections as may be reasonably necessary or proper in Beneficiary's sole judgment to conserve the value thereof. The entering upon and taking of possession of the Premises and/or the collection and application of the Rents and Profits shall not cure or waive any Event of Default or notice of default hereunder or invalidate any act done pursuant to such notice;

        11.3   Creditor. Notwithstanding the right to collect the Rents and Profits, Trustor agrees that Beneficiary, and not Trustor, shall be and be deemed to be the creditor of each tenant with respect to assignments for the benefit of creditors and bankruptcy, arrangement, reorganization, insolvency, dissolution or receivership proceedings affecting such tenant, but without obligation on the part of Beneficiary, however, to file or make timely filings of claims in such proceedings or otherwise to pursue creditor's rights therein. Beneficiary in its sole and absolute discretion may apply any money received by Beneficiary as such creditor in reduction of the Indebtedness, whether or not same is then due and payable;

        11.4   Attornment. Trustor irrevocably consents that the tenant(s) under the Leases, upon demand and notice from Beneficiary to such tenant(s) of an Event of Default, shall pay all Rents and Profits under the Leases to Beneficiary without liability of the tenant(s) for the determination of the actual existence of any Event of Default claimed by Beneficiary. Trustor irrevocably authorizes and directs the tenant(s), upon receipt of any notice of Beneficiary stating that an Event of Default exists, to pay to Beneficiary the Rents and Profits due and to become due under the Leases. Trustor agrees that the tenant(s) shall have the right to rely upon any such notices of Beneficiary and that tenant(s) shall pay such Rents and Profits to Beneficiary, without any obligation or without any right to inquire as to whether such Event of Default actually exists and notwithstanding any claim of or notice by Trustor to the contrary. Trustor shall have no claim against tenant(s) for any Rents and Profits paid by such tenant(s) to Beneficiary;

        11.5   Assignment of Rights. Beneficiary shall have the right to assign Trustor's right, title and interest in the Leases to any subsequent Beneficiary of this Deed of Trust and to any person acquiring title to any of the Premises through foreclosure or otherwise. After Trustor shall have been barred and foreclosed of all right, title, interest, and equity of redemption in the leased premises, no assignee of Trustor's interest in the Leases shall be liable to account to Trustor for the Rents and Profits thereafter accruing;

        11.6   Indemnification. Trustor agrees to indemnify and hold Beneficiary harmless from and against any and all liability, loss, or damage which Beneficiary may incur under the Leases or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Beneficiary by reason of any alleged obligation or undertaking to be performed or discharged by Beneficiary under the Leases, or this Deed of Trust. Nothing herein contained shall be construed to bind Beneficiary to the performance of any of the terms or provisions contained in the Leases, or otherwise to impose any obligation on Beneficiary whatsoever. Prior to

15



actual entry and taking possession of the Premises by Beneficiary, this assignment shall not operate to make Beneficiary a "mortgagee-in-possession" or to place any responsibility for the control, care, management, or repair of the Premises upon Beneficiary. Should Beneficiary incur any liability by reason of actual entry and taking possession, or for any other reason or occurrence relating thereto, or sustain loss or damage under the Leases or under or by reason of this assignment or in the defense of any such claims or demands relating thereto, Trustor shall immediately upon demand reimburse Beneficiary for the amount thereof, together with all costs and expenses and reasonable attorneys' fees incurred by Beneficiary, all of the foregoing to bear interest until paid at the highest rate then payable under the documents and instruments evidencing the Indebtedness, and Beneficiary may retain possession and collect the Rents and Profits and, from time to time, apply them in or toward satisfaction of or reimbursement for said liability, loss or damage, without waiving any other rights and remedies hereunder;

11.7    Obligations of Trustor.    Trustor shall duly perform and discharge each covenant, condition and obligation of the lessor under the Leases, and agrees not to (i) enter into any Lease, (ii) cancel, terminate, modify or otherwise materially vary any provision of any Lease, which consent shall not be unreasonably withheld, conditioned or delayed (except following an event of default by tenant thereunder), or (iii) discount any Rents and Profits or collect any Rents and Profits for any period of more than one month in advance, in each case without Beneficiary's prior written consent. Beneficiary shall approve or disapprove of any such Lease or modification within twenty (20) days following the receipt of a copy thereof from Trustor. Trustor will give prompt written notice to Beneficiary of any default by any tenant(s) or by the lessor under the Leases known to Trustor, and shall furnish Beneficiary with complete copies of all notices in respect thereof given or received by Trustor. If requested by Beneficiary, Trustor will enforce the Leases and all remedies available to Trustor thereunder in the event of default and, in the event of default thereof by Trustor, Beneficiary may, at its sole option and without obligation so to do, and without waiving any Event of Default in respect thereof, enforce the same at Trustor's expense;

11.8    Leases to Remain Effective.    The Leases shall remain in full force and effect irrespective of any merger of the interest of the lessor and any tenant thereunder. Trustor shall, at the request of Beneficiary, execute such further assignments to Beneficiary of all Leases, and Rents and Profits, as Beneficiary shall reasonably require; and

11.9    Priority of Assignment.    The absolute assignment of leases and rents in favor of Beneficiary set forth in this paragraph 11 is separate from, and senior in priority to, the security interest granted in this Deed of Trust to Trustee in such leases and rents.

12.    Event Of Default; Sale By Trustee Of The Premises.    Upon an Event of Default (as defined in the Construction Loan Agreement), Beneficiary may without notice or demand of any kind (all of which are expressly waived by Trustor) take such action as it deems necessary or advisable to protect and enforce its rights and remedies hereunder, at such time and in such order as Beneficiary may determine in its sole discretion, and without impairing or otherwise affecting any rights and remedies of Beneficiary, including, without limitation, the following: (a) declare all Indebtedness immediately due and payable; (b) exercise the power of sale under this Deed of Trust and execute and record (or cause Trustee to execute and record) a notice of default and election to cause the Premises to be sold to satisfy the Indebtedness, which sale may include at Beneficiary's sole election some or all of any personal property collateral for the Indebtedness; (c) commence an action to foreclose this Deed of Trust and otherwise enforce and protect its security hereunder; and/or (d) take

16

any other actions permitted by law or equity to enforce its rights and remedies hereunder as it may deem appropriate in its sole discretion. With respect to the foregoing:

12.1    Deposit of Trust Deed. Upon the recordation of such notice of default, Beneficiary shall deposit this Deed of Trust and all documents evidencing the Indebtedness with Trustee;

12.2    Trustee's Sale. After the lapse of such time as may then be required by law following the recordation of the notice of default, and after notice of sale as then required by law, Trustee (without demand on Trustor) shall sell the Premises, together with such personal property collateral for the Indebtedness as Beneficiary in its sole discretion may elect, at the time and place fixed in such notice of sale, either as a whole or in separate parcels, and in such order as Beneficiary may determine in its sole discretion, at public auction to the highest bidder for cash in lawful money of the United States of America, payable at the time of sale. Trustee may postpone the sale of all or any portion of the Premises, and any such personal property, by public announcement at such time and place of sale and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement;

12.3    Trustee's Deed. Trustee shall deliver to the purchaser a deed conveying the Premises together with any personal property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustee or Beneficiary, may purchase at such sale;

12.4    Application of Proceeds. Upon such sale by Trustee, and after deducting all costs, expenses, and fees of Trustee and of this trust, or incident to the enforcement of any right or remedy, or as otherwise provided hereunder, including, without limitation, the cost of evidence of title in connection with any sale, and reasonable attorneys' fees and court costs, Trustee shall apply the proceeds from the sale to the payment of: (i) the Indebtedness, including, without limitation, all expenditures made and incurred by Beneficiary or Trustee under this Deed of Trust or under any other document (the secured Promissory Note) evidencing or securing any Indebtedness, together with accrued interest thereon at the Default Rate; and (ii) the remainder, if any, to the person or persons legally entitled thereto;

12.5    Appointment of Receiver. Upon an Event of Default, Beneficiary shall be entitled to have a court immediately appoint a receiver for the Premises and Trustor expressly consents to the appointment of such receiver. Any such appointment may be made either before or after sale, with such notice, if any, as may be required by court rule or proceeding, and without regard to the solvency or insolvency at the time of application for such receiver of the person or persons, if any, liable for the payment of the Indebtedness and without regard to the then value of the Premises and without bond being required of the applicant. Such receiver shall have the power to take possession, control, and care of the Premises and to collect the Rents and Profits of the Premises and, in case of a sale and a deficiency, during the full statutory period of redemption, as well as during any further times when Trustor, its heirs, administrators, executors, successors, or assigns, except for the intervention of such receiver, would be entitled to collect such rents, issues, and profits, and all other powers which may be necessary or are useful in such cases for the protection, possession, control, management, and operation of the Premises during the whole of said period. To the extent permitted by law, the receiver may be authorized by the court to extend or modify any then existing Leases and to make new Leases, which may provide for terms to expire, or for options to lessees to extend or

17



renew terms to expire, beyond the maturity date of the Indebtedness. It is understood and agreed that any such Leases and the options or other such provisions shall be binding upon Trustor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers from sale, discharge of the Indebtedness, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any purchaser; and

12.6    Sale of Collateral. Trustor and Trustee acknowledge and agree that some or all of any personal property collateral for the Indebtedness may at Beneficiary's sole election be sold pursuant to the power of sale contained in this Deed of Trust. Trustor further agrees that any proceeds received by Beneficiary from the disposition of any such personal property collateral shall not operate or be deemed a cure of any Event of Default, and such proceeds may be applied to the Indebtedness in such order or manner as Beneficiary may determine in its sole and absolute discretion, including, without limitation, in inverse order of maturity.

13.    Payment Of Costs And Expenses. Trustor shall immediately reimburse Beneficiary and Trustee for all costs and expenses which Beneficiary and Trustee may incur by reason of, or arising out of, or in connection with:  (a) any Event of Default; (b) any action or proceeding, including, without limitation, any bankruptcy case or proceeding, in which Beneficiary or Trustee may appear in or commence to protect, preserve, exercise or enforce their rights, remedies or security interests under this Deed of Trust, or under any document (the secured Promissory Note) or instrument evidencing the Indebtedness, or which otherwise relates to the Premises, including all appeals therefrom; (c) the performance of any act authorized or permitted hereunder; and (d) the exercise of any other rights or remedies under this Deed of Trust, or under any document or instrument evidencing the Indebtedness, or otherwise relating to the protection of Beneficiary's or Trustee's rights and interest hereunder or under any document or instrument evidencing the Indebtedness, whether or not a suit or proceeding is instituted.  Such costs and expenses shall include, without limitation, the reasonable fees, charges and expenses of attorneys, (including reasonable attorneys' fees incurred in connection with (i) relief from stay and similar proceedings, (ii) any appeals and (iii) the enforcement of any judgment) engineers, accountants, appraisers, environmental and geological consultants and engineers, expert witnesses, consultants and other professional assistants and advisors, costs and expenses of searching records, examining title and determining rights in, title to, or the value of, the Premises or the boundaries thereof, including title company charges, title insurance premiums, survey costs, publication costs, and other charges incident thereto, all whether or not a suit or proceeding is instituted. Trustor agrees to and shall pay, immediately and without demand, all sums so expended by Beneficiary or Trustee, together with interest from the date of expenditure at the Default Rate, all of which sums shall constitute additional indebtedness secured by this Deed of Trust.

14.    Transfer Or Further Encumbrance Of The Premises.

14.1    Due on Sale. Except as provided in this paragraph 14 and except as otherwise expressly provided in the Construction Loan Agreement, in the event of (i) any sale, conveyance, transfer, lease, pledge or further encumbrance or disposition of the Premises, or any interest in or any part of the Premises, (ii) any sale, conveyance, or transfer of any interest in Trustor, or (iii) any further assignment of rents from or leases of the Premises, whether voluntary or involuntary, or otherwise, without the prior written consent of Beneficiary then, at Beneficiary's option, Beneficiary may declare the outstanding principal amount of the Indebtedness and the accrued but unpaid interest thereon, and all other sums secured hereby, to be due and payable immediately, and upon such

83/41

declaration, such principal and interest and other sums shall immediately become and be due and payable without demand or notice.

15.     Acceptance Of Late And Partial Payments. The acceptance by Beneficiary of the payment of any sum or the performance of any other obligation secured by this Deed of Trust after its due date shall not constitute a waiver of the right to require prompt payment or performance when due of all other and future sums and obligations so secured, or to declare an Event of Default for any failure to so pay or perform, or to proceed with foreclosure or sale for any other Event of Default then existing. The acceptance by Beneficiary of the payment of a portion of any sum, or the partial performance of any other obligation, secured by this Deed of Trust at such time that the same is due and/or payable in its entirety shall neither cure nor excuse the Event of Default caused by failure to pay the whole of such installment or otherwise fully perform such obligation, or affect any notice of default recorded prior to such acceptance, unless such notice of default is expressly revoked in writing by Beneficiary. Such acceptance shall not constitute a waiver of Beneficiary's rights to require full payment or performance when due of all other and future sums or other obligations so secured.

16.     Successor Trustees. Beneficiary may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder. Such instrument, executed, acknowledged and recorded in the manner required by law, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall (without conveyance from the preceding Trustee) succeed to all of the title, estate, rights, powers and duties of such preceding Trustee. Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee. If a notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees, and expenses of the then acting Trustee have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution.

17.     Cumulative Remedies; Additional Security. No remedy herein conferred upon or reserved to the parties to this Deed of Trust is intended to be exclusive of any other remedy provided herein, in the Loan Agreement or by law. Each such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of Trustee or Beneficiary in the exercising of any right or power accruing upon any Event of Default shall impair such right or power or any other right or power, nor shall such delay or omission be construed or deemed to be a waiver of any Event of Default or any acquiescence therein. If Beneficiary at any time holds additional security for the Indebtedness, Beneficiary, at its sole election and without limiting or affecting any of its rights or remedies hereunder, may exercise any of the rights and remedies to which Beneficiary may be entitled hereunder, either before, following or concurrently with whatever rights or remedies Beneficiary may have in connection with such other security, and in such order and in such manner as Beneficiary may deem necessary or advisable, without waiving any rights or remedies with respect to any other security hereunder. In the event of any inconsistency between the terms and provisions of this Deed of Trust and the instruments and documents evidencing the Indebtedness, such document or instrument granting to Beneficiary the greatest rights and remedies shall prevail.

18.     Partial Invalidity Of This Deed Of Trust. If any one or more of the provisions of this Deed of Trust or any other document evidencing the Indebtedness shall for any reason be held to be invalid, illegal and/or unenforceable in any respect, such invalidity, illegality and/or unenforceability shall not affect any other provision of this Deed of Trust or any such other document, and such other

19



provisions shall remain binding and enforceable and shall continue in full force and effect. Any ambiguity in this Deed of Trust shall be construed in favor of Beneficiary.

19.     Waiver Of Marshaling, Etc. Notwithstanding anything herein to the contrary, Trustor will not: (a) at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Premises or any part thereof, whenever or wherever enacted, which may affect the covenants and terms of performance of this Deed of Trust, or (b) claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Premises, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction. Additionally, Trustor expressly waives all benefit or advantage of any such law or laws. Trustor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Premises marshaled upon any foreclosure hereof. Beneficiary shall have the right to determine the order in which any or all portions of the Indebtedness is satisfied from the proceeds realized upon the exercise of the remedies provided herein. Trustor, any party who consents to this Deed of Trust and any party who now or hereafter acquires a lien or security interest in any of the Premises and who has actual or constructive notice hereof waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

20.     Application Of California Law. This Deed of Trust is to be construed, enforced and governed according to and by the internal laws of California.

21.     Grant Of Security Interest In Personalty And Fixtures. As additional security for the Indebtedness, Trustor grants to Beneficiary a security interest in and to the following items (collectively "Collateral"), whether now or hereafter owned by Trustor or in existence or hereafter arising, acquired or constructed and owned by Trustor:

21.1    Fixtures. All equipment, machinery, fixtures, inventory, appliances, furniture, furnishings, building materials, apparatus, supplies and all other goods and personal property of every kind and character now or hereafter located in, or upon, or attached or appurtenant to, or affixed to, or used or intended to be used in connection with, the ownership, use, occupancy, enjoyment, operation, management, development or improvement of the Property or any structures, building or improvements thereon, whether now owned or in existence or hereafter arising, acquired, or constructed, including, without limitation, all heating, lighting, laundry, incinerating, gas, electric and power equipment, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, water heaters, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus, air cooling and air conditioning apparatus, elevators and escalators and related machinery and equipment, shades, awnings, blinds, curtains, drapes, floor coverings, including, without limitation, rugs and carpeting; all works of art, pictures, paintings, tables, chairs, lamps, and decorative lighting fixtures; all televisions, radios, phonographs, tape players, speakers, intercoms, music and telephone and other communication equipment, including, without limitation, cable antennae and related systems; all screens, storm doors and windows; all kitchen and restaurant equipment, including, without limitation, tables, stoves, refrigerators, dishwashers, microwave equipment, ovens, timers and installed appliances; all chaise lounges, hot tubs, swimming pool heaters and equipment and other recreational equipment and supplies (computerized and otherwise); all visual and electric surveillance equipment; all beds, dressers, mirrors, sofas, desks, wall coverings, clocks, albums, tapes and arcade games; all office equipment and computers; all operating supplies,

paint supplies, janitor's equipment and supplies, and laundry supplies; all cabinets, partitions, ducts and compressors; all trees, plants and other items of landscaping; and all tools, dies, blueprints, catalogues, computer hardware and software, vehicles, furniture, and other furnishings and fixtures;

21.2    Paper.    All accounts, accounts receivable and all other rights of Trustor to the payment of money, all income, rents, issues, profits and revenues, license and concession revenue, instruments, notes, chattels real, drafts, chattel paper, acceptances, letters of credit, general intangibles, contract rights, documents, all sales contracts, sales agreements and deposits, negotiable instruments, warehouse receipts, policies and certificates of insurance, guaranties, leases, leasehold interests, rental agreements, license, concession or similar agreements, security or subscription agreements and debts secured thereby or relating thereto, money, certificates of deposit, deposits, deposit accounts, reserves, deferred payments, refunds, all refunds and deposits returned by utility companies and governmental agencies, cost savings, water stock, insurance proceeds, premium refunds, condemnation or eminent domain proceeds and awards, licenses, choses and things in action, all governmental, utility and other permits, approvals, bonds and agreements which are related to construction on or use of the Property (including, without limitation, all of the right, title and interest held by Trustor under any construction contract for the Property), all licenses, all franchises, all subdivision maps and applications therefor, all subdivision public reports and applications therefor, all architectural and engineering drawings, plans and specifications, blueprints, soil tests, feasibility studies, engineering and environmental reports, all building, foundation, grading and other permits, all construction, management, franchise, development and other contracts and agreements, all names under or by which the Property, or any present or future improvements on the Property may at any time be operated or known, and all rights to carry on business under any such names, or any variant thereof, all trademarks, trade names, patents and applications therefor and goodwill in any way relating to the Property, and all other personal property of every nature whatsoever, whether any of the foregoing is now owned or in existence or hereafter arising or acquired, arising from, used or held in connection with, or otherwise relating to the Property or the ownership, use, occupancy, enjoyment, operation, management, development or improvement thereof;

21.3    Rights.    All of the right, title and interest of Trustor now owned or hereafter acquired in and to all buildings, structures and improvements now or hereafter erected on the Property; all now owned or existing or hereafter arising or acquired easements, rights, privileges, tenements, hereditaments and appurtenances thereunto belonging or in anyway appertaining to the Premises, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, either at law or in equity, in possession or expectancy, now owned or hereafter acquired, including, without limitation, the ways, waters, water courses, water rights and powers, liberties, privileges, sewers, pipes, conduits, wires and other facilities furnishing utility or other services to the Premises; and all of the right, title and interest of Trustor now owned or hereafter arising or acquired in and to the land lying in the bed of any street, road, highway or avenue in front of or adjoining the Premises;

21.4    Books and Records.    All books, records, lists, trade secrets, computer printouts and tapes, ledgers, documents and all other evidences of Trustor's business records, whether now owned or in existence or hereafter arising or acquired, arising from, used or held in connection with, or otherwise relating to the Premises;

21.5    Personal Property.    Any and all personal property constituting part of the Premises, whether now owned or hereafter acquired by Trustor; and

21

86/44

21.6    Other Property.    All attachments, accessories, accessions, replacements, substitutions, additions, improvements, proceeds and products of any and all of the foregoing. Proceeds include but are not limited to inventory, accounts, chattel paper, general intangibles, insurance and condemnation proceeds, documents, notes, drafts, money, goods, equipment and any other tangible or intangible property arising from the sale, lease or other disposition of the foregoing.

Except as to inventory held for sale, Trustor has no right to sell or otherwise dispose of any of the Collateral.

In the event of an Event of Default, Beneficiary is and shall be entitled to all the rights, powers and remedies (i) set forth in the Loan Agreement, and (ii) otherwise granted to a secured party under the California Uniform Commercial Code and other applicable law, including, but not limited to, the right to take possession of all such Collateral. Beneficiary or its representatives may enter upon the Premises (without Beneficiary being deemed to be taking possession of the Property or being deemed a mortgagee-in-possession) at any time to inspect, repair, assemble, have appraised or to remove the Collateral and may advertise and conduct public auctions and private sales thereon. Beneficiary may require Trustor to assemble the Collateral and make it available to Beneficiary at a place to be designated by Beneficiary which is reasonably convenient to both parties. In addition to the expenses of retaking, holding, preparing for sale, selling and otherwise exercising its remedies hereunder, Beneficiary shall be entitled to recover reasonable attorneys' fees and legal expenses before applying the balance of the proceeds from the sale or other disposition of the Collateral towards satisfaction of the obligations secured hereby.    Trustor shall remain liable for any deficiency remaining after such sale or other disposition.

With respect to fixtures, Beneficiary or Trustee may elect to treat same as either real property or personal property and proceed to exercise such rights and remedies applicable to the categorization so chosen. Beneficiary may proceed against the items of real property and any items of Collateral separately or together in any order whatsoever, without in any way affecting or waiving Beneficiary's rights and remedies under the California Uniform Commercial Code, this Deed of Trust or the Loan Agreement. Trustor acknowledges and agrees that Beneficiary's rights and remedies under this Deed of Trust and the Loan Agreement shall be cumulative and shall be in addition to every other right and remedy now or hereafter existing at law, in equity, by statute or by agreement of the parties.

Trustor agrees that this Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder where the Property is located with respect to any and all fixtures included within the term "Premises" or "Collateral" as used herein and with respect to any goods and other personal property that may now be or hereafter become fixtures. The names and mailing addresses of the debtor (Trustor) and the secured party (Beneficiary) are set forth on the first page of this Deed of Trust. Trustor is, or is one of, the record owner(s) of the Property. The personal property described above is the collateral covered by this financing statement. Any reproduction of this Deed of Trust or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Trustor agrees to execute and deliver to Beneficiary, upon Beneficiary's request, any financing statements, as well as extensions, renewals, and amendments thereof, and reproductions of this Deed of Trust in such form as Beneficiary may require to perfect a security interest with respect to the Collateral. Trustor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases thereof, and shall pay

22

all reasonable costs and expenses of any record searches for financing statements Beneficiary may reasonably require.

The security agreement contained in this paragraph 22 shall survive Beneficiary's exercise of its rights and remedies under this Deed of Trust and the Loan Agreement, including, without limitation, foreclosure of this Deed of Trust.

22.    Trustor's Waivers.

22.1    Approval of Documents.    Trustor has read and approves the Note, the Construction Loan Agreement, and all other agreements and documents relating thereto. Trustor acknowledges that it has been represented by counsel of its choice to review this Deed of Trust, the Note, the Construction Loan Agreement, and all other documents relating thereto and said counsel has explained and Trustor understands the provisions thereof, or that Trustor has voluntarily declined to retain such counsel.

22.2    Waiver of Presentment.    Trustor expressly waives diligence, demand, presentment, protest and notice of every kind and nature whatsoever (unless as otherwise required under this Deed of Trust) and waives any right to require Beneficiary to enforce any remedy against any guarantor, endorser or other person whatsoever prior to the exercise of its rights and remedies hereunder or otherwise. Trustor waives any right to require Beneficiary to: (i) proceed or exhaust any collateral security given or held by Beneficiary in connection with the Indebtedness; (ii) give notice of the terms, time and place of any public or private sale of any real or personal property security for the Indebtedness or other guaranty of the Indebtedness; or (iii) pursue any other remedy in Beneficiary's power whatsoever.

22.3    Waiver of Subrogation.    Until all Indebtedness shall have been paid in full, Trustor: (i) shall not have any right of subrogation to any of the rights of Beneficiary against any guarantor, Trustor or endorser; (ii) waives any right to enforce any remedy which Beneficiary now has or may hereafter have against any other guarantor, Trustor or endorser; (iii) waives any benefit of, and any other right to participate in, any collateral security for the Indebtedness or any guaranty of the Indebtedness now or hereafter held by Beneficiary.

22.4    Other Waivers.    Trustor authorizes and empowers Beneficiary, in its sole discretion, without any notice or demand and without affecting the lien and charge of this Deed of Trust, to exercise any right or remedy which Beneficiary may have available to it, including, but not limited to, judicial foreclosure, exercise of rights of power of sale without judicial action as to any collateral security for the Indebtedness, whether real, personal or intangible property. To the extent permitted by law, Trustor expressly waives any defense or benefits that may be available under all suretyship defenses that Trustor may have under California law and the laws of any other state. Without limiting the foregoing, Trustor specifically agrees that (i) any action maintained by Beneficiary for the appointment of any receiver, trustee or custodian to collect rents, issues or profits or to obtain possession of the Property, or (ii) any draw by Beneficiary against any letter of credit given in connection with the Indebtedness, shall not constitute an "action" within the meaning of § 726 of the California Code of Civil Procedure.

23.    Non-Foreign Certification. Section 1445 of the Internal Revenue Code of 1986, as amended (the "IRC"), provides that a transferee of a real property interest in the United States must

23



withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a United States real property interest by Trustor, the undersigned certifies the following on behalf of the transferor:

23.1    Non-Foreign Status. Trustor is not a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the IRC and the regulations promulgated thereunder);

23.2    Taxpayer Identification. Trustor's United States taxpayer I.D. number is 47-2985950; and

23.3    Trustor's Address. Trustor's address is 15 CORPORATE PLAZA DRIVE, SUITE 200, NEWPORT BEACH, CA 92660.

Trustor understands that this certification may be disclosed to the Internal Revenue Service and/or the California Franchise Tax Board and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury, Trustor declares that Trustor has examined the foregoing certification and certifies that it is true, correct, and complete, and Trustor further declares that it has authority to execute this document.

24.    Miscellaneous Provisions.

24.1    Successors and Assigns. This Deed of Trust inures to the benefit of and binds all parties hereto and their respective heirs, legatees, devisees, administrators, executors, successors, and assigns. The term "Beneficiary" as used herein shall mean the owner and Beneficiary, including pledgees and assignees, of the instruments and documents evidencing the Indebtedness, whether or not named as Beneficiary herein.

24.2    Paragraph Headings. The headings and captions of the paragraphs of this Deed of Trust are for reference purposes only and shall not be construed or deemed to define or limit any of the terms and provisions contained hereunder. Whenever in this Deed of Trust the content so requires, the gender used includes the masculine, feminine, and/or neuter and the number so used includes the singular and/or the plural. Trustor shall mean "and each of them."

24.3    Statute of Limitations. The pleading of any statute of limitations as a defense to any and all Indebtedness is waived to the fullest extent permissible by law.

24.4    Payment of Taxes. In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of real property, for tax purposes, any lien or charge thereon, or changing in any way the laws now existing for the taxation of deeds of trust or indebtedness secured by deeds of trust for federal, state or local purposes, or changing the manner of collection of any such taxes as to affect this Deed of Trust or the Indebtedness, Trustor agrees to pay such tax arising from such new law; and if Trustor fails to do so or if it would be illegal for Trustor to do so, Beneficiary may, at its election and without demand or notice, declare the entire Indebtedness (together with accrued interest thereon from the date of such declaration) immediately due and payable.

24



24.5   Acceptance. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary and/or Trustee is a party, unless brought by Trustee hereunder.

24.6   Payment of Charges. Trustor agrees to pay such charges required by Beneficiary for any statement regarding the Indebtedness, in an amount not exceeding the maximum allowed by law at the time such statement is requested.

24.8   Incorporation of Documents. The Note, the Loan Agreement and all exhibits to this Deed of Trust are incorporated herein by this reference and made a part hereof.

24.9   Arbitration.

a.     Mutual Agreement to Arbitrate. Trustor and Beneficiary agree that any and all Disputes involving this Deed of Trust, the Note, or other Loan Documents being executed herewith, or the transactions contemplated thereby, including, but not limited to, claims arising from the making, arranging, origination, documentation, disclosures, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Deed of Trust, shall be resolved exclusively by binding arbitration under the terms of this arbitration agreement. This arbitration agreement shall also be binding on the agents, spouses, executors, administrators, successors and assigns of the parties.

b.     Dispute Defined. "Dispute" shall include, but not be limited, to: (1) Any claimed wrongdoing including, but not limited to, misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices; and, (2) Any claimed violation of local, state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement laws, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practice acts. "Dispute" shall not include: (1) Actions by the Beneficiary of the Note and Deed of Trust to judicially or non-judicially foreclose deed of trust (or mortgage) securing the Loan, to enjoin waste, to collect rents, interpleader actions or actions for a receiver, to recover possession, ejectment or relief from the automatic stay in bankruptcy, or to obtain relief through governmental agencies; and (2) Actions for provisional remedies such as set forth a temporary restraining order or preliminary injunction or for a permanent injunction based upon an arbitration award.

c.     Small Claims Exception. No party to this agreement shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction.

d.     Arbitration of Disputes. Binding Arbitration shall be conducted under the rules of American Arbitration Association ("AAA"). Arbitration shall be filed at the office of the AAA nearest to the real property securing the Loan, and be conducted before a single Arbitrator. The Arbitrator's award shall be a reasoned decision in accordance with applicable law. The award shall be in writing and provide a concise statement of the essential findings and conclusions on which the award is based. The remedy awarded by the Arbitrator shall not be different from that which could be awarded by a court. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute, or other matter(s) in

25



question would be barred by the applicable statute of limitations, and the Arbitrator shall reject any claim that is not based upon a timely filed demand. Discovery shall be conducted pursuant to the provisions of Section 1283.05 of the California Code of Civil Procedure. Judgment on the award may be entered in any court of competent jurisdiction.

        e.     Fees and Costs. The costs of the Arbitrator shall be split equally by the parties, but shall be a recoverable cost for the party prevailing in arbitration. Each party is otherwise to bear its own attorneys' fees and costs in connection with the arbitration, however, such fees and costs shall also be recoverable by the prevailing party in arbitration.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

        Trustor's Initials:

        25.0    Recourse Obligations. Trustor acknowledges that the obligations of Trustor to Beneficiary under or in connection with this Deed of Trust are FULL RECOURSE to Trustor. Without limiting the foregoing Trustor shall also be fully and personally liable and subject to legal action to the extent of any loss, damage (including damage resulting from the diminution in value of the Property as the result of subsection (d) below), cost, expense, liability, damage, claim or other obligation incurred by Beneficiary (including attorneys' fees and costs reasonably incurred) arising out of or in connection with all matters concerning this transaction in addition to the following (together with the obligations of Trustor to Beneficiary under or in connection with this Deed of Trust, collectively, the "Recourse Obligations"):

        a.     fraud or material misrepresentation or failure to disclose a material fact by Trustor, any of Trustor's officers, agents, attorneys, principals, managing members or employees, or Guarantor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Trustor's obligations under the Loan Documents;

        b.     the gross negligence or willful misconduct by or on behalf of Trustor or Guarantor or any of their respective agents or representatives in connection with the Loan;

        c.     physical waste of the Property;

26



d.     the breach of any representation, warranty, covenant or indemnification provision in the Loan Documents concerning environmental laws, hazardous substances or asbestos;

e.     the misapplication or conversion by Trustor of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (iii) any Rents following an Event of Default, or (iv) any Rents paid more than one month in advance;

f.     any and all tenant security deposits held by Trustor not being properly applied, returned to tenants when due or delivered to Beneficiary, any receiver or any person or entity purchasing the Property at a foreclosure sale or other transfer of the Property, or upon the taking of possession of the Property by Beneficiary, such receiver or other person or entity as provided in the Loan Documents; and

g.     the failure by Trustor to maintain, or have maintained, its status as a single purpose entity, as required by, and in accordance with the terms and provisions of Section 10.23 of the Construction Loan Agreement.

Notwithstanding anything to the contrary in this Deed of Trust or any of the Loan Documents, Beneficiary shall not be deemed to have waived any right which Beneficiary may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Indebtedness secured by the Deed of Trust or to require that all collateral shall continue to secure all of the Indebtedness owing to Beneficiary in accordance with the Loan Documents.

26.     Multiple Lender Loans. Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow.

IN WITNESS WHEREOF, this Deed of Trust is executed as of the date first hereinabove written.

TRUSTOR:
STONEBRIDGE VENTURES, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY

CAL-PAC DISTRESSED REAL ESTATE FUND I,
LLC, ITS MANAGER

By: _____
CALPAC MANAGEMENT, INC., ITS MANAGER,
JOSHUA PUKINI, VICE PRESIDENT

27

LENDER VESTING ADDENDUM

Loan #: SBV-7MAKENA-1

Property Address: 7 Makena Lane, Rancho Mirage, CA 92270

APN: 682-031-007

AB Capital, LLC to retain and undivided 750,000/2,000,000 interest;

Brad and Doreen Bunten as to an undivided 50,000/2,000,000 interest;

Christine R. Burrill, Trustee of the Burrill Trust UTD July 1, 2014 as to an undivided 100,000/2,000,000 interest

Hold On To Your Music, a 501(c)(3) nonprofit organization as to an undivided 150,000/2,000,000 interest;

Jaclyn Maduff, Trustee of the Jaclyn Maduff Family Trust UTD January 31, 1991 as to an undivided 100,000/2,000,000 interest;

Jeffrey McNutt and Felicia Peng as to an undivided 100,000/2,000,000 interest;

Koonce Family Enterprises, LP as to an undivided 200,000/2,000,000 interest;

Mainstar Trust Custodian FBO Richard W. Walker IRA as to an undivided 60,000/2,000,000 interest;

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Orange_ )

On _8 / 30 / 2021_ before me, _Andreza do Valle Rocha Bleasby, notary_
                              (insert name and title of the officer)   _public_

personally appeared _Joshua Pukini_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

94/52

DOC # 2022-0216809
05/10/2022 08:00 AM Fees: $105.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ESTHER #037

RECORDING REQUESTED BY
LAWYERS TITLE

**RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:**

AB CAPITAL, LLC
15 CORPORATE PLAZA DRIVE, SUITE 200
NEWPORT BEACH, CA 92660
Loan # SBV-7MAKENA-1

Space above this line for recorder's use

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Brad and Doreen Bunten an undivided 50,000/2,000,000; Christine R. Burrill, Trustee of the Burrill Trust UTD July 1, 2014 an undivided 100,000/2,000,000; Hold On To Your Music, a 501(c)(3) nonprofit organization an undivided 150,000/2,000,000; Jaclyn Maduff, Trustee of the Jaclyn Maduff Family Trust UTD January 31, 1991 an undivided 100,000/2,000,000; Jeffrey McNutt and Felicia Peng, Trustees of The McNutt-Peng Family Trust U/A dated June 25, 2017 an undivided 100,000/2,000,000; Koonce Family Enterprises, LP an undivided 200,000/2,000,000; Mainstar Trust Custodian FBO Richard W. Walker IRA an undivided 60,000/2,000,000 beneficial interest under that certain Construction Deed of Trust, Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 11, 2021 executed by Stonebridge Ventures, LLC, a California Limited Liability Company, Trustor, to First American Title Company, Trustee, and recorded as Instrument Number 2021-0507280 on August 24 2021 of Official Records in the County Recorder's office of Riverside County, California, describing land therein as:

**SEE ATTACHED LEGAL DESCRIPTION**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

ACCOMMODATION

Dated  9/3/2021

AB Capital, LLC, a California Limited Liability Company

By: Ryan Young, Managing Member

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California
County of _____Orange_____ )


On ___4/26/2022___ before me, __Andreza do Valle Rocha Bleasby, Notary Public__
(insert name and title of the officer)

personally appeared _____Ryan Young_____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

**LEGAL DESCRIPTION**

Real property in the City of Rancho Mirage, County of Riverside, State of California, described as follows:

LOT 7 AS SHOWN ON MAP OF TRACT NO. 33666, IN THE CITY OF RANCHO MIRAGE, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 6, 2007 IN BOOK 427, PAGE 1
THROUGH 6 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 682031007

RECORDING REQUESTED BY
LAWYERS TITLE

**RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:**

AB CAPITAL, LLC
15 CORPORATE PLAZA DRIVE, SUITE 200
NEWPORT BEACH, CA 92660
Loan # SBV-7MAKENA-1

**# 2022-0216810**
05/10/2022 08:00 AM Fees: $105.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: ESTHER #037

Space above this line for recorder's use

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to AB Capital Fund B, LLC an undivided 268,000/1,240,000 beneficial interest under that certain Construction Deed of Trust, Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 11, 2021 executed by Stonebridge Ventures, LLC, a California Limited Liability Company, Trustor, to First American Title Company, Trustee, and recorded as Instrument Number 2021-0507280 on August 24, 2021 of Official Records in the County Recorder's office of Riverside County, California, describing land therein as:

### SEE ATTACHED LEGAL DESCRIPTION

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

AB Capital, LLC, a California Limited Liability
Company

Dated  3 | 24 | 22

By: Ryan Young, Managing Member

**ACCOMMODATION**

Non-Order Search
Doc: 2022-216810 TDRASN 05-10-2022

Requested By: Romeo Yanez , Printed: 1/12/2023 4:37 PM

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On ___ 4/26/2022 _____ before me, __Andreza do Valle Rocha Bleasby, Notary Public___
(insert name and title of the officer)

personally appeared _____ Ryan Young _____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

**LEGAL DESCRIPTION**

Real property in the City of Rancho Mirage, County of Riverside, State of California, described as follows:

LOT 7 AS SHOWN ON MAP OF TRACT NO. 33666, IN THE CITY OF RANCHO MIRAGE, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 8, 2007 IN BOOK 427, PAGE 1
THROUGH 6 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 682031007