```
                UNITED STATES BANKRUPTCY COURT

                CENTRAL DISTRICT OF CALIFORNIA

                          --oOo--
```

| | |
|---|---|
| In Re: | ) Case No. 8:22-bk-11556-TA |
| | ) |
| STONEBRIDGE VENTURES, LLC, | ) Chapter 11 |
| | ) |
|     Debtor. | ) Santa Ana, California |
| _____ | ) Wednesday, January 11, 2023 |
| |   10:00 a.m. |

CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 USC 363(F; (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION OF SALE PROCEEDS; (5) BUYER IS A "GOOD FAITH PURCHASER" UNDER 11 USC 363(M); AND (6) WAIVING 14-DAY STAY IMPOSED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(H)[MAKENA LANE, RANCHO MIRAGE, CALIFORNIA 92270 - ASSESSOR'S PARCEL NUMBER 682-031-005]

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE THEODOR ALBERT
UNITED STATES BANKRUPTCY JUDGE

Proceedings produced by electronic sound recording; transcript produced by transcription service.

ii

```
 1  APPEARANCES:

 2  For the Trustee:                NATHAN SMITH, ESQ.
                                    Malcolm Cisneros
 3                                  2112 Business center Drive
                                    Irvine, California 92612
 4                                  (949) 252-9400

 5  For Secured Creditors/          THOMAS POLIS, ESQ.
      Pre-Petition Buyers:          Polis & Associates, APLC
 6                                  19800 MacArthur Boulevard
                                    Suite 1000
 7                                  Irvine, California 92612
                                    (949) 862-0040
 8

 9  For Secured Creditor            ALLAN D.SARVER, ESQ.
      Richard Walker:               Law offices of Allan D.
10                                    Sarver
                                    16000 Ventura Boulevard
11                                  Suite 1000
                                    Encino, California 91436
12                                  (818) 981-0581

13  For the Secured Creditor:       DAVID W. MEADOWS, ESQ
                                    Law offices of David W.
14                                    Meadows
                                    1801 Century Park East
15                                  Suite 1201
                                    Los Angeles, California 90067
16                                  (310) 557-8490

17  For Secured Creditor,           DIANA TORRES-BRITO, ESQ.
      Baiocchi Family Limited       Prober & Raphael
18    Partnership:                  20750 Ventura Boulevard
                                    Suite 100
19                                  Woodland Hills, California
                                      91364
20                                  (818)-227-0637

21  For the United States           MICHAEL HAUSER, ESQ.
      Trustee:                      Office of the United States
22                                    Trustee
                                    411 West Fourth Street
23                                  Suite 7160
                                    Santa Ana, California 92701
24                                  (714) 338-3400

25
```

*Briggs Reporting Company, Inc.*

```
                                                                    iii

 1  Court Recorder:              Sally Daniels
                                 United States Bankruptcy Court
 2                               411 West Fourth Street
                                 Suite 2030
 3                               Santa Ana, California 92701

 4  Transcriber:                 Briggs Reporting Company, Inc.
                                 9711 Cactus Street
 5                               Suite B
                                 Lakeside, California 92040
 6                               (310) 410-4151

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                                    1
 1  SANTA ANA, CALIFORNIA   WEDNESDAY, JANUARY 11, 2023  10:00 AM
 2                            --oOo-
 3       (Call to order of the Court.)
 4            THE COURT:  Number six point two is the matter of
 5  Stonebridge Ventures.  This is the Trustee's motion to sell
 6  property.
 7            Appearances, please?
 8            MR. SMITH:  Good morning, your Honor.  This is
 9  Nathan Smith for the Chapter 11 Trustee, Arturo Cisneros.
10  My client is also present on the Zoom.
11            MR. POLIS:  Good morning, your Honor.  This is Tom
12  Polis on behalf of pre-petition buyers and opposing parties,
13  Darryl Lewis and Sanna Akhtanova.
14            MR. SARVER:  Good morning, your Honor.  Allan
15  Sarver appearing on behalf of Richard Walker, secured
16  creditor.
17            MR. MEADOWS:  Good morning, your Honor.  David
18  Meadows --
19            MS. TORRES-BRITO:  Good morning, your Honor -- go
20  ahead.
21            MR. MEADOWS:  I am sorry.  I'm sorry.  Good
22  morning, your Honor.  David Meadows appearing on behalf of a
23  secured creditor, not on this parcel, but another parcel in
24  the portfolio.
25            MS. TORRES-BRITO:  And Diana Torres-Brito
```

1 appearing on behalf of secured creditor, Baiocchi Family
2 Limited Trust -- Partnership.
3 　　　　　MR. HAUSER:  All right.  Good afternoon -- good
4 morning, your Honor.  Michael Hauser appearing for the U.S.
5 Trustee.
6 　　　　　THE COURT:  Okay.  I see there is other folks who
7 I presume are observing, and you're all welcome.  And happy
8 new year.
9 　　　　　Okay.  So this is the Trustee's motion to sell
10 property free of liens.  I think we can narrow the issue
11 somewhat, because if I read correctly, creditors Baiocchi
12 Family Trust and Walker seem to acknowledge that because
13 their lien is transferred to proceeds, that the motion ought
14 to, in fact, be granted.
15 　　　　　Is that a fair reading of where you are?
16 　　　　　MS. TORRES-BRITO:  Your Honor, I'd like to --
17 Diana Torres-Brito for the Baiocchi Family Partnership, your
18 Honor.  I'd like to just clarify that.  While we do not
19 oppose to sale -- and we stated that in the -- in our
20 response to the motion, we do oppose the Trustee's request
21 to pay anything less than the full payoff because there's
22 really no basis for that being granted to the Trustee.  So
23 if, in fact, an order approving will state that the lien
24 shall attach to the proceeds in full, based on payoff in
25 full as at the time of distribution, then my client would

3

1 not have an issue with that.
2      However, the problem here is that I see now
3 several competing interests.  And if this is going to drag
4 on and my client is not going to be paid in full right away
5 after sale closing, then that will be an issue for my client
6 to the extent that the proceeds are eroded because the clock
7 continues to tick, the interest continues to accrue, not
8 only for my client, but for the other creditors as well.
9      THE COURT:  I'll make sure we work at this issue.
10 First of all, Mr. Cisneros is experienced enough to know
11 that delay for delaying sake is unacceptable if for no other
12 reason, then he has to deal with the continued accrual of
13 interest.  And the unsecured creditors are going to be
14 unhappy with him, and as will the Court be if he generates a
15 needless incriminative interest to your client.  So I'm sure
16 what he will do is he will make the earliest disbursement
17 that is consistent with his duties.  He doesn't need my
18 orders. It's obvious.
19      Is that right, Mr. Cisneros?
20      MR. CISNEROS:  Absolutely correct, your Honor.
21      THE COURT:  Okay.  So one of the --
22      MS. TORRES-BRITO:  But may I clarify one more
23 point there.  When your Honor states the earliest
24 disbursement, what disbursement will that be?  Disbursement
25 of principle and –

4

1    THE COURT:  One that he thinks is --

2    MS. TORRES-BRITO: And if you don't agree, then I
3 presume what an intelligent trustee would do -- and he's
4 certainly in that category -- would pay that portion that is
5 not in dispute.  If there is a dispute over the dollars and
6 cents at the end, well, of course, there may have to be a
7 further hearing.  I don't think you can really ask for
8 anything more at the end of the day.  But if what you want
9 is some kind of an order dragooning him to make immediate
10 payments irrespective of any issue that he sees, I'm not
11 going to do that.

12    MS. TORRES-BRITO:  I'm not presuming that your
13 Honor would do that.  I am asking the Court that the full
14 amount of the lien, whatever that lien -- whatever that
15 amount turns out to be, is what my client is entitled to.

16    THE COURT:  Absolutely.  If your client is a lien
17 creditor, he's entitled to pay him the full of his allowed
18 claims.  The timing of it is a little bit more of a
19 complicated issue which I'm going to leave to the good
20 officers of Mr. Cisnero.  If it becomes a real
21 (indiscernible), and I'd be very surprised if that's the
22 case, the Court's door is open to you.  You can come back,
23 and you can tell me why he's being obstreperous and
24 unreasonable in causing the estate money.  And if I agree
25 with you, he may have to pay you out of his fee.  Imagine

5

1  that.
2       MS. TORRES-BRITO: Imagine that.  Thank you, your
3  Honor.
4       THE COURT: All right.  The real action, of
5  course, is the objections of Lewis and Akhtanova.  And this
6  is, I will confess, a somewhat weird claim of lien here
7  because I can't tell how much of this is really a lien and
8  how much of this is something else.  Apparently, there is a
9  provision in the Civil Code talking about what happens in
10 the event of a rescission.  Some kind lien comes into being,
11 but it's not of record, apparently.
12      And so the reason I'm not persuaded is, number
13 one, this isn't a rescission case, so you might simply say
14 it's irrelevant.  Number two is even if it were construed as
15 some kind of a lien -- a springing lien under state law, you
16 then would have to contend with a strong (indiscernible) of
17 the Trustee under 544(a)(3), which bestows upon him the
18 status of a bona fide purchaser for value.  And the last I
19 checked, unless this is something discernable of record,
20 then the bonafide purchaser takes free of this claim of
21 lien.
22      So for both of those reasons -- by the way,
23 there's also 5363(f)(4), which says that a bona fide dispute
24 can be sold free of, anyway.
25      All those combined persuade me that this is not

```
                                                                    6
 1  fatal to the Trustee's motion to approve the sale.  So
 2  that's why the tentative reasons it does, but I'll hear from
 3  counsel for Lewis and Akhtanova.
 4          MR. POLIS:  Thank you, your Honor.  Again, this is
 5  Tom Polis, on behalf of the pre-petition buyers.  Your
 6  Honor, I saw the Court's tentative this morning.  And I --
 7  but I didn't see it.  But the point is the Court's tentative
 8  didn't make it clear that because of the disputed issues --
 9  and I think at the end of the day, we will prevail pursuant
10  to California Civil Code 3050, and rescission is not
11  required.  The California Supreme Court made that clear in
12  one of the cases I've cited back in 1929.  And also, the
13  lien priority, we believe, was also noted as far as what
14  Section 3048 of the Civil Code, it says that we are and we
15  believe we're in a first position based on the date of my
16  client's purchase contract with the seller/debtor.
17          And finally, the strong arms provision, we
18  believe, also does not make my -- the client lien -- the
19  (indiscernible) lien which rides by operation of law
20  disappear because pre-petition, my client recorded a lis
21  pendens.  The bankruptcy was filed some few hours later.
22  That lien was on record, and so the Trustee could not have
23  taken free and clear of my client's lien.
24          But, again, it sounds like based on the Court's
25  tentative, that's for another day.  But as long as the Court
```

7

1  has the sale order that provides that all liens, disputed or
2  otherwise, attached to lien proceeds -- or excuse me, the
3  sales proceed and no front monies will be paid other than
4  the usual broker's commissions, property taxes, escrow
5  costs, and that none of the liens will be provided either
6  unless resolved by stipulation or court order, then, for the
7  time being, my client is satisfied with that.  As long as we
8  recognize he's a disputed lien holder, then we will resolve
9  that.
10           And as the Court said, I've worked with Mr.
11 Cisneros many, many  years, more than I want to remember,
12 that we will get this resolved either the easy way or the
13 hard way.  But again, we don't want the sale free and clear
14 without my client's lien to attach to proceeds, and as the
15 Code says as those priorities existed on the petition date.
16 That's all we want the seller to provide it.
17           As far as moving on with the sale, in this kind of
18 market, this property is a melting iceberg or a melting ice
19 cube, as they say.  Let's get this thing sold for as much as
20 possible.  But as long as my client's rights are reserved
21 under state law as we outlined in our opposition that we
22 filed, then we're okay with the sale.
23           THE COURT:  Okay.  So what this points -- Mr.
24 Cisneros, I guess back to you is -- the only part of Mr.
25 Polis' recital that I found a little bit problematic is this

8

1 part about where he claims to be in first position,
2 therefore, no distributions can be made until that's finally
3 decided.  I don't know what to make of that exactly.  It is
4 not in front of me today to make a final determination that
5 he has no claim.  I only say that for purposes of a 363
6 motion under F4, he has a disputed claim.  But the question
7 of payment that would be in violation of his claim to be in
8 first priority is a complication, which I don't know what
9 the answer is, but I wanted to bring it to your attention.
10         What are your thoughts about that part of these
11 issues, Mr. Cisnero?
12         MR. SMITH:  Well, your Honor, if I may speak for
13 my client?
14         THE COURT:  Of course.
15         MR. SMITH:  The issue with counsel's argument is
16 that there's a predicate to obtaining a "special lien" under
17 Civil Code Section 3050, and it is rescission.  It's
18 identified right in Judge Jaroslovsky unpublished decision,
19 which states, "Paid before a rescission."  It's identified
20 in the case cited in counsel's brief.  So counsel's client
21 has no special claim of lien because they haven't fulfilled
22 that necessary predicate.  They filed a lawsuit that doesn't
23 fit any claim of lien, doesn't allege that they have a lien.
24 In fact, it seeks specific performance.
25         With regard to their own deposit, it seeks

9

1  equitable release in the form of a constructive trust so
2  contrary, in fact, to their claim of lien now.  So we're
3  selling free and clear of whatever interests they may have,
4  which, in my estimation, your Honor, it may be an unsecure
5  claim.  But it all depends on what the final outcome of
6  their lawsuit is, where they seek some $3.6 million in
7  damage.
8          THE COURT:  Mr. Smith, thank you for that, but
9  that's the easy part of my question.  The hard part of my
10 question is timing.  Does Mr. Cisneros need to get a Rule 56
11 order from me before he takes the risk of starting to write
12 checks which may not be recoverable?
13          MR. SMITH:  Your Honor, that may be something that
14 we'll have to consider.
15          THE COURT:  Don't get me wrong.  I'm not
16 necessarily encouraging that you do that.  My once over
17 lightly of Mr. Polis' claim of lien, was that it was pretty
18 clearly disputed.  And frankly, I saw a lot of holes in it.
19 But that was once over lightly, and I can't give you a
20 finding on that on this record.  But if Mr. Cisneros
21 believes that a finding is required, then it might be the
22 better part of (indiscernible) to get such a finding before
23 he starts cutting checks, which would be irretrievable.
24          MR. SMITH:  Understood, your Honor.
25          THE COURT:  All right.  Anything else, anybody?

Case 8:22-bk-11556-TA    Doc 130    Filed 02/03/23    Entered 02/03/23 10:40:37    Desc
Main Document    Page 13 of 16

10

1        MR. SMITH:  Your Honor, let's talk a little --
2        MS. TORRES-BRITO:  Yes.
3        MR. SMITH:  Your Honor, if I could, just one
4 comment.  Despite what Mr. -- what the Trustee's counsel
5 have said -- I'm reciting a case that we cited in our
6 opposition to the sale in Montgomery v. Myers Dean(ph),
7 California Supreme Court, 186 Cal. App.459, the Court held
8 that a vendee's rights under a contractor sale are not
9 limited to a situation where he rescinds because of failure
10 of consideration.  So trying to lock in our position or our
11 lien right -- and somehow our exclusive remedy is
12 rescission, again, that's simply not what the law provides.
13 And I guess from -- based on the Court's comments, we're not
14 going to cite that today.  But I think on the other hand, as
15 the Court has noted, we don't want -- because we believe
16 we're in a first position -- any of these lien proceeds --
17 any of these sales proceeds, excuse me, that's forced out --
18 because as it turns out later, we were in a first position
19 and there's not enough money to go around, then the point is
20 that's a problem.  Obviously, paying brokers, paying
21 property taxes, paying extra costs, the usual non-lien
22 holder costs that go with the sale, that's the -- you know,
23 that's what the Court should rule today as far as whatever
24 the eventual sale price is.
25        Allowing the Baiocchi Family Trust -- and there is

*Briggs Reporting Company, Inc.*

11

1  evidence that Baiocchi took good notice of my client's lien,
2  my client's interest to purchase this property.  And that's
3  why Baiocchi did the loan approximately a year after my
4  client signed a contract for sale.
5           Again, that's for another day.  We don't want any
6  dollars going out from the sale of this property until the
7  brokers -- excuse me, other than the broker's commission
8  property tax or escrow costs are paid, and until we agree to
9  consensually, or be in the court order or final court order,
10 we believe all the money should be held based on our
11 client's -- my client's position that they hold a first
12 priority pending the lien right under state law.
13          THE COURT:  Ms. Torres-Brito?
14          MS. TORRES-BRITO:  Yes, your Honor.  Thank you.
15 Everybody keeps saying that's for another day.  But since
16 everybody keeps arguing and putting things on the record, I
17 want to do the same. I'm not sure what evidence counsel is
18 referring to as -- you know, as to the principle of the
19 Baiocchi trust, knowing of this asserted lien prior to
20 origination of the loan.  But there's the self-serving
21 statement in the -- in lieu of the declaration attached to a
22 response to a motion to sell, and I think that is way short
23 of the evidence before the Court, that there was actual any
24 notice of this claim of lien -- of superior lien.
25 Certainly, a lot more is required than that.  Notice is an

12

1  issue, and the legality of this special lien is also an
2  issue.  Obstructive counsel pointed out, rescission is a
3  requirement.
4         Counsel for Ms. Lewis keeps saying that he cited a
5  case where recission is not a requirement.  A vendee is not
6  the same thing as a purchaser.  It's very different legal
7  attributes to who a vendee is in a mechanics liens and that
8  kinds of thing, which again, not before the Court right now.
9  But there is simply no case law or statutory law, and the
10 notice is an issue, and there is really no right to a lien
11 at this time.  If there is going to be a long delay, my
12 client is not going to get paid its undisputed amount, then
13 my client does object to the sale of this property at this
14 time.
15        THE COURT:  Okay.  Well, the objection is noted
16 but overruled.
17        I think what we have to do, Mr. Cisneros, is you
18 need to work with your counsel to craft a very careful
19 order.  And the order should say that all liens and
20 disputes, anything contemplated under Section 363(f)
21 attached to proceeds.  The ticklish issue of timing of the
22 distribution, I'm going to leave to your good judgment and
23 that of counsel.  You  may decide that it's the prudent
24 thing to get a resolution on the Lewis and Akhtanova issue
25 by Rule 56 hearing before you start cutting checks.

```
                                                                    13
```

1        You don't need to get further edification
2  regarding broker's fees and costs of sale, that sort of
3  thing.  That's already -- everybody seems to be in agreement
4  on that.  But I will leave it to you to craft the careful
5  order that acknowledges all these issues, okay?  But
6  certainly something that should be sufficient to allow a
7  title company to ensure title for the buyer.
8        MR. SMITH:  Understood, your Honor.
9        THE COURT:  All right, everybody.  Well, nobody
10 said it was going to be easy.  Everybody, have a great new
11 year and a pleasant afternoon.  And stay dry if you can.
12       MR. SMITH:  Very good, your Honor.  Thank you,
13 your Honor.
14       MR. POLIS:  Thank you, your Honor.
15    (Proceedings concluded.)
16
17       I certify that the foregoing is a correct
18 transcript from the electronic sound recording of the
19 proceedings in the above-entitled matter.
20
21 /s/ Holly Steinhauer          2-3-23
   Transcriber                   Date
22
23
24
25