Christopher Hewitt, Esq. (SBN: 236568)
Law Office of Christopher Hewitt
74361 Highway 111, Suite 7
Palm Desert, California 92260
Telephone: 760.459.2438
Facsimile: 877.241.6366
Email: Hewittesq@yahoo.com

*Attorney for Debtor:*
Joe Colangelo

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br>STONEBRIDGE VENTURES, LLC<br><br>Debtor. | Case No.: 6:22-bk-11556-TA<br><br>Chapter 7<br><br>JOE COLANGELO'S REBUTTAL TO CHAPTER 7 TRUSTEE'S OPPOSITION REPLY<br><br>*[Property: 2 Makena Lane, Rancho Mirage, CA 92270]*<br><br>Date: 7/11/23<br>Time: 11:00AM<br>Crtrm.: Via Zoom Teleconference<br>Place: USBC<br>      411 West Fourth Street<br>      Santa Ana, CA 92701 |

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY

JUDGE; THE DEBTOR, DEBTOR'S COUNSEL OF RECORD; THE CHAPTER 7 TRUSTEE

1

AND HIS COUNSEL OF RECORD; THE SANTA ANA OFFICE OF THE UNITED STATES

TRUSTEE, AND OTHER PARTIES ENTITLED TO NOTICE:

Secured creditor and pre-petition buyer, Joseph Colangelo submits the following rebuttal

to the Chapter 7 Trustee's Reply to Joe Colangelo's Opposition and ad hominem attacks on Mr.

Colangelo and his counsel of record.

## A. **Reiteration of Facts**

Extensive communication has been ongoing between all the parties in interest for a

period of 7 months. The parties in interest have all put their cards out on the table, and from a

factual standpoint where Mr. Colangelo is concerned there is nothing "new" from an evidentiary

standpoint to present that the Chapter 7 of which he did not already have prior knowledge. Mr.

Colangelo takes exception to the characterization that he "squatted" on the Property for

approximately 8 months. As indicated in his Opposition (knowledge of which the Chapter 7

Trustee already has in his possession) Mr. Colangelo and Monika Jensen entered into a

Residential Purchase Agreement with Stonebridge on April 23, 2020. The purchase price as

offered by Stonebridge was $2.595 million. Stonebridge was represented by brokerage firm,

Calpac Management, Inc (Ryan Young, seller's agent). Mr. Colangelo and Ms. Jensen were

represented by Regency Residential (Nima Rohani, buyers' agent). An initial deposit of

$100,000 was paid by Mr. Colangelo and Ms. Jensen leaving a balance of $2.495 million. Close

of escrow was to occur on July 1, 2020. In the event escrow did not close, "Buyer to reimburse

Seller for custom upgrades not to exceed $10,000. The Agreement is otherwise unremarkable.

Paragraph 21 discusses "Remedies for Buyer's Breach of Contract." Paragraph 22 discusses

"Dispute Resolution." The contract was executed by the interested parties. Attached and

2

incorporated herein as Exhibit B is a true and correct copy of the Residential Purchase

Agreement.

The initial down payment in the amount of $100,000 was consummated on April 27,

2020. A true and correct copy of "receipt of wire amount" is attached and incorporated herein as

Exhibit C. A second payment in the amount of $50,000 was paid on August 31, 2020. A true

and correct copy of "receipt of wire amount" is attached and incorporated herein as Exhibit D. A

third payment in the amount of $50,000 was made on October 23, 2020. A true and correct copy

of "receipt of wire amount" is attached and incorporated herein as Exhibit E. A fourth payment

in the amount of $500,000 was made on December 9, 2020. A true and correct copy of "receipt

of wire amount" is attached and incorporated herein as Exhibit F. A fifth payment in the amount

of $600,000 was made on December 10, 2020 in the amount of $600,000. A true and correct

copy of "receipt of wire amount" is attached and incorporated herein as Exhibit G. In total Mr.

Colangelo paid $1.25 million from April 27, 2020 to December 10, 2020.

On December 11, 2020, Mr. Colangelo and Ms. Jensen took occupancy of the Property

with consent from Stonebridge. Amended Escrow Instructions were executed by the parties

memorializing the agreement and releasing the sum of $499,980 to Stonebridge prior to the

closing of escrow. During the period of occupancy, Mr. Colangelo spent a total of

approximately $300,000 to improve the property. A true and correct copy of the Amended

Escrow Instructions is attached and incorporated herein as Exhibit H.

On or about June 30, 2021, Brentwood Finance Company records a Trust Deed

concerning the Property in the amount of $1.850 million. Said Deed is recorded when the

Property was clearly occupied by Mr. Colangelo and Ms. Jensen.

3

On or about July 29, 2021 Renewable Farms records a Trust Deed concerning the Property in the amount of $250,000.

On or about September 6, 2022, Stonebridge deeds the Property to AB Capital LFD, Inc. Stonebridge then files for a voluntary Chapter 11 Petition on September 12, 2022. On September 13, 2022, Involuntary Chapter 7 Bankruptcy petition is filed against AB Capital, LLC. On October 25, 2022, AB Capital, LFD deeds the Property to the Standing Chapter 7 Trustee, Arturo Cisneros for the bankruptcy estate of Stonebridge Ventures, LLC.

So from April 23, 2020, to December 10, 2020, Mr. Colangelo pays the sum of $1.250 million to Stonebridge. Mr. Colangelo moves into the Property, makes improvements to the property in the amount of $300,000. At no time between December 11, 2020, and June of 2021, did Stonebridge ever threaten Mr. Colangelo with "squatting" on the property. Furthermore, not so much as an insulation was made by Stonebridge during that time that Colangelo and Jensen were in breach of contract. In point of fact constant discussions were being held between Colangelo and Stonebridge's point man Josh Pukini regarding areas of concern central to the Property which was responsible for the delay in the finalizing of the close of escrow.

## B. Irreparable Harm Will Come to Mr. Colangelo

The Chapter 7 Trustee's position via counsel is that Mr. Colangelo as an interested party presents a disingenuous claim of right, and has unclean hands asserting he is a squatter and drag on other unsecured creditors' rights. The facts above demonstrate that the opposite is true. In point of fact, Mr. Colangelo is being strongarmed into "take it or leave it" offers manufactured by the other interested parties. The other interested parties are taking advantage of Mr. Colangelo's position that no instruments were recorded reflecting the transaction between Stonebridge on the one hand and Colangelo and Jensen on the other. In essence Stonebridge

4

speaks with "forked tongue" while representing to Colangelo and Jensen that their interest in the property is "all good" while taking out two (2) separate construction loans with Brentwood and Renewable respectively and recording their interest in the Property without Colangelo and Jensen's knowledge or consent (all to the detriment of his investment into the property). Between December 2020, and September 1 2022, Colangelo and Jensen have a clear legal interest in the Property pursuant to *California Civil Code §3050,* (a period of time in which they were acting in good faith with Stonebridge). Then, with one fraudulent act and a culminating bankruptcy that is all wiped away according to the Chapter 7 Trustee's argument. The Chapter 7 Trustee via counsel also asserts that Mr. Colangelo has no right to equitable subordination. As such, the arguments in the Chapter 7 Trustee's Motion for Sale of Property should prevail. The Chapter 7 Trustee asserts that Mr. Colangelo has no secured interest and no equitable principals of law applicable to his situation. The Chapter 7 Trustee argues that Mr. Colangelo has a meritless opposition.

   With all due respect to the Chapter 7 Trustee, Mr. Colangelo asserts that he believes that his argument(s) have been misunderstood. Should the Chapter 7 Trustee's Motion be granted as requested, Mr. Colangelo will be irreparably harmed. Mr. Colangelo is a victim of the fraudulent conduct of Stonebridge. Mr. Colangelo is currently out $1.25 million dollars plus an additional $300,000 for improvements of the property having acted in good faith with Stonebridge right up to the time of the instant bankruptcy case filing. Contrast that with Brentwood and Renwable. Neither of which engaged in due diligence to determine whether or not someone lived on the premises at the time each lender respectively provided their loans to Stonebridge. Both lenders are being unjustly enriched at the expense of Mr. Colangelo. Mr. Colangelo asserts that equitable principals dictate that this Honorable Court at the very least put into place safeguards

5

concerning the distribution of the Property sale proceeds.  At present, the Claims bar date has not

past, and Mr. Colangelo intends on filing a Proof of Claim.  However, the likelihood of any

measurable remuneration from the filing of a Proof of Claim will come close to the money that

Mr. Colangelo has invested into the Property.  As such placing guard rails on the distribution of

the sale proceeds and/or issuing a prophylactic Order on the distribution of the funds until such

time as Mr. Colangelo has been able to litigate his rightful interest in the sale proceeds via an

Adversary Complaint.

## CONCLUSION

For the above reasons issued, Mr. Colangelo requests that in the event this Honorable

Court deems it proper to Authorize the Sale of the Property, that it includes measures that protect

the equitable interests of Mr. Colangelo as outlined and demonstrated above.

Dated:  July 6, 2023                          Respectfully submitted,

By:   _____
                                 CHRISTOPHER HEWITT, ESQ
                                 ATTORNEY FOR JOE COLANGELO

Rebuttal

EXHIBIT "A"

Christopher Hewitt, Esq. (SBN: 236568)
Law Office of Christopher Hewitt
74361 Highway 111, Suite 7
Palm Desert, California 92260
Telephone: 760.459.2438
Facsimile: 877.241.6366
Email: Hewittesq@yahoo.com

*Attorney for Debtor:*
Joe Colangelo

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br>STONEBRIDGE VENTURES, LLC<br><br>Debtor. | Case No.: 6:22-bk-11556-TA<br><br>Chapter 7<br><br>DECLARATION OF CHRISTOPHER HEWITT IN SUPPORT OF REBUTTAL<br><br>*[Property:  2 Makena Lane, Rancho Mirage, CA 92270]*<br><br>Date: 7/11/23<br>Time: 11:00AM<br>Crtrm.:  Via Zoom Teleconference<br>Place: USBC<br>      411 West Fourth Street<br>      Santa Ana, CA 92701 |

I, Christopher Hewitt Declare as follows:

1

DECLARATION OF CHRISTOPHER HEWITT

1.    I am the attorney of record for the Debtor stated herein. I have personal knowledge of the matters stated herein and, if called, we could and would competently testify thereto.

2.    Attached and incorporated herein as Exhibit B is a true and correct copy of the Residential Purchase Agreement entered into between Mr. Colangelo and Monika Jensen with Stonebridge, LLC.

3.    Attached and incorporated herein as Exhibit C is a true and correct copy of the initial $100,000 down payment deposit made by Mr. Colangelo for the purchase of the Property issued on April 27, 2023.

4.    Attached and incorporated herein as Exhibit D is a true and correct copy of the wire fund transfer receipt to Escrow Experts, Inc. on August 31, 2020, in the amount of $50,000.

5.    Attached and incorporated herein as Exhibit E is a true and correct copy of the wire fund transfer receipt to Escrow Experts, Inc. on Oct 23, 2020, in the amount of $50,000.

6.    Attached and incorporated herein as Exhibit F is a true and correct copy of proof of payment to Escrow Experts Inc., on December 9, 2020, in the amount of $500,000.

7.    Attached and incorporated herein as Exhibit G is a true and correct copy of proof of payment to Escrow Experts Inc., on December 10, 2020, in the amount of $600,000.

8.    Attached and incorporated herein as Exhibit H is a true and correct copy of Amended Escrow Instructions executed by Mr. Colangelo, Monika Jensen as well as Joshua Pukini.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

2

DECLARATION OF CHRISTOPHER HEWITT

Executed this the 6th day July 2023, at Palm Desert, California.

_____

Christopher Hewitt
Declarant

3

DECLARATION OF CHRISTOPHER HEWITT

# EXHIBIT "B"

CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(Buyer's Brokerage Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | *Joe Colangelo* | Date | 04/24/2020 |
|---|---|---|---|
| | Joe Colangelo 4/24/2020 2:58:09 AM EDT | | |
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | *Monika L. Jensen* | Date | 04/24/2020 |
| | Monika L. Jensen 4/24/2020 3:03:26 AM EDT | | |

Agent *Regency Residential*                                DRE Lic. # *01762487*

By *Nima Rohani*    Real Estate Broker (Firm)    DRE Lic. # *02003663*    Date  04/24/2020

Nima Rohani 4/24/2020 2:56:42 AM EDT (Salesperson or Broker-Associate, if any)  *Nima Rohani*

© 1991-2018, California Association of REALTORS®, Inc.

## AD REVISED 12/18 (PAGE 1 OF 2)

### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Regency Residential, 112 Azzuro Drive Palm Desert CA 92211     Phone: (760)668-9956    Fax:    2 Makena Ln
Nima Rohani     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
**(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.**(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the seller and buyer. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**

(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | |
|---|---|
| Seller | **Stonebridge Ventures** Date _____ |
| Seller _4/24/2020 2:56:53 AM EDT | Date _____ |
| Buyer _Joe Colangelo | **Joe Colangelo** Date _____ |
| Buyer _Monika L. Jensen | **Monika L. Jensen** Date _____ |
| Buyer's Brokerage Firm **Regency Residential** | DRE Lic # **01762487** Date _____ |
| By _Nima Rohani | DRE Lic # **02003663** Date _____ |
| Nima Rohani 4:26:46 AM EDT | |
| Seller's Brokerage Firm **Calpac Management Inc** | DRE Lic # **01856406** Date _____ |
| By _____ | DRE Lic # **01245001** Date _____ |
| Ryan Young | |

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

 Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Regency Residential, 112 Azzuro Drive Palm Desert CA 92211                                                                Phone: (760)668-9956          Fax:                    2 Makena Ln
Nima Rohani                              Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

CALIFORNIA
ASSOCIATION
OF REALTORS®

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: **2 Makena Ln, Rancho Mirage, CA 92270** _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | | |
|---|---|---|---|
| Buyer/Tenant X _Joe Colangelo_ | | **Joe Colangelo**Date | 04/24/2020 |
| Buyer/Tenant X _Monika L. Jensen_ | | **Monika L. Jensen**Date | 04/24/2020 |
| Seller/Landlord X 4/24/2020 3:04:13 AM PDT | | **Stonebridge Ventures** Date | 04/24/2020 |
| Seller/Landlord _____ 4/24/2020 2:56:54 AM EDT | | Date | |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: _04/23/2020_

**1. OFFER:**
   **A.** THIS IS AN OFFER FROM ___Joe Colangelo, Monika L. Jensen___ ("Buyer").
   **B.** THE REAL PROPERTY to be acquired is ___2 Makena Ln, Rancho Mirage, CA 92270___, situated in
   ___Rancho Mirage___ (City), ___Riverside___ (County), California, ___92270___ (Zip Code), Assessor's Parcel No. ___682-031-002___ ("Property").
   **C.** THE PURCHASE PRICE offered is ___Two Million, Five Hundred Ninety-Five Thousand___
   Dollars $ _2,595,000.00_ .
   **D.** CLOSE OF ESCROW shall occur on [X] ___July 1, 2020___ (date)(or [ ] ___ Days After Acceptance).
   **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
**2. AGENCY:**
   **A. DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   **B. CONFIRMATION:** The following agency relationships are confirmed for this transaction:
   Seller's Brokerage Firm ___Calpac Management Inc___ License Number ___01856406___
   Is the broker of (check one): [X] the seller; or [ ] both the buyer and seller. (dual agent)
   Seller's Agent ___Ryan Young___ License Number ___01245001___
   Is (check one): [X] the Seller's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)
   Buyer's Brokerage Firm ___Regency Residential___ License Number ___01762487___
   Is the broker of (check one): [X] the buyer; or [ ] both the buyer and seller. (dual agent)
   Buyer's Agent ___Nima Rohani___ License Number ___02003663___
   Is (check one): [X] the Buyer's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)
   **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _100,000.00_
   **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, [ ] cashier's check, [ ] personal check, [ ] other ___ within 3 business days after Acceptance (or ___wired directly to escrow___ );
   **OR (2)** [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or ___ )
   to the agent submitting the offer (or to ___ ), made payable to
   ___. The deposit shall be held uncashed until Acceptance and then deposited
   with Escrow Holder within **3** business days after Acceptance (or ___ ).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . $ ___
   within ___ **Days** After Acceptance (or ___ ).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   **C.** [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or [ ] Buyer shall, within **3 (or ___ ) Days** After Acceptance, Deliver to Seller such verification.
   **D. LOAN(S):**
   **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___
   This loan will be conventional financing **OR** [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other ___. This loan shall be at a fixed rate not to exceed ___ % or, [ ] an adjustable rate loan with initial rate not to exceed ___ %. Regardless of the type of loan, Buyer shall pay points not to exceed ___ % of the loan amount.
   **(2)** [ ] **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___
   This loan will be conventional financing **OR** [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other ___. This loan shall be at a fixed rate not to exceed ___ % or, [ ] an adjustable rate loan with initial rate not to exceed ___ %. Regardless of the type of loan, Buyer shall pay points not to exceed ___ % of the loan amount.
   **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or ___ ) Days** After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.
   **E. ADDITIONAL FINANCING TERMS:** ___
   **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _2,495,000.00_
   to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _2,595,000.00_

Buyer's Initials X(___)X(___)    Seller's Initials X(___)(___)
© 1991-2018, California Association of REALTORS®, Inc.

RPA-CA REVISED 12/18 (PAGE 1 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is **(or** ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

**J. LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or _____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. (☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**

Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies. **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

**A. ADDENDA:**

| | |
|---|---|
| | ☐ Addendum #_____ (C.A.R. Form ADM) |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

**6. OTHER TERMS:** *In the event that escrow does not close, Buyer to reimburse Seller for custom upgrades not to exceed $10,000*

**7. ALLOCATION OF COSTS**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
prepared by *MyNHD **Best Value*** .

**(2)** ☐ Buyer ☒ Seller shall pay for the following Report *Pest Inspection* _____
prepared by *Seller's Choice* .

**(3)** ☐ Buyer ☒ Seller shall pay for the following Report *Home Inspection Report* _____
prepared by _____ .

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

**(1)** ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local law, unless Seller is exempt.

Buyer's Initials X(___)(___)    Seller's Initials X(___)(___)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    2 Makena Ln

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

## C. ESCROW AND TITLE:

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each to pay their own fees* .

(b) Escrow Holder shall be *Escrow Experts* .

(c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____ .

(b) Owner's title policy to be issued by *Orange Coast Title* .

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

## D. OTHER COSTS:

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .

(2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee _____ .

(3) ☐ Buyer ☒ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____ .

(8) ☐ Buyer ☐ Seller shall pay for _____ .

(9) ☐ Buyer ☐ Seller shall pay for _____ .

(10) ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by *Or New Home Warranty* , with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☒ Other: *Roof, Appliances, Plumbing* ,

Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

## 8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:

A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

B. **ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☒ all washer(s) and dryer(s), except _____ ;

(3) The following additional items: *All furnishings, seller to include inventory list* _____

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

C. **ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

## 9. CLOSING AND POSSESSION:

A. Buyer intends (or ☒ does not intend) to occupy the Property as Buyer's primary residence.

B. **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ ☐AM/☐ PM) on the date of Close Of Escrow; ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ___ ☐AM/☐ PM on _____ .

Buyer's Initials X( *JC* )( *MPJ* )    Seller's Initials X( )( )

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    2 Makena Ln

C. **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **Tenant-occupied property: Property shall be vacant** at least **5 (or ___ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

**OR** ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

E. At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

10. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. **(1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

(3) **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6) In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

(7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

B. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) **SELLER HAS: 7 (or ___ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials X( _JC_ )X( _MLJ_ )    Seller's Initials X( _✗_ ) ( ___ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    2 Makena Ln

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

   **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   **E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials X(____)X(__MLR__)                              Seller's Initials X(____)(____)

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: 7 (or ___ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

**B. (1) BUYER HAS: 17 (or ___ ) Days** After Acceptance, unless otherwise agreed in writing, to:

   (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

   (2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

   (3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

   (4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

   (5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ___ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

**C. ☐ REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

**D. SELLER RIGHT TO CANCEL:**

   (1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   (2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 (or ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

**F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3 (or ___ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials X( _JC_ )X( _MLP_ )                                              Seller's Initials X( _✝_ ) ( ___ )

Property Address: **2 Makena Ln, Rancho Mirage, CA 92270**                                    Date: **April 23, 2020**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

16. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS:**

    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

    **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

19. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

20. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** The following **paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials X(  _JC_  )X(  _MEJ_  )                                    Seller's Initials X(  ____  ) ( ____ )

**RPA-CA REVISED 12/18 (PAGE 7 OF 10)**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials *JC* / *MLJ*           Seller's Initials ___ / _____

## 22. DISPUTE RESOLUTION:

A. MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

B. ARBITRATION OF DISPUTES:

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials *JC* / *MLJ*           Seller's Initials ___ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials X(___)X(*MLJ*)           Seller's Initials X(___) (_____)

RPA-CA REVISED 12/18 (PAGE 8 OF 10)

**(2) PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

**(3) BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
   C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
   J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
   K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 04/24/2020 _____ BUYER *Joe Colangelo*
(Print name) *Joe Colangelo* ─ Authentisign 4/24/2020 2:58:40 AM EDT
Date 04/24/2020 _____ BUYER *Monika L. Jensen*
(Print name) *Monika L. Jensen* ─ 4/24/2020 3:06:37 AM EDT

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials X(____) (____)

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**
_____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date **04/24/2020**   SELLER _____

**(Print name)** _Stonebridge Ventures_ 2020 2:57:25 AM EDT _____

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm _Regency Residential_ _____ DRE Lic. # _01762487_
By _Nima Rohani_ _____ _Nima Rohani_ DRE Lic. # _02003663_   Date _____
By _____ 4/24/2020 2:56:13 AM EDT _____ DRE Lic. # _____ Date _____
Address _112 Azzuro Drive_ _____ City _Palm Desert_ ____ State _CA_   Zip _92211_
Telephone _(760)668-9956_ ____ Fax _____ E-mail _nima@regencyresidential.com_
Seller's Brokerage Firm _Calpac Management Inc_ _____ DRE Lic. # _01856406_
By _____ _Ryan Young_ DRE Lic. # _01245001_ ____ Date _____
By _____ DRE Lic. # _____ ____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _jpukini@abc-funds.com_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Seller's Broker presented this offer to Seller on _____ (date).
   Broker or Designee Initials

**REJECTION OF OFFER:** ( ____ )( ____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
   Seller's Initials

---

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
Buyer Acknowledges that page 10 is part of this Agreement X( ___ ) X( ___ )
Buyer's Initials

RPA-CA REVISED 12/18 (PAGE 10 of 10)

Authentisign ID: F5DC3A22B-45DD-4D29-9C39-9C3CE120C0D9

**ASSOCIATION OF REALTORS®**

# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address **2 Makena Ln, Rancho Mirage, CA  92270**

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

   **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

   **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

| | | | |
|---|---|---|---|
| Buyer | *Joe Calangelo*  04/24/2020 | Buyer | *Monika L. Jensen*  04/24/2020 |
| | Joe Calangelo 04/24/2020 2:56:49 AM EDT | | Monika L. Jensen 4/24/2020 3:06:39 AM EDT |

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY
(C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

| | | |
|---|---|---|
| Buyer/Seller/Landlord/Tenant | *Joe Colangelo* | Date 04/24/2020 |
| | Joe Colangelo EDT | |
| Buyer/Seller/Landlord/Tenant | *Monika L. Jensen* | Date 04/24/2020 |
| | Monika L. Jensen | |

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA 12/19 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

EXHIBIT "C"

PsP Home

| **Wire Amount** | 100000.00 USD | **Customer Pays** | 100030.00 USD |

| **Reference #:** | 7541920200427036 | | |

| **Status** | Acknowledged | **Direction** | Outgoing |
| | | **Value Date** | Apr 27, 2020 |

| *Originator R/T | 0899/ 75419 | *Originator Branch | CONNECT FIRST CREDIT UNION |
| Originator BIC | CUCXCATTCAL | *Address | DOWNTOWN CORE |
| Contact Name/Phone | ELAINE | | 116 317 7TH AVENUE SW |
| | | City | CALGARY |
| | | Province/State | AB |
| | | Postal/Zip Code | T2P 2Y9 |
| | | Country | CANADA |

| Destination R/T | | *Destination Branch | CITY NATIONAL BANK |
| Destination BIC | 122016066 | Address | 350 S. GRAND AVE FLOOR 5 |
| | | City | LOS ANGELES |
| | | Province/State | CA |
| | | Postal/Zip Code | 90071 |
| | | *Country | UNITED STATES |
| | | Reason for Transfer | |

| *Amount | 100000.00 | Service Charge | 30.00 |
| *Payment Method | Credit Account | | |
| *Payment Currency | US DOLLAR | | |

| Buy Exchange Rate | | Special Rate Ref # | |
| Sell Exchange Rate | 1.00000000 | | |
| Exchange Rate Date | Apr 27, 2020 | | |

**Beneficiary**

| Account | ! 7636 | **Sender** | |
| *Name | ESCROW EXPERTS INC. TRUST ACCOUNT | Type | Corporate |
| Address | 24800 CHRISANTA DRIVE, 100 | *Name | REPURPOSE SOLUTIONS CANADA |
| | MISSION VIEJO | Company Rep. | JOSEPH COLANGELO |
| City | VIEJO | *Address | INC. |
| Province/State | CARAZO | *City | CALGARY |
| Postal/Zip Code | 92691 | *Province/State | AB |
| *Country | UNITED STATES | *Postal/Zip Code | T2S 1W2 |
| | | *Country | CANADA |

| | | *ID Type | Account Number |



EXHIBIT "D"

Page 1 of 1

ROYAL FUNDS TRANSFER
2020 AUG 31

ROYAL BANK OF CANADA
CALGARY AB-BRITANNIA BRANCH

| | | |
|---|---|---|
| Branch Ref No... | 02649-20244-199996 | Value Date..... | 2020 AUG 31 |
| ICN........... | From | Send Ref..... | |
| Payment Amount.............$ | 50,000.00 USD | Charges For... Sender | |
| Client Rate................ | 1.00000000 | Serial No..... | |
| Conversion Amount..........$ | | | |
| Wire Payment Fee Collected $ | 34.58 USD | | |
| Not Present Fee............$ | 0.00 USD | | |
| IBAN Fee..................$ | 0.00 USD | | |
| Total Fees................$ | 34.58 USD | | |
| Client Pays Amount........$ | 50,034.58 USD | SRF Client No... 961385069 | |

Remittance Information:

Ordering Customer:
MONIKA LOUISE JENSEN
SUITE 238
1811 4 ST SW
CALGARY        AB T2S 1W2

Debit Branch Name (Princ).. CALGARY AB-BRITANNIA BRANCH        Account
              SOLE-OWNER ........  )59-2
Debit Branch Name (Fees)... CALGARY AB-BRITANNIA BRANCH
                            59-2

Intermediary Institution:               Account With Institution:
                                        FED ABA      )66
                                        ( ABA      66 )
                                        CITY NATIONAL BANK
                                        CY NATL BK LA
                                        LOS ANGELES            CA US

Beneficiary Account:    555167636

Beneficiary Customer:                   Sender To Receiver Information:
ESCROW EXPERTS,INC TRUST ACCOUNT        /ACC/ESCROW NO 005094-JD
24800 CHRISANTA DRIVE ,NO 100           /INS/ JENNIFER DAVIDSON ESCROW
MISSION VIEJO,CA 92691                  /INT/OFFICER
LOS ANGELES        CA        US

Instruction Code:

Additional charges may be deducted from the payment amount by the receiving bank and intermediaries ("Receiving Bank"). If this payment cannot be completed for any reasons control of Royal Bank of Canada ("RBC") you may ask RBC for a refund and RBC shall make to secure a refund from Receiving Bank and return those amounts to you. If conversion o requested, the rate of exchange will be RBC's rate established at the time the refund i If you need to make an inquiry regarding this payment or if you ask that RBC attempt to cancel this payment, additional charges will apply (except in cases where an error has l to you, delay in making the payment or decide not proceed with the payment or which ca refund of the payment amount and any applicable fees.
    RBC will not be responsible for any loss or damage suffered by you except where the negligence on the part of RBC, and in any such case RBC will not be liable for any indi consequential or exemplary damages (including but not limited to loss of profits), regar cause of action. In making the payment, your personal or business information and information on the recipient, may be revealed to third parties. Since the payment will travel, the information related to it will be subject to the laws of the jurisdiction in which the information is located or processed at that time.

SIGNATURE(S):

https://webocc2.fg.rbc.com/secureapp/yxb0/ftfx/R2RReceiptPrintPopUp.jsp?year=2020&month=7&day=...        8/31/2020

EXHIBIT "E"

**Wire Amount**     50020.00 USD

Reference #:        7541920201023057

Related Reference #

Status              Acknowledged

*Originator R/T
Originator BIC      CUCXCATTCAL
Contact Name/Phone  ELAINE

Destination R/T
Destination BIC     122016066

*Amount             50020.00
*Payment Method     Credit Account
*Payment Currency   US DOLLAR

Buy Exchange Rate   1.00000000
Sell Exchange Rate  1.00000000
Exchange Rate Date  Oct 23, 2020

**Beneficiary**
Account             555167636
*Name               ESCROW EXPERTS INC. TRUST ACCOUNT
*Address            24800 CHRISANTA DRIVE, 100
                    MISSION VIEJO
City                VIEJO
Province/State      CARAZO
Postal/Zip Code     92691
*Country            UNITED STATES

Recipient Info
(140 chars max)

Correspondent Bank (Show)

Special Instructions   REASON PROGRESS PAYMENT FOR
                       THE HOUSE IN PALM SPRINGS TO
                       ESCROW

Billing Date
Billing Status      Ready

---

**Customer Pays**     50050.00 USD

Direction           Outgoing
Value Date          Oct 23, 2020

*Originator Branch  CONNECT FIRST CREDIT UNION
*Address            DOWNTOWN CORE

City                CALGARY
Province/State      AB
Postal/Zip Code     T2P 2Y9
Country             CANADA

*Destination Branch     CITY NATIONAL BANK
Address
City                    LOS ANGELES
Province/State          CA
Postal/Zip Code         90071
*Country                UNITED STATES
Reason for Transfer

Service Charge      30.00

Special Rate Ref #

**Sender**
Type                Corporate
*Name               REPURPOSE SOLUTIONS (
Company Rep.        JOSEPH COLANGELO
*Address            INC. .
*City               CALG
*Province/State     AB
*Postal/Zip Code    T2S 1W2
*Country            CANADA

*ID Type            Account Number
*ID Country         CANADA
*ID Issuer          118
*ID Value           2714921
Phone Number
Additional Sender Info(33
chars max.)
Nature of Primary   COMMERCIAL FURNISHING
Business

Intermediary Bank (Show)

Internal Notes

Settlement Date
Settlement Status   Ready

PEARL #3

EXHIBIT "F"

Page 1 of 1

ROYAL BANK OF CANADA
CALGARY AB-BRITANNIA BRANCH

ROYAL FUNDS TRANSFER
2020 DEC 09

Branch Ref No...    02649-20344-199998
ICN............                              From

Value Date.....    2020 DEC 09
Send Ref....

Payment Amount............$              500,000.00 USD  Charges For...  Waived
Client Rate...............        1.00000000              Serial No.....
Conversion Amount.........$
Wire Payment Fee Collected $              0.00 USD
Not Present Fee...........$               0.00 USD
IBAN Fee..................$               0.00 USD
Total Fees................$               0.00 USD
Client Pays Amount........$          500,000.00 USD  SRF Client No... 961385069

Ordering Customer:                      Remittance Information:
MONIKA LOUISE JENSEN

            AB T2S 1W2

Debit Branch Name (Princ)..    CALGARY AB-BRITANNIA BRANCH           Account
            SOLE-OWNER ........
Debit Branch Name (Fees)...    CALGARY AB-BRITANNIA BRANCH

Intermediary Institution:                 Account With Institution:
                                          FED ABA
                                          ( ABA 12          )
                                          CITY NATIONAL BANK
                                          CY NATL BK LA
                                          LOS ANGELES                CA US
Beneficiary Account:   555167636

Beneficiary Customer:                     Sender To Receiver Information:
ESCROW EXPERTS, INC TRUST ACCOUNT         /ACC/ESCROW NO 005094-JD
24800 CHRISANTA DRIVE ,NO 100             /INS/ JENNIFER DAVIDSON ESCROW
MISSION VIEJO,CA 92691                    /INT/OFFICER
LOS ANGELES        CA        US

Instruction Code:

    Additional charges may be deducted from the payment amount by the receiving bank and/or its
intermediaries ("Receiving Bank"). If this payment cannot be completed for any reason beyond the
control of Royal Bank of Canada ("RBC") you may ask RBC for a refund and RBC shall make best efforts
to secure a refund from Receiving Bank and return those amounts to you. If conversion of funds is
requested, the rate of exchange will be RBC's rate established at the time the refund is converted.
If you need to make an inquiry regarding this payment or if you ask that RBC attempt to amend or
cancel this payment, additional charges will apply (except in cases where an error has been
established on the part of RBC or the Receiving Bank). RBC may, in its discretion and without notice
to you, delay in making the payment or decide not to proceed with the payment, in which case RBC shall
refund of the payment amount and any applicable fees.
    RBC will not be responsible for any loss or damage suffered by you except where there has been
negligence on the part of RBC, and in any such case RBC will not be liable for any indirect,
consequential or exemplary damages (including but not limited to loss of profits), regardless of the
cause of action. In making the payment, your personal or business information and information on the
recipient, may be revealed to third parties. Since the payment will travel, the information related
to it will be subject to the laws of the jurisdiction in which the information is located or
processed at that time.

SIGNATURE(S) :

EXHIBIT "G"

Connect

## Wire Transfer Form

**Date:** Dec. 10, 2020     **Transit:** 75419-899            **Employee Name:** _____

**ORIGINATING MEMBER** *(All fields are mandatory and must be completed in full)*

| | |
|---|---|
| **Member or Business Name:** Repurpose Solutions Canada Inc. | **Occupation/ Nature of Business:** Commercial Furnishing |
| **Physical Address:** | **Date of Birth:** |
| **City/Prov Postal Code:** | **Name of Signing Authority:** *(For Business Accounts Only)* Joseph Cobangelo |
| **Debit Account #:** | |
| **Phone:**     (Bus)          (Res) | |

Note: Please ensure updates to member personal information are reflected in DNA

**Reason for Wire:** Progress payment for the house in Palm Springs to Escrow

### RECEIVING CREDIT UNION/FINANCIAL INSTITUTION

**Name** *(mandatory)*: City National Bank

**Address** *(mandatory)*: 350 S. Grand Ave. Floor 5 Los Angeles, CA 90071, USA
*(Include City, Province/State, and Country)*

**Route/Transit (Canada):**

**Swift/Sort Code (International):** CINAUS6L

**ABA Number (US)/ BSB (Australia)**

*(one of the above is required)*     Refer to Procedures for more specific guidelines

### BENEFICIARY INFORMATION

**Name** *(mandatory)*: Escrow Experts, Inc. Trust Account

**Address** *(mandatory)*:
*(Include City, Province/State, and Country)*

24800 Chrisanta Drive, #100 Mission Viejo, CA 92691 USA

**Phone number:** 949-458-3919     *(Required for the Beneficiary in all Asian Countries)*

**Account #:**

**IBAN:**

Applies to All European wires and additional International countries

**Canadian Correspondent Bank Name, Address and SWIFT** *(Mandatory when Canadian Funds are sent internationally):*

**Special Instructions/Comments:**

| | |
|---|---|
| **CURRENCY:** USD | **WIRE CUT-OFF TIMES** |
| **(If Other, identify)** | |
| **Amount:** 600,000 | |
| *(If $100,000 CAD or greater, confirm if the member is a Politically Exposed Domestic Person)* | **Within Canada** |
| **Exchange Rate:** | • CAD Currency – 3:00 pm |
| **Can. Equivalent:** | • Foreign Currency – 1:00 pm |
| **Service Charge:** $30.00US–From US account to US Bank | **International and US – 1:00 pm** |
| **TOTAL:** 600,030USD | |

### PAYOR AUTHORIZATION

By signing below, I/we hereby acknowledge as follows:

The Credit Union shall be responsible only for performing the funds transfer services described herein and shall be liable only for its gross negligence or wilful misconduct in performing these services. The Credit Union is not required to seek clarification from anyone regarding ambiguous instructions or incomplete or inaccurate information.

The Credit Union shall not be liable for acts or omissions based upon your instructions (or its reliance upon any information or data provided by you), or for acts or omissions by you or any other person (including, without limitation, any funds transfer system, any beneficiary's bank, or any beneficiary, none of which shall be deemed the Credit Union's agent). Without limitation, the Credit Union shall be excused from delaying or failing to act if caused by legal constraint, interruption of transmission or communications facilities, equipment failure, war, government actions, riot, telecommunications interruption or power supply failure, unavailability of or interruption or delay in third party systems, third party networks or services, failure of third party software or a failure or malfunction of third party equipment which could not be reasonably foreseen, emergency conditions, strikes, or other circumstances beyond The Credit Union's control. In addition, the Credit Union shall be excused from delaying or failing to execute a transfer if it would result in the Credit Union violating any applicable law or any rule or regulation of CREDIT UNION CENTRAL ALBERTA LIMITED (or its affiliates) or any governmental regulatory authorities. In no event shall the Credit Union be liable for any consequential, special, punitive, or indirect losses or damages incurred relating to the foregoing services including, without limitation, subsequent wrongful dishonor resulting from the Credit Union's acts or omissions.

That I/we shall be liable to the Credit Union for and shall indemnify and hold the Credit Union harmless from any and all claims, causes of action, damages, expenses (including reasonable attorney's fees and other legal expenses), foreign institution fees, wire transfer costs, liabilities and other losses which do not arise from the gross negligence or wilful misconduct of the Credit Union including, without limitation, those resulting from: (i) the return of a wire transfer by any financial institution; (ii) the reliance by the Credit Union upon any instructions, information or data provided by you; (iii) the Credit Union's debiting or crediting of the account of any person as requested by you; and (iv) the failure to act or the delay by any financial institution other than the Credit Union.

I authorize the above transfer of funds and understand that funds are irrevocable and cannot be recalled by the payor.

| Payor Signature | Completed By (please print) | Manager Approved Name (please print) | Manager Signature |
|---|---|---|---|

Email SIGNED COPY IMMEDIATELY to CFCU Wires; attach original to transaction receipt and file in Day Work



EXHIBIT "H"

Jennifer Davidson
Escrow Officer

Date: December 18, 2020
Escrow No.: 005094-JD

## AMENDED ESCROW INSTRUCTIONS

Property Address:      2 Makena Lane,  Rancho Mirage, CA  92270

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS
FOLLOWS:

## RELEASE OF FUNDS PRIOR TO CLOSE OF ESCROW

Provided Escrow Holder is in receipt of signed escrow instructions from all parties and clearance of all
funds on deposit, Escrow Holder is hereby directed to release immediately the sum of $499,980.00 to the
Seller herein to be applied towards the total purchase price of $2,595,000.00 and the Seller's proceeds at
the close of escrow is hereby reduced accordingly. Release of funds is non-refundable. The undersigned
acknowledge that this release prior to the close of escrow is authorized regardless of the present
condition of the above numbered escrow, the present condition of title, as represented on any existing
report or otherwise, and/or the ultimate closing of this escrow. In consideration of the foregoing instruction
to release funds from this escrow prior to its close, the parties to this escrow, by execution of these
instructions, do hereby agree to hold Escrow Holder harmless from any claims, damages, costs and/or
Attorney's fees that may arise from the inability of this escrow to close upon the scheduled or extended
date of close, even if such inability arises from the title company in this escrow not being able to issue a
policy of title between the time of release of funds from this escrow as instructed hereby, and the time that
this escrow is scheduled to close, liens and other pertinent matters could possibly arise and/or record
against the property to be conveyed hereunder, which Escrow Holder may not have sufficient funds or
means to satisfy. Nothing herein shall be construed, however, to imply that Escrow Holder suspect that
such liens/matters will arise. The undersigned further agree that Escrow Holder will be not be responsible,
nor requested, to aid in the recovery of said funds in the event this escrow is not consummated, any
return of funds which may be required will be handled outside of escrow.

**POSSESSION PRIOR TO THE CLOSE OF ESCROW:** Buyer is to be given possession of the property
prior to the close of escrow. Escrow HOlder is relieved of all liability in regards to early possession.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

**SELLERS:**

Stonebridge Ventures, LLC, a California Limited
Liability Company

DocuSigned by:

By:  Joshua R. Pukini
      53A0965F36E44BC
      Joshua R. Pukini

**BUYERS:**

DocuSigned by:

Joe Colangelo
D1DED5FE3954451
Joe Colangelo

873F6A07F42141F
Monika L. Jensen

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

74361 Highway 111, Suite 7,  Palm Desert, California 92260

A true and correct copy of the foregoing document entitled (*specify*):  Secured Creditor and Pre-Petition Buyer Joe
Colangelo's Rebuttal to Chapter 7 Trustee's Reply to Opposition

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
07/06/2023           , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

See attached

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  07/06/2023           , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

The Honorable Judge Theodor C. Albert
USBC - Central District of California
411 W. Fourth Street, suite 5085
Santa Ana, California 92701

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)                  , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/06/2023 | Christopher Hewitt | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE CONTINUED PAGE

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- **James C Bastian**   jbastian@shulmanbastian.com
- **Arturo Cisneros**   arturo@mclaw.org, CACD_ECF@mclaw.org
- **Arturo Cisneros (TR)**   amctrustee@mclaw.org,
  acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **Rika Kido**   rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **William Malcolm**   bill@mclaw.org, cvalenzuela@mclaw.org
- **W. Derek May**   wdmlaw17@gmail.com, r48266@notify.bestcase.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Thomas J Polis**   tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- **Hamid R Rafatjoo**   hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Lee S Raphael**   ecfcca@ecf.courtdrive.com, cmartin@pralc.com
- **Timothy M Ryan**   tryan@theryanfirm.com, ecf@theryanfirm.com
- **Allan D Sarver**   ADS@asarverlaw.com
- **Summer M Shaw**   ss@shaw.law,
  shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Nathan F Smith**   nathan@mclaw.org,
  CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com;cvalenzuela@mclaw.org
- **Diana Torres-Brito**   dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov