NICHOLAS GEBELT
15150 Hornell Street
Whittier, CA 90604
Tel.: 562.777.9159
Fax: 562.946.1365
Email: ngebelt@goodbye2debt.com

Attorney for Plaintiff, Monika Jensen

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>STONEBRIDGE VENTURES, LLC,<br><br>Debtor | Chapter 7<br><br>Bankruptcy No.: 8:22-bk-11556-TA<br><br>Adversary No.: 8:23-ap- |
| Monika Jensen,<br><br>Plaintiff,<br><br>v.<br><br>STONEBRIDGE VENTURES, LLC;<br>BRENTWOOD FINANCE COMPANY, LLC;<br>RENEWABLE FARMS, INC.;<br>AB CAPITAL, LFD, INC.;<br>ARTURO CISNEROS, TRUSTEE;<br>JOE COLANGELO;<br><br>Defendants | **MONIKA JENSEN'S ADVERSARY COMPLAINT, PURSUANT TO FED. R. BANKR. P. 7001(1), (2), AND (9), FOR:**<br><br>1. **DECLARATORY RELIEF DETERMINING THE VALIDITY, VALUE, AND PRIORITY OF HER LIEN ON THE PROCEEDS OF THE SALE OF THE PROPERTY AT 2 MAKENA LANE, RANCHO MIRAGE, CA 92270, UNDER CALIFORNIA CIVIL CODE § 3050; AND**<br>2. **TURNOVER OF $550,034.58 OF THE SALE PROCEEDS THAT IS SUBJECT TO HER SECURED CLAIM.** |

**THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; DEFENDANTS: STONEBRIDGE VENTURES, LLC; BRENTWOOD FINANCE COMPANY, LLC; RENEWABLE FARMS, INC.; AB CAPITAL, LFD, INC.; ARTURO CISNEROS, CHAPTER 7 TRUSTEE; JOE COLANGELO; AND ALL PARTIES IN INTEREST:**

Please take notice that Plaintiff, Monika Jensen ("Ms. Jensen"), hereby submits this

Adversary Complaint (the "Complaint"), Pursuant To Fed. R. Bankr. P. 7001(1), (2), And (9), For:

1. Declaratory Relief Determining The Validity, Value, And Priority Of Her Lien On The

Proceeds Of The Sale Of The Property At 2 Makena Lane, Rancho Mirage, CA 92270, Under

California Civil Code § 3050; And 2. For Turnover Of $550,034.58 Of The Sale Proceeds That Is

Subject To Her Secured Claim.

## I.    JURISDICTION AND VENUE:

1.      This Court has jurisdiction over the adversary proceeding under 28 U.S.C. §

157(b)(2)(E) and (H), and 28 U.S.C. § 1334.  This matter is a core proceeding filed pursuant to 28

U.S.C. § 157(b)(2)(E), (K), and (O).  Ms. Jensen commences this adversary proceeding pursuant

to Fed. R. Bankr. P. 7001(1), (2), and (9).  The underlying bankruptcy case is the Chapter 7

bankruptcy case entitled, *In re: Stonebridge Ventures, LLC*, case number 8:22-bk-11556-TA,

pending in the Santa Ana Division of the United States Bankruptcy Court for the Central District

of California.  Pursuant to Fed. R. Bankr. P. 7008 Ms. Jensen hereby consents to the entry of final

orders or judgment by the Bankruptcy Judge.

### A.  Subject Matter Jurisdiction:

2.      Ms. Jensen commences this adversary proceeding pursuant to Fed. R. Bankr. P.

7001(1), (2), and (9).  This matter is a core proceeding filed pursuant to 28 U.S.C. § 157(b)(2)(E),

(K), and (O).  As such, the matter of the Complaint arises in a case under title 11, so this Court

has jurisdiction to adjudicate the matter pursuant to 28 U.S.C. § 157(b)(1) .

### B.  *In Personam* Jurisdiction:

3.      This Court has personal jurisdiction over Defendant, Stonebridge Ventures, LLC

("Stonebridge"), because Stonebridge is the debtor in the underlying bankruptcy case.  This Court

has personal jurisdiction over Defendant, AB Capital LFD, Inc. ("AB Capital"), because

Stonebridge transferred title to the property at 2 Makena Lane, Rancho Mirage, CA 92270 (the

"Property") to AB Capital shortly before Stonebridge filed its bankruptcy petition.  This Court has

personal jurisdiction over Defendant, Brentwood Finance Company, LLC ("Brentwood"), and

Defendant, Renewable Farms, Inc. ("Renewable Farms"), because these entities have recorded

liens against the Property.  This Court has jurisdiction over Defendant, Arturo Cisneros (the

"Trustee"), because he is the Chapter 7 Trustee in the underlying bankruptcy case.  This Court has

jurisdiction over Defendant, Joe Colangelo ("Mr. Colangelo"), because Mr. Colangelo initiated the

2

SDG-03-02-23-01-NWG

adversary proceeding with adversary number 8:23-ap-01078-TA.

**C.**    **Venue:**

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

**II.**    **THE PARTIES:**

5.    Plaintiff, Ms. Jensen, is an individual residing in Palm Desert, California.  Ms. Jensen is a secured creditor in the instant Chapter 7 case.

6.    Defendant, Stonebridge, is the Chapter 7 debtor in the underlying bankruptcy case. According Stonebridge's Chapter 11 bankruptcy petition (the "Petition"), Stonebridge's place of business is 15 Corporate Plaza Drive, Suite 200, Newport Beach, CA 92660; and Joshua Pukini as its director and CFO.  The California Secretary of State's website at https://bizfileonline.sos.ca.gov/search/business, lists the same address for Stonebridge, and Joshua Pukini as its agent.

7.    According to its website at https://www.brentwoodfinance.com, Defendant, Brentwood, is a company that provides business financing and commercial loans.  On its website Brentwood lists its address as 180 S. Spruce Avenue, Suite 155, S. San Francisco, CA 94080.  The California Secretary of State's website lists the same address for Brentwood, and Laura Benetti as its agent.

8.    According to its website at https://www.renewablefarms.com, Defendant, Renewable Farms, helps "people grow food for a healthier more Sustainable Lifestyle."  However, the website does not provide an address for Renewable Farms.  The California Secretary of State's website states that Renewable Farms is a nonprofit corporation with address at 468 S. Coate Road, Orange, CA 92869; and Aaron Flora as its agent.

9.    According to its website at https://trustabcapital.com, Defendant, AB Capital, "is a private real estate investment firm and California Finance Lender headquartered in Newport Beach that specializes in real estate secured debt investments in California."  The site lists its address as 15 Corporate Plaza, Suite 200, Newport Beach, CA 92660 — the same address as Stonebridge — and Ryan Young and Joshua Pukini as its founders and leaders.  As noted in paragraph 6, above, Joshua Pukini is also the director and CFO of Stonebridge.  The California Secretary of State's

3

1    website lists the same address for AB Capital, and Ryan Young as its agent.

2    10.    According to the California State Bar's website at

3    https://apps.calbar.ca.gov/attorney/Licensee/Detail/120494, Defendant, Arturo Cisneros (the

4    "Trustee"), is an attorney licensed to practice in California, with address at  Malcolm & Cisneros,

5    2112 Business Center Drive, Irvine, CA 92612.  Mr. Cisneros is the Chapter 7 Trustee in the

6    underlying bankruptcy case.

7    11.    Defendant, Mr. Colangelo, is an individual and a creditor in the underlying

8    bankruptcy case, who lived at the Property until sometime in May 2023.  His last known address is

9    626 N. Palmway, Lake Worth, FL 33460.  On July 24, 2023, Mr. Colangelo filed an adversary

10   complaint in the underlying bankruptcy case, which initiated the adversary proceeding with

11   adversary number 8:23-ap-01078-TA.  According to the complaint, Mr. Colangelo's counsel of

12   record is Christopher Hewitt, whose address is 74361 Highway 111, Suite 7, Palm Desert, CA

13   92260.

14   **III.    <u>STANDING</u>:**

15   12.    Ms. Jensen is a creditor in the underlying bankruptcy case.  She had a secured

16   vendee lien against the Property on the petition date.  When the Trustee sold the Property at

17   auction, Ms. Jensen's lien became a lien against the sale proceeds.  Therefore, she has standing to

18   ask the Court to determine the value, validity, and priority of her claim against the sale proceeds,

19   and to turn over her portion of the sale proceeds to her.

20   **IV.     <u>GENERAL ALLEGATIONS</u>:**

21   **A. <u>Mr. Colangelo's Debts To Ms. Jensen, And His Partial Repayment Of Those</u>**

22   **<u>Debts</u>:**

23   13.    On February 10, 2014, Mr. Colangelo signed a promissory note, committing to

24   repaying Ms. Jensen $55,000 that she lent him.  According to the note, interest starts accruing on

25   September 1, 2014, at the Alberta Treasury Branch prime rate (which has varied from month-to-

26   month from 1% in September 2014 to the current 7.2%) plus 2% per annum.  A true and correct

27   copy of the promissory note is attached as Exhibit A.  Just the 2% portion of the accrued interest

28   over the nine-year period from September 1, 2014, to August 31, 2023, is $10,730.10 (= $(1.02^9 \times$

4

SDG-03-02-23-01-NWG

$55,000) - $55,000).  Therefore, ignoring the Alberta Treasury Branch prime rate portion of the accrued interest, the current balance on the note is $65,730.10[1].

14.    On October 29, 2014. Mr. Colangelo signed a promissory note, committing to repaying Ms. Jensen $350,000 that she lent him.  A true and correct copy of the promissory note is attached as Exhibit B.

15.    On August 14, 2017, Mr. Colangelo signed a promissory note, committing to repaying Ms. Jensen $575,870, by December 31, 2020.  As indicated in the note, that sum included money she lent him, and money he owed her for services rendered.  A true and correct copy of the promissory note is attached as Exhibit C.

16.    In 2020, Mr. Colangelo repaid Ms. Jensen $550,000 of the more than $991,600.10 (= $65,730.10 + $350,000 + $575,870) he owed her on the notes.  She used that money toward the purchase of the Property.

17.    Mr. Colangelo also owes Ms. Jensen $549,000 (= $623,000 – (50,000 + 12,000 + $12,000)) for salary and sales bonuses earned in 2020 for her work for Mr. Colangelo's company, Repurpose Solutions Canada, Inc.  A true and correct copy of Mr. Colangelo's communications regarding this obligation, and documentation of the partial payments, is attached as Exhibit D.

**B.  The Changing Status Of The Property:**

18.    On March 6, 2015, Stonebridge, Inc., recorded a grant deed in the County of Riverside, granting title to the Property to Stonebridge.  A true and correct copy of the recorded grant deed is attached as Exhibit E.

19.    On April 24, 2020, Ms. Jensen and Mr. Colangelo together signed a California Residential Purchase Agreement And Joint Escrow Instructions (the "Agreement") to purchase

---

[1] When the Alberta Treasury Branch prime rate portion of the accrued interest is added, the actual balance is significantly larger.  However, because that rate changes from month-to-month, the calculation is a bit complicated.  Therefore, for arithmetic simplicity Ms. Jensen will use the $65,730.10 value in paragraph 16 below, since it establishes that the $550,034.58 she paid was indeed her own money.  She reserves the right to include the additional accrued interest in any claim she has against Mr. Colangelo.

5

SDG-03-02-23-01-NWG

the Property from Stonebridge.  A true and correct copy of the Agreement is attached as Exhibit F.

20.     On August 31, 2020, Ms. Jensen wired $50,034.58 from her savings account with the Royal Bank of Canada to Jennifer Davidson, the escrow officer at Escrow Experts, Inc., the escrow company handling the payments for the purchase of the Property.  As Ms. Jensen and Mr. Colangelo did not marry until February 2021, this money was her separate property.  It served as her portion of the first installment toward the purchase of the Property.  True and correct copies of the monthly statement for her account for the period from August 12, 2020, to September 11, 2020, showing the August 31, 2020, transfer of $50,034.58 to Escrow Experts, and the associated Royal Funds Transfer receipt are attached as Exhibit G.

21.     On December 9, 2020, Ms. Jensen wired $500,000.00 from her savings account with the Royal Bank of Canada to Escrow Experts, Inc.  Since she wired this money prior to February 2021, this money was also her separate property.  It served as her portion of the second installment toward the purchase of the Property.  True and correct copies of the monthly statement for her account for the period from November 12, 2020, to December 11, 2020, showing at the top of the second page the December 9, 2020, transfer of $500,000.00 to Escrow Experts, and the associated Royal Funds Transfer receipt are attached as Exhibit H.

22.     Each time Ms. Jensen made a payment, a statutory lien was created against the Property, pursuant to Cal. Civ. Code § 3050, which provides:

> One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back, in case of a failure of consideration.

Thus, until the sale of the Property, Ms. Jensen had two statutory liens against the Property:  One created on August 31, 2020, for $50,034.58, the other created on December 9, 2020, for $500,000.00.  Upon the sale of the Property, the liens became liens against the sale proceeds.

6

SDG-03-02-23-01-NWG

23.     On June 30, 2021, Stonebridge borrowed $1,850,000 from Brentwood, and recorded a deed of trust against the Property in favor of Brentwood in Riverside County.  A true and correct copy of the recorded deed of trust is attached as Exhibit I.

24.     On July 29, 2021, Stonebridge borrowed $250,000 from Renewable Farms, and recorded a deed of trust against the Property in favor of Renewable Farms in Riverside County.  A true and correct copy of the recorded deed of trust is attached as Exhibit J.

25.     On June 14, 2022, the Coachella Valley Water District  ("Coachella") recorded a lien for a water payment delinquency of $1,890.02 against the Property in Riverside County.  A true and correct copy of the recorded lien is attached as Exhibit K.

26.     On September 1, 2022, Stonebridge fraudulently transferred title to the Property to AB Capital for no consideration.  Joshua Pukini, the director and CFO of Stonebridge, and also the founder and leader of AB Capital, signed the grant deed.  A true and correct copy of the grant deed recorded in Riverside County on September 6, 2022, is attached as Exhibit L.

27.     On October 18, 2022, AB Capital transferred title of the Property to the Trustee. A true and correct copy of the quitclaim deed, recorded on October 25, 20202, in Riverside County, is attached as Exhibit M.

**C.  Stonebridge's Bankruptcy Case:**

28.     On September 9, 2022, Stonebridge filed the Petition — three days after Joshua Pukini recorded the grant deed transferring title to the Property to AB Capital.

29.     On September 23, 2022, Stonebridge and the Office of the United States Trustee stipulated to the appointment of a Chapter 11 Trustee.

30.     On September 29, 2022, the Court appointed the Trustee as the Chapter 11 Trustee.

31.     On April 3, 2023, the Court entered an order converting the case to one under Chapter 7.

32.     On July 25, 2023, the Court conducted an auction of the Property.  At the hearing the Court reserved determination of the priority of the claims against the proceeds pending the resolution of disputes over value, validity, and priority of the claims.

7

SDG-03-02-23-01-NWG

**V.    FIRST CLAIM FOR RELIEF:  REQUEST FOR DECLARATORY RELIEF DETERMINING THE VALIDITY, VALUE, AND PRIORITY OF MS. JENSEN'S LIEN ON THE PROCEEDS OF THE SALE OF THE PROPERTY AT 2 MAKENA LANE, RANCHO MIRAGE, CA 92270, UNDER CALIFORNIA CIVIL CODE § 3050**

**(AGAINST ALL DEFENDANTS)**

33.    Ms. Jensen realleges and incorporates each and every allegation set forth above as though fully set forth in this first claim for relief.

34.    The $550,034.58 Ms. Jensen paid toward the purchase of the Property was her own separate property.

35.    Each of Ms. Jensen's statutory liens was created prior to the liens of Brentwood, Renewable Farms, and Coachella, so her liens have priority over those liens.

36.    Ms. Jensen is entitled to judgment in her favor declaring that she has a valid statutory lien of $550,034.58, pursuant to Cal. Civ. Code § 3050, against the proceeds of the sale of the Property; and that lien is in first position.

**VI.    SECOND CLAIM FOR RELIEF:  TURNOVER OF $550,034.58 OF THE SALE PROCEEDS THAT IS SUBJECT TO MS. JENSEN'S SECURED CLAIM**

**(AGAINST THE TRUSTEE)**

37.    Ms. Jensen realleges and incorporates each and every allegation set forth above as though fully set forth in this second claim for relief.

38.    Ms. Jensen is entitled to judgment in her favor, requiring the Trustee to turnover to her the $550,034.58 Ms. Jensen paid toward the purchase of the Property.

**VII.    RELIEF REQUESTED:**

Ms. Jensen respectfully asks the Court to enter judgment in her favor declaring that she has a valid statutory lien under Cal. Civ. Code § 3050 for $550,034.58 on the proceeds of the sale of the Property, and that her lien has priority over all other liens against the Property.

Ms. Jensen also respectfully asks the Court to include in the judgment a requirement that the Trustee turnover $550,034.58 of the sale proceeds to her in satisfaction of her statutory lien.

1         Ms. Jensen also respectfully asks the Court to include in the judgment an award of

2    reasonable costs and attorney's fees to the extent allowed by law; and such other relief that the

3    Court deems just and proper.

4

5    Dated: August 5, 2023.        Respectfully submitted,

6                        **LAW OFFICES OF NICHOLAS GEBELT**

7

8

9               By:_____

10                     Nicholas Gebelt, Attorney for
                       MONIKA JENSEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

ADVERSARY COMPLAINT

# Exhibit A

TO:                     MONIKA JENSEN
PRINCIPAL SUM:          $55,000.00
DUE DATE:               ON OR BEFORE SEPTEMBER 1ST, 2014
INTEREST RATE:          0.00% UNLESS AND UNTIL DEFAULT
FULLY OPEN

# PROMISSORY NOTE

IN CONSIDERATION of the Lender's promise to advance to the Borrower the sum of **FIFTY-FIVE THOUSAND—00/100 ($55,000.00) DOLLARS** commencing on the 10th day of February, 2014 and continuing on to the 1st day of September, 2014, I, **JOSEPH COLANGELO (the "Borrower),** of the City of Calgary, in the Province of Alberta, do hereby promise to pay to the order of **MONIKA JENSEN (the "Lender"),** at the City of Calgary, in the Province of Alberta, on or before September 1st, 2014, the sum of **FIFTY-FIVE THOUSAND---00/100 ($55,000.00) DOLLARS** Canadian, interest free unless or until default, and upon such default interest shall be payable at Alberta Treasury Branches' prime rate plus **TW0 (2%) PER CENT PER ANNUM,** as calculated from time to time from the date of default.

Repayment may be made in whole or in part without notice or bonus of interest without penalty and shall be fully open.

I hereby waive notice of default, demand, notice of dishonour or presentment.

DATED at the City of Calgary, in the Province of Alberta, this 10th day of February, 2014.

_____
JOSEPH COLANGELO



# Exhibit B

## DEMAND PROMISSORY NOTE

EFFECTIVE DATE: October 2̲7̲ , 2014                    PRINCIPAL AMOUNT: $350,000.00 Cdn.

FOR VALUE RECEIVED, the undersigned promises to pay to MONIKA LOUISE JENSEN of 27 Windsor Crescent SW, Calgary, Alberta, T2V 1V5 (the "Creditor"), the principal sum of THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00), within thirty (30) days of DEMAND made by the Creditor.

This Promissory Note is non-interest bearing.

All or any portion of the principal sum may be repaid at any time without notice, bonus or penalty.

The undersigned hereby waives presentation of this Promissory Note for payment, protest and notice of non-payment.

_____

JOSEPH COLANGELO

**Land Titles Act**
**(Alberta)**

**COLLATERAL MORTGAGE**

**JOSEPH COLANGELO** (the "**Mortgagor**") has become or may hereafter become indebted, obligated or liable, whether directly or indirectly, absolutely or contingently, to **MONIKA LOUISE JENSEN** of **27 Windsor Crescent SW, Calgary, Alberta, T2V 1V5** (the "**Mortgagee**").

As collateral security for the payment by the Mortgagor of **THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00)** (the "**Principal Sum**") being the amount of a loan from the Mortgagee to the Mortgagor, the Mortgagor has agreed to execute and deliver this mortgage.

The Mortgagor, being or being entitled to become registered as owner of an estate in fee simple possession, subject however to such encumbrances, liens and interests as are notified on the Certificate of Title therefor, in those lands located in the Province of Alberta and described as follows:

> PLAN 1110803
> BLOCK 2
> LOT 17
> EXCEPTING THEREOUT ALL MINES AND MINERALS

(which, with the buildings and improvements located thereon, are collectively called the "Land"), in consideration of the premises, COVENANTS with the Mortgagee as follows:

**Article 1.0**
**Terms of Payment**

**1.1    Prescribed Payments**

The Mortgagor shall pay the Principal Sum and all other sums which, pursuant to the terms of this mortgage, are or may become owing by the Mortgagor to the Mortgagee (the "**Indebtedness**") ON DEMAND, without interest thereon. Payment shall be made at par, in lawful money of Canada, to the Mortgagee as directed by the Mortgagee in writing.

**Article 2.0**
**Advances**

**2.1    No Obligation on Mortgagee to Advance**

This Mortgage is being granted as collateral security for repayment of certain indebtedness concurrently arising by the Mortgagor to the Mortgagee as more fully set forth in Article 11 hereof.

## Article 3.0
## Payment of Realty Taxes

**3.1    Mortgagor to Pay Realty Taxes**

The Mortgagor shall:

(a)    as and when the same fall due (on the due date) pay and satisfy all taxes, rates, levies, charges, rents, assessments, statute labour or other impositions whatsoever rated, charged, assessed or imposed no matter by whom or by what authority or howsoever on the Land or on the Mortgagor or Mortgagee, in respect of the Land (collectively "Taxes") and provide to the Mortgagee receipts or proof of payment of such Taxes within 30 days of the payment of same; and

(b)    send to the Mortgagee all tax bills and other notices respecting the imposition of Taxes on the Land forthwith after receipt by the Mortgagor, and the Mortgagor authorizes the Mortgagee to obtain any tax or assessment information concerning the Land directly from the municipal taxing authority having jurisdiction over the Land.

**3.2    Taxes on Mortgagor's Default**

In addition to the Mortgagee's rights set out in Article 10 of this mortgage, on default of the payment by the Mortgagor of Taxes, the Mortgagee may pay such Taxes and any liens, charges and encumbrances which may be charged against the Land. In such event, all monies expended by the Mortgagee shall be added to the Indebtedness, and repaid by the Mortgagor to the Mortgagee forthwith, and until repaid shall be a charge on the Land. If the Land or any part thereof becomes subject to sale or forfeiture for nonpayment of Taxes while any sum remains unpaid under this mortgage, the Mortgagee may acquire title and rights of the purchaser at any sale, or the rights of any other person or corporation becoming entitled on or under any such forfeiture, or the Mortgagee may pay, either in its own name or in the Mortgagor's name or on the Mortgagor's behalf, any sums necessary to be paid to redeem the sold or forfeited Land, and to re-vest the Land in the Mortgagor, and the Mortgagor hereby nominates and appoints the Mortgagee agent of the Mortgagor to pay such monies on the Mortgagor's behalf and in the Mortgagor's name, and any monies so expended by the Mortgagee shall be repaid by the Mortgagor forthwith and until repaid shall be a charge on the Land, or in the alternative the Mortgagee shall have the right to bid on and purchase the Land at any tax sale and shall thereupon become the absolute owner thereof.

## Article 4.0
## Insurance

**4.1    Mortgagor Shall Insure**

The Mortgagor will, at the Mortgagor's expense, forthwith:

(a)    insure or cause to be insured, and during the continuance of this mortgage keep insured, all buildings and improvements on, or which may hereafter be erected or

placed on, the Land, and plate glass and all equipment and machinery of the Mortgagor therein, thereon or used in connection therewith, and all contents thereof to the extent such contents are the property or responsibility of the Mortgagor (all of which shall be included in the expression "**Mortgaged Premises**") from and against fire (with extended coverage) and all risks and perils (as such coverage is commonly known in the insurance industry) for the full and undepreciated replacement value thereof together with coverage, as applicable, against loss or damage caused by explosion of any steam boiler or other object or machine generating or operated by steam, any closed circulation hot water heating system, any pressure vessel system and any air conditioning system, by the escape of water from any sprinkler system or other piping within or operated upon or in the Mortgaged Premises. The Mortgagee may, from time to time and at any time, specify additional risks or perils and coverage to be obtained and maintained by the Mortgagor as the Mortgagee may further require or consider appropriate in the circumstances, including such endorsements to existing policies as the Mortgagee so considers appropriate. All such insurance shall be with extended coverage and replacement cost endorsements and in such amounts, all as the Mortgagee may reasonably require, to the full insurable value or sufficient to protect the Mortgagee and the Mortgagor from becoming co-insurers in respect of any loss, and in each case with an insurance company or companies acceptable to the Mortgagee. The Mortgagor will not do or suffer anything whereby the said policy or policies may be vitiated, and will pay all premiums and sums of money necessary for such purposes as the same become due;

(b)     as required by the Mortgagee, obtain and maintain general public liability and property damage insurance against claims for personal injury, death or property damage occurring in or about the Land, such insurance to afford protection in such amounts as the Mortgagee may from time to time reasonably require;

(c)     if any portion of the Land is now, or is at any time during the term hereof rented or leased by the Mortgagor to any tenant or tenants, at the option of the Mortgagee, keep the Land insured, under a policy satisfactory to the Mortgagee, against loss of rental income in an amount as the Mortgagee may from time to time require.

## 4.2    Stipulations to Contract of Insurance

All contracts of insurance shall be carried with licensed insurers, shall, except for the general public liability and property damage insurance, show loss payable firstly to the Mortgagee (subject only to the interests of any holder of a prior mortgage) as the Mortgagee's interest may appear, and shall have attached thereto and forming a part thereof a mortgage clause approved by the Mortgagee. The Mortgagor shall forthwith deliver to the Mortgagee the policy or policies of insurance and, prior to their due date when requested by the Mortgagee, evidence proving payment of the premiums and renewal premiums therefor. All contracts or policies of insurance shall be subject to the deletion from the policy of any provision requiring reconstruction of the Land or adjacent sites.

### 4.3    On Loss

In the event of any claim or loss in respect of either the Land or the Mortgaged Premises:

(a)    The Mortgagor will promptly on the event of any loss or damage, at its own expense, furnish all necessary proofs and do all necessary acts to enable the Mortgagee to receive payment of the insurance monies.

(b)    If any cheque issued by an insurer in complete or partial settlement of an insurance claim other than the coverage for general public liability insurance is given, sent or delivered to the Mortgagor or the solicitor or agent of the Mortgagor, the Mortgagor shall cause such cheque to be delivered to the Mortgagee forthwith and if any such cheque is made payable to the Mortgagor alone or jointly to the Mortgagor and another or others, the Mortgagor shall forthwith endorse and deliver such cheque over to the Mortgagee, and the Mortgagor does hereby constitute the Mortgagee as the Mortgagor's true and lawful attorney to receive and endorse any such cheque for and on behalf of the Mortgagor.

(c)    All insurance proceeds received may at the option of the Mortgagee either be applied forthwith towards substantially rebuilding, reinstating or repairing the Mortgaged Premises or towards the payment of Indebtedness (whether or not then due) in such manner as the Mortgagee shall determine, or may be paid in whole or in part to the Mortgagor or its successors-in-title or its assigns, or may be applied or paid partly in one way and partly in another, as the Mortgagee may determine.

### 4.4    On Mortgagor's Failure to Insure

If the Mortgagor fails to keep any of the Land or the Mortgaged Premises insured as aforesaid, or to deliver such policy or policies or evidence proving payment of premiums or renewal premiums when requested by the Mortgagee, or to produce to the Mortgagee at least 30 days before the termination of such insurance evidence of the renewal thereof, the Mortgagee may (but shall not be obliged to), without advice to the Mortgagor, insure the Land, or any part thereof, and for such amount or amounts as the Mortgagee may consider expedient, and the amount of any premiums paid by the Mortgagee shall be added to the Indebtedness and shall be a charge upon the Land.

### Article 5.0
### Maintenance of Property, Alterations and Construction

### 5.1    Mortgagor's Obligation to Maintain and Repair Land

The Mortgagor shall maintain and keep the Land and the Mortgaged Premises in a good, clean, serviced and repaired state as would a prudent and reasonable owner. The Mortgagor shall not commit or permit any waste to the Land. Should the Mortgagor fail to observe and adhere to this covenant, after notice by the Mortgagee to the Mortgagor, the Mortgagee shall have the privilege of (but shall not be obliged to) bringing the Land to a satisfactory state of cleanliness and repair, and any and all costs thereof to the Mortgagee shall be added to the Indebtedness. If the

Mortgagee elects to clean or repair the Land, as above provided, the Mortgagee shall do so as agent of the Mortgagor, and not as a Mortgagee in possession.

**5.2    No Alteration Unless Otherwise Permitted**

The Mortgagor shall not make or permit to be made any additions or alterations to the Land without the written consent of the Mortgagee; and the Mortgagor shall not use the Land or permit the Land to be used, without the written consent of the Mortgagee, for a purpose other than that disclosed to the Mortgagee in the application for this mortgage.

**5.3    Inspections**

The Mortgagee or agent of the Mortgagee may, at any time, enter upon the Land to inspect the Land and Mortgaged Premises for any purpose whatsoever.

**Article 6.0**
**Revenue from Property**

**6.1    Mortgagor to Maintain Records and Provide Financial Statements**

If the Mortgagor derives income from the Land:

(a)    The Mortgagor will maintain full and correct books and records showing in detail the earnings and expenses of the Land, and will permit the Mortgagee and its representatives to examine the said books and records and all supporting vouchers and data at any time and from time to time upon request by the Mortgagee. The Mortgagor shall within 30 days of the Mortgagee's request, furnish the Mortgagee a statement showing in detail all such earnings and expenses since the last such statement, verified by statutory declaration of the Mortgagor, or the chief executive officer of the Mortgagor, if the Mortgagor is a corporation.

(b)    The Mortgagor shall provide to the Mortgagee quarterly rent rolls and operating statements in respect to the Land in a form satisfactory to the Mortgagee. Additionally, the Mortgagor shall, within 90 days after each fiscal year end of the Mortgagor, provide to the Mortgagee current financial statements, prepared and certified by a chartered accountant acceptable to the Mortgagee, which statements shall include a balance sheet, a statement of income and expenditures with supporting notes and schedules.

**6.2    Assignment of Leases and Rents**

If the Land or any portion thereof now or at any time hereafter produces rental revenue, the Mortgagor hereby assigns, transfers and sets over unto the Mortgagee all leases in existence, and those created in the future, and all rents due, accruing due or at any time becoming due under all leases or tenancies, present or future made in respect of the Land or any part thereof, to have and to hold unto the Mortgagee until all Indebtedness owing and all obligations of the Mortgagor in this mortgage have been fully paid and fulfilled, subject to the following provisions:

{N:/CDOX/0073409/000001/C5723520.DOC; 1}

(a)     The Mortgagee shall not exercise any rights or remedies under this section until the Mortgagor is in default for at least 1 month in respect to any payment due from the Mortgagor to the Mortgagee hereunder.

(b)     Whenever the Mortgagor is in default of any of the provisions of this mortgage the Mortgagee may give notice to the tenants of the Land to pay the rent to the Mortgagee and the Mortgagee may collect the rents and distrain rents in the name of the Mortgagor.

(c)     The Mortgagee may give good and sufficient receipts and discharges for rents received.

(d)     The Mortgagee may apply the rent collected by it towards arrears and other Indebtedness under this mortgage, then towards the payment of taxes, insurance, heating, repairs, renovations and upkeep and other expenses or carrying charges connected with the Land.

(e)     Where any discretionary powers are vested in the Mortgagee or its agents, such powers may be exercised by any officer, investment manager or manager of the Mortgagee, or its appointed agents, as the case may be.

(f)     The Mortgagee shall under no circumstances become mortgagee in possession, or liable to account to the Mortgagor or credit the Mortgagor with any monies on account of this mortgage except those which shall come into its hands, and be subject to all deductions and payments made out of the rentals received from the Land as herein provided.

(g)     The Mortgagee may exercise the rights conferred upon it under this section without the formal appointment of a receiver under other provisions of this mortgage and without first commencing formal legal proceedings against the Mortgagor.

(h)     If all defaults under this mortgage have been cured, the Mortgagor may resume collection of the rentals until further default has occurred, whereupon the Mortgagee may re-exercise its rights hereunder and thereafter at any time further default occurs.

(i)     The Mortgagor shall not assign, pledge or hypothecate any lease, leases, or tenancies, now or hereafter existing in respect of the Land or the rents or revenues due or to become due thereunder, or any part thereof, other than to the Mortgagee; nor shall the Mortgagor grant any general assignment of book debts which would cover such rentals.

(j)     The Mortgagor shall not collect more than 2 months rental in advance.

(k)     Neither the taking of this assignment nor anything done in pursuance hereof shall make the Mortgagee liable in any way, as landlord or otherwise, for performance of any covenants, obligations and liabilities under any leases or tenancies.

(l)     The exercise by the Mortgagee of the rights and remedies under this section or of any collateral security with respect to rents shall not entitle the Mortgagor to redeem this mortgage.

(m)     Any conflict between the provisions of this section and any collateral security shall be resolved by providing the Mortgagee with the more favourable alternative.

**Article 7.0**
**Subdivision and Condominiumization**

## 7.1     Subdivision of the Land

Except as otherwise provided in this mortgage no subdivision of the Land or the title or titles thereto in whole or in part shall be made by the Mortgagor without the prior written consent of the Mortgagee which consent may not be withheld unreasonably; and in such event the Mortgagor will execute and deliver to the Mortgagee all such instruments and assurances as the Mortgagee may require to secure its rights under this mortgage to the Mortgagee's satisfaction as against all parts of the Land notwithstanding any plan or other subdivision registration.

## 7.2     The Land as a Condominium

If the Land now or at any time hereafter comprises or includes a unit or units in a condominium created pursuant to the *Condominium Property Act* of Alberta or any successor to such statute and/or the common property interests related to such unit or units:

(a)     The Mortgagor will observe and perform all the covenants, duties, obligations and provisions required to be observed or performed under this mortgage, the *Condominium Property Act* of Alberta, and all amendments thereto, and any legislation passed in substitution thereof, and the by-laws as amended of the Condominium Corporation of which the Mortgagor is a member by virtue of the Mortgagor's ownership of the Condominium unit charged by this mortgage (the "**Condominium Corporation**").

(b)     Without limiting the generality of paragraph 7.2(a) the Mortgagor will pay promptly when due any and all common expense levies, charges, assessments, installments or payments assessed by the Condominium Corporation or any authorized agent on its behalf, and all other contributions to the common costs of the condominium and any other charges by the Condominium Corporation charged to the owner of the Land (all of which assessments and charges are hereinafter referred to as "**unit charges**").

(c)     If the Mortgagor defaults in the Mortgagor's obligations to pay unit charges or breaches any other obligation referred to in paragraph 6.3(a) then, regardless of any other action taken by the Condominium Corporation, such default or breach shall constitute a default under this mortgage and the Mortgagee may exercise all or any of its rights and remedies as for any other default under this mortgage.

(d)    Without limiting any other remedy which the Mortgagee may have under this mortgage, if the Mortgagor is in default in the observance or performance of any provisions of the *Condominium Property Act* or the condominium by-laws or in the payment of unit charges, and if such default may be cured by the Mortgagee, the Mortgagee may at its option (but it shall not be obligated to) cure such default or otherwise perform the obligations of the Mortgagor and for that purpose may enter upon and occupy the Land (and no such entry or occupation shall constitute an entry into possession by the Mortgagee) and all costs, charges and expenses incurred by the Mortgagee or other person appointed for such purposes as determined by the Mortgagee shall be due and payable by the Mortgagor to the Mortgagee on demand, and until paid shall be added to the Indebtedness and form a charge upon the Land, secured by this mortgage. No such right of payment or performance by the Mortgagee shall prevent it from exercising its option to demand the whole Indebtedness as due and payable upon the Mortgagor's default or failure or to exercise any of the other rights or remedies of the Mortgagee under this mortgage.

## Article 8.0
## Environmental Covenants

### 8.1    Environmental Repair

The Mortgagor, at its sole cost and expense, shall comply, and cause its tenants, agents and invitees to comply, with environmental laws and with all permits and licenses issued by any regulatory authority with respect to the storage, discharge and removal of hazardous substances, and shall pay, immediately when due, the cost of removal of any such hazardous substances. The Mortgagor shall pay the cost of any improvements necessary to deal with such hazardous substances and shall keep the Land free and clear of any lien imposed pursuant to any law including all environmental laws. If the Mortgagor fails to do so, after notice to the Mortgagor and the expiration of the earlier of:

(a)    any applicable cure period under this mortgage charge; or

(b)    the cure period under the applicable law, rule, regulation or order;

the Mortgagee may, at its sole option, and without any responsibility or liability in connection therewith, enter upon the Land and do the work required and the cost thereof will be added to the Indebtedness and become immediately due and payable, or alternatively at the option of the Mortgagee, may declare the Mortgage to be in default.

### 8.2    Notices

The Mortgagor covenants and agrees that it will forthwith provide a copy to the Mortgagee of any notice of any violation of environmental law or any potential violation of environmental law or any matter referred to herein relating to the Land or its use.

### 8.3 Environmental Assessments and Audits

The Mortgagor shall permit the Mortgagee to conduct assessments or audits of the Mortgaged Premises and inspections and appraisals of all or any of its records, business and assets at any time or from time to time to monitor compliance with environmental laws; provided, however, it is expressly understood that the Mortgagee has no responsibility to monitor such compliance or to take any action in the event of noncompliance. The Mortgagor will provide to the Mortgagee copies of any environmental report or studies in respect of the Land that it receives or possesses from time to time.

### 8.4 Exclusion of Liability

No action taken by the Mortgagee in doing remedial work or repairs or in conducting assessments, audits, appraisals or inspections as provided in this Article shall constitute the Mortgagee as a mortgagee in possession and the Mortgagee by taking any such action shall not be considered to have care, management or control of the Land; it being expressly understood that the Mortgagor has complete responsibility to ensure compliance with all environmental laws and the Mortgagee's right to monitor such compliance shall not be construed as a responsibility to ensure such compliance.

### 8.5 Indemnity

The Mortgagor hereby indemnifies the Mortgagee, its officers, directors, employees, agents, shareholders and members, and agrees to hold each of them harmless, from and against any and all losses, liabilities, damages, costs, demands, expenses and claims of any and every kind whatsoever relating to any breach or non-compliance with environmental laws by the Mortgagor or its directors, officers, servants, agents, tenants or invitees, or relating to any hazardous substances handled, placed, held, located or disposed of on or in the Land or related to any claims or proceedings (whether by civil action or related to any enforcement or recovery action under statute or regulation) for injury or damage to person or property from or relating directly or indirectly to the use, presence, handling, disposal, escape or release of any hazardous substances on or from the Land. Such indemnity includes, without limitation, indemnity against:

(a)     all costs (including legal expenses on a solicitor and his own client basis) of defending, counter-claiming and/or claiming against the Mortgagor or any third parties in respect of any such action or matter;

(b)     all costs of every kind and nature whatsoever incurred by the Mortgagee directly in order, either, to comply with environmental laws or to remediate the Land to comply with environmental laws; and

(c)     any and all costs, liabilities, claims or damages arising out of a settlement of any action entered into by the Mortgagee with or without the consent of the Mortgagor, which at any time or from time to time may be paid, incurred or asserted against any of the parties indemnified hereby for, with respect to, or as a direct or indirect result of the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from, the Land or into or upon

any land, the atmosphere, or any water course, body of water or wetland, of any hazardous substances.

This indemnity shall survive foreclosure or judicial sale (including by **"Rice Order"**) of the Land and any other exercise of the Mortgagee's rights hereunder or under any security collateral hereto.

**Article 9.0**
**Events Which May Accelerate Payment**

9.1     **Events of Default Generally**

The principal and other Indebtedness shall become immediately due and payable, whether with or without prior demand therefor, and the security hereby constituted shall become enforceable, in each of the following events (each being an **"event of default"**):

(a)     The Mortgagor defaults in payment when due, in whole or in part, of the Principal Sum under this mortgage or any other Indebtedness.

(b)     The Mortgagor defaults in observance or performance of any other covenants, agreements, terms, conditions, representations and warranties herein on the part of the Mortgagor to be kept, observed and performed.

(c)     Any other provision of this mortgage deems the occurrence of an act or event as an event of default for the purposes of this mortgage or as an act or event giving rise to the Mortgagee's exercise of its rights and remedies hereunder.

(d)     The Mortgagor commits any act of waste upon the Land or abandons the development.

(e)     The Mortgagor breaches or defaults under or in respect of any other security or assurance now or hereafter granted or made by the Mortgagor in favour of the Mortgagee.

(f)     An order is made or an effective resolution is passed for the dissolution, liquidation or winding-up of the Mortgagor.

(g)     The Mortgagor becomes insolvent or makes an assignment or bulk sale of its assets, or if a petition in bankruptcy is filed or presented against it.

(h)     Any execution, sequestration, writ of extent or any other process of any court becomes enforceable against the Mortgagor, or if a distress or analogous process is levied upon the property (or any part thereof) of the Mortgagor or any guarantor hereof for an aggregate cumulative amount of more than Five Thousand ($5,000.00) Dollars, provided that such execution, sequestration, writ of extent or other process is not in good faith being contested by the Mortgagor.

(i)     The Mortgagor ceases or threatens to cease to carry on its business or the Mortgagor commits or threatens to commit any act of bankruptcy.

(j)     The Mortgagor permits any sum which has been admitted as due by the Mortgagor or is not disputed to be due by it and which forms or is capable of being made a charge upon any of the Land to remain unpaid for thirty (30) days after proceedings have been taken to enforce the same.

(k)     There occurs a material adverse change in the financial condition of the Mortgagor.

(l)     In the sole opinion of the Mortgagee, an adverse change has occurred in or to the risk associated with the development, any matter or thing related to the development, the Mortgagor or a guarantor, or there has occurred any act or action which would or could reasonably be expected to adversely affect the financial position of the Mortgagor and or any guarantor, or both or either of their ability to fulfill their respective obligation under or pursuant to this mortgage.

(m)     Any representation of warranty furnished by or on behalf of the Mortgagor pursuant to or in connection with this mortgage (regardless of the form thereof or whether contained herein or elsewhere), whether as an inducement to the Mortgagee to extend any credit to or to enter into this or any other mortgage with the Mortgagor or otherwise, proves to have been false or misleading in any material respect or to have omitted any substantial contingent or unliquidated liability or claim against the Mortgagor.

## 9.2    Cross-Default

If the Mortgagee requires other agreements, documents, mortgages, chattel mortgages, assignments of rentals, assignments of leases or any other securities (collectively the "**Other Securities**") in connection with this mortgage loan or as a condition precedent to the advance of the loan proceeds, then the Mortgagor shall provide the Other Securities required in form and content satisfactory to the Mortgagee. Default under this mortgage shall constitute default under the Other Securities, and default under any of the Other Securities shall constitute default hereunder. The Mortgagee may, on default under any of the Other Securities pursue its remedies separately under each of the Other Securities and this mortgage, or jointly all together, or jointly one with any other or others of the Other Securities and this mortgage, without any of the rights and remedies of the Mortgagee not so pursued merging therewith or with any action or judgment with respect thereof.

## 9.3    Prior Mortgages

The Mortgagor hereby covenants to perform and observe and satisfy all the terms, covenants and conditions to be performed and observed by the Mortgagor under the terms of any prior mortgages, agreements for sale or other charges (the "**Prior Encumbrance**") registered against the title to the Land. If the Mortgagor defaults under any Prior Encumbrance, then the Mortgagor shall be considered to be in default of this mortgage. The Mortgagee may make any payment or

cure any default under any Prior Encumbrance and any amount or amounts so paid together with all costs, charges, expenses and outlays of the Mortgagee thereby incurred shall be added to the Indebtedness, shall be payable forthwith by the Mortgagor to the Mortgagee without demand and shall be a charge on Land, and the Mortgagee shall have the same rights and remedies to enforce payment thereof as it would have in the event of default in payment of the Indebtedness.

**9.4    Due on Sale**

The Indebtedness shall, at the election of the Mortgagee, immediately become due and payable in full without notice by, or demand from, the Mortgagee if the Land or any part thereof or interest therein is, either without the prior consent in writing of the Mortgagee or not strictly in accordance with this mortgage, sold, transferred, conveyed, foreclosed, exchanged, assigned, mortgaged, leased or otherwise disposed of, or if the Mortgagor enters into an agreement to effect any of the foregoing whether by registered or unregistered instrument and whether for valuable or nominal consideration (and if the Mortgagor is a corporation, any change in control of the corporation shall constitute a default under this section). Nothing herein shall be construed as permitting the Mortgagor to prepay this mortgage in whole or in part and the acceptance by the Mortgagee of any installment payment or other payment under this mortgage from any entity other than the Mortgagor shall not constitute a waiver by the Mortgagee of its rights under this section, or a consent by the Mortgagee of any such sale or disposal of the Land as above described. If the Mortgagee gives its consent to any such sale or disposition as above described, it may do so upon such conditions as it may in its absolute discretion decide, including, without limiting the generality of the foregoing, the execution and delivery by a transferee or successor in whole or in part of the Mortgagor's title to the Land, of an agreement in the Mortgagee's form whereby such transferee or successor assumes all covenants and obligations of the Mortgagor under this mortgage and all other security documents given by the Mortgagor with respect to this mortgage.

**Article 10.0**
**Mortgagee's Rights on Default**

**10.1    Remedies Generally**

The Mortgagor agrees that on default by the Mortgagor, the Mortgagee may exercise all rights, privileges and remedies at law and in equity available to a Mortgagee in respect to such default, to be exercised in such manner and in such order as the Mortgagee, in its absolute discretion, deems fit and appropriate. Without limitation, the Mortgagee may exercise any of the following remedies on the Mortgagor's default, without notice to the Mortgagor:

(a)    The Mortgagee may, at the expense of the Mortgagor and when and to such extent as the Mortgagee deems advisable, observe and perform or cause to be observed and performed such covenants, agreements, provisos or stipulations.

(b)    The Mortgagee may at such time as the Mortgagee deems necessary and without the concurrency of any person, enter upon the Land and may make such arrangements for completing the construction, repairing or putting in order of any buildings or other improvements on the Land, and for inspecting, taking care of,

leasing, collecting the rents of and managing generally the Land as the Mortgagee deems expedient.

(c)  The Mortgagee may send or employ an inspector or agent to inspect and report upon the value, state and condition of the Land, and a solicitor to examine and report upon the title to the Land.

(d)  The Mortgagee or agent of the Mortgagee may enter into possession of the Land and, whether in or out of possession, collect the rents and profits thereof and make any demise or lease of the Land or any part thereof, for such terms and periods and at such rents as the Mortgagee thinks proper; and the power of sale hereunder may be exercised either before or after and be subject to any such demise or lease.

(e)  The Mortgagor hereby grants full power, right and license to the Mortgagee to enter, seize and distrain upon the Land, or any part thereof, and by distress warrant to recover by way of rent reserved as in the case of demise of the Land or any part thereof, as much of the Indebtedness as remains in arrears and unpaid, together with costs, charges and expenses incurred in effecting such levy or distress.

(f)  The Mortgagee may forthwith take such proceedings to obtain repayment of the Indebtedness and realize on its security under this mortgage by foreclosure or by whatever other action it may by law be entitled to do.

(g)  The Mortgagee may sell and dispose of the Land with or without entering into possession and with or without notice to the Mortgagor or any party interested in the Land; and all remedies competent may be resorted to. All the rights, powers and privileges granted to or conferred upon the Mortgagee under and by virtue of any statute or by this mortgage may be exercised, and no want of notice or publication or any other defect, impropriety or irregularity shall invalidate any sale of the Land hereunder. The Mortgagee may sell, transfer and convey any part of the Land on such terms of credit, or part cash and part credit, secured by contract, agreement for sale, mortgage, or otherwise, as is in the opinion of the Mortgagee the most advantageous, and for such price as can reasonably be obtained therefor. In the event of a sale on credit, or part cash and part credit, whether by way of contract for sale or by conveyance or transfer and mortgage, the Mortgagee is not to be accountable for or charged with any monies until the same are actually received in cash. The sales may be made from time to time of any portion or portions of the Land to satisfy parts of the principal overdue. The Mortgagee may make stipulations as to the title or evidences or commencement of title or otherwise as the Mortgagee shall deem proper. The Mortgagee may buy in or rescind or vary any contract for sale of the Land and any resale thereof. On any sale or release, the Mortgagee shall not be answerable for loss occasioned thereby, and for any of such purposes the Mortgagee may make and execute all agreements and assurances that the Mortgagee shall deem advisable or necessary. If any sale held by the Mortgagee under and by virtue of the laws of the Province of Alberta under the power of sale herein contained should prove abortive, the Mortgagee may take foreclosure proceedings in respect of the Land in accordance with the

provisions of the laws of the Province of Alberta in that behalf. If any deficiency on account of the Indebtedness remains due to the Mortgagee after realizing all the Land, the Mortgagor will pay to the Mortgagee on demand the amount of such deficiency. In the exercise of any of the foregoing powers, the Mortgagor hereby appoints the Mortgagee the attorney of the Mortgagor for the purpose of making any agreements and assurances on behalf of the Mortgagor as the Mortgagee may deem necessary. The proceeds of any sale hereunder shall be applied as above provided for or in payment of Indebtedness and costs on a solicitor-and-client basis, the balance, if any, to be paid to the Mortgagor.

(h)    The whole of the Indebtedness shall, at the option of the Mortgagee, become due and payable.

(i)    The Mortgagee may exercise each of the foregoing powers without notice to the Mortgagor.

## 10.2    Expenses of Mortgagee

All expenses, fees, charges or payments incurred, expended or paid by the Mortgagee (whether with the knowledge, consent, concurrence or acquiescence of the Mortgagor or otherwise) including, without limitation:

(a)    all solicitors', inspectors', valuators' and surveyors' fees and expenses for drawing and registering this mortgage and for examining the Land and the title thereto, and for making or maintaining this mortgage a first charge (or subject only to the prior encumbrances acceptable to the Mortgagee);

(b)    all sums which the Mortgagee advances for insurance premiums, property taxes, or rates;

(c)    all sums which the Mortgagee expends in payment of prior liens, charges, encumbrances or claims charged or to be charged against the Land or on this mortgage or against the Mortgagee in respect of this mortgage;

(d)    all sums which the Mortgagee expends in maintaining, repairing, restoring or completing the construction on the Land;

(e)    the cost of inspecting, leasing, managing or improving the Land, including the price or value of any goods of any sort or description supplied for use on the Land;

(f)    all sums paid to a Receiver (as hereinafter defined);

(g)    the cost of exercising, enforcing or attempting to exercise or enforce any right, power, remedy or purpose hereunder provided or implied, including an allowance for the time, work and expenses of the Mortgagee or any agent or employee of the Mortgagee; and

(h)    the Mortgagee's solicitors' costs as between solicitor-and-client incurred or paid by the Mortgagee as a result of any default hereunder or under any Other Securities, or for endeavoring to collect with or without suit any money payable hereunder, or for taking, recovering or keeping possession of the Land, and generally in any other proceedings, matter or things taken or done to protect or realize this security or any Other Securities;

are deemed secured hereby and shall be or constitute a charge or charges against the Land, and shall be repayable to the Mortgagee on demand and all such sums shall be deemed to constitute part of the Indebtedness.

## 10.3   Appointment of a Receiver

If at any time there is default under the provisions of this mortgage, the Mortgagee may with or without entry into possession of the Land or any part thereof, appoint a receiver, a manager or a receiver and manager (any of the foregoing being hereunder called a **"Receiver"**) of the Land or any part thereof and of the rents and profits thereof and with or without security, and may from time to time remove any Receiver and appoint another in its stead. In making any such appointment or removal, the Mortgagee shall be deemed to be acting as the agent or attorney for the Mortgagor. Such appointment may be made at any time either before or after the Mortgagee has entered into or taken possession of the Land or any part thereof and the statutory declaration of an officer of the Mortgagee as to default under the provisions of this mortgage, shall be conclusive evidence thereof. Upon the appointment of a Receiver, the following provisions shall apply:

(a)    The Receiver shall be the irrevocable agent or attorney of the Mortgagor for the collection of all rents falling due in respect of the Land or any part thereof, whether in respect of any tenancies created in priority to this mortgage or subsequent thereto.

(b)    The Receiver may, at the discretion of the Mortgagee and in writing under its corporate seal, be vested with all or any of the powers and discretions of the Mortgagee.

(c)    The Mortgagee may from time to time, in writing, fix the remuneration of a Receiver who shall be entitled to deduct the same out of the rents from the Land or from the proceeds of the judicial sale of the Land.

(d)    The Receiver shall, so far as concerns responsibility for its acts or omissions, be deemed the agent or attorney of the Mortgagor and in no event the agent of the Mortgagee, and the Mortgagee shall not in any way be responsible for any acts or omissions (including negligence, misconduct or misfeasance) on the part of the Receiver.

(e)    The appointment of every such Receiver by the Mortgagee shall not create any liability on the part of the Mortgagee to the Receiver in any respect, and such appointment or anything which may be done by any such Receiver or the removal

of any such Receiver or the termination of any such receivership shall not have the effect of constituting the Mortgagee a mortgagee in possession in respect of the Land or any part thereof.

(f) The Receiver shall have the power to rent any portion of the Land which may become vacant, for such term and subject to such provisions as it may deem advisable or expedient, and in so doing the Receiver shall act as the attorney or agent of the Mortgagor and it shall have authority to execute under seal any lease of such portion of the Land in the name of and on behalf of the Mortgagor, and the Mortgagor undertakes to ratify and confirm whatever the Receiver may do in respect of the Land.

(g) The Receiver shall have full power to complete any unfinished construction upon the Land with the intent that the Land and the buildings thereupon when so completed shall be a complete structure as represented by the Mortgagor to the Mortgagee for the purpose of obtaining this mortgage.

(h) The Receiver shall have full power to manage, operate, amend, repair, alter or extend the Land or any part thereof in the name of the Mortgagor for the purpose of securing the payment of rental from the Land or any part thereof.

(i) The Receiver may, with the consent in writing of the Mortgagee, borrow money for the purpose of carrying on any business required in the Mortgaged Premises, or for the maintenance of the Land or Mortgaged Premises or any part or parts thereof, or for other purposes approved by the Mortgagee, and any amounts so borrowed shall form a first charge upon the Land in priority to the security created by this mortgage.

(j) The Receiver shall not be liable to the Mortgagor to account for monies or damages other than cash received by it in respect of the Land or any part thereof, and out of such cash so received the Receiver shall, subject to the approval of the Mortgagee, in the following order, pay:

 (i) all expenses including, without limitation, costs as between solicitor and client made or incurred in connection with the management, operation, amendment, repair, alteration or extension of the Land or any part thereof;

 (ii) interest, principal and other Indebtedness which is or becomes charged upon the Land in priority to this mortgage, and all taxes, insurance premiums and every other proper expenditure made or incurred in respect to the Land or any part thereof;

 (iii) to the Mortgagee, the balance to be applied to the Principal Sum;

 (iv) into a reserve account in the name of the Receiver, an appropriate sum of money as a reserve fund for unusual, emergency or lump sum payments or expenses with respect to the Land; and

(v)    any surplus thereafter remaining in the hands of the Receiver, to the Mortgagor.

(k)    Save as to claims for an accounting under paragraph (j) of this section, the Mortgagor hereby releases and discharges the Receiver from every claim of every nature which may arise or accrue to the Mortgagor or any person claiming through or under the Mortgagor by reason or as a result of anything done by the Receiver under the provisions of this section 10.3, unless such claim is by the direct and proximate result of dishonesty or gross neglect.

(l)    The power of sale, foreclosure and any other remedies of the Mortgagee may be exercised either before, concurrent with, during, or after the appointment of a Receiver hereunder.

## 10.4    Selection of Security at Mortgagee's Option

If the Mortgagee holds additional security or if there is more than one parcel of Land forming part of the Land, nothing herein shall be construed to obligate the Mortgagee to take action on all of its security or against all of the Land and the Mortgagee shall be entitled on default, to choose which security and upon which parcel or parcels of the Land it wishes to realize. By realizing upon some but not all of the security or parcels of Land the Mortgagee shall reserve the right to proceed at a later date against the balance of the security or parcels of Land.

## 10.5    Money from Land

The Mortgagee shall not be charged with any monies receivable or collectible out of the Land or otherwise, except those actually received; and all revenue of the Land received or collected by the Mortgagee from any source other than payment by the Mortgagor may, at the option of the Mortgagee, be used in maintaining or insuring or improving the Land, or in payment of taxes or other charges against the Land, or applied on the mortgage account, and the Mortgagee may retain such monies received or collected, in suspense account and shall not be under any liability to pay interest on any sums in suspense account. The Mortgagee shall not, by reason of the collection of any monies receivable or collectible out of the Land, be deemed to be a mortgagee in possession.

## 10.6    Accommodations

No extension of time, waiver, or other indulgence given by the Mortgagee to the Mortgagor, or anyone claiming under the Mortgagor, shall in any way affect or prejudice the rights of the Mortgagee against the Mortgagor, any guarantor, or any other person liable for payment of the Indebtedness.

## 10.7    Liability of Mortgagor

No sale or other dealings by the Mortgagor with the Land or any part thereof, shall in any way change the liability of the Mortgagor or in any way alter the rights of the Mortgagee as against the Mortgagor or any other person liable for payment of the Indebtedness.

## Article 11.0
### Commitment of Loan Terms

**11.1    Application**

The Mortgagor acknowledges that it is indebted in the amount of the Principal Sum to the Mortgagee. The mortgage is granted as collateral security for the payment of the indebtedness under a loan made or to be made by the Mortgagee to the Mortgagor. For the better securing to the Mortgagee the payment of the Principal Sum and other monies hereby secured by the mortgage, the Mortgagor does hereby mortgage and charge to the Mortgagee all of the Mortgagor's estate and interest in the Land.

**11.2    Promissory Note**

Advances hereunder may be made and evidenced pursuant to one or more Promissory Note made by Mortgagor in favour of Mortgagee and this mortgage is granted as additional and collateral security to and not in substitution for any such Promissory Note and any renewals, replacements or substitutions thereof, evidencing the obligation to pay the same principal as herein referred to. Payments made under any Promissory Note shall be credited against payments due hereunder, and vice versa, and notwithstanding anything contained in the Promissory Note or any renewals, replacements or substitutions thereof, if the whole of the unpaid Indebtedness becomes due and payable upon default or breach by the Mortgagor of any covenant, agreement or provision of this mortgage, the whole of the unpaid principal under the Promissory Note or any renewals, replacements and substitutions thereof shall likewise forthwith become due and payable.

## Article 12.0
### General and Interpretation

**12.1    Representations to Authority and Power**

The Mortgagor represents and warrants to the Mortgagee that the Mortgagor is duly and appropriately authorized and empowered to grant this mortgage, incur the Indebtedness and observe, adhere to and perform (as the case may be) all of the Mortgagor's obligations under this mortgage without either breach or default under any other obligation (whether imposed by law or by contract) or promise made by the Mortgagor or any further consent or approval of any person, party, authority or regulator; and, further, that this mortgage constitutes a valid and binding obligation of the Mortgagor to the Mortgagee.

**12.2    Covenants**

The Mortgagor further covenants and agrees with the Mortgagee that the Mortgagor:

(a)    has good title to the Land;

(b)    has the right to mortgage the Land;

(c)    on default the Mortgagee shall have quiet possession of the Land, free from all encumbrances and adverse claims (subject only to the prior encumbrances acceptable to the Mortgagee);

(d)    will execute such further assurances of the Land as may be requisite; and

(e)    has done no act to encumber the Land.

## 12.3    Expropriation

If an early payout of the Indebtedness is caused by an act other than that of the Mortgagor or Mortgagee, including but not limited to expropriation proceedings or sale of the Land under the *Builders' Lien Act* of Alberta:

(a)    The Mortgagor hereby assigns to the Mortgagee that portion of any proceeds which becomes due and payable to the Mortgagor by an expropriating authority upon an expropriation of the Land or any portion thereof equal to the difference, if any, between all Indebtedness at the date of the expropriation, including principal and compensation payments, and the compensation payable or paid to the Mortgagee for the expropriation of its interest in the Land or any portion thereof by the expropriating authority.

(b)    The Mortgagor shall forward to the Mortgagee copies of any documentation relating to an expropriation or a proposed expropriation of the Land or any portion thereof forthwith upon receipt of the said documentation by it.

(c)    The Mortgagor shall execute and deliver any further or additional documentation which the Mortgagee in its sole discretion deems necessary to effect the above assignment or which is requested by the expropriating authority.

(d)    For the purposes of this section, the "date of expropriation" means the date the Mortgagor ceases to be the registered owner of the Land, or any portion thereof, and "the expropriating authority" means the Crown or any individual or entity empowered to acquire lands by expropriation.

(e)    Notwithstanding anything to the contrary contained herein, if the Mortgagor or the Mortgagee receives notice of intention to expropriate in relation to the Land, or any portion thereof, at the option of the Mortgagee, the whole of the Indebtedness (including principal and compensation payments) under this mortgage at the date of the expropriation, shall immediately become due and payable in like manner and to all intents and purposes as if the time for payment of the said balance had fully come and expired.

(f)    Service of a copy of this mortgage on the expropriating authority shall be sufficient authority for the expropriating authority to deliver proceeds to the Mortgagee in accordance with the terms of the assignment contained herein.

## 12.4    Severability

If any section, paragraph or clause or any part thereof is illegal, or unenforceable, invalid for any reason, then such section, paragraph or clause or part thereof shall be severable from this mortgage without affecting the validity or enforceability of any other part of this mortgage.

## 12.5    Successors and Assigns

When the context makes it possible, **"Mortgagee"** includes the successors and assigns of the Mortgagee; **"Mortgagor"** includes heirs, executors, administrators, successors and assigns of the Mortgagor; **"person"** includes any body corporate or politic; the singular includes the plural; plural includes the singular; and the masculine gender includes the feminine. If there is more than one entity comprising the Mortgagor, all covenants herein contained and implied are to be construed as joint and several and heirs, executors, administrators, successors and assigns of any party executing this mortgage are jointly and severally bound by the covenants, provisos and agreements herein contained or implied.

## 12.6    Discharge

The Mortgagee shall have a reasonable time after payment of the Indebtedness in full to prepare and execute a discharge of this mortgage all legal and other expenses for the preparation and execution of such discharge shall be borne by the Mortgagor.

## 12.7    Law

This mortgage is made pursuant to the *Land Titles Act* of Alberta and any amendments thereto.

## 12.8    Fixtures and Chattels

The Mortgagor hereby acknowledges and agrees that as security for the Indebtedness, the Mortgagor hereby charges all fixtures and chattels considered fixtures on or in the Land, as the case may be, including major appliances (such as refrigerators, ovens and stoves, garbage compactors, dishwashers, clothes washers and clothes dryers, television satellite systems and telecommunications systems, garburators and built-in vacuum cleaners), heating, ventilating and air conditioning systems (inclusive of all distribution outlets), all plumbing fixtures (including hot water heaters and water conditioners) and all electric light fixtures.

**Article 13.0**
**Charge**

## 13.1    Grant of Mortgage

For the better securing to the Mortgagee the repayment in the manner aforesaid of the Indebtedness, the Mortgagor hereby mortgages and charges to the Mortgagee all of the Mortgagor's estate and interest in the Land above described.

IN WITNESS WHEREOF the Mortgagor has with all due power and authority executed these presents on the ___ day of October, 2014.

| | )  |
|---|---|
| _____ | ) _____ |
| WITNESS | ) JOSEPH COLANGELO |

Rhea Shelton
*Barrister & Solicitor*

## AFFIDAVIT OF EXECUTION

CANADA                                        )
                                              )
PROVINCE OF ALBERTA                           )
                                              )
TO WIT:                                       )


I,___Rhea Shelton_____, of the City of Calgary, in the Province of Alberta,
MAKE OATH AND SAY THAT:

1.      I was personally present and did see JOSEPH COLANGELO named in the within instrument who is personally known to me to be the person named therein, sign and execute the same for the purposes named therein.

2.      The same was executed at the City of Calgary, in the Province of Alberta, and that I am the subscribing witness thereto.

3.      I know the said person and he is in my belief of the full age of eighteen years.


SWORN before me at the City of          )
Calgary, in the Province of Alberta, this  )
2̲9̲ day of October, 2014.                 )
                                          )
_____          )  _____
A Commissioner for Oaths in and for the  )
Province of Alberta                       )
                                                       Rhea Shelton
**Arthur Opalinski**                                   Barrister & Solicitor
Barrister & Solicitor

# Exhibit C

| DATE | OWING | AMOUNT | PAYMENT |
|---|---|---|---|
| Jul-15 | LOAN FOR JOE TAXES | $30,000.00 | |
| May-15 | LOAN TO JOE BILLS | $5,000.00 | |
| May-15 | LOAN TO JOE BILLS | $15,000.00 | |
| Jul-13 | LOAN TO JOE BILLS | $10,000.00 | |
| Jul-15 | LOC INTEREST | $1,022.88 | |
| Apr-15 | LOAN TO JOE COI LAWYER | $18,000.00 | |
| Feb-14 | LOAN TO JOE RING | $55,000.00 | |
| Jul-15 | LOC INTEREST | $3,803.80 | |
| Mar-15 | INCOME AGREEMENT WITH JOE TO PAY ME | $360,000.00 | |
| Jul-15 | LANDCAPING/FURNITURE NOT INCLUDING RAYMOND PRICE | $54,641.07 | |
| Nov-15 | LA & New york SYTTD MJ | $20,000.00 | |
| Nov-15 | Nest subscription & camera | $1,400.00 | |
| Nov-15 | RAYMOND-LANDSCAPE | $36,600.00 | |
| May-16 | LOAN ON MORTGAGE-PRIVATE BANKING | $120,000.00 | |
| May-16 | KILROY WINDOWS | $1,260.00 | |
| Sep-16 | LAWYER FOR POOPY-PATRICK FITZPATRICK | $5,500.00 | |
| Sep-16 | LAWYER BILL | $2,500.00 | |
| Nov-16 | FERRARI TRUNK FIX | $1,060.00 | |
| Dec-16 | STEWART CREEK MEMBERSHIP-POOPY (MBNA) | $1,078.00 | |
| Dec-16 | INSURANCE PAYBACK ON CAR STOLEN AUDI S6-LOAN TO JOE TO PAY BILLS | $22,000.00 | |
| Dec-16 | ED MCCANN LAWYER | $1,700.00 | |
| Jan-17 | CG&CC-OVERDUE ACCT 5346 | $1,362.92 | |
| Jan-17 | R8 RENT | $157.50 | |
| | **PAYMENT JULY 14 2015** | | 200,000.00 |
| 17-May | CASH FOR JOE | $500.00 | |
| JULY 1 2017 | AGREEMENT FROM JOE TO PAY ME $5000 CASH PER MONTH & NOT WORK | $4,000.00 | 1,000.00 |
| AUG 4 2017 | MORTGAGE INSURANCE ON MY MBNA | $284.50 | |
| AUG 14 2017 | PAYMENT TO VINCE DEVOLI - BILL SMITH CAMPAIGN | $5,000.00 | |
| | SUBTOTAL | 776,870.67 | 201,000.00 |
| | **JOE OWING** | **$575,870.67** | |

I Joe Colangelo (Debtor) of 27 Windsor Cres SW, Calgary AB T2V 1V5, acknowledge that the amount above
of Five hundred seventy five housand, eight hundred and seventy dollars is owed to Monika Jensen (Lender)
of 27 Windsor Cres SW, Calgary AB T2V 1V5, and will be paid in full by December 31 of 2020

_____                          _____

Joe Colangelo                                    Monika Jensen
  Aug 14 2017

# Exhibit D

 Gmail

Monika Jensen <monikajensen2@gmail.com>

---

## Employment Status and proof of Income
1 message

---

**Joe Colangelo** <joeco@repurposesolutions.com>                    Fri, May 1, 2020 at 9:31 AM
To: Monika Jensen <monikajensen2@gmail.com>

Ms. Jensen,

As requested, have a great day.
If any questions contact me.

Best Regards,

Joe Colangelo,
CEO
Repurpose Solutions Canada Inc.
403-870-9300

---

**2 attachments**

 **Monika Jensen Employment varification.docx**
43K

 **Invoice # 11.pdf**
18K

# INVOICE-USD

**Monika Jensen Productions**                                                                       # 11

Bill To:                                                          Date:              Apr 1, 2020

**Repurpose Solutions Canada Inc.**                        Payment Terms:      Net 15 days
Suite 238-1811 4th St. SW, Calgary, Alberta, Canada
T2S 1W2                                                       Due Date:          Apr 15, 2020
Attn: Joe Colangelo
                                                           **Balance Due:**    **$12,000**.00

| Item | Quantity | Rate | Amount |
|------|----------|------|--------|
| **Monthly Salary for position of Account Manager/Logistics** | 1 | $12,000.00 | $12,000.00 |

| | | | |
|--|--|--|--|
| | | Subtotal: | $12,000.00 |
| | | Total: | $12,000.00 |

Notes:

All Funds are in USD

Terms:

Wire Transfer as per:
Receiving info: Monika Jensen account #103306009
Intermediary Bank:JP Morgan Chase.4 NY Plaza,NY Zip 10004
Bankers Name: RBC
Address 8081 Arco Corporate Drive,Raleigh,NC Zip 27617

See Wire Transfer Instructions attached

**STRICTLY CONFIDENTIAL**



April 30,2020

Ms. Monika Jensen,
Suite #238-1811 4th St SW,
Calgary, AB
T2S W2

Dear Monika;

As requested, this is the verification of employment status and income. Share as you see fit, under the confidential banner.

**Re: Monika L. Jensen-Major Accounts Manager and Logistics**

This is to confirm that Ms. Jensen is employed full time at Repurpose Solutions Canada Inc(RSCI).

RSCI is in the business of manufacturing and suppling Covid 19 Personal Protective Equipment(PPE). One of our product lines produces 75,000 Face Masks a day in 2 Chinese factories that have employed 250+ employees for 20+ years under the banner of Anpin Manufacturing. We are 1 of 9 manufactures in China that is allowed by the Chinese Government to export to Canada as we have FDA,CDC,CE, EN and Health Canada MDEL Medical Device license under RCSI for Face masks, face shields(going to Alberta Health Services), safety googles and lasses, disposable hazmat and operating room garments, hand sanitizer gel(mixed at our 300,000 sf plant in Chicago through ExxonMobil supplied Isopropanol(IPA))

I am the 100% owner of this Alberta Incorporated under corporate access number 2020621609. RSCI will have a Canadian factory operating in 60 days producing 300 Million Face masks per year/25 Million per month.

There is an affiliate company being set up under my Delaware incorporation called Repurpose Solutions USA Inc., so we can set up a second factory in Indio, CA a USA opportunity zone to create employment.

**Ms. Jensen's compensation as a very key person on the RSCI team is as follows;**

1. Monthly salary of $12,000 USD ($17,000 CDN at current exchange rates)
2. Bonuses on sales. $50,000 Canadian in first month for work with Quebec Government and UHN health group in Toronto.
3. Quarterly bonuses-June 30/September 30/December 31 in calendar year 2020 and continuing into 2021+. Covid 19 PPE will be a long term, 10+ year business, that I've invested over $6 M USD in equipment to have secure supply of.
4. Annual bonus based on calendar year, next is December 2020.

Based on current monthly sales and net income Ms. Jensen's Quarterly bonuses will be greater than $100,000 USD, so an additional $300,000 USD or approx. $420,000 CDN.

Repurpose Solutions Canada In. Suite #238-1811 4th St. SW, Calgary, AB (403) 620-3603

**STRICTLY CONFIDENTIAL**

Therefore, her 9-month income for 2020 will be a **total $623,000** of based on these components;

➢ 9 x 17,000=$153,000 plus $50,000 April bonus = $203,000
➢ $420,000 Quarterly bonuses
➢ To be determined December 31,2020 annual bonus

I can attach proof of monthly salary and can supply $50,000 April bonus if required. If any questions or concerns, please contact me as per below.


Yours Truly,



Joe Colangelo,
President and CEO,
joeco@repurposesolutions.com
(403) 870-9300

**From:** Joe Colangelo
**Sent:** Friday, April 24, 2020 10:16 AM
**To:** Monika Jensen
**Subject:** Fwd: Wire Transfers

FYI.

California here we come!!!!!!!! Right back where I started from.
Plus your $12K.....nice salary.
Best Regards,

Joe Colangelo,
CEO
Repurpose Solutions Canada Inc.
403-870-9300

---------- Forwarded message ---------
**From: Joe Colangelo** <joeco@repurposesolutions.com>
Date: Fri, Apr 24, 2020 at 11:15 AM
Subject: Wire Transfers
To: Geoff Cook <gcook@firstcalgary.com>, Geet Makker <gmakker@firstcalgary.com>

Geoff,

Now that we have this figured out I need to send 2 transfers
from USD account;

1. to Monika Jensen who works for me at Repurpose for her
monthly contact of $12,000 USD. Invoice and wire transfer info
to RBC attached.

2. $100,000 USD Deposit on a house that I'm purchasing in
Palm Springs. Wire info attached and contract.

Best Regards,

Joe Colangelo,
CEO
Repurpose Solutions Canada Inc.
403-870-9300

**Repurpose Solutions Canada Inc.**
238 1811 4TH ST S.W
CALGARY, AB T2S 1W2
(403) 870-9300

0184

DATE 2 0 2 0 - 0 4 - 0 6
Y Y Y Y   M M   D D

PAY TO THE
ORDER OF    MONIKA JENSEN

$ 50,000 00

— fifty thousand —    /100 DOLLARS

**firstcalgary**
F I N A N C I A L

DOWNTOWN CORE (403) 520-8000
116, 317-7 AVE S.W.
CALGARY, AB T2P2Y9

Security
Features
Included.

PER

RE   APRIL SALES BONUS

PER

⑈0184⑈ ⑆75419⑈899⑆ 20012714921⑈

# INVOICE-USD

**Monika Jensen Productions**

# 12

Bill To:

**Repurpose Solutions Canada Inc.**
Suite 238-1811 4th St. SW, Calgary, Alberta, Canada
T2S 1W2
Attn: Joe Colangelo

| | | |
|---|---|---|
| Date: | May 15, 2020 |
| Payment Terms: | Net 15 days |
| Due Date: | Jun 15, 2020 |
| **Balance Due:** | **$12,000**.00 |

| Item | Quantity | Rate | Amount |
|---|---|---|---|
| **Monthly Salary for position of Account Manager/Logistics** | 1 | $12,000.00 | $12,000.00 |

| | |
|---|---|
| Subtotal: | $12,000.00 |
| Total: | $12,000.00 |

Notes:

All Funds are in USD

Terms:

Wire Transfer as per:
Receiving info: Monika Jensen account #103306009
Intermediary Bank:JP Morgan Chase.4 NY Plaza,NY Zip 10004
Bankers Name; RBC
Address 8081 Arco Corporate Drive,Raleigh,NC Zip 27617

See Wire Transfer Instructions attached

# Exhibit E

DOC # 2016-0090867
06/06/2016 12:36 PM Fees: $21.00
Page 1 of 3  Doc T Tax Paid
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor, County Clerk & Recorder

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL DOCUMENT TO:**
Stonebridge Ventures, LLC
3700 Campus Drive, Suite 200
Newport Beach, CA 92660

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: CARAGON

Space Above This Line for Recorder's Use Only

APN 682-031-001-1  682-031-007-7
682-031-002-2  682-031-008-8
682-031-003-3  682-031-0029  **GRANT DEED**
682-031-004-4  682-031-0109  T.R.A. No.017-004    File No.: RIW-4754885 (KC)
682-031-005-5
682-031-006-6

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX **$4,125.00**; CITY TRANSFER TAX **$n/a**;

[   **x**   ]   computed on the consideration or full value of property conveyed, OR

[       ]   computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[       ]   unincorporated area;   [ **x** ] City of **Rancho Mirage**, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Stonebridge, Inc., a California corporation**

hereby GRANTS to **Stonebridge Ventures, LLC, a California limited liability company**

the following described property in the City of **Rancho Mirage**, County of **Riverside**, State of **California**:

**Lots 1 thru 10 and B thru G as shown on Map of Tract No. 33666, in the City of Rancho Mirage, County of Riverside, State of California, filed on November 8, 2007 in Book 427, Pages 1 thru 6 of said County Records.**

Mail Tax Statements To:  **SAME AS ABOVE**

Grant Deed - continued

Date: **01/06/2015**

Dated: **January 06, 2015**

Stonebridge, Inc., a California corporation

By: Authorized Signatory, Title
*Christopher J. Keenan*

> A notary public or other officer
> completing this certificate verifies only
> the identity of the individual who signed
> the document to which this certificate is
> attached, and not the truthfulness,
> accuracy, or validity of that document.

STATE OF California )SS
COUNTY OF Riverside )

On Jan 13, 2015 , before me, D. Perricone , Notary
Public, personally appeared Christopher J. Keenan
, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

> D. PERRICONE
> COMM. #1973741
> NOTARY PUBLIC • CALIFORNIA
> RIVERSIDE COUNTY
> Comm. Exp. MARCH 30, 2016

*This area for official notarial seal*

Page 2 of 2

Grant Deed - continued

Date: **01/06/2015**

Dated: **January 06, 2015**

Stonebridge, Inc., a California corporation

By: Authorized Signatory, Title
*Christopher J. Keenan*

A notary public or other officer
completing this certificate verifies only
the identity of the individual who signed
the document to which this certificate is
attached, and not the truthfulness,
accuracy, or validity of that document.

STATE OF ____California____ )SS
COUNTY OF ____Riverside____ )

On ____Jan 13, 2015____, before me, ____D.Perricone____, Notary
Public, personally appeared ____Christopher J. Keenan____
_____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

D. PERRICONE
COMM. #1973741
NOTARY PUBLIC • CALIFORNIA
RIVERSIDE COUNTY
Comm. Exp. MARCH 30, 2016

*This area for official notarial seal*

**CERTIFICATION**

Under the provisions of Government Code **27361.7 I**
certify under the penalty that the following is a
true copy of illegible wording found in the attached
document:

Date: ____2-25-15____

Page **2** of **2**    Signature: _____

Print Name: ____Liz Fowler____

# Exhibit F

Authentisign ID: F5DB8D1C-52C2-4078-A28A-0C178BAC6397

# CALIFORNIA
## ASSOCIATION
## OF REALTORS ®

**CALIFORNIA**
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
(C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: **04/23/2020**

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ *Joe Colangelo, Monika L. Jensen* _____ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _____ *2 Makena Ln, Rancho Mirage, CA 92270* _____, situated in
      *Rancho Mirage* (City), *Riverside* (County), California, *92270* (Zip Code), Assessor's Parcel No. *682-031-002* ("Property").
   C. **THE PURCHASE PRICE** offered is *Two Million, Five Hundred Ninety-Five Thousand*
      _____ Dollars $ **2,595,000.00** .
   D. **CLOSE OF ESCROW** shall occur on ☒ _____ *July 1, 2020* _____ (date)(or ☐ _____ **Days** After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R.
      Form AD).
   B. **CONFIRMATION:** The following agency relationships are confirmed for this transaction:
      **Seller's Brokerage Firm** _____ *Calpac Management Inc* _____ License Number _____ *01856406*
      Is the broker of (check one): ☒ the seller; or ☐ both the buyer and seller. (dual agent)
      **Seller's Agent** _____ *Ryan Young* _____ License Number _____ *01245001*
      Is (check one): ☒ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
      **Buyer's Brokerage Firm** _____ *Regency Residential* _____ License Number _____ *01762487*
      Is the broker of (check one): ☒ the buyer; or ☐ both the buyer and seller. (dual agent)
      **Buyer's Agent** _____ *Nima Rohani* _____ License Number _____ *02003663*
      Is (check one): ☒ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of ............................................. $ **100,000.00**
      **(1) Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or *wired directly to escrow* );
      **OR (2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of .......... $ _____
      within _____ **Days** After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      **(1) FIRST LOAN:** in the amount of ........................................................ $ _____
      This loan will be conventional financing **OR** ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      assumed financing (C.A.R. Form AFA), ☐ Other _____ This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(2)** ☐ **SECOND LOAN** in the amount of .............................................. $ _____
      This loan will be conventional financing **OR** ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17** (or _____ ) **Days** After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _____
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of ............... $ **2,495,000.00**
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** ....................................................... $ **2,595,000.00**

Buyer's Initials X(_____ ) X(_____ )    Seller's Initials X(_____ ) (_____ )

© 1991-2018, California Association of REALTORS®, Inc.

RPA-CA REVISED 12/18 (PAGE 1 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Authentisign ID: F5D880*********4878-A2EA-0C77BB7CE597

Property Address: *2 Makena Ln, Rancho Mirage, CA 92270*    Date: *April 23, 2020*

H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ____ ) Days** After Acceptance.

J. **LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within **3 (or ____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**

Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4)    **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **SALE OF BUYER'S PROPERTY:**

A. This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

5. **ADDENDA AND ADVISORIES:**

A. ADDENDA:

| A. ADDENDA: | Addendum # _____ (C.A.R. Form ADM) |
|---|---|
| __ Back Up Offer Addendum (C.A.R. Form BUO) | __ Court Confirmation Addendum (C.A.R. Form CCA) |
| __ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| __ Short Sale Addendum (C.A.R. Form SSA) | __ Other _____ |

| B. BUYER AND SELLER ADVISORIES: | X Buyer's Inspection Advisory (C.A.R. Form BIA) |
|---|---|
| __ Probate Advisory (C.A.R. Form PA) | __ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| __ Trust Advisory (C.A.R. Form TA) | __ REO Advisory (C.A.R. Form REO) |
| __ Short Sale Information and Advisory (C.A.R. Form SSIA) | __ Other _____ |

6. **OTHER TERMS:** *In the event that escrow does not close, Buyer to reimburse Seller for custom upgrades not to exceed $10,000*

7. **ALLOCATION OF COSTS**

A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

(1) ☐ Buyer **X** Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by *MyNHD **Best Value***

(2) __ Buyer **X** Seller shall pay for the following Report *Pest Inspection* _____ prepared by *Seller's Choice*

(3) __ Buyer **X** Seller shall pay for the following Report *Home Inspection Report* _____ prepared by _____

B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) __ Buyer **X** Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials X(_JC_)X(_MLT_)    Seller's Initials X(____)(____)

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
(1) (a) X Buyer X Seller shall pay escrow fee **Each to pay their own fees**
    (b) Escrow Holder shall be **Escrow Experts**
    (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☐ Buyer X Seller shall pay for **owner's** title insurance policy specified in paragraph 13E
    (b) Owner's title policy to be issued by **Orange Coast Title**
    (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) __ Buyer X Seller shall pay County transfer tax or fee
(2) __ Buyer ☐ Seller shall pay City transfer tax or fee
(3) ☐ Buyer X Seller shall pay Homeowners' Association ("HOA") transfer fee
(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee
(8) ☐ Buyer ☐ Seller shall pay for
(9) ☐ Buyer ☐ Seller shall pay for
(10) ☐ Buyer X Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by **Or New Home Warranty** , with the following optional coverages: X Air Conditioner X Pool/Spa X Other: **Roof, Appliances, Plumbing**
    Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
    OR ☐ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
B. **ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☒ all washer(s) and dryer(s), except _____
(3) The following additional items: **All furnishings, seller to include inventory list**
(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.
C. **ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

**9. CLOSING AND POSSESSION:**
A. Buyer intends (or X does not intend) to occupy the Property as Buyer's primary residence.
B. **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ AM/ ☐ PM) on the date of Close Of Escrow; ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ___ AM/ PM on _____

Buyer's Initials X(____)(____)                                              Seller's Initials X(____)(____) (____)

RPA-CA REVISED 12/18 (PAGE 3 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     2 Makena Ln

Authentisign ID: F5D86B7C-52C2-497B-A2EA-0C178BAC6397

Property Address: **2 Makena Ln, Rancho Mirage, CA 92270**    Date: *April 23, 2020*

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ____ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold **(a)** "AS-IS" in its PRESENT physical condition as of the date of Acceptance and **(b)** subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

  **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

  **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

  **C.** **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2). **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

  **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

  **D.** **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

  **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

  **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

  **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

  **E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials X(_____)(_____MEJ___)    Seller's Initials X(_____) (_____)

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

**C. Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more, and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. Tenant-occupied property:** Property shall be vacant at least 5 (or ___ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

**OR**    ☐ Tenant to remain in possession (C.A.R. Form TIP).

**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

## 10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT DISCLOSURES) AND CANCELLATION RIGHTS:

**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**B. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1)** SELLER HAS: **7 (or** ___ **) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials X(_____)X(_____)    Seller's Initials X(_____) (_____)

Authentisign ID: F5DB6919-92C2-4976-A2A3-0C1769A06397

Case 8:22-bk-11556-TA    Doc 243    Filed 08/05/23    Entered 08/05/23 16:47:14    Desc
Property Address: **2 Makena Ln, Rancho Mirage, CA 92270**    Main Document    Page 58 of 117    Date: *April 23, 2020*

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. **(1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to:
   **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.
   **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).
   **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐ **REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

D. **SELLER RIGHT TO CANCEL:**
   **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5, **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials X(___JC___)X(___MLJ___)    Seller's Initials X(___⤴___) (_____)



Property Address: **2 Makena Ln, Rancho Mirage**   Date: **April 23, 2020**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property shall be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
  **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
  **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
  **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
  **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials X(____)(_MLJ_)   Seller's Initials X(____) (____)

RPA-CA REVISED 12/18 (PAGE 7 OF 10)

Authentisign ID: F5D8801C-92C9-407B-A2EA-0C7FBBDC0597

Case 8:22-bk-11556-TA    Doc 243    Filed 08/05/23    Entered 08/05/23 16:47:14    Desc
Property Address: **2 Makena Ln, Rancho Mirage, CA 92270**    Main Document    Page 60 of 117    Date: **April 23, 2020**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A. **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

B. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials [ _JC_ ] / [ _MLJ_ ]        Seller's Initials [ _✗_ ] / _____

## 22. DISPUTE RESOLUTION:

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also **agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

B. **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

Buyer's Initials [ _JC_ ] / [ _MLJ_ ]        Seller's Initials [ _✗_ ] / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials X( _JC_ ) X( _MLJ_ )        Seller's Initials X( _✗_ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 8 OF 10)

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

    D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

    F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

    I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

    J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____,

who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/☐ PM,

on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

| | | |
|---|---|---|
| Date **04/24/2020** | BUYER | **Joe Colangelo** |
| (Print name) **Joe Colangelo** | | Authentisign<br>4/24/2020 2:58:40 AM EDT |
| Date **04/24/2020** | BUYER | **Monika L. Jensen** |
| (Print name) **Monika L. Jensen** | | 4/24/2020 3:06:37 AM EDT |

Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials X(_____) (_____)

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Authentisign ID: F5D880FC-92E2-4678-A29A-9E7FB8ACE097

Property Address: **2 Makena Ln, Rancho Mirage, CA 92270**                           Date: **April 23, 2020**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO)** DATED:
_____

One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _04/24/2020___ SELLER _____
_Stonebridge Ventures 4/24/2020 2:57:25 AM EDT_
(Print name) **Stonebridge Ventures**

Date _____ SELLER _____

(Print name) _____

Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )  (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)       personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
AM/ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm **Regency Residential** _____ DRE Lic. # **01762487**
By _Nima Rohani_ _____ **Nima Rohani** DRE Lic. # **02003663**   Date __4/23/20__
By __4/24/2020 2:56:43 AM EDT_____ DRE Lic. # _____ Date _____
Address **112 Azzuro Drive** _____ City **Palm Desert**   State **CA**   Zip **92211**
Telephone **(760)668-9956** ____ Fax _____ E-mail **nima@regencyresidential.com**
Seller's Brokerage Firm **Calpac Management Inc** _____ DRE Lic. # **01856406**
By _____ **Ryan Young** DRE Lic. # **01245001** ___ Date _____
By _____ DRE Lic. # _____ Date _____
Address _____ City _____ State ___ Zip ____
Telephone _____ Fax _____ E-mail **jpukini@abc-funds.com**

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Seller's Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©1991- 2018 California Association of REALTORS® Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:          Buyer Acknowledges that page 10 is part of this Agreement X(_____)X(__MLJ__)
REAL ESTATE BUSINESS SERVICES, LLC.                                          Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT   (RPA-CA PAGE 10 OF 10)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

# BUYER'S INSPECTION ADVISORY

(C.A.R. Form BIA, Revised 11/14)

Property Address **2 Makena Ln, Rancho Mirage, CA  92270**

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

H. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

I. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

J. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

L. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer  *Joe Colangelo*      04/24/2020        Buyer  *Monika L. Jensen*      04/24/2020
Joe Colangelo                                           Monika L. Jensen
4/24/2020 2:59:49 AM EDT                                 4/24/2020 3:06:39 AM EDT

©1991-2004  California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER OR THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**



Regency Residential, 112 Azzuro Drive Palm Desert CA 92211       Phone: (760)668-9956       Fax:       2 Makena Ln
Nima Rohani       Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: F5DA0255C-C3-4578-A2A2-7EF8AB4EAB51

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY
(C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

| Buyer/Seller/Landlord/Tenant | *Joe Colangelo* | Date | 04/24/2020 |
|---|---|---|---|
| | Joe Colangelo EDT | | |
| Buyer/Seller/Landlord/Tenant | *Monika L. Jensen* | Date | 04/24/2020 |
| | Monika L. Jensen | | |

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



CCPA 12/19 (PAGE 1 OF 1)

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

Regency Residential, 112 Azzuro Drive Palm Desert CA 92211                              Phone: (760)668-9956          Fax:                    2 Makena Ln
Nima Rohani                              Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Authentisign ID: F5DB8D7C-52C2-407B-A26A-0C776BAC6397



CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Buyer's Brokerage Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

X Buyer ☐ Seller ☐ Landlord ☐ Tenant  *Joe Colangelo* _____  Date 04/24/2020
    Joe Colangelo
    4/24/2020 2:58:09 AM EDT

X Buyer ☐ Seller ☐ Landlord ☐ Tenant  *Monika L. Jensen* _____  Date 04/24/2020
    Monika L. Jensen
    4/24/2020 3:03:26 AM EDT

Agent  *Regency Residential* _____  DRE Lic. # _01762487_
By  *Nima Rohani* _____  Real Estate Broker (Firm)  DRE Lic. # _02003663_  Date 04/24/2020
    4/24/2020 2:56:42 AM EDT  (Salesperson or Broker-Associate, if any)  Nima Rohani

© 1991-2018, California Association of REALTORS®, Inc

AD REVISED 12/18 (PAGE 1 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Regency Residential, 112 Azzuro Drive Palm Desert CA 92211  Phone: (760)668-9956  Fax:  2 Makena Ln
Nima Rohani  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: F5D9803C-8282-4978-A20A-05FF6B6C6397

**CIVIL CODE SECTIONS 2079.24 (SECTIONS 2079.24 (PLEASE ON THE FRONT)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018. California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**
(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _____ | ***Stonebridge Ventures*** Date _____ | |
| Seller _____ 4/24/2020 2:56:53 AM EDT | Date _____ | |
| Buyer ~~Joe Colangelo~~ | *Joe Colangelo* Date _____ | |
| Buyer *Monika L. Jensen* | *Monika L. Jensen* Date _____ | |
| Buyer's Brokerage Firm ***Regency Residential*** | DRE Lic # ***01762487*** Date _____ | |
| By *Nima Rohani* | DRE Lic # ***02003663*** Date _____ |
| *Nima Rohani* 4:23 AM EDT | | |
| Seller's Brokerage Firm ***Calpac Management Inc*** | DRE Lic # ***01856406*** Date _____ | |
| By _____ | DRE Lic # ***01245001*** Date _____ |
| *Ryan Young* | | |

© 2018 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

| | |
|---|---|
| Regency Residential, 112 Azzuro Drive Palm Desert CA 92211 | Phone: (760)668-9956    Fax:    2 Makena Ln |
| Nima Rohani | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com |

CALIFORNIA
ASSOCIATION
OF REALTORS®

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: _2 Makena Ln, Rancho Mirage, CA  92270_____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | | |
|---|---|---|---|
| Buyer/Tenant **X** _Joe Colangelo_ | | _Joe Colangelo_ Date | 04/24/2020 |
| Buyer/Tenant **X** _Monika L. Jensen_ | | _Monika L. Jensen_ Date | 04/24/2020 |
| Seller/Landlord **X** 4/24/2020 3:04:13 AM EDT | | _Stonebridge Ventures_ Date | 04/24/2020 |
| Seller/Landlord **X** 4/24/2020 2:56:54 AM EDT | | Date | |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| Regency Residential, 112 Azzaro Drive Palm Desert CA 92211 | Phone: (760)668-9956 | Fax: | 2 Makena Ln |
| Nima Rohani | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com | | |

68

authentisign ID: 0a4b5c6d7e8f9a0b1c2d3e4f5a6b7c8d9e0f

*Escrow 005094-JD*



CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDENDUM

(C.A.R. Form ADM, Revised 12/15)

**No.** 2

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____, on property known as _____ 2 Makena Ln _____
Rancho Mirage, CA 92270
in which _____ Joe Colangelo, Monika L. Jensen _____ is referred to as ("Buyer/Tenant")
and _____ Stonebridge Ventures _____ is referred to as ("Seller/Landlord").

*1. Escrow holder is instructed to release and pay through escrow the sum of $100,000 to Stonebridge Ventures at once and prior to the consummation of this escrow.*

*2. Buyer to deposit an additional $50,000 into the escrow account on or before* September 1. *Escrow holder is instructed to release and pay through escrow the sum of $50,000 to Stonebridge Ventures at once and prior to the consummation of this escrow*

MJ Hlike this.

*3. Buyer to deposit an additional $50,000 into the escrow account on or before* October 15. *Escrow holder is instructed to release and pay through escrow the sum of $50,000 to Stonebridge Ventures at once and prior to the consummation of this escrow*

*4. Buyer to deposit an additional $50,000 into the escrow account on or before* December 15. *Escrow holder is instructed to release and pay through escrow the sum of $50,000 to Stonebridge Ventures at once and prior to the consummation of this escrow*

*5. All funds deposited to be applicable to the total purchase price but non-refundable.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date 08/03/2020 _____

Buyer/Tenant X *[signature] Joe Colangelo* PM EDT

Date _____

Seller/Landlord X _____
*Stonebridge Ventures*

Buyer/Tenant X *Monika L. Jensen* *Monika L. Jensen* EDT

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Regency Residential, 112 Azzuro Drive Palm Desert CA 92211    Phone: (760)668-9956    Fax:    2 Makena Ln
Nima Rohani    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# Exhibit G



**Royal Bank of Canada**
P.O. Bag Service 2650
Calgary AB T2P 2M7

# Your RBC personal savings account statement - U.S. funds

From August 12, 2020 to September 11, 2020

RBPDA10020_5547442_030 E D 012 02649     02800
MONIKA LOUISE JENSEN
SUITE 238
1811 4 ST SW
CALGARY AB T2S 1W2

| Your account number: | 02649-4509592 |
|---|---|

| How to reach us: | 1-800 ROYAL® 1-1 |
|---|---|
| | (1-800-769-2511) |
| | www.rbcroyalbank.com/deposits |



## Summary of your account for this period
RBC US High Interest eSavings™ 02649-4509592

**Royal Bank of Canada**
807 49TH AVE SW, CALGARY, AB T2S 1G8

| | |
|---|---|
| Your opening balance on August 12, 2020 | $52,004.62 USD |
| Total deposits into your account | + 36.71 USD |
| Total withdrawals from your account | - 50,034.58 USD |
| **Your closing balance on September 11, 2020** | **= $2,006.75 USD** |

## Details of your account activity

| Date | Description | Withdrawals ($) | Deposits ($) | Balance ($) |
|---|---|---|---|---|
| | Opening Balance | | | 52,004.62 USD |
| 31 Aug | Deposit | | 34.58 | |
| | Funds transfer ESCROW EXPERTS, | 50,034.58 | | 2,004.62 USD |
| 1 Sep | Deposit interest | | 2.13 | 2,006.75 USD |
| | Closing Balance | | | $2,006.75 USD |

Please check this Account Statement without delay and advise us of any error or omission within 45 days of the statement date.
If you opted to receive cheque images, only images of the front of your cheques have been sent to you with this Account Statement. An image included on this Account Statement does not
indicate that a cheque has been successfully processed as of the statement date.
Please retain this statement for your records.
™ Trademarks of Royal Bank of Canada. RBC and Royal Bank are registered trademarks of Royal Bank of Canada.
® Registered trade-mark of Royal Bank of Canada. Royal Trust Corporation of Canada and The Royal Trust Company are licensees of the trade-mark.
Royal Bank of Canada GST Registration Number: R105248165
Royal Trust Corporation of Canada GST Registration Number: R104646666
The Royal Trust Company GST Registration Number: R105248264

1 of 1

RBPDA10020_5547442_030 - 0147085 HRI - 00 - 0 - 3521 - 3 - -     5296

ROYAL BANK OF CANADA
CALGARY AB-BRITANNIA BRANCH

ROYAL FUNDS TRANSFER
2020 AUG 31

Branch Ref No...        02649-20244-199996        Value Date.....    2020 AUG 31
N...........                           From          Send Ref....

Payment Amount............$        50,000.00  USD  Charges For...  Sender
Client Rate...............         1.00000000        Serial No.....
Conversion Amount.........$
Wire Payment Fee Collected $        34.58  USD
Not Present Fee...........$          0.00  USD
IBAN Fee..................$          0.00  USD
Total Fees................$         34.58  USD
Client Pays Amount........$      50,034.58  USD  SRF Client No...  961385069

Ordering Customer:                        Remittance Information:
MONIKA LOUISE JENSEN
SUITE 238
1811 4 ST SW
CALGARY          AB T2S 1W2

Debit Branch Name (Princ)..    CALGARY AB-BRITANNIA BRANCH           Account
            SOLE-OWNER .........02649 450-959-2
Debit Branch Name (Fees)...    CALGARY AB-BRITANNIA BRANCH
                               02649 450-959-2

Intermediary Institution:           Account With Institution:
                                    FED ABA 122016066
                                    ( ABA 1220 16066 )
                                    CITY NATIONAL BANK
                                    CY NATL BK LA
                                    LOS ANGELES                  CA US

Beneficiary Account:   555167636

 eneficiary Customer:              Sender To Receiver Information:
ESCROW EXPERTS, INC TRUST ACCOUNT  /ACC/ESCROW NO 005094-JD
24800 CHRISANTA DRIVE , NO 100     /INS/ JENNIFER DAVIDSON ESCROW
MISSION VIEJO, CA 92691            /INT/OFFICER
LOS ANGELES       CA       US

Instruction Code:

    Additional charges may be deducted from the payment amount by the receiving bank and/or its
intermediaries ("Receiving Bank"). If this payment cannot be completed for any reasons beyond the
control of Royal Bank of Canada ("RBC") you may ask RBC for a refund and RBC shall make best efforts
to secure a refund from Receiving Bank and return those amounts to you. If conversion of funds is
requested, the rate of exchange will be RBC's rate established at the time the refund is converted.
If you need to make an inquiry regarding this payment or if you ask that RBC attempt to amend or
cancel this payment, additional charges will apply (except in cases where an error has been
established on the part of RBC or the Receiving Bank). RBC may, in its discretion and without notice
to you, delay in making the payment or decide not proceed with the payment, in which case RBC shall
refund of the payment amount and any applicable fees.
    RBC will not be responsible for any loss or damage suffered by you except where there has been
negligence on the part of RBC, and in any such case RBC will not be liable for any indirect,
consequential or exemplary damages (including but not limited to loss of profits), regardless of the
cause of action. In making the payment, your personal or business information and information on the
recipient, may be revealed to third parties. Since the payment will travel, the information related
to it will be subject to the laws of the jurisdiction in which the information is located or
processed at that time.

  SIGNATURE(S) :

# Exhibit H



**Royal Bank of Canada**
P.O. Bag Service 2650
Calgary AB T2P 2M7

# Your RBC personal savings account statement - U.S. funds

From November 12, 2020 to December 11, 2020

RBPDA10020_7549547_061 E D 012 02649          04164
MONIKA LOUISE JENSEN
SUITE 238
1811 4 ST SW
CALGARY AB  T2S 1W2

| **Your account number:** | 02649-4509592 |
|---|---|
| **How to reach us:** | 1-800 ROYAL® 1-1 (1-800-769-2511) www.rbcroyalbank.com/deposits |



## Summary of your account for this period

RBC US High Interest eSavings™ 02649-4509592

**Royal Bank of Canada**
807 49TH AVE SW, CALGARY, AB T2S 1G8

| | |
|---|---|
| Your opening balance on November 12, 2020 | $2,006.91 USD |
| Total deposits into your account | + 873,318.05 USD |
| Total withdrawals from your account | - 804,793.80 USD |
| **Your closing balance on December 11, 2020** | = **$70,531.16 USD** |

## Details of your account activity

| Date | Description | Withdrawals ($) | Deposits ($) | Balance ($) |
|---|---|---|---|---|
| | Opening Balance | | | 2,006.91 USD |
| 26 Nov | Deposit | | 7,425.20 | 9,432.11 USD |
| 30 Nov | Deposit | | 5,500.00 | 14,932.11 USD |
| 1 Dec | Deposit interest | | 0.14 | 14,932.25 USD |
| 2 Dec | Deposit | | 2,084.00 | 17,016.25 USD |
| 7 Dec | Deposit | | 5,500.00 | |
| | Deposit | | 282,277.55 | 304,793.80 USD |
| 8 Dec | Online Banking foreign exchange Ref 6WW793431450390 | | 250,000.00 | 554,793.80 USD |
| | Deposit | | 250,000.00 | |
| | Online Banking foreign exchange Ref 6WW133430700090 | 54,793.80 | | |
| | Online Banking foreign exchange Ref 6WW503430658400 | 250,000.00 | | 500,000.00 USD |
| 9 Dec | Deposit | | 70,531.16 | |

1 of 2

RBPDA10020_7549547_061 - 0303141 HRI - 00 - 1 - 5180 - 27 - - 7694



# Your RBC personal savings account statement - U.S. funds

From November 12, 2020 to December 11, 2020

## Details of your account activity - continued

| Date | Description | Withdrawals ($) | Deposits ($) | Balance ($) |
|------|-------------|-----------------|--------------|-------------|
| | Funds transfer  ESCROW EXPERTS, | 500,000.00 | | 70,531.16 USD |
| | **Closing Balance** | | | **$70,531.16 USD** |

Please check this Account Statement without delay and advise us of any error or omission within 45 days of the statement date.
If you opted to receive cheque images, only images of the front of your cheques have been sent to you with this Account Statement. An image included on this Account Statement does not
indicate that a cheque has been successfully processed as of the statement date.
Please retain this statement for your records.
™ Trademarks of Royal Bank of Canada. RBC and Royal Bank are registered trademarks of Royal Bank of Canada.
* Registered trade-mark of Royal Bank of Canada. Royal Trust Corporation of Canada and The Royal Trust Company are licensees of the trade-mark.
Royal Bank of Canada GST Registration Number: R105248165
Royal Trust Corporation of Canada GST Registration Number: R104646666
The Royal Trust Company GST Registration Number: R105248264

RBPDA10020_7549547_061 - 0303141  7695

ROYAL BANK OF CANADA
CALGARY AB-BRITANNIA BRANCH

ROYAL FUNDS TRANSFER
2020 DEC 09

Branch Ref No...    02649-20344-199998          Value Date.....   2020 DEC 09
'N...........                      From         Send Ref....

Payment Amount............$       500,000.00 USD  Charges For...  Waived
Client Rate...............         1.00000000         Serial No.....
Conversion Amount.........$
Wire Payment Fee Collected $         0.00 USD
Not Present Fee...........$          0.00 USD
IBAN Fee..................$          0.00 USD
Total Fees................$          0.00 USD
Client Pays Amount........$       500,000.00 USD  SRF Client No...  961385069

Ordering Customer:                      Remittance Information:
MONIKA LOUISE JENSEN
SUITE 238
1811 4 ST SW
CALGARY           AB T2S 1W2

Debit Branch Name (Princ)..   CALGARY AB-BRITANNIA BRANCH          Account
           SOLE-OWNER ........02649 450-959-2
Debit Branch Name (Fees)...   CALGARY AB-BRITANNIA BRANCH
                              02649 450-959-2

Intermediary Institution:            Account With Institution:
                                     FED ABA 122016066
                                     ( ABA 1220 16066 )
                                     CITY NATIONAL BANK
                                     CY NATL BK LA
                                     LOS ANGELES                 CA US

Beneficiary Account:   555167636

.neficiary Customer:                 Sender To Receiver Information:
ESCROW EXPERTS,INC TRUST ACCOUNT     /ACC/ESCROW NO 005094-JD
24800 CHRISANTA DRIVE ,NO 100        /INS/ JENNIFER DAVIDSON ESCROW
MISSION VIEJO,CA 92691               /INT/OFFICER
LOS ANGELES      CA       US

Instruction Code:

02649-003
CALGARY ALBERTA

DEC 0 9 2020

BRITANNIA BRANCH
ROYAL BANK OF CANADA

     Additional charges may be deducted from the payment amount by the receiving Bank and/or its
intermediaries ("Receiving Bank"). If this payment cannot be completed for any reasons beyond the
control of Royal Bank of Canada ("RBC") you may ask RBC for a refund and RBC shall use best efforts
to secure a refund from Receiving Bank and return those amounts to you. If conversion of funds is
requested, the rate of exchange will be RBC's rate established at the time the refund is converted. If
you need to make an inquiry regarding this payment or if you ask that RBC attempt to amend or
cancel this payment, additional charges will apply (except in cases where an error has been
established on the part of RBC or the Receiving Bank). RBC may, in its discretion and without notice
to you, delay in making the payment or decide not proceed with the payment, in which case RBC shall
refund of the payment amount and any applicable fees.
     RBC will not be responsible for any loss or damage suffered by you except where there has been
negligence on the part of RBC, and in any such case RBC will not be liable for any indirect,
consequential or exemplary damages (including but not limited to loss of profits), regardless of the
cause of action. In making the payment, your personal or business information and information on the
recipient, may be revealed to third parties. Since the payment will travel, the information related
to it will be subject to the laws of the jurisdiction in which the information is located or
processed at that time.

SIGNATURE(S):  _____

# Exhibit I

DOC #2021/0397998
09/17/2021 04:43 PM Fees: $394.00
Page 1 of 32
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
RESIDENTIAL DIVISION

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Brentwood Finance Company, LLC
180 South Spruce Ave, Suite 155
South San Francisco, CA 94080
Attention: Laura Benetti

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TERESA #134

## DEED OF TRUST, ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

6612874

THIS DEED OF TRUST, ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this **"Deed of Trust"**) is made as of June 22, 2021 by and between STONEBRIDGE VENTURES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY (**"Trustor"**), whose address is 15 CORPORATE PLAZA DRIVE, SUITE 200, NEWPORT BEACH, CA 92660, FIRST AMERICAN TITLE COMPANY (**"Trustee"**), whose address is 4 FIRST AMERICAN WAY, SANTA ANA, CA 92707 for the benefit of BRENTWOOD FINANCE COMPANY, LLC (**"Beneficiary"**), having an address at 180 SOUTH SPRUCE AVE, SUITE 155, SOUTH SAN FRANCISCO, CA 94080.

Beneficiary is making a loan to Trustor in the maximum principal amount of ONE MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS EXACTLY ($1,850,000.00) (the **"Loan"**). The Loan is to be disbursed pursuant to the provisions of a Promissory Note of even date herewith by and between Trustor and Beneficiary (the **"Note"**).

TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, IN TRUST, WITH POWER OF SALE, AND RIGHT TO ENTRY AND POSSESSION, IN:

All that property now or hereafter acquired in the City of Rancho Mirage, County of Riverside, State of California, with the address of 2 MAKENA LANE, RANCHO MIRAGE, CA 92270, APN 682-031-002, described in the attached Exhibit A (the **"Property"**);

TOGETHER WITH, and including, without limitation:

A.    All buildings and improvements now or hereafter erected or placed on the Property; all Trustor's estate, right, title and interest in and to any buildings and improvements; all of Trustor's now owned or hereafter acquired right, title and interest in and to the fee title to the Property; all easements, rights-of-way, passages, franchises, water rights, water courses, riparian rights, appurtenances, tenements, hereditaments and all other rights, liberties and privileges now or hereafter belonging to, or in any way appertaining, or in any way being a means of access, to the Property, including, without limitation, (i) homestead or any other claim at law or in equity, and (ii) any after acquired title, franchise, license, right, interest or privilege and the reversion(s) and remainder(s) thereof.

1

B.    All income, rents, issues, profits, revenues, royalties, proceeds, room rentals, concession revenues, license revenues, credits, deposits and options arising out of, under or relating to the use and operation of the Property, and all leases, subleases, subtenancies, occupancy agreements, licenses, concessions or other agreements affecting the Property, including, without limitation, the right, power and authority given to and conferred upon Trustor under any assignment of leases to collect and apply such income, rents, issues, profits and proceeds; SUBJECT, HOWEVER, to the absolute assignment of leases and rents in favor of Beneficiary set forth in paragraph 11 herein;

C.    All general intangibles arising from, used or held in connection with, or relating to the Property or the ownership, use, occupancy, enjoyment, operation, management, development or improvement thereof, including, without limitation, all governmental permits relating to construction, all subdivision maps and applications therefor, all subdivision public reports and applications therefor, all disposition and development agreements or right and applications therefor, all disposition and development agreements or right and applications therefor, all architectural and engineering drawings, plans and specifications, soil tests, feasibility studies, engineering reports, environmental, building and other permits, certificates of occupancy, construction, management and other contracts, franchises, licenses and all names under or by which the Property or any present or future improvements on the Property may at any time be operated or known, and all rights to carry on business under any such names, or any variant thereof, and all trademarks and goodwill in any way relating to the Property;

D.    All right, title and interest of Trustor in and to the beds of the ways, roads, streets, avenues and alleys adjoining the Property, including, without limitation, any after-acquired title or reversionary interest;

E.    All deposits made with or other security given to utility companies or governmental branches or agencies by or on behalf of Trustor with respect to the Property and all advance payments of insurance premiums made by or on behalf of Trustor;

F.    All Trustor's right, title and interest in and to all gas, oil, water and mineral rights now or hereafter derived from, appurtenant to, or pertaining to the Property (and any and all shares of stock evidencing the same and profits relating thereto) and all air rights and development rights or credits relating to the Property;

G.    All causes of action, claims and proceeds relating to or arising on account of any damage to or condemnation or other taking of the Property or any improvements thereon or any part thereof, or for conveyance in lieu of condemnation, including, without limitation, insurance proceeds or condemnation or public improvement proceeding awards or compensation which Trustor now has or may hereafter acquire with respect to the Property or any improvements now or hereafter erected or placed thereon or any part thereof;

H.    All Collateral (as defined in paragraph 21 hereof); and

I.    All proceeds (including claims or demands thereto or therefor) of any of the foregoing, including, without limitation, any warranty or service contract relating to said collateral, proceeds of all present and future fire, hazard, or casualty insurance policies and all

2

California Code of Civil Procedure.  Judgment on the award may be entered in any court of competent jurisdiction.

        e.    <u>Fees and Costs</u>.  The costs of the Arbitrator shall be split equally by the parties, but shall be a recoverable cost for the party prevailing in arbitration.  Each party is otherwise to bear its own attorneys' fees and costs in connection with the arbitration, however, such fees and costs shall also be recoverable by the prevailing party in arbitration.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

                Trustors 's Initials:

      27.    <u>Multiple Lender Loans</u>. Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust.  This may occur during escrow or after the close of escrow.

      IN WITNESS WHEREOF, Trustor, intending to be legally bound hereby, has caused this Deed of Trust to be executed and delivered on the date first above written.

                TRUSTOR:
                STONEBRIDGE VENTURES, LLC, A
                CALIFORNIA LIMITED LIABILITY COMPANY

                CAL-PAC DISTRESSED REAL ESTATE FUND
                I, LLC, ITS MANAGER

                By:                      ,
                CAL-PAC MANAGEMENT, INC, ITS
                MANAGER, RYAN YOUNG, PRESIDENT

                      Ryan Young

      29

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California
County of _____ Orange _____)

On __ 6 / 22 / 2021 _____ before me, __Andreza do Valle Rocha Bleasby, Notary Public__ .
(insert name and title of the officer)

personally appeared _____ Ryan J. Young _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

## EXHIBIT A

### LEGAL DESCRIPTION

A-1

## LEGAL DESCRIPTION

Real property in the City of Rancho Mirage, County of Riverside, State of California, described as follows:

LOT 2 AS SHOWN ON MAP OF TRACT NO. 33666, IN THE CITY OF RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 8, 2007 IN BOOK 427, PAGE 1 THROUGH 6 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 682-031-002

# Exhibit J

DOC #5/2021-0455103
07/29/2021 04:03 PM Fees: $394.00
Page 1 of 32
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ALEJANDRA#1032

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
RESIDENTIAL DIVISION
RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Stonebridge Ventures, LLC
15 Corporate Plaza #200
Newport Beach, CA 92660
Attention: Post Closing

665 0044

## DEED OF TRUST, ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ABSOLUTE ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this **"Deed of Trust"**) is made as of July 28, 2021 by and between STONEBRIDGE VENTURES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY (**"Trustor"**), whose address is 15 CORPORATE PLAZA DRIVE, SUITE 200, NEWPORT BEACH, CA 92660, FIRST AMERICAN TITLE COMPANY (**"Trustee"**), whose address is 4 FIRST AMERICAN WAY, SANTA ANA, CA 92707 for the benefit of RENEWABLE FARMS (**"Beneficiary"**), having an address at C/O FCI LENDER SERVICES, INC., 8180 E. KAISER BLVD., ANAHEIM HILLS, CA 92808.

Beneficiary is making a loan to Trustor in the maximum principal amount of TWO HUNDRED FIFTY THOUSAND DOLLARS EXACTLY ($250,000.00) (the **"Loan"**). The Loan is to be disbursed pursuant to the provisions of a Promissory Note of even date herewith by and between Trustor and Beneficiary (the **"Note"**).

TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, IN TRUST, WITH POWER OF SALE, AND RIGHT TO ENTRY AND POSSESSION, IN:

All that property now or hereafter acquired in the City of Rancho Mirage, County of Riverside, State of California, with the address of 2 MAKENA LANE, RANCHO MIRAGE, CA 92270, APN 682-031-002, described in the attached Exhibit A (the **"Property"**);

TOGETHER WITH, and including, without limitation:

A.    All buildings and improvements now or hereafter erected or placed on the Property; all Trustor's estate, right, title and interest in and to any buildings and improvements; all of Trustor's now owned or hereafter acquired right, title and interest in and to the fee title to the Property; all easements, rights-of-way, passages, franchises, water rights, water courses, riparian rights, appurtenances, tenements, hereditaments and all other rights, liberties and privileges now or hereafter belonging to, or in any way appertaining, or in any way being a means of access, to the Property, including, without limitation, (i) homestead or any other claim at law or in equity, and (ii) any after acquired title, franchise, license, right, interest or privilege and the reversion(s) and remainder(s) thereof.

1

B.    All income, rents, issues, profits, revenues, royalties, proceeds, room rentals, concession revenues, license revenues, credits, deposits and options arising out of, under or relating to the use and operation of the Property, and all leases, subleases, subtenancies, occupancy agreements, licenses, concessions or other agreements affecting the Property, including, without limitation, the right, power and authority given to and conferred upon Trustor under any assignment of leases to collect and apply such income, rents, issues, profits and proceeds; SUBJECT, HOWEVER, to the absolute assignment of leases and rents in favor of Beneficiary set forth in paragraph 11 herein;

C.    All general intangibles arising from, used or held in connection with, or relating to the Property or the ownership, use, occupancy, enjoyment, operation, management, development or improvement thereof, including, without limitation, all governmental permits relating to construction, all subdivision maps and applications therefor, all subdivision public reports and applications therefor, all disposition and development agreements or right and applications therefor, all disposition and development agreements or right and applications therefor, all architectural and engineering drawings, plans and specifications, soil tests, feasibility studies, engineering reports, environmental, building and other permits, certificates of occupancy, construction, management and other contracts, franchises, licenses and all names under or by which the Property or any present or future improvements on the Property may at any time be operated or known, and all rights to carry on business under any such names, or any variant thereof, and all trademarks and goodwill in any way relating to the Property;

D.    All right, title and interest of Trustor in and to the beds of the ways, roads, streets, avenues and alleys adjoining the Property, including, without limitation, any after-acquired title or reversionary interest;

E.    All deposits made with or other security given to utility companies or governmental branches or agencies by or on behalf of Trustor with respect to the Property and all advance payments of insurance premiums made by or on behalf of Trustor;

F.    All Trustor's right, title and interest in and to all gas, oil, water and mineral rights now or hereafter derived from, appurtenant to, or pertaining to the Property (and any and all shares of stock evidencing the same and profits relating thereto) and all air rights and development rights or credits relating to the Property;

G.    All causes of action, claims and proceeds relating to or arising on account of any damage to or condemnation or other taking of the Property or any improvements thereon or any part thereof, or for conveyance in lieu of condemnation, including, without limitation, insurance proceeds or condemnation or public improvement proceeding awards or compensation which Trustor now has or may hereafter acquire with respect to the Property or any improvements now or hereafter erected or placed thereon or any part thereof;

H.    All Collateral (as defined in paragraph 21 hereof); and

I.    All proceeds (including claims or demands thereto or therefor) of any of the foregoing, including, without limitation, any warranty or service contract relating to said collateral, proceeds of all present and future fire, hazard, or casualty insurance policies and all

2

California Code of Civil Procedure. Judgment on the award may be entered in any court of competent jurisdiction.

        e.    <u>Fees and Costs</u>. The costs of the Arbitrator shall be split equally by the parties, but shall be a recoverable cost for the party prevailing in arbitration. Each party is otherwise to bear its own attorneys' fees and costs in connection with the arbitration, however, such fees and costs shall also be recoverable by the prevailing party in arbitration.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

        Trustors 's Initials:

27.    <u>Multiple Lender Loans</u>. Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow.

        IN WITNESS WHEREOF, Trustor, intending to be legally bound hereby, has caused this Deed of Trust to be executed and delivered on the date first above written.

                      TRUSTOR:
                      STONEBRIDGE VENTURES, LLC, A
                      CALIFORNIA LIMITED LIABILITY COMPANY

                      CAL-PAC DISTRESSED REAL ESTATE FUND
                      I, LLC, ITS MANAGER

                      By: _____,
                      CALPAC MANAGEMENT, INC, ITS
                      MANAGER, JOSHUA PUKINI,
                      VICE PRESIDENT

Calpac Management, Inc. ITS Manager, Joshua Pukini
29 Vice President

87

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On __7 / 28 / 2021__ before me, __Andreza do Valle Rocha Bleasby,   Notary Public__ .
(insert name and title of the officer)

personally appeared _____ Joshua R. Pukini _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

Non-Order Search                    Page 49 of 222    Requested By: Maricela Westbrook , Printed: 7/27/2023 4:57 PM
Doc: 2021-455103 TDR 07-29-2021

88

# EXHIBIT A

## LEGAL DESCRIPTION

Non-Order Search
Doc: 2021-455103 TDR 07-29-2021

## LEGAL DESCRIPTION

Real property in the City of Rancho Mirage, County of Riverside, State of California, described as follows:

LOT 2 AS SHOWN ON MAP OF TRACT NO. 33666, IN THE CITY OF RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 8, 2007 IN BOOK 427, PAGE 1 THROUGH 6 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 682-031-002

# Exhibit K

06/14/2022 08:00 AM Fees: $0.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: BONNIE #821

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO

Coachella Valley Water District
P.O. Box 1058
Coachella CA 92236-1058

No Recording Fee Govt.Code §27383

APN: 682-031-002

File:   0655.
        0658.

## CERTIFICATE OF LIEN

In the Matter of the Lien of

**COACHELLA VALLEY WATER DISTRICT,
a public agency of the State of California**

**CERTIFICATE OF LIEN**

Pursuant to §31701.7
of the California Water Code

upon the real property of

Stonebridge Ventures, including but not limited
to the certain real property located in the
County of Riverside, State of California and
legally described on Exhibit "A" attached
hereto and by this reference incorporated
herein.

This is to certify, pursuant to Section 31701.7 of the California Water Code that
COACHELLA VALLEY WATER DISTRICT, a public agency of the State of California, claims a
lien upon all real property owned by the following person within the County of Riverside, State of
California, including but not limited to, the property described on Exhibit "A," for delinquent
charges, penalty and interest, in the amounts set forth below:

NAME:                    Stonebridge Ventures

MAILING ADDRESS:         3700 Campus Drive, #200
                         Newport Beach CA 92660-2603

Wppool/finance/2022/June/C of L – Stonebridge Ventures 682-031-002          Doc. No. 050607-2-031

Acct. No. 675975-563670

SITUS OF PROPERTY
SUBJECT TO
DELINQUENT CHARGES:          2 Makena Lane
                             Rancho Mirage, CA 92270-3904


AMOUNT OF DELINQUENCY:       **$1,890.02**

The above charges, together with interest at the legal rate, remain unpaid and hereby constitute a lien on the real property of the person or persons named herein.

I certify that the foregoing is true and correct.

                              COACHELLA VALLEY WATER DISTRICT,
                              a public agency of the State of California

                              By _____

                              Name:  J. M. Barrett
                              Its:  General Manager

                              Date: _____6·13·2022_____

Wppool/finance/2022/June/C of L – Stonebridge Ventures 682-031-002                    Doc. No. 050607-2-031

Acct. No. 675975-563670

Non-Order Search                              Page 93 of 222      Requested By: Maricela Westbrook , Printed: 7/27/2023 4:57 PM
Doc: 2022-268004 LNN 06-14-2022

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Riverside

On June 13, 2022, before me, Erica L. Casarrubias, Notary Public

Personally appeared J. M. Barrett who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ERICA L. CASARRUBIAS
Notary Public - California
Riverside County
Commission # 2402891
My Comm. Expires May 3, 2026

Signature _____    (Seal)

C of L – Stonebridge Ventures 682-031-002

## EXHIBIT "A"

## LEGAL DESCRIPTION OF REAL PROPERTY

A PORTION OF THAT REAL PROPERTY IN THE CITY OF RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS DESCRIBED IN GRANT DEED RECORDED MARCH 6, 2015 AS DOCUMENT NO. 2015-0090867, OFFICIAL RECORDS OF SAID COUNTY AND STATE, LOCATED IN A PORTION OF THE NORTHWEST QUARTER OF SECTION 7, TOWNSHIP 5 SOUTH, RANGE 6 EAST, SAN BERNARDINO BASE AND MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

LOT 2 OF TRACT NO. 33666, ON FILE IN MAP BOOK 427, PAGES 1 THROUGH 6, INCLUSIVE, RECORDS OF RIVERSIDE COUNTY.

CONTAINS 0.52 ACRES, MORE OR LESS.

APN: 682-031-002

PAGE 1 OF 1

Wppool/finance/2022/June/C of L – Stonebridge Ventures 682-031-002                    Doc. No. 050607-2-031

Acct. No. 675975-563670

# Exhibit L

RECORDING REQUESTED BY:
AB Capital LFD, Inc.

AND WHEN RECORDED MAIL TO:

AB Capital LFD, Inc.
15 Corporate Plaza Drive Suite 200
Newport Beach CA 92660

**2022-0384793**

09/06/2022 04:00 PM Fee: $ 23.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder



**779**

THIS SPACE FOR RECORDER'S USE ONLY:

| | |
|---|---|
| **Title Order No.:** N/A | **Escrow No.:** N/A |
| **AP#:** 682-031-002 | **GRANT DEED** |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

### DOCUMENTARY TRANSFER TAX is $ 3074.50
### TRA : 17

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Rancho Mirage **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Stonebridge Ventures LLC, a California Limited Liability Company**

hereby GRANT(s) to:

**AB Capital LFD, Inc., a California Corporation**

the real property in the City of Rancho Mirage, County of Riverside, State of California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**Also Known as:** 2 Makena Lane, Rancho Mirage, CA  92270

**DATED: September 01, 2022**

**Signature Page attached hereto
and made a part hereof**

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

## SIGNATURE PAGE

**Title of Document:    GRANT DEED**

**Dated:    September 01, 2022**

Stonebridge Ventures LLC, a California Limited Liability
Company

By: _____
Joshua R. Pukini, Authorized Signor

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____
On _____
before me, _____
A Notary Public personally appeared

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____

(Seal)

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the
> individual who signed the document to which this certificate is attached, and not the truthfulness,
> accuracy, or validity of that document.

State of California
County of _Orange_     )

On _09/0/2022_ _____ before me, _____ Andreza do Valle Rocha Bleasby, notary public
                                          (insert name and title of the officer)

personally appeared _____ Joshua R. Pukini _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

Order Number: **O-SA-6650044**
Page Number:  9

## Exhibit A
## LEGAL DESCRIPTION

Real property in the City of Rancho Mirage, County of Riverside, State of California, described as follows:

LOT 2 AS SHOWN ON MAP OF TRACT NO. 33666, IN THE CITY OF RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 8, 2007 IN BOOK 427, PAGE 1 THROUGH 6 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 682-031-002

Non-Order Search                    Page 59 of 222    Requested By: Maricela Westbrook , Printed: 7/27/2023 4:57 PM
Doc: 2022-384793 DEG 09-06-2022

RECORDING REQUESTED BY:
AB Capital LFD, Inc.

AND WHEN RECORDED MAIL TO:

AB Capital LFD, Inc.
15 Corporate Plaza Drive Suite 200
Newport Beach CA 92660

**2022-0384837**

09/06/2022 04:18 PM Fee: $ 23.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**779**

THIS SPACE FOR RECORDER'S USE ONLY:

| | |
|---|---|
| **Title Order No.:** N/A | **Escrow No.:** N/A |
| **AP#:** 682-031-001 | **GRANT DEED** |

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

**DOCUMENTARY TRANSFER TAX is $  3025.00**
**TRA: 17**

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Rancho Mirage **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Stonebridge Ventures LLC, a California Limited Liability Company**

hereby GRANT(s) to:

**AB Capital LFD, Inc., a California Corporation**

the real property in the City of Rancho Mirage, County of Riverside, State of California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**Also Known as:** 1 Makena Lane, Rancho Mirage, CA  92270

**DATED: September 01, 2022**                    **Signature Page attached hereto**
                                                 **and made a part hereof**

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

# SIGNATURE PAGE

**Title of Document:**    **GRANT DEED**

**Dated:    September 01, 2022**

Stonebridge Ventures LLC, a California Limited Liability
Company

By: _____
Joshua R. Pukini   Authorized Signor

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____
On _____
before me, _____
A Notary Public personally appeared
_____
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____

(Seal)

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ____Orange_____ )

On _09/01/2022_____ before me, _____Andreza do Valle Rocha Bleasby, Notary Public_____,
                                                    (insert name and title of the officer)

personally appeared _____Joshua R. Pukini_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ANDREZA DO VALLE ROCHA BLEASBY
COMM. #2336834
Notary Public-California
ORANGE COUNTY
My Comm. Expires Nov 8, 2024

File No:  222531854

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 1 THRU 10 AND B THRU G AS SHOWN ON MAP OF <u>TRACT NO. 33666</u>, IN THE CITY OF
RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, FILED ON NOVEMBER 8, 2007
IN BOOK 427, PAGES 1 THRU 6, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY
RECORDS.

<u>ASSESSOR'S PARCEL NUMBER: 682-031-001</u>

Non-Order Search                                              Page 63 of 222      Requested By: Maricela Westbrook , Printed: 7/27/2023 4:57 PM
Doc: 2022-384837 DEG 09-06-2022

# Exhibit M

RECORDING REQUESTED BY

NAME: A. Cisneros

**WHEN RECORDED MAIL TO:**

NAME:    A. Cisneros

ADDRESS:    3403 10th Street, Suite 714

CITY / STATE / ZIP: Riverside, CA 92501

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

**DOC # 2022-0441724**
10/25/2022 12:42 PM Fees: $125.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARIA #309

(SPACE ABOVE FOR RECORDER'S USE)

QUITCLAIM DEED
**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

Non-Order Search                                           Page 84 of 222      Requested By: Maricela Westbrook  , Printed: 7/27/2023 4:57 PM
Doc: 2022-441724 DEQ 10-25-2022

106

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

| | |
|---|---|
| **Name** | A. Cisneros |
| **Address** | 3403 10th Street, Suite 714 |
| **City &State** | Riverside, California 92501 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## QUITCLAIM DEED

APN: 682-031-001

The undersigned grantor(s) declare(s) that the documentary transfer tax is: $0.00 and City Tax is $0.00 and is:
XX Exempt pursuant to <u>California Revenue and Taxation Code §§ 11911 and 11923</u> – Court Ordered Conveyance under United States Bankruptcy Court for the Central District of California, Santa Ana Division Case No. 8:22-bk-11556-TA and not pursuant to sale.
__ computed on full value of the interest or property conveyed, or is
__ computed on full value less the value of liens and encumbrances remaining thereon at time of sale.

FOR A VALUABLE CONSIDERATION,  receipt of which is hereby acknowledged, AB Capital LFD, Inc. hereby REMISES, RELEASES, AND FOREVER QUITCLAIMS  to A. Cisneros, Chapter 11 Trustee for the bankruptcy estate of Stonebridge Ventures, LLC, United States Bankruptcy Court for the Central District of California, Santa Ana Division Case No. 8:22-bk-11556-TA, all of AB Capital LFD, Inc.'s right, title, and interest in the real property commonly known as 1 Makena Lane, Rancho Mirage, California 92270, County of Riverside, State of California, and legally described as follows:

LOTS 1 THRU 10 AND B THRU G AS SHOWN ON MAP OF <u>TRACT NO. 33666</u>, IN THE CITY OF RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, FILED ON NOVEMBER 8, 2007 IN BOOK 427, PAGES 1 THRU 6, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY RECORDS.

APN: 682-031-001

Dated: October 18, 2022

AB CAPITAL LFD, INC.
By: Joshua Pukini
Its: Chief Executive Officer

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _RIVERSIDE_   )

On October _18th,_ 2022 before me, _MEHARDEEP SINGH SETHI_, Notary Public personally appeared Joshua Pukini, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  **(Seal)**

MEHARDEEP SINGH SETHI
Notary Public - California
Riverside County
Commission # 2395558
My Comm. Expires Mar 2, 2026

**DOC # 2022-0441725**
10/25/2022 12:42 PM Fees: $125.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY

NAME: A. Cisneros

**WHEN RECORDED MAIL TO:**

NAME:    A. Cisneros

ADDRESS: 3403 10th Street, Suite 714

CITY / STATE / ZIP: Riverside, CA 92501

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARIA #309

(SPACE ABOVE FOR RECORDER'S USE)

QUITCLAIM DEED
(DOCUMENT TITLE)

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

| | |
|---|---|
| Name | A. Cisneros |
| Address | 3403 10th Street, Suite 714 |
| City &State | Riverside, California 92501 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## QUITCLAIM DEED

APN: 682-031-002

The undersigned grantor(s) declare(s) that the documentary transfer tax is: $0.00 and City Tax is $0.00 and is:
XX Exempt pursuant to California Revenue and Taxation Code §§ 11911 and 11923 – Court Ordered Conveyance under United States Bankruptcy Court for the Central District of California, Santa Ana Division Case No. 8:22-bk-11556-TA and not pursuant to sale.
__ computed on full value of the interest or property conveyed, or is
__ computed on full value less the value of liens and encumbrances remaining thereon at time of sale.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, AB Capital LFD, Inc. hereby REMISES, RELEASES, AND FOREVER QUITCLAIMS to A. Cisneros, Chapter 11 Trustee for the bankruptcy estate of Stonebridge Ventures, LLC, United States Bankruptcy Court for the Central District of California, Santa Ana Division Case No. 8:22-bk-11556-TA, all of AB Capital LFD, Inc.'s right, title, and interest in the real property commonly known as 2 Makena Lane, Rancho Mirage, California 92270, County of Riverside, State of California, and legally described as follows:

LOT 2 AS SHOWN ON MAP OF TRACT NO. 33666, IN THE CITY OF RANCHO MIRAGE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 8, 2007 IN BOOK 427, PAGE 1 THROUGH 6 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 682-031-002

Dated: October 18, 2022

AB CAPITAL LFD, INC.
By: Joshua Pukini
Its: Chief Executive Officer

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _RIVERSIDE_ )

On October _18_, 2022 before me, MEHARDEEP SINGH SETHI _Notary Public_ personally appeared Joshua Pukini, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**



MEHARDEEP SINGH SETHI
Notary Public - California
Riverside County
Commission # 2395558
My Comm. Expires Mar 2, 2026

DOC # 2023-0209128
07/12/2023 08:00 AM Fees: $204.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARIA VICTORIA #411

Recorded at the request of
First American Title-Claims Div.
Western Region
CA-2209003479

WHEN RECORDED MAIL TO:

c/o FCI Lender Services Inc.
8180 E. Kaiser Blvd.
Anaheim Hills, CA 92808

APN: 682-031-002

(space above for Recorder use only)

## SUBSTITUTION OF TRUSTEE & FULL RECONVEYANCE

When Recorded, Mail to:

c/o FCI Lender Services Inc.
8180 E. Kaiser Blvd.
Anaheim Hills, CA 92808

APN: 682-031-002

(SPACE ABOVE FOR RECORDER'S USE)

## SUBSTITUTION OF TRUSTEE & FULL RECONVEYANCE

The undersigned, present beneficiary under that certain **Construction Deed of Trust, Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing** executed by **Stonebridge Ventures, LLC, A California Limited Liability Company**, as Trustor to **Orange Coast Title Company** as original Trustee and recorded on **August 13, 2018** as Instrument No. **2018-0323851** of Official Records of **Riverside** County, California, **HEREBY APPOINTS AND SUBSTITUTES THE UNDERSIGNED** As the new Trustee thereunder in accordance with the terms and provisions contained therein, whose address is 8180 E. Kaiser Blvd, Anaheim Hills, CA 92808 and,

As such duly appointed and substituted Trustee thereunder, the **UNDERSIGNED DOES HEREBY RECONVEY** to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired by the original Trustee and by the undersigned as the said substituted Trustee under said Deed of Trust. Wherever the text of this document so requires, the singular includes the plural.

Dated: _12/29/2022_

Beneficiary and Substituted Trustee:

**Qwan International Investments, LLC as to an undivided 10% interest
c/o FCI Lender Services, Inc.**

SAMAN JILANCHI

**SEE ATTACHED
CERTIFICATE**

**APN: 682-031-002**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___CALIFORNIA___ ) SS
COUNTY OF ___ORANGE___ )

On ___12|29|2022___, before me,
___ERRU ELCIN SUZER___, Notary Public, personally appeared ___SAMAN JILANCHI___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**Signature**

_This area for official notarial seal_

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>**Monika Jensen** | DEFENDANTS<br><br>**STONEBRIDGE VENTURES, LLC;<br>BRENTWOOD FINANCE COMPANY, LLC;<br>RENEWABLE FARMS, INC.;<br>AB CAPITAL, LFD, INC.;<br>ARTURO CISNEROS, CHAPTER 7 TRUSTEE;<br>JOE COLANGELO** |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>**Nicholas Gebelt 217362<br>Law Offices of Nicholas Gebelt<br>15150 Hornell Street<br>Whittier, CA 90604<br>Tel.: 562.777.9159<br>Fax: 562.946.1365** | **ATTORNEYS** (If Known)<br>**Summer Shaw<br>44901 Village Court. Suite. B, Palm Desert, CA 92260<br>for Stonebridge Ventures, LLC;<br><br>Unknown for Brentwood Finance Company, LLC;<br><br>Unknown for Renewable Farms, Inc.;<br><br>Unknown for AB Capital, LFD, Inc.;<br><br>William Malcolm & Nathan Smith<br>2112 Business Center Drive, Irvine, CA 92612-1001<br>for Arturo Cisneros;<br><br>Christopher Hewitt<br>74361 Highway 111 Suite 7, Palm Desert, CA 92260<br>for Joe Colangelo** |

| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☒ Other<br>☒ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)

    MONIKA JENSEN'S ADVERSARY COMPLAINT, PURSUANT TO FED. R. BANKR. P. 7001(1), (2), AND (9), FOR:

1. DECLARATORY RELIEF DETERMINING THE VALIDITY, VALUE, AND PRIORITY OF MONIKA JENSEN'S LIEN ON THE PROCEEDS OF THE SALE OF THE PROPERTY AT 2 MAKENA LANE, RANCHO MIRAGE, CA 92270, UNDER CALIFORNIA CIVIL CODE § 3050; AND

2. TURNOVER OF $550,034.58 OF THE SALE PROCEEDS THAT IS SUBJECT TO HER SECURED CLAIM.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[X] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[X] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation
        (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**B1040 (FORM 1040) (12/15)**

| | |
|---|---|
| [ ]  41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(9) Declaratory Judgment** |
| | [X]  91-Declaratory judgment |
| **FRBP 7001(5) - Revocation of Confirmation** | |
| [ ]  51-Revocation of confirmation | **FRBP 7001(10) Determination of Removed Action** |
| | [ ]  01-Determination of removed claim or cause |
| **FRBP 7001(6) - Dischargeability** | |
| [ ]  66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | **Other** |
| [ ]  62-Dischargeability - §523(a)(2), false pretenses, | [ ]  SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.* |
|        false representation, actual fraud | [ ]  02-Other (e.g. other actions that would have been brought in state |
| [ ]  67-Dischargeability - §523(a)(4), fraud as fiduciary, |        court if unrelated to bankruptcy case) |
|        embezzlement, larceny | |
| **(continued next column)** | |

| | |
|---|---|
| [✓] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
| [ ] Check if a jury trial is demanded in complaint | Demand $**550,034.58** |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>**Stonebridge Ventures, LLC** | BANKRUPTCY CASE NO.<br>**8:22-bk-11556-TA** |

| DISTRICT IN WHICH CASE IS PENDING<br>**Central District of California** | DIVISION OFFICE<br>**Santa Ana** | NAME OF JUDGE<br>**Theodor Albert** |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| *Nicholas Gebelt* |
| **Nicholas Gebelt 217362** |

| DATE<br>**August 5, 2023** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Nicholas Gebelt 217362** |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case  Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.