WILLIAM G. MALCOLM, #129271
NATHAN F. SMITH, #264635
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive
Irvine, California 92612
Phone: (949) 252-9400
Fax: (949) 252-1032
Email: bill@mclaw.org; nathan@mclaw.org

*Attorneys for Chapter 7 Trustee, A. Cisneros*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>STONEBRIDGE VENTURES, LLC,<br><br>           Debtor. | Case No. 8:22-bk-11556-TA<br><br>Chapter 7<br><br>**TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY AND REQUEST FOR AUTHORITY TO ISSUE PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ARTURO M. CISNEROS IN SUPPORT THEREOF**<br><br><u>Hearing:</u><br>Date: October 31, 2023<br>Time: 11:00 a.m.<br>Location: Via Zoom Teleconference |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTOR, DEBTOR'S COUNSEL, AND OTHER INTERESTED PARTIES:**

Arturo M. Cisneros, the duly appointed and qualified Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Stonebridge Ventures, LLC ("Debtor"), hereby moves the Court for an order approving the following compromise of controversy and authorizing him to issue payment and respectfully represents to the Court as follows:

# I.

## **INTRODUCTION**

Prior to the filing of its petition, Debtor transferred 4 of its 5 properties located in a luxury development in Rancho Mirage to an insider entity but retained title to the real property commonly known as 5 Makena Lane, Rancho Mirage, California 92270 ("Property").  Upon Trustee's appointment, he immediately negotiated a transfer of the properties back to the Estate; thereby obviating the need for an adversary proceeding.  Thereafter, Trustee has diligently pursued an orderly and expedient liquidation of the Estate, which has resulted in the sale of 4 of the 5 properties and netted the Estate over $1 million.

Trustee's sale of the Property was complicated by the claims of Darryl Lewis and Sanna Akhtanova ("Lewis/Akhtanova"), which resulted from their failed pre-petition attempt to purchase the Property from Debtor.  In opposition to Trustee's motion to sell the Property, Lewis/Akhtanova argued that they possessed a $580,000 statutory lien against it pursuant to California Civil Code § 3050. Lewis/Akhtanova have also filed a $3.6 million secured claim against the Estate and a lawsuit against Debtor, whereby they seek damages in excess of $2.9 million.

Although the Court granted Trustee's Motion to Sell the Property over Lewis/Akhtanova's opposition, its order required Trustee to hold sufficient funds to satisfy the competing interests against it. Currently, Trustee is holding approximately $540,000 in proceeds, following his successful negotiation of a short payoff of the former first priority deed of trust holder, which saved the Estate approximately $100,000, and a partial distribution to the holders of the former second priority deed of trust, which reduced interest accrual.

After exhaustive negotiations with Lewis/Akhtanova, which culminated in Trustee's circulation of a draft complaint against them to their counsel, the parties reached a settlement that resolves Lewis/Akhtanova's $3.6 million claim, alleged $580,000 interest in the sale proceeds, and complaint against Debtor in exchange for payment of $150,000 and a $200,000 non-priority unsecured claim.  The settlement will obviate the need for expensive and time-consuming litigation, enable Trustee to pay off the balance owed to the holders of the former second priority deed of trust, significantly reduce claims against the Estate, result in the Estate retaining approximately $150,000 of the sale proceeds, and result

1  in a more expedient and efficient administration of the Estate.

2     Based on the foregoing, and as explained in further detail below, Trustee's settlement with

3  Lewis/Akhtanova should be approved.

4  **II.**

5  **STATEMENT OF FACTS**

6    **A.**  **The Filing of the Petition and Pre-Petition Transfers.**

7     1.  This case was commenced on September 9, 2022 with the filing of a skeletal petition

8  under Chapter 11 of the Bankruptcy Code ("Petition").  *See* DE 1.

9     2.  On or about January 6, 2015, Debtor obtained title to the Property.

10     3.  Prior to the filing of the Petition, on or about September 1, 2022, Debtor transferred its

11  interest in 1, 2, 4, and 7 Makena ("Transfers") to AB Capital LFD, Inc. ("AB LFD").  However, it

12  retained title to the Property.  *See* DE 13.

13    **B.**  **The Appointment of Trustee as the Chapter 11 Trustee.**

14     4.  On September 23, 2022, Debtor and the Office of the United States Trustee ("OUST")

15  entered into a stipulation to the appointment of a Chapter 11 Trustee based on *inter alia* the Transfers.

16  *See* DE 13.

17     5.  On September 29, 2022, Trustee was appointed as the Chapter 11 Trustee of the Estate.

18  *See* DE 19.

19    **C.**  **Trustee's Negotiations to Address the Transfers and the Conveyances to the Estate.**

20     6.  Immediately upon his appointment, Trustee commenced negotiations to address the

21  Transfers and effectuate the transfer of legal title to 1, 2, 4, and 7 Makena back to the Estate.

22     7.  Based on Trustee's negotiations with AB LFD, AB LFD quitclaimed its interest in 1, 2,

23  4, and 7 Makena to the Estate.  The deeds were recorded on October 25, 2022.

24    **D.**  **The Property and Liens Against It.**

25     8.  On September 23, 2022, Debtor filed its Schedules, wherein it identified its ownership

26  interest in the Property.[1]  *See* DE 15.

27

28

---

[1] Debtor's Grant Deed conveying 1 Makena to AB LFD references "Lots 1-10."  Therefore, to the extent that this transfer

9.    In its Amended Schedule D, Debtor identified the following liens against the Property:

a.    Baiocchi Family Limited Partnership ("BFLP") in the amount of $1,748,536.64;

b.    Forge Trust Company ("FTC") in the amount of $50,000 (based on a fractional interest in a deed of trust against the Property);

c.    Geoffrey P. Field in the amount of $50,000 (based on a fractional interest in a deed of trust against the Property);

d.    Jean Himmelstein in the amount of $200,000 (based on a fractional interest in a deed of trust against the Property);

e.    Mainstar Trust Custodian in the amount of $200,000 (based on a fractional interest in a deed of trust against the Property);

f.    Riverside County Tax Collector in the amount of $18,028.01

*See* DE 34.

### E.    The Motion for Relief and Foreclosure in Connection with the Property.

10.    October 11, 2022, BFLP filed a Motion for Relief with regard to the Property ("MFR"). A hearing on the MFR was initially set for November 1, 2022; however, Trustee negotiated continuances of the hearing pending sale, and it was ultimately withdrawn based on Trustee's sale of the Property. *See* DE 55

### F.    Trustee's Employment of a Real Estate Broker to Sell the Property.

11.    On November 7, 2022, Trustee filed an application to employ Brian Thompson ("Broker") as his real estate broker for the purposes of selling the Property in addition to 1 and 7 Makena. The application was approved on November 28, 2022. *See* DE 57 and 70, respectively.

### G.    Lewis/Akhtanova's Lawsuit Against Debtor in Connection with the Property.

12.    Prior to the filing of the Petition, or about September 6, 2022, Lewis/Akhtanova filed suit against *inter alia* Debtor in Riverside County Superior Court ("Lawsuit") and recorded a Notice of Pending Action ("NPA") against the Property. The Lawsuit concerns Lewis/Akhtanova's alleged failed

---

impacted legal title to the Property, the quitclaim deed from AB LFD to Trustee included "Lots 1-10." Trustee also undertook the effort of obtaining approval of the quitclaim deeds from AB LFD to him by a title company to ensure that title to each of the properties is marketable.

purchase of the Property.   Through their Complaint, Lewis/Akhtanova seek damages in excess of $2,900,000.

13.     On October 31, 2022, Plaintiffs removed the Lawsuit to this Court as Adversary Proceeding number 8:22-ap-01093-TA.  Plaintiffs have not effectuated service of the Lawsuit.

14.     Although Trustee, through counsel, discussed a potential resolution to the Lawsuit and a sale of the Property to Plaintiffs, they rejected Trustee's offer.

**H.      Lewis/Akhtanova's Proof of Claim.**

15.     On September 21, 2022, Plaintiffs filed a proof of claim in the amount of $3,600,000 as Claims Register No. 2-1 ("Lewis/Akhtanova Claim").

**I.      The Motion to Sell the Property.**

16.     On December 21, 2022, Trustee filed a motion to sell 5 Makena.  The motion was granted over Lewis/Akhtanova's opposition on February 7, 2022.  *See* DE 81 and 132, respectively.

17.     The order granting the Motion to Sell required Trustee to hold sufficient funds to satisfy the competing interests against it.  Currently, Trustee is holding approximately $540,000 in proceeds, following a reduced payoff of the first priority deed of trust, which saved the Estate approximately $100,000, and a partial distribution to the holders of the former second priority deed of trust, which has reduced interest accrual.   *See* Declaration of Arturo M. Cisneros ("Trustee Declaration"), filed concurrently herewith, ¶ 7.

**J.      Conversion of the Case to Chapter 7 and Appointment of Trustee.**

18.     On March 10, 2023, Trustee filed a motion to convert the case to Chapter 7, which was granted on April 3, 2023.  *See* DE 163 and 191.

19.     On April 3, 2023, Trustee was appointed as the Chapter 7 Trustee of Debtor's Estate, a capacity in which he continues to serve.  *See* DE 193.

**K.      The Parties' Settlement Negotiations.**

20.     On July 24, 2023, following numerous settlement communications between the parties, Trustee circulated a final offer along with a draft complaint against Lewis/Akhtanova for disallowance of their claim, declaratory relief in connection with the sale proceeds, and to avoid, recover, and preserve Lewis/Akhtanova's alleged statutory lien against the sale proceeds pursuant to 11 U.S.C. §§

545(2), 550, and 551 and gave Lewis/Akhtanova until July 31, 2023 to respond.  *See* Trustee Declaration, ¶ 8

21.    On July 31, 2023, Lewis/Akhtanova made a counteroffer, which Trustee accepted.  *See* Trustee Declaration, ¶ 8.

**L.    The Unsecured Claims Against the Estate.**

22.    In its Schedule E/F, Debtor identified approximately $144,950 in unsecured claims.  As of the filing of this Motion, $10,920,996.50 in claims have been filed, of which $2,345,129.08 are unsecured.  *See* Claims Register No. 1-1 through 24-1.

**III.**

**SETTLEMENT BETWEEN THE PARTIES**

23.    The parties to the settlement are Trustee and Lewis/Akhtanova ("Parties").  A true and correct copy of the Settlement Agreement ("Agreement") is attached as Exhibit "1" to the Trustee Declaration.

24.    The general terms of the Agreement are as follows:

    a.    The Agreement is subject to the approval of the Bankruptcy Court and is of no force or effect until it is approved by the Bankruptcy Court.

    b.    Trustee shall pay $150,000 (One Hundred Fifty Thousand Dollars) to Lewis/Akhtanova within fourteen (14) days of entry of a Bankruptcy Court order approving the Agreement.

    c.    Lewis/Akhtanova shall have an allowed general unsecured claim in the amount of $200,000, shall have no other claim against the Estate, and shall amend their $3.6 million secured claim to a general unsecured claim in the amount of $200,000 within seven (7) days of their receipt of the $150,000 payment.

    d.    Lewis/Akhtanova shall dismiss the Adversary Proceeding against Debtor, with prejudice, and remand the case back to the Riverside County Superior Court within seven (7) days of receipt of the $150,000 payment.

    e.    Upon the amendment of Lewis/Akhtanova's claim, dismissal of the Adversary Proceeding against Debtor, with prejudice, and remand of the remaining portion

of the Adversary Proceeding related to the Non-Debtor Defendants, the Estate's claims against Lewis/Akhtanova shall be deemed fully administered.

f.     Except as provided herein, Lewis/Akhtanova hereby waive and forever disclaim any interest in, or alleged lien against, the Remaining Proceeds, other than the Settlement Payment and as the holders of a $200,000 general unsecured claim.

g.     Lewis/Akhtanova waive any and all right to assert any claims against the Estate and Trustee, except the $200,000 general unsecured claim against the Estate, and payment of the Settlement Payment by the Estate.

**WHEREFORE**, Trustee respectfully requests that the Court enter an order:

1.     Approving the Agreement;

2.     Authorizing Trustee to pay Lewis/Akhtanova the $150,000 settlement amount; and

3.     Granting Trustee such other and further relief as the Court deems just and proper.

Dated:  October 3, 2023                    MALCOLM ♦ CISNEROS, A Law Corporation

                                           */s/ Nathan F. Smith*
                                           NATHAN F. SMITH
                                           *Attorneys for Chapter 7 Trustee, A. Cisneros*

Motion to Approve Compromise                    7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE COURT HAS AUTHORITY TO APPROVE THE COMPROMISE

Federal Rule of Bankruptcy Procedure 9019(a) provides:

> "On motion by Trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, Debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

Accordingly, upon appropriate notice, the Court may approve a compromise or settlement.  In the instant case, the notice has been served on Debtor, Debtor's counsel, all parties requesting special notice, the Office of the United States Trustee, and on all creditors.

## II.

## TRUSTEE SHOULD BE PERMITTED TO ENTER
## INTO A COMPROMISE IF IT IS REASONABLE
## GIVEN THE PARTICULAR CIRCUMSTANCES OF THE CASE

### A.    The Purpose of a Compromise.

The Ninth Circuit has stated that, "The purpose of a compromise agreement is to allow Trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *Martin v. Caine (In re A&C Properties)* 784 F.2d 1377, 1380-81 (9th Cir. 1986) *cert. denied sub nom, Martin v. Robinson* 479 U.S. 854 (1986).  The Bankruptcy Court has great latitude in approving a compromise so long as it finds that the compromise is fair and equitable.  *Id* at 1382; *see also*, *Woodson v. Fireman's Fund Insurance Company (In re Woodson)* 839 F.2d 610, 620 (9th Cir. 1988) and *Burton v. Ulrich (In re Schmitt)* 215 B.R. 417, 421 (9th Cir. BAP 1997).

### B.    The Applicable Factors Governing Approval of a Compromise.

The Ninth Circuit Court of Appeals and the Bankruptcy Appellate Panel for the Ninth Circuit have consistently held that a Bankruptcy Court must consider four factors in determining whether to approve a compromise:

(a)    The probability of success in the litigation;
(b)    The difficulties, if any, to be encountered in the matter of collection;

(c)     The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending to it; and

(d)     The paramount interest of the creditors and a proper deference to their reasonable views.

*In re A&C Properties, supra* at 1381; *In re Woodson, supra* at 620; *In re Schmitt, supra,* at 421.

### C.     Evaluation of the *A&C* Factors.

When evaluating the four *A&C Properties* factors, "courts need not rule upon disputed facts and questions of law, but rather only canvass the issues…A mini-trial on the merits is not required." *Burton v Ulrich, supra,* at 423.  If the court were required to do more than canvass the issue, there would be no point in compromising; the parties might as well go ahead and try the case." *Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008).

### D.     Deference to a Trustee's Business Judgment.

While the court must make an independent determination, the judgment of the trustee deserves some deference.  *In re West Pointe Properties, LP*, 249 B.R. 273, 281 (Bankr. E.D. Tenn. 2000).  Moreover, each factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Greif & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. B.A.P 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).  Accordingly, the Court generally gives deference to a trustee's business judgment, and will approve a compromise that falls within the "range of reasonableness." *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Second Circuit has defined "range of reasonableness" as "a range [that] recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972).

### E.     The Burden of Persuasion.

Ultimately, "[t]he trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *In re A & C Props.*, 784 F.2d at 1381; *In re Open Med. Inst., Inc.*, 639 B.R. 169, 180 (B.A.P. 9th Cir. 2022).

///

///

F.    **Probability of Success in the Litigation.**

    1.    **The Status of the Litigation.**

        a.    **Lewis/Akhtanova's Lawsuit Against Debtor.**

Lewis/Akhtanova's lawsuit against Debtor was filed on September 6, 2022 and removed to this Court on October 31, 2022.  Through their lawsuit, Lewis/Akhtanova seek damages in excess of $2.9 million on their claims for (1) Specific Performance; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Fraudulent Concealment; (5) Intentional Misrepresentation; (6) Negligent Misrepresentation; (7) Negligence; and (8) Declaratory Relief.

Lewis/Akhtanova have not yet served the Complaint on Trustee.

        b.    **Lewis/Akhtanova's Proof of Claim.**

Lewis/Akhtanova filed a secured proof of claim in the amount of $3.6 million on September 21, 2022.  Trustee has prepared a complaint against Lewis/Akhtanova for disallowance of the claim but has not filed it.

        c.    **Lewis/Akhtanova's Alleged Interest in the Sale Proceeds from the Property.**

On December 28, 2022, Lewis/Akhtanova filed an opposition to Trustee's Motion to Sell the Property, wherein they alleged that they held a "senior secured lien" of "approximately $582,000" pursuant to California Civil Code § 3050.

Although the Court granted Trustee's Motion to Sell the Property over Lewis/Akhtanova's opposition, its order required Trustee to hold sufficient funds in trust to satisfy the competing interests against it.  Currently, Trustee is holding approximately $540,000 in proceeds, following a reduced payoff of the former first priority deed of trust holder, which saved the Estate approximately $100,000, and a partial distribution to the holders of the former second priority deed of trust, which has reduced interest accrual on the loan balance.

Trustee has prepared a complaint against Lewis/Akhtanova for a declaratory judgment that they have no interest in the sale proceeds, or, in the alternative, if they have a statutory lien against the sale proceeds for avoidance, recovery, and preservation of it for the benefit of the Estate pursuant to 11 U.S.C. §§ 545, 550, and 551.

2.      **Trustee's Positions.**

a.      **Trustee's Position in Connection with the Lawsuit.**

Trustee contends that Lewis/Akhtanova's claims for specific performance and declaratory relief are moot.  However, Trustee believes that Lewis/Akhtanova may have a meritorious claim for breach of contract, although Trustee contends that Lewis/Akhtanova's damages are limited to the amounts actually paid to Debtor in connection with the Residential Purchase Agreement entered into between Lewis/Akhtanova and Debtor.

b.      **Trustee's Position in Connection with Lewis/Akhtanova's Claim.**

Trustee contends that Lewis/Akhtanova's $3.6 million proof of claim is objectionable because it lacks evidentiary support, lacks an accounting of the $3.6 million that Lewis/Akhtanova contend is owed, and Lewis/Akhtanova are not entitled to a distribution from the Estate on account of their alleged secured claim pursuant to 11 U.S.C. § 507.

c.      **Trustee Position in Connection with the Sale Proceeds.**

First, Trustee contends that Lewis/Akhtanova have no interest in the sale proceeds because, although they entered into a Residential Purchase Agreement with Debtor for the purchase of the Property, they failed to tender the full purchase price.  Additionally, to the extent that Lewis/Akhtanova allege fraud in connection with the transaction, they failed to rescind the contract, as evidenced by their claim for specific performance against Debtor.

Second, Trustee contends that he took title to the Property free and clear of any interest of Lewis/Akhtanova pursuant to CC § 3048, which provides that a lien under CC § 3048 is not valid against a bona fide purchaser, and 11 U.S.C. § 544(a)(3), which provides that Trustee, as of the filing of the Petition, has the status of a bona fide purchaser.

Third, Trustee contends that, to the extent that Lewis/Akhtanova have a statutory lien against the sale proceeds under CC § 3050, such lien may be avoided, recovered, and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 545, 550, and 551.

3.      **Lewis/Akhtanova's Position.**

Lewis/Akhtanova contend that they have a $580,000 statutory lien against the proceeds from the sale of the Property pursuant to CC § 3050 and are entitled to an unsecured claim on account of the

damages sought in connection with their Lawsuit.   There appears to be no dispute that, absent settlement, Lewis/Akhtanova's proof of claim requires amendment.

### 4.     The Likelihood of Success.

If the settlement is not approved and litigation proceeds, Trustee believes that he would eventually prevail in connection with his lawsuit against Lewis/Akhtanova, which has been prepared but not filed.   However, although Trustee believes that he would succeed in obtaining a judgment that Lewis/Akhtanova do not have a secured interest in the sale proceeds under CC § 3050 and lack a secured claim against the Estate, he believes that Lewis/Akhtanova have a reasonable likelihood of success in connection with their claim for breach of contract against Debtor.  In short, Lewis/Akhtanova lack a secured claim but most likely have an unsecured claim against the Estate.

Based on the foregoing, Trustee believes that this factor strongly weighs in favor of the Agreement and against continued litigation.  *See* Trustee Declaration, ¶ 8-12.

### G.     Cost, Complexity, and Delay.

If the agreement is not approved, Trustee will proceed with filing suit against Lewis/Akhtanova in connection with their alleged statutory lien and proof of claim and defending the Lewis/Akhtanova lawsuit.  Both lawsuits will be discovery intensive and will likely involve cross-motions for summary judgment.   Additionally, it is likely that Lewis/Akhtanova's lawsuit will require a trial and Trustee's lawsuit against Lewis/Akhtanova could very well also require a trial.  Based on the nature of the claims, which include claims for fraud and misrepresentation, the ongoing litigation will be complex. Therefore, Trustee estimates that attorney fees and costs could exceed $150,000.  Moreover, if the cases proceeded to trial, it is likely that they would not be resolved until late 2024, at the earliest and appeals could delay ultimate adjudication of the claims until 2025.

Based on the foregoing, this factor strongly militates in favor of the Agreement.  *See* Trustee Declaration, ¶ 8-12.

### H.     The Difficulty of Collection.

Trustee does not seek a monetary judgment against Lewis/Akhtanova.  However, because he is currently holding the proceeds from the sale of the Property, to the extent that Trustee prevailed on his claims against Lewis/Akhtanova, such proceeds would thereafter be available for payment of

administrative and unsecured claims. Therefore, this factor is either neutral or weighs in favor of the Agreement. *See* Trustee Declaration, ¶ 8-12.

### I.      The Interest of Creditors.

The final, but most significant, part of the analysis involves an evaluation of whether the proposed settlement is in the best interests of creditors. *See In Re Flight Trans. Corp. Securities Litigation*, 730 F.2d 1128, 1135-36 (8th Cir. 1984).

The compromise will result in Trustee's retention of approximately $150,000 of the proceeds from the sale of the Property for creditors. Alternatively, should litigation proceed, the administrative fees incurred in connection therewith, which would have priority over unsecured claims, could exceed $150,000. Additionally, the delay occasioned by litigation would likely delay distribution to unsecured creditors until 2025. Finally, the settlement fully resolves Lewis/Akhtanova's complaint, proof of claim, and alleged interest in the sale proceeds in exchange for a payment of $150,000 and a non-priority unsecured claim of $200,000. Based on Trustee's calculations, and the possibility that Lewis/Akhtanova may be able to establish entitlement to an unsecured claim between $400,000 and $500,000, Lewis/Akhtanova will likely receive less through this settlement. Therefore, Trustee submits that the Agreement is in the best interest of creditors and will result in a more expeditious and efficient administration of the case than litigation. *See* Trustee Declaration, ¶ 8-12.

### III.

### THE SETTLEMENT AGREEMENT HAS BEEN REACHED THROUGH THE EXERCISE OF TRUSTEE'S SOUND BUSINESS JUDGMENT

The compromise was reached as a result of arms-length negotiations for several months between multiple Parties with no connection to one another. Considering the facts, costs, risks, and delays occasioned by continued litigation and the challenges inherent in eventual collection efforts, Trustee submits that the compromise is fair, equitable, and in the best interest of creditors.

The Parties, through their respective counsel, participated in settlement negotiations. Trustee believes that the settlement referenced in the Agreement is in the best interest of creditors and the Estate because it will result in the Estate's retention of approximately $150,000 from the proceeds of the sale of the Property, will obviate the need for prolonged litigation, and will result in a more expeditious and

efficient administration of the Estate and payment to unsecured creditors. *See* Trustee Declaration, ¶ 8-12.

## IV.

## TRUSTEE SHOULD BE AUTHORIZED TO PAY THE SETTLEMENT AMOUNT TO LEWIS/AKHTANOVA

In connection with the order approving the Parties' Agreement, Trustee requests that the Court authorize payment of the $150,000 settlement amount to Lewis/Akhtanova.  Following the foregoing payment, the Estate will retain approximately $150,000 of the proceeds from the sale of the Property for payment of administrative and unsecured claims.

## V.

## CONCLUSION

Based on the foregoing, Trustee respectfully requests that Court grant this motion and authorize Trustee to settle and compromise the dispute as outlined above under the terms and conditions set forth in the Agreement, issue the foregoing payments, and for such other and further relief as this Court deems just and proper.

Dated:  October 3, 2023                                MALCOLM ♦ CISNEROS, A Law Corporation

                                                                */s/ Nathan F. Smith*
                                                                NATHAN F. SMITH
                                                                *Attorneys for Chapter 7 Trustee, A. Cisneros*

## DECLARATION OF ARTURO M. CISNEROS

I, Arturo M. Cisneros, declare and state as follows:

1.      I am the duly appointed and acting Chapter 7 trustee for the bankruptcy estate of Stonebridge Ventures, LLC ("Debtor").  In this capacity, I have personal knowledge of the facts set forth below based on my participation in the events in question or as a result of my review of the record, and, if called upon to testify thereto, I could and would do so competently and truthfully.

2.      I am familiar with Debtor's bankruptcy proceeding and make this Declaration in support of my Motion to Approve Compromise of Controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion").  Unless otherwise noted, capitalized terms in this Declaration have the meaning set forth in the Motion.  I have read and I am aware of the contents of the Motion and the accompanying Memorandum of Points and Authorities.  The facts stated in the Motion and the Memorandum of Points and Authorities are true and correct to the best of my knowledge.

3.      Through the Motion, I request approval of the Settlement Agreement ("Agreement") between myself, as Trustee for Debtor's estate, and Darryl Lewis and Sanna Akhtanova ("Lewis/Akhtanova").  A true and correct copy of the Agreement is attached hereto as Exhibit "1."

4.      On February 7, 2023, the Court entered an order authorizing my sale of the Property for $2,800,000 but required me to retain sufficient funds to satisfy the competing interests in the sale proceeds.

5.      Based on my successful negotiations with the holder of the first priority deed of trust against the Property, I was able to pay off that lien for $100,000 less than the amount owed.

6.      I also succeeded in negotiating a $200,000 partial payment to the holders of the second priority deed of trust against the Property, which limited the accrual of interest.

7.      I am currently holding approximately $540,000, which, based on the Court's order authorizing the sale of the Property, is subject to Lewis/Akhtanova's alleged statutory lien and the interests of the holders under the former second priority deed of trust.

8.      Following exhaustive negotiations with Lewis/Akhtanova, through our respective counsel, which included circulation of a draft complaint against Lewis/Akhtanova, I successfully negotiated a settlement of Lewis/Akhtanova's lawsuit against Debtor, whereby they seek $2.9 million in

damages, $3.6 million proof of claim, and alleged $580,000 interest in the sale proceeds in exchange for a payment of $150,000 and a non-priority unsecured claim of $200,000.

9.      If the settlement is not approved, I believe I would succeed in obtaining a judgment that Lewis/Akhtanova have no interest in the sale proceeds and do not have a secured claim against the Estate.  However, I believe that Lewis/Akhtanova would likely succeed in establishing their entitlement to an unsecured claim between $400,000 and $500,000, based on amounts that they paid to Debtor in connection with their unsuccessful purchase of the Property and related costs.

10.      In the event that the parties proceed with litigation of their respective lawsuits, the attorney fees and costs incurred by the Estate could exceed $150,000 due to the complexity of the claims, necessity for extensive discovery, and likelihood that trials would be necessary.

11.      In addition to the cost of litigation, the delay occasioned by it would likely be material, as the cases would likely not proceed to trial until mid to late 2024 and appeals could extend ultimate adjudication until 2025.  This delay would significantly extend administration of the Estate and delay payment to unsecured creditors.

12.      Based on my calculations, and the possibility that Lewis/Akhtanova may be able to establish entitlement to an unsecured claim between $400,000 and $500,000, Lewis/Akhtanova will likely receive less through this settlement.  Therefore, the Agreement is in the best interest of creditors.

13.      Through the Motion, I request that the Court authorize me to make the $150,000 settlement payment to Lewis/Akhtanova.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on October ___/___, 2023 at Riverside, California.

ARTURO M. CISNEROS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**2112 Business Center Dr., Irvine, CA 92612**

A true and correct copy of the foregoing document entitled (*specify*):  **TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY AND REQUEST FOR AUTHORITY TO ISSUE PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ARTURO M. CISNEROS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 4, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**OFFICE OF THE U.S. TRUSTEE: United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
**CHAPTER 7 TRUSTEE: Arturo Cisneros (TR)    amctrustee@mclaw.org, acisneros@iq7technology.com; ecf.alert+Cisneros@titlexi.com**
**CHAPTER 7 TRUSTEE:  Arturo Cisneros (TR)    acisneros@iq7technology.com; ecf.alert+Cisneros@titlexi.com**

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **October 4, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR: Stonebridge Ventures, LLC, 15 Corporate Plaza Drive, Suite 200, Newport Beach CA 92660**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 4, 2023 | Diep Quach | /s/ Diep Quach |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**

**SECTION 1 CONT.**

NOTICE: Robert M Aronson     robert@aronsonlawgroup.com, info@aronsonlawgroup.com; robert@ecf.inforuptcy.com; r55297@notify.bestcase.com

NOTICE: James C Bastian     jbastian@shulmanbastian.com

NOTICE: Arturo Cisneros     arturo@mclaw.org, CACD_ECF@mclaw.org

NOTICE: Nicholas W Gebelt     ngebelt@goodbye2debt.com

NOTICE: Michael J Hauser     michael.hauser@usdoj.gov

NOTICE: Christopher Hewitt     hewittesq@yahoo.com

NOTICE: Rika Kido     rkido@shulmanbastian.com, avernon@shulmanbastian.com

NOTICE: Zi Chao Lin     zi.lin@tuckerellis.com, kristin.mccarthy@tuckerellis.com;thomas.fawkes@tuckerellis.com;jason.ben@tuckerellis.com

NOTICE: William Malcolm     bill@mclaw.org, cvalenzuela@mclaw.org

NOTICE: Richard A Marshack     rmarshack@marshackhays.com, lbuchananmh@ecf.courtdrive.com;rmarshack@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

NOTICE: W. Derek May     wdmlaw17@gmail.com, r48266@notify.bestcase.com

NOTICE: David W. Meadows     david@davidwmeadowslaw.com

NOTICE: Thomas J Polis     tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com

NOTICE: Hamid R Rafatjoo     hrafatjoo@raineslaw.com, bclark@raineslaw.com

NOTICE: Lee S Raphael     ecfcca@ecf.courtdrive.com, cmartin@pralc.com

NOTICE: Timothy M Ryan     tryan@theryanfirm.com, ecf@theryanfirm.com

NOTICE: Allan D Sarver     ADS@asarverlaw.com

NOTICE: Summer M Shaw     ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com

NOTICE: Nathan F Smith     nathan@mclaw.org, CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com;cvalenzuela@mclaw.org

NOTICE: Michael G Spector     mgspector@aol.com, mgslawoffice@aol.com

NOTICE: Diana Torres-Brito     dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com

**SECTION 2 CONT.**

NOTICE: AB Capital, LFD, Inc., 15 Corporate Plaza, Suite 200, Ryan Young, Newport Beach, CA 92260

NOTICE: Robert M. Aronson, Law Office of Robert M. Aronson, 444 South Flower St., Suite 1700, Los Angeles, CA 90071

NOTICE: Brentwood Finance Company, LLC, 15 Corporate Plaza, Suite 200, Ryan Young, Newport Beach, CA 92260

NOTICE: Joseph Colangelo, 15 Corporate Plaza, Suite 200, Ryan Young, Newport Beach, CA 92260

NOTICE: Monika Jensen, c/o Law Offices of Nicholas Gebelt, 15150 Hornell Street, Whittier, CA 90604

NOTICE: Shaw & Hanover, PC, 42-600 Cook Street, Suite 210, Palm Desert, CA 92211

NOTICE: Brian Thompson, Winterstone Real Estate Development, 23792 Rockfield Blvd., Ste. 101, Lake Forest, CA 92630

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

## Case Number: 8:22-bk-11556-TA

### *In re Stonebridge Ventures, LLC*

---

## SETTLEMENT AGREEMENT

---

Malcolm ♦ Cisneros, A Law Corporation
2112 Business Center Drive
Irvine, California   92612

1

Exhibit 1

This Settlement Agreement ("Agreement"), by and between Arturo M. Cisneros, Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Stonebridge Ventures, LLC ("Debtor"), United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court") case number 8:22-bk-11556-TA ("Bankruptcy Case") and Darryl Lewis and Sanna Akhtanova ("Lewis/Akhtanova") (Trustee and Lewis/Akhtanova are collectively referred to herein as the "Parties") is made with reference to the following facts:

A.      On or about January 6, 2015, Debtor obtained title to the real property commonly known as 5 Makena Lane, Rancho Mirage, California 92270 ("Property").

B.      Lewis/Akhtanova entered into a purchase agreement with Debtor in connection with the Property in or around August, 2020 ("Purchase Agreement").

C.      The sale of the Property to Lewis/Akhtanova did not close.

D.      On or about September 6, 2022, Lewis/Akhtanova filed suit against Debtor and Calpac Management, Inc., Joshua Pukini, Ryan Young, Edmund Valasquez, and Luna Construction Management, LLC ("Non-Debtor Defendants") in Riverside County Superior Court for specific performance of the purchase contract in the form of the delivery of a certificate of occupancy and deed to the Property to them on the terms and conditions set forth in the Purchase Agreement, damages in excess of $2,900,000 based on claims for breach of contract, fraudulent concealment, misrepresentation, and negligence, and imposition of a constructive trust as to any defendants who have possession of Lewis/Akhtanova's alleged deposits ("Superior Court Case").

E.      In Lewis/Akhtanova's Complaint, they allege that they paid $344,750 toward the $2,895,000 purchase price of the Property pursuant to the Purchase Agreement.

F.      On September 6, 2022, Lewis/Akhtanova recorded a Notice of Pending

2

Exhibit 1

Action/Lis Pendens against the Property.

G.    On September 9, 2022, Debtor commenced its bankruptcy case by filing a petition under Chapter 11 of Title 11 of the United States Code.

H.    On September 21, 2022, Lewis/Akhtanova filed a secured proof of claim in the amount of $3,600,000 as Claims Register No. 2-1 ("Claim").

I.    On September 23, 2022, Debtor and the Office of the United States Trustee entered into a stipulation to the appointment of a Chapter 11 trustee.

J.    On September 29, 2022, Trustee was appointed as the Chapter 11 Trustee of Debtor's bankruptcy estate ("Estate").

K.    On October 31, 2022, Lewis/Akhtanova removed the Superior Court Case to this Court as Adversary Proceeding number 8:22-ap-01093-TA ("Adversary Proceeding").

L.    On December 21, 2022, Plaintiff filed a Motion to Sell the Property free and clear of claims and interest, including any interest of Lewis/Akhtanova, pursuant to 11 U.S.C. § 363(f) ("Motion").

M.    On December 28, 2022, Lewis/Akhtanova filed an opposition to the Motion, wherein they alleged that they held a "senior secured lien" of "approximately $582,000" pursuant to California Civil Code § 3050.

N.    On February 7, 2023, the Court entered an order granting the Motion and authorizing Trustee to sell the Property free and clear of all claims and interests of Lewis/Akhtanova but providing that the claims set forth in the Complaint for (1) Specific Performance; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Fraudulent Concealment; (5) Intentional Misrepresentation; (6) Negligent Misrepresentation; (7) Negligence; and (8) Declaratory Relief shall attach to the sale proceeds

3

Exhibit 1

("Order").

O.      The Order further provided that partial distributions to lien claims were permitted

if undistributed proceeds were sufficient to pay the full amount of all disputed liens.

P.      On February 24, 2023, Plaintiff sold the Property for $2,800,000 and received net

proceeds from the sale of $744,061.68 following payment of costs of sale, broker commission,

property taxes, and a first priority deed of trust.

Q.      Following a partial distribution of $200,000 to the holders of a second priority

deed of trust against the Property, in the total amount of approximately $430,000, Trustee is

currently holding approximately $540,000 in proceeds from the sale of the Property ("Remaining

Proceeds").

R.      On March 10, 2023, Trustee filed a motion to convert the case to Chapter 7,

which was granted on April 3, 2023.

S.      On April 3, 2023, Trustee was appointed as the Chapter 7 Trustee of Debtor's

Estate, a capacity in which he continues to serve.

T.      Following settlement discussions between the Parties, on July 24, 2023, Trustee

circulated a final offer to counsel for Lewis/Akhtanova along with a draft complaint against

Lewis/Akhtanova for disallowance of claim, declaratory relief in connection with the Remaining

Proceeds, and to avoid, recover, and preserve Lewis/Akhtanova's alleged statutory lien against

the Remaining Proceeds pursuant to 11 U.S.C. §§ 545(2), 550, and 551 and gave

Lewis/Akhtanova until July 31, 2023 to respond.

U.      On July 31, 2023, Lewis/Akhtanova made a counteroffer, which Trustee accepted.

V.      The Parties desire to resolve all issues concerning the Complaint, as related to

Debtor and the Estate only, Claim, Remaining Proceeds, and the Estate's claims against

4

**Exhibit 1**

Lewis/Akhtanova without the delay and uncertainty of further legal proceedings and litigation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1. _Recital of Facts_. Each and every recital of fact set forth above is incorporated herein by reference thereto as though fully set forth herein. These recitals are an integral part of this Agreement and the Parties hereby agree that they are true for purposes of this Agreement.

2. _Settlement_.

   a. Trustee shall pay $150,000 (One Hundred Fifty Thousand Dollars) to Lewis/Akhtanova within fourteen (14) days of entry of a Bankruptcy Court order approving this Agreement ("Settlement Payment").

   b. Additionally Lewis/Akhtanova shall have an allowed general unsecured claim in the amount of $200,000, shall have no other claim against the Estate, and shall amend their $3.6 million secured claim to a general unsecured claim in the amount of $200,000 within seven (7) days of their receipt of the $150,000 payment.

   c. Lewis/Akhtanova shall dismiss the Adversary Proceeding against Debtor, with prejudice, and remand the case back to the Riverside County Superior Court within seven (7) days of receipt of the $150,000 payment.

   d. Upon the amendment of Lewis/Akhtanova's claim, dismissal of the Adversary Proceeding against Debtor, with prejudice, and remand of the remaining portion of the Adversary Proceeding related to the Non-Debtor Defendants, the Estate's claims against Lewis/Akhtanova shall be deemed fully administered.

5

**Exhibit 1**

    e.    Except as provided herein, Lewis/Akhtanova hereby waive and forever disclaim any interest in, or lien against, the Remaining Proceeds, other than the Settlement Payment and as the holders of a $200,000 general unsecured claim.

3.    <u>Payment of the Settlement Amount</u>. The Settlement Payment shall be made payable to Polis & Associates, a Professional Law Corporation Trust Account and sent via Federal Express next business day delivery to the following address:

**Polis & Associates, A Professional Law Corporation**
**Attention: Thomas J. Polis, Esq.**
**19800 Macarthur Boulevard, Suite 1000**
**Irvine, California 92612-2433**

4.    <u>Release of Claims against the Estate</u>. Lewis/Akhtanova hereby waive any and all right to assert any claims against the Estate, Trustee, or Malcolm ♦ Cisneros, A Law Corporation, except the $200,000 general unsecured claim against the Estate, authorized by ¶ 2(b) *supra,* and payment of the Settlement Payment by the Estate.

5.    <u>Lewis/Akhtanova's Express Reservation of Claims Against the Non-Debtor Defendants</u>. The releases provided herein in no way release, discharge, or in any way impact Lewis/Akhtanova's claims against the Non-Debtor Defendants in the Adversary Proceeding or Superior Court Case.

6.    <u>Waiver of Rights Under California Civil Code Section 1542</u>. Lewis/Akhtanova expressly acknowledges that they received the advice of legal counsel concerning the provisions of California Civil Code section 1542, and are familiar with the provisions of California Civil Code section 1542, which provides as follows:

**"A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of**

6

Exhibit 1

**executing the release and that, if known by him or her, would have
materially affected his or her settlement with the debtor or released party."**

Lewis/Akhtanova further acknowledge that they may have sustained damage, loss, cost,

or expense that is presently unknown or unsuspected, and that such damage, loss, cost, or

expense as may have been sustained may give rise to additional damage, loss, cost, or expense in

the future.    Nevertheless, Lewis/Akhtanova acknowledge that this Agreement has been

negotiated and agreed upon in light of this situation, and they hereby expressly waive any and all

rights that they may have under California Civil Code section 1542, or under any other state or

federal law of similar effect, with respect to the releases provided herein.

6.    Understanding of the Agreement. This Agreement is expressly conditioned on

entry of an order by the Bankruptcy Court in the Bankruptcy Case approving it pursuant to

Federal Rule of Bankruptcy Procedure 9019.    Should the Bankruptcy Court decline to approve

this Agreement, this Agreement shall be null and void and of no force or effect.    The Parties

acknowledge that this Agreement is the result of good faith arm's length negotiations between

the Parties and, upon execution, agree not to object to Trustee's motion to approve this

Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

7.    Reliance.    Except as set forth herein, the Parties acknowledge that they have

relied solely upon their own judgment, belief and knowledge of the existence, nature and extent

of each claim, demand, or cause of action that each Party may have against the other, and that

each such Party has not been influenced to any extent in entering into this Agreement by any

representation or statement regarding any such claim, demand, or cause of action made by any

other Party hereto. Each Party also acknowledges that they have consulted with their attorney or

have been given the opportunity to consult with an attorney and knowingly and intentionally

# Exhibit 1

waived said opportunity prior to entering into this Agreement.

8.      Execution of Additional Documents.  The Parties agree that they will execute any and all additional documents and take all additional steps which may be necessary or convenient to consummate this Agreement and accomplish the purposes thereof.

9.      Integration of Entire Agreement.  This Agreement contains the entire Agreement of the Parties, and no representations, warranties, inducements or promises not included herein by express provision or contained in a document or instrument identified herein and executed contemporaneously herewith shall be binding on any Party hereto.

10.     Counterparts.  This Agreement may be executed in any number of original, facsimile, copied or electronic counterparts, and all counterparts shall be considered together as one Agreement.  A faxed, copied or electronic counterpart shall have the same force and effect as an original signed counterpart.  Each of the Parties hereby expressly forever waives any and all rights to raise the use of a facsimile machine or email to deliver a signature, or the fact that any signature or Agreement or instrument was transmitted or communicated through the use of a facsimile machine or email, as a defense to the formation of a contract.

11.     Mutually Drafted.  This Agreement is to be interpreted without regard to the draftsman.  The terms and intent of this Agreement, with respect to the rights and obligations of all parties identified in this Agreement, shall be interpreted and construed on the assumption that all parties participated equally in its drafting.

12.     Binding.  This Agreement shall be binding on the Parties hereto when each such party has executed at least one counterpart, subject only to Bankruptcy Court approval.

13.     Successors and Assigns.  The provisions of this Agreement shall be binding upon and inure to the benefit of the respective Parties and their heirs, executors, administrators, agents,

Settlement Agreement
*In re Stonebridge Ventures, LLC*
Bankr. C.D. Cal. 8:22-bk-11556-TA

# Exhibit 1

representative, successors and assigns.

14.    <u>Effective Date</u>.  This Agreement shall become effective upon the entry of a Bankruptcy Court order authorizing Trustee to enter into it and approving the terms set forth herein.

15.    <u>Governing Law</u>.  This Agreement is made pursuant to and shall be governed by and construed in accordance with the laws of the State of California.

16.    <u>Jurisdiction of the Bankruptcy Court</u>.  Should any dispute arise regarding this Agreement, the Bankruptcy Court or any successor court shall have exclusive jurisdiction to determine the same.

17.    <u>Attorney Fees</u>. In any action to enforce any of the provisions or rights under this Agreement, the prevailing party shall be entitled to recover from the unsuccessful party or parties, all costs, expenses, and reasonable attorney fees incurred by the prevailing party (including without limitations, such costs, expenses, and fees on appeal) and, if such prevailing party shall recover judgment in any such action or proceeding, such costs and expenses, including those of expert witnesses and attorney fees, shall be included as a part of the judgment.

18.    <u>Trustee's Capacity</u>. Trustee is signing this Agreement solely in his capacity as Chapter 7 Trustee of the Estate.  Nothing contained herein shall in any way impute liability to Trustee, personally or as a member of any professional organization or anyone acting on his behalf, including, but not limited to Malcolm ♦ Cisneros, A Law Corporation.

19.    <u>Time is of the Essence</u>. Time is of the essence in the performance of all obligations under this Agreement.

20.    <u>Survival of Representations and Warranties</u>. The Parties agree that all representations and warranties made by them in this Agreement shall survive the execution of

9

Exhibit 1

this Agreement.

21.   <u>Headings</u>.  Headings in this Agreement are for convenience or reference only and shall not limit or otherwise affect the meaning hereof.

22.   <u>Effect of Signing</u>.  By signing below the Parties acknowledge that they have read and understand this Agreement or have had this Agreement interpreted for them and that by signing below they are acknowledging that they understand and agree that they are bound by the terms of this Agreement.

Date: September 30, 2023

_____
Arturo M. Cisneros, solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Stonebridge Ventures, LLC

Date: September 29, 2023

_____
Darryl Lewis

Date: September 29, 2023

_____
Sanna Akhtanova

**APPROVED AS TO FORM AND CONTENT.**

MALCOLM ♦ CISNEROS, A Law Corporation

_____
By: Nathan F. Smith
*Counsel for Chapter 7 Trustee, Arturo M. Cisneros*

POLIS & ASSOCIATES, A Professional Law Corporation

_____
Thomas J. Polis
Counsel for Darryl Lewis & Sanna Akhtanova

10

Settlement Agreement
*In re Stonebridge Ventures, LLC*
Bankr. C.D. Cal. 8:22-bk-11556-TA

Exhibit 1

By: Thomas J. Polis
*Counsel for Darryl Lewis and Sanna Akhtanova*

11

Exhibit 1