1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              --oOo--

4   In Re:                        ) Case No. 8:22-bk-11556-TA
                                  )
5   STONEBRIDGE VENTURES, LLC,    ) Chapter 7
                                  )
6            Debtor.              ) Santa Ana, California
    _____) Thursday, January 25, 2024
7                                 ) 11:00 a.m.
    A. CISNEROS,                   )
8                                 ) Adv. No. 8:23-ap-01013-TA
            Plaintiff,            )
9                                 )
         vs.                      )
10                                )
    COLANGELO, ET AL.,            )
11                                )
            Defendants.           )
12  _____)

13                               PLAINTIFF'S MOTION FOR DEFAULT
                                 JUDGMENT
14

15                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE THEODOR ALBERT
16                UNITED STATES BANKRUPTCY JUDGE

17  APPEARANCES:

18  Proposed Counsel for the        THOMAS J. POLIS, ESQ.
      Defendant, Joe Colangelo:     Polis & Associates, APLC
19                                   19800 MacArthur Boulevard
                                     Suite 1000
20                                   Irvine, California 92612
                                     (949) 862-0040
21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

ii

APPEARANCES:  (cont'd.)

For the Plaintiff,              NATHAN F. SMITH, ESQ.
  Arturo Cisneros,             Malcolm & Cisneros, A Law
  Chapter 7 Trustee:             Corporation
                               2112 Business Center Drive
                               Irvine, California 92612
                               (949) 252-9400

Court Recorder:                Sally Daniels
                               United States Bankruptcy Court
                               411 West Fourth Street
                               Suite 2030
                               Santa Ana, California 92701

Transcriber:                   Briggs Reporting Company, Inc.
                               9711 Cactus Street
                               Suite B
                               Lakeside, California 92040
                               (310) 410-4151

1

2                              --oOo--

3       (Call to order of the Court.)

4              THE CLERK:  Please come to order.  This United

5  States Bankruptcy Court is now in session.  Chief Judge

6  Theodor C. Albert, Bankruptcy Judge, presiding.

7              THE COURT:  Good morning again.  At 11:00 o'clock,

8  we'll start with Item Number Three, the matter of Cisneros

9  vs. Colangelo.  This is a motion for a default judgment.

10             MR. SMITH (via Zoom):  Good morning, your Honor.

11 Nathan Smith for the Plaintiff and Chapter 7 Trustee, Arturo

12 Cisneros.

13             THE COURT:  Right.

14             MR. POLIS (via Zoom):  Your Honor, this is Tom

15 Polis.  I'm not counsel of record yet, but I want to make a

16 statement to the Court concerning this adversary once we

17 take care of all the appearances.

18             THE COURT:  Okay.  And who are you representing?

19             MR. POLIS:  Well, your Honor, I represent Mr.

20 Colangelo, the Defendant in the -- and I'm sure the Court is

21 aware of all these various adversaries.  In two other

22 related adversaries, 23-1078, and 23-1086, and I was

23 retained in late November, early December.

24             And it wasn't communicated to me from either Mr.

25 Colangelo or from the Debtor's -- the Defendant's former

2

1  counsel, that this matter was in a default status.  And when

2  I -- I became first aware of this when I was checking your

3  Court's tentatives yesterday for the matter that I had in

4  front of your Honor earlier, last hour.  And I was like, my

5  gosh guys, we got a problem here.

6          So I filed a pleading yesterday afternoon.  I

7  wouldn't have suspected the Court to have seen it.  I know

8  the Court has made comments in the past about late-filed

9  pleadings.  But I just became aware of this matter being in

10 a default status literally yesterday morning when I was

11 looking at the Court's tentative.

12         And as I noted in the one or two-page pleading we

13 filed, I would ask the Court, in light of the fact that,

14 number one, I'm most likely, I assume, going to be the new

15 counsel and -- once the former counsel formally subbed out.

16         And since I am the counsel in the other two

17 related adversaries, that at a minimum this matter be

18 continued for 30 to 45 days to allow us to either stipulate

19 to set aside the default, or as the Court is also aware, the

20 -- in the other related adversaries, there's a ordered

21 mediation by this Court that's supposed to occur by the end

22 of February.

23         And as a coincidence, between the last hearing and

24 this hearing, I think the parties have finally now agreed on

25 a mediator.  A lot of the judges that were asked for were

3

1  not available or had issues with, you know, timing or

2  whatever.

3         Again, so I would ask to allow this matter to

4  proceed on its merits.  Let me get formally retained by Mr.

5  Colangelo and move on from that point, rather than keep this

6  matter on default status, in light of the, obviously

7  dropping the ball from former counsel to present counsel and

8  lack of communication, for want of a better phrase.

9         THE COURT:  Are there -- first of all, are there

10  any other appearances?  Okay.

11         Mr. Smith, what are you to do with all that?

12         MR. SMITH:  Your Honor, my client objects to any

13  continuance.  Mr. Polis has been involved in the underlying

14  bankruptcy case since shortly after it was filed in

15  September '22.

16         If you recall, your Honor, he's counsel for Darryl

17  Lewis and Sanna Akhtanova, and represented them in

18  connection with an adversary proceeding against the Debtor

19  and in connection with the sale of the 5 Makena property.

20         If you recall, your Honor, Mr. Colangelo and Ms.

21  Jensen formerly occupied the 2 Makena property.  His clients

22  opposed the sale of that property, and my client and Mr.

23  Lewis and Ms. Akhtanova eventually entered into a settlement

24  agreement whereby they were paid a settlement payment and

25  given an unsecured claim in Debtor's case.  I see Mr. Polis

4

1  appeared in the two adversaries he referenced, your Honor,

2  on December 27th and December 28th after the filing of this

3  motion.

4          Mr. Hewitt is counsel of record for the Defendant

5  in this case, your Honor.  Mr. Hewitt's not present.  Mr.

6  Hewitt filed nothing in opposition to this case.  Mr. Polis

7  has not substituted into this case, your Honor.  I think the

8  motion establishes that my client is entitled to entry of

9  judgment against him.  And there appears to be no

10  substantive opposition to the motion, it's just, give us

11  more time.

12          If your Honor recalls, Mr. Colangelo has failed to

13  respond to my client's motions in connection with the other

14  adversary cases.  My client filed a motion to dismiss his

15  adversary proceeding against my client.  Mr. Colangelo filed

16  no opposition to that, nevertheless, your Honor, graciously

17  allowed him to amend that complaint.

18          Mr. Colangelo was well aware of this adversary

19  proceeding.  He was well aware that this motion was filed.

20  It was served on his counsel.  He's had over a month to

21  respond to it, your Honor, and he hasn't.  So I'd request

22  that your Honor strike whatever was filed, whatever late

23  opposition was filed in this case, and stick with its

24  tentative ruling and enter judgment against him.

25          THE COURT:  All right.  I don't know if any of you

5

1  guys had the pleasure of listening to my comments in the

2  last hour on a case, which is, there is a juncture between

3  the practical and the legal, procedural versus equitable.

4  And I always find myself some distance from that center

5  point as to what is the right thing to do, what is the

6  meaningful thing to do, what is the efficient thing to do?

7  Those aren't always the same, depending on the

8  circumstances.

9        I suppose the way I would put it here is, if I go

10 ahead and stick with the motion -- or tentative rather,

11 stick with the tentative and grant your motion for default

12 judgment, all that's going to happen is Mr. Polis is going

13 to file a motion to set it aside under rule, probably Rule

14 60 I guess.  And he's going to say, well, you know, the

15 failure to communicate, and prior counsel didn't inform me,

16 and maybe we were mistaken as to which one, but we're

17 certainly here.

18        And the case law is very heavily weighted in favor

19 of finding some basis -- as long as there's a reasonable

20 oversight, it will get granted.

21        So that's -- I can do that way, and there's a

22 certain part of me that wants to go that way, because

23 basically that forces Polis, and his client to pay Polis, to

24 put it in writing.  Tell us why it is exactly that you

25 didn't answer this on time, and make everybody at least say

6

1 formally why they think in furtherance of equity, I should

2 set it aside.  I can do that.

3          But the question I really have to you is, do you

4 want to go through that exercise?  If you do, then I will do

5 it.  Or would you rather just continue it and start talking

6 about how this case gets settled?  Maybe the threat of this

7 overhanging might help your conversations a bit.

8          Does that appeal to you at all?

9          MR. SMITH:  Your Honor, I apologize.  My feed cut

10 out there.  I did not hear your Honor's last statement.

11          THE COURT:  Okay.  Well, it was long-winded as

12 usual, but let me just sort of -- which is, that, you know,

13 we dwell on that center point between practical and legal.

14 The legal answer is, it's in default.  Properly served, no

15 timely answer, done.  And like arithmetic, it doesn't allow

16 for a variety of answers, there's one right answer.

17          And often times I feel compelled to do exactly

18 that, because otherwise we don't have procedure, we don't

19 have anything.  It just generates into a hopeless mess.  So

20 that's part of me speaking.

21          The other part of me says, you know, I know what's

22 going to happen.  He's going to file a Rule 60 motion to set

23 it aside.  And you're going to file something in response

24 and say, you know, a summons has to be taken seriously, and

25 if you don't you can bear the consequences.  And he's going

7

1  to say, well, it's excusable neglect.  And given the

2  weighted case law, he's probably going to win.  Now, based

3  on what he's told me orally, we can -- I guess there may be

4  some benefit to forcing him to put it in writing.

5          So there's -- and my question to you, before we

6  cut out is, do you want to take the practical route or do

7  you want to take the strictly legal route, which is probably

8  going to result in greater expense, maybe for no tangible

9  benefit.  Or do you want to try to use the pendency of what

10  I'll do as leverage to help cut a deal, which is how this

11  ought to get resolved?

12          MR. SMITH:  Your Honor, I understand and

13  appreciate your Honor's comments.  I would like to take the

14  legal route, your Honor, and I will discuss with Mr. Polis a

15  potential resolution after this hearing, but I -- that's how

16  my client would like to proceed.

17          THE COURT:  All right.  Well, Mr. Polis, I --

18          MR. POLIS:  Your Honor, can I -- your Honor, can I

19  say something first?  Mr. Smith, you know, started his

20  comments by how I've been involved in this case.  And, yes,

21  I've been involved in this case on another party involving

22  another property.  That doesn't mean that I kept track of

23  every adversary regarding other properties in this case, et

24  cetera, et cetera.

25          And in fact that I -- once the Court was to order

8

1  these parties in the other two related adversaries to,

2  quote, "go to mediation," as the Court is saying now -- what

3  the Court has been saying with this case, there's too many

4  balls in the air, get this settled, guys.

5       I have sent probably 15 e-mails and been on 15 e-

6  mail chains with Mr. Smith and various parties, and not once

7  has somebody said, hey, by the way, you got to keep an eye

8  on this other adversary.

9       I mean, so to say that we sort of slept on our

10 rights, yes, Mr. Colangelo, who's not a lawyer, didn't --

11 presumably didn't understand his -- he didn't know that this

12 was going on.  And now to say that, again, to force Mr.

13 Colangelo -- and as your Honor writes, and we're going force

14 the estate to spend money.

15      Again, I think that -- and again, I know the Court

16 is very equitable and does the right thing.  I think the

17 Court -- it appeared was his initial -- your initial

18 inclination is to continue it, not deny this motion, but to

19 continue it 30, 45 days.  I know we have a status conference

20 in early April, which we're obviously going to report back

21 to the Court after the, hopefully, global mediation here in

22 the next 30 to 45 days.

23      I would -- for efficiency sake, and my client, Mr.

24 Colangelo, and my other client, Mr. Lewis and his spouse,

25 are unsecured creditors.  Having more money needlessly go to

9

1  pay attorney's fees for the estate, or something as the

2  Court is I think telegraphed pretty clearly, a 60(b) motion

3  that we'll be filing soon hereafter, most likely will be

4  granted.  I don't want to assume anything, but mostly like

5  will be granted, will make the estate incur money opposing

6  it for something that, again, is sort of a fait accompli.

7       I would ask the Court to stick with the equitable

8  resolution, and that is -- and I know there's rules,

9  obviously there's rules, or this would be a mess.  But I

10 think the situation has presented itself, dictates that at a

11 minimum -- I'm not asking the Court to deny the motion, to

12 withdraw the motion, simply continue the motion.

13      Again, I there's a status conference in these

14 other related adversaries in early April.  Kick it out to

15 that date.  And, yeah, we have this hanging over our head,

16 so to speak, when we go to this mediation finally.  But to

17 require us and then require the estate to spend money for a

18 result that I think we all know how it's going to play out,

19 again, I don't -- I would rather have the Court stick with

20 the Court's sort of fairness, equitable manner of trying to

21 resolve this.

22      THE COURT:  Well, of course, that's what I wanted

23 -- I do want you guys to resolve it.  The only sort of

24 question mark in my mind is, which is the best leverage?  Is

25 it to go ahead and grant Mr. Smith's motion in accordance

10

1  with the tentative?  Because after all, the rules are the

2  rules.  And then let you argue on behalf of Colangelo from,

3  you know, in a hole looking out, as maybe an additional

4  inducement to go and speak seriously at the mediation, is

5  that the better form of leverage?

6          Or is the better form of leverage to simply

7  continue this and have nobody in a hole, so to speak, but

8  encouraged?  Or because you showed up this morning, say,

9  well, you know, it's -- we're just going to continue it, and

10 you can file an answer.

11         I don't know which is the best, but clearly in the

12 interest of your clients, plural, you should get this

13 resolved and talk about its resolution sooner rather than

14 later.  Because one of the reasons the bankruptcy gets so

15 heavily criticized is because a lot of people perceive its

16 all for the lawyer's fees.  People get to believe that

17 there's no justice here.

18         So --

19         MR. SMITH:  Your Honor, if I may?

20         THE COURT:  Yes.

21         MR. SMITH:  Briefly, your Honor.  Your Honor, I

22 think the best leverage in this case is to grant the motion.

23 Mr. Colangelo, in order to obtain an order setting aside a

24 default judgment, will have to articulate a defense to the

25 Trustee's complaint.  I don't believe Mr. Colangelo has a

1 defense.

2          Your Honor did preside over the hearings on my

3 client's motions for turnover in this case.  Mr. Colangelo

4 occupied this property, never paid a dime.  And, therefore,

5 I would like to see Mr. Colangelo's defense.

6          I don't -- I know that Mr. Polis is certainly

7 optimistic, and I understand that the case law generally

8 weighs in favor of setting aside a default judgment, but

9 that's based on a defense, your Honor.  And there would not

10 appear to be any defense in this case.  He's raised no such

11 defense.

12          In connection with the motion for turnover, he

13 raised no such defense that my client would have been

14 entitled to some compensation, or the estate would have been

15 entitled to compensation.  But I think the best way forward

16 your -- if for your Honor to grant the motion.

17          THE COURT:  That's what I will do, because you've

18 -- although everything else we said is true, you do have the

19 legal high ground, so to speak, and the rules were not

20 followed.

21          So, motion's granted and default judgment may be

22 entered.  But before you spend a lot of time scribbling and

23 wasting paper and ink, maybe you should start talking

24 seriously and get this thing resolved.  Okay?

25          MR. POLIS:  Your Honor --

12

1          MR. SMITH:  We will, your Honor.

2          MR. POLIS:  I appreciate that.  I would ask one

3   final request.  Even though I'm not technically counsel of

4   record, since we've sort of -- and, again, I'll be the first

5   to admit, this is obviously sort of half-baked at the last

6   minute, only because I only knew about it yesterday.

7          The point is, if Mr. Smith can lodge the proposed

8   judgment, so we have time to either oppose it and/or get our

9   motion for -- or motion to set aside default on file in a

10  timely manner.

11         THE COURT:  Yeah, I don't know what to think of

12  that, other than to say, in your role as prospective counsel

13  not yet employed, I would urge you to treat your colleague

14  like a gentleman and see which can be done without needless

15  expense, and more than that I will not say.

16         Okay.  I   will --

17         MR. POLIS:  That's fine.  Thank you, your Honor.

18         MR. SMITH:  Thank you.

19         THE COURT:  All right.  Good luck with your

20  discussion, gentlemen.

21         MR. SMITH:  Yup.  Thank you.

22         MR. POLIS:  Thank you, your Honor.

23      (Proceedings concluded.)

24

25

13

1        I certify that the foregoing is a correct

2   transcript from the electronic sound recording of the

3   proceedings in the above-entitled matter.

4

5   /s/ Holly Steinhauer_____    2-6-24_____
    Transcriber                    Date

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25