Christopher Hewitt, Esq. (SBN: 236568)
Law Office of Christopher Hewitt
74361 Highway 111, Suite 7
Palm Desert, California 92260
Telephone: 760.459.2438
Facsimile: 877.241.6366
Email: Hewittesq@yahoo.com

***Attorney for Debtor:***
Joe Colangelo

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br>STONEBRIDGE VENTURES, LLC<br><br>Debtor. | Case No.: 6:22-bk-11556-TA<br><br>Chapter 7<br><br>JOE COLANGELO, SECURED CREDITOR AND PRE-PETITION BUYER'S OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. §363(f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BROKER COMPENSATION; (4) AUTHORIZING DISTRIBUTION; DECLARATIONS IN SUPPORT THEREOF<br><br>*[Property: 2 Makena Lane, Rancho Mirage, CA 92270]*<br><br>Date: 7/11/23<br>Time: 11:00AM<br>Crtrm.: Via Zoom Teleconference<br>Place: USBC<br>     411 West Fourth Street<br>     Santa Ana, CA 92701 |

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY

JUDGE; THE DEBTOR, DEBTOR'S COUNSEL OF RECORD; THE CHAPTER 7 TRUTEE

1

Opposition

AND HIS COUNSEL OF RECORD; THE SANTA ANA OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES ENTITLED TO NOTICE:

Secured creditor and pre-petition buyer, Joseph Colangelo submits the following Opposition to the Chapter 7 Trustee's sale Motion re: *2 Makena Lane, Rancho Mirage, California 92270 (EFC NO 217)(Makena property)*. Specifically, as detailed herein, Colangelo respectfully requests that the Court either deny the Trustee's sale Motion since the Trustee's Sale Motion is completely silent as to how the proposed net sales proceeds from the sale of the Makena property will pay Colangelo's senior secured lien in the approximate amount of $1.3 million pursuant to *§3050* of the *California Civil Code*, nor does the Motion address that Mr. Colangelo had a valid sales and purchase agreement prior to either the other lien holders who are being contemplated to be paid ahead of Mr. Colangelo to his detriment. Mr. Colangelo believes that while the sale of property is within the Chapter 7 Trustee's jurisdiction, safeguards should be put in place prior to the Chapter 7 Trustee distributing the funds from the sale which require an *Adversary Proceeding* for *Declaratory Relief* regarding both lien priority and lien status against Brentwood Finance Company as well as Renewable Farms. A second issue of contention that has arisen is the unsecured *Proof of Claim* filed by Monika Jensen. The *res* of the *Proof of Claim* consists of separate property funds belonging to Joe Colangelo that were put into Ms. Jensen's account – not as a gift, but solely as a vehicle to provide downpayment funds for the *2 Makena Property*. Joe Colangelo will be filing an Objection to Ms. Jensen's *Proof of Claim*.

I.

### Statement of Facts

1. On April 24, 2020, Mr. Colangelo and Ms. Monika Jensen entered into a residential

purchase agreement and purchased *2 Makena Lane, Rancho Mirage, California 92270* (the "Property) from Stonebridge Ventures, LLC ("Stonebridge") for $2,595,000. An initial deposit of $100,000 was used as a downpayment.

2. Mr. Colangelo moved into the property on December 11th, 2020, having paid close to $1.3 million of the $2,595,000.

3. Brentwood's loan and Deed of Trust was recorded more than sixteen (16) months after the purchase and sales agreement was entered into. Furthermore, at the time it was recorded, Colangelo had been residing at the property for six (6) months.

4. On September 9, 2022, Stonebridge filed a Chapter 11 Bankruptcy Petition with the Central District of California - Santa Ana Division.

5. In the two plus years since the payment of the initial downpayment and Stonebridge LLC's Bankruptcy filing, construction issues were a source of ongoing negotiation between Mr. Colangelo and Stonebridge, LLC. While during the two year period, Mr. Colangelo had not paid the entire balance of the $2,595,000, he had paid $1.3 million. During this time, he had never been informed by Stonebridge, LLC that he was in breach of the purchase/sale agreement, nor did he have any knowledge about the Brentwood loan to Stonebridge, LLC.

6. On February 9, 2023, the Chapter 11 Trustee filed an Adversary Complaint [ Docket Number 133].

7. Mr. Colangelo, through counsel, answered the Trustee's Adversary Complaint on March 13, 2023. Subsequent to the filing of the Adversary Complaint, Mr. Colangelo's counsel has worked with Nathan Smith (the attorney that filed the Adversary Complaint). A spirit of cooperation has been ongoing amongst all concerned parties. Mr. Brian Thompson, the realtor who has been employed by the Chapter 7 Trustee has ensured that other realtor(s),

prospective buyer(s), and the parties, all have access to the Property. Mr. Colangelo is, and continues to cooperate with the process.

8. The Adversary Complaint seeks back rent from Mr. Colangelo resulting from time he spent living on the property without paying mortgage. Ongoing settlement discussions have been occurring regarding resolution of the Adversary Complaint. Strategically speaking, the parties have arm wrestled in their attempts to resolve the ongoing litigation. Mr. Colangelo has found himself on the short end of the stick in these negotiations as he has been presented with the possibilities of an Amended Complaint alleging his breach of the purchase/sale agreement among other things in an effort to renounce his position as a secured creditor. Mr. Colangelo plans on using this court as a vehicle to determine the validity and positioning of the liens that are currently affecting the property. Mr. Colangelo has yet to file an unsecured claim in the case because he has a valid real estate and purchase/sale agreement that was never rescinded. Furthermore, Mr. Colangelo and Ms. Jensen have paid over $1.3 million of the $2.7 million purchase price. Mr. Colangelo has also invested hundreds of thousands of dollars toward fixing structural issues with the Property that had been discussed and addressed with Stonebridge, LLC prior to their Bankruptcy filing.

9. Mr. Colangelo contends that other lienholders obtained their interest in the *Makena Property* pursuant to fraudulent pretenses ( ie. *that Stonebridge had not informed Brentwood of the purchase/sale agreement in existence*). Furthermore, Mr. Colangelo contends that had these lienholders done their due diligence before giving Stonebridge, LLC loans, Mr. Colangelo would not be in the position that he temporarily finds himself in as a matter of law. Mr. Colangelo intends to address the Court for equitable redress in a way that seeks fairness in how to distribute the funds from the inevitable sale of the property. Mr. Colangelo understands

4

Opposition

that the Trustee's position as a bona fide purchaser puts him in a predicament of not being able to command specific performance and/or subjugate the other lien holders who legally through fraud filed in front of him. However, Mr. Colangelo wishes to address these contentions with this Honorable Court.

10. Stonebridge LLC's fraud has created a ripple effect. It has resulted in economic loss to Mr. Colangelo. It put a strain on his marriage resulting in irreconcilable differences between him and Ms. Jensen. Further complicating matters impacting the Response to the instant Motion as well as the filing of his own Adversary Complaint is the fact that the divorce has resulted in Mr. Colangelo losing access to his computer and email passwords effectively blocking him from retrieving valuable information which was exchanged between Mr. Colangelo and Stonebridge, LLC. Ms. Jensen has locked him out of his electronic devices. The information is sorely needed to conduct the ongoing litigation, and to determine which legal vehicle is best suited for Mr. Colangelo in this ongoing litigation.

11. As a matter of fairness, Mr. Colangelo believes that the disbursement of funds to creditors should be held by the Trustee until the aforementioned issues are resolved by the Court in a proper forum. Documents such as extensions of time, addendums, and communications between Josh pukini and Mr. Colangelo are not available to Mr. Colangelo. Mr. Colangelo has tried to address these matters via Ex Parte motions in his Dissolution of Marriage to no avail as of the current date. Mr. Colangelo needs access to the information so he can move forward with either an Adversary Proceeding in the Bankruptcy Court to establish lien priority, or at a minimum, direct negotiation with the Trustee to establish Mr. Colangelo with some guarantee outside the unsecured creditor position that adversary parties have been strong arming him into accepting.

12. Presently, there has been no bar date set in the case. Mr. Colangelo has no ability to determine what kind of percentage he would potentially be entitled to through a distribution to unsecured creditors from the sale of the Property. Mr. Colangelo has invested a large downpayment in the property, he has added fixtures to the property, and he has invested in fixing structural issues to the property. Mr. Colangelo is not an unsecured creditor, yet he is being forced into said position.

## II.

## MEMORANDUM OF POINTS AND AUTHORITIES

Mr. Colangelo has a huge investment into a property that he paid not only to execute a sale that was never finished, but has also paid close to $500,000 in furniture, fixtures, and equipment that is not property of the bankruptcy estate, but should nonetheless be seen as an asset in effectuating a sale for the benefit of all creditors to which Mr. Colangelo is a very large one. Mr. Colangelo is in a position that is very foreign to him and the communication from the Trustee, realtors and the position he has been put in because of Stonebridge should not be one that in this circumstance justifies the court using sanctions against him. He now has counsel who is allowing cooler heads to prevail, and hopefully in a position to work with the Trustee and through this Court to find a just and equitable result from the quagmire that Mr. Colangelo is currently working through.

**A. California Civil Code §3050 Imposes a Vendees Lien in Favor of a Buyer of Real Property When the Seller/Venor Fails to Complete the Transaction through no Fault of the Buyer/Vendee.**

*California Civil Code §3050* provides:

"One who pays the owner and part of the price of real property under agreement for the sale thereof, as a special meaning upon the property, independent of possession,

6

Opposition

for such part of the amount paid as he may be entitled to recover back, in the case of a failure of consideration."

In effect, California Civil Code section 3050 gives the buyer an equitable interest in the property as security for the reimbursement of any consideration paid, including any down payment and consequential expenditures for improvements, taxes, and insurance *See*

generally *McCall v. Superior Court*, 1 Cal. 2d. 527, 534-535 (1934); and *Soderling v. Tomlin*,170 Cal. App. 2d 169, 174 (1959). The Bankruptcy Court in *In re Trubnikov*, Northern District of California, Bankruptcy Judge Alan Jaroslovsky, Case No. 01-11202, issued a *Memorandum on Motion to Avoid Lien* regarding a Vendee's Lien under Section 3050. In analyzing the effectiveness of a vendee's statutory lien under California Civil Code 3050, Bankruptcy Judge Jaroslovsky stated the following:

> <u>California Civil Code ' 3050 gives a purchaser of realty who rescinds a contract for a vendor's fraud a lien on the property for the portion of the purchase price paid before rescission.</u> Montgomery v. Meyerstein (1921) 186 Cal. 459. <u>Since the creditors in this case had such a lien by statute prior to the commencement of their state court lawsuit, their lien is a statutory lien rather than a judicial lien and is accordingly not avoidable under ' 522(f)(1)(A) of the Bankruptcy Code</u>. Their use of the courts to enforce their lien did not transform it into a judicial lien. (Emphasis added.)

Mr. Colangelo argues that the sums of money he has put toward the home ($1.3 million) became statutorily secured once Stonebridge, LLC became in breach of the purchase/sale agreement by not turning over title to the property to Mr. Colangelo, and fraudulently taking out a loan with Brentwood and allowing them to secure a first position lienholder position on the property. All of which was done without Mr. Colangelo's knowledge.

B. **Equitable Subrogation**.

Equitable subrogation is a state law doctrine. The Ninth Circuit, in applying California law, has described equitable subrogation as being generally appropriate where (1) the subrogee made the

7

Opposition

payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance and (5) subrogation would not work any injustice to the rights of the junior lienholder. *See Mort. v. United States,* 86 F.3d 890, 894 (9th Cir. 1996). Though the specific factors may vary, the doctrine of equitable subrogation is applied only for the purpose of achieving equity and is therefore governed by equitable principles. *Compania Anonima Venezolana de Navegacion v. A.J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir. 1962), *cert. denied,* 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962)); *see, also, In re Bevlan,* 327 F.3d 994, 997 (9th Cir. 2003). As a result, under certain state's laws, the equity of the putative subrogee's actions is the overriding concern. *See, e.g., In re Simms,* 300 B.R. 877, 879 (Bankr. S.D. Va. 2003) (*citing* Ohio state law for the proposition that equitable subrogation will not be used to benefit parties who were negligent in their business transactions and who were obviously in the best position to protect themselves); *see, also, In the Matter of American Appliance,* 272 B.R. 587, 598 (Bankr. D. N.J. 2002) (holding under Delaware law that equitable subrogation applies where a lender's new security proves defective due to fraud or some kind of mistake, but not upon negligence grounds); *In re Lewis,* 270 B.R. 215, 217 (Bankr. W.D. Mich. 2001) (holding under Michigan law that equitable subrogation applies only in extreme cases bordering on, if not reaching, fraud). When facts are fraudulently concealed from the lender, however, then equitably subrogating that lender to a prior, perfected lender is appropriate. *See, e.g., Bridge v. Midlantic Nat'l. Bank,* 18 F.3d 195, 201-02 (3d Cir. 1994) (applying New Jersey law).

### C. Equitable Subrogation and §509

It is well accepted that while federal law defines a trustee's avoidance powers, state law governs the determination of property rights, including the perfection of liens. *Bridge,* 18 F.3d at

200; *Matter of Chaseley's Foods Inc.*, 726 F.2d 303, 307 (7th Cir. 1983); *see, also*, 4 King, Lawrence P., *Collier on Bankruptcy* ¶544.02 at 544-5, 544-14 (15th ed. 1993). Despite this general rule, courts are not in agreement as to whether, or to what extent, the requirements of state law equitable subrogation affect the interpretation and application of the requirements for subrogation under 11 U.S.C. §509. *Fiesole*, 315 B.R. at 203 (*citing In re Photo Chem. Servs. Inc.*, 179 B.R. 604, 618 (Bankr. D. Minn. 1995)).

In relevant part, §509 provides:

"(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on...a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
(b) Such entity is not subrogated to the rights of such creditor to the extent that—
(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.
(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section...of an entity that is liable with the debtor on...such creditor's claim, until such creditor's claim is paid in full..."

While seemingly the basis for circuit appeals court and/or Supreme Court determination, the majority of courts hold that §509 differs from state law equitable subrogation, and a party may, under the appropriate circumstances, avail itself to either. *Id.* What is clear, however, is that when a trustee seeks to avoid a lien through his strong-arm powers, it requires a fact-intensive analysis.

### D. Equitable Subrogation and §544

Pursuant to *11 U.S.C. §544*, a trustee has the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable, by—

"(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a *bona fide* purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

Despite the trustee's strong-arm powers, these powers confer on the trustee no greater rights than those accorded by the applicable state law to a creditor holding a lien by legal or equitable proceedings. *Havee v. Belk*, 775 F.2d 1209, 1218-19 (4th Cir. 1985); *Bridge*, 18 F.3d at 200 (holding that §544(a) does not transform a trustee into a super-priority creditor and the scope of the trustee's avoidance powers is governed entirely by state law). Thus, if a hypothetical lien creditor could not avoid an unperfected creditor's security interest under the principles of equitable subrogation, then neither could a trustee under §544. *Id.*; *Rinn*, 176 B.R. at 413-14.

Indeed, a trustee's powers are subject to any equitable claim recognized by applicable state law, including subrogation. *Rinn*, 176 B.R. at 413. Subrogation rights, and the ability to use equitable subrogation to defeat a trustee's strong-arm powers, again depend on the application of the particular state's law. For example, in *Morgan*, a bankruptcy court declined to apply equitable subrogation in a §544 avoidance adversary proceeding because of the negligence of the lender—a relevant factor under Tennessee law—and the potential harm to unsecured creditors. *In re Morgan*, 291 B.R. 795, 803-05 (Bankr. E.D. Tenn. 2003). Thus, consideration must be given to the applicable state's law as opposed to the law from a particular circuit.

## CONCLUSION

*California Civil Code §3050* is still valid law and the Court therefore needs to consider the equities of the parties and the injustice that would take hold should the Trustee distribute funds as set forth in the motion before this Honorable Court. It is imperative that the Court take into consideration the chain of events (many beyond the control of Mr. Colangelo) that have placed him in this current predicament. Mr. Colangelo and Stonebridge, LLC entered into a valid real estate purchase sale/agreement. Mr. Colangelo put down the sum of $100,000. Said sum has been reenforced prior to the filing of Stonebridge's Bankruptcy to the tune of $1.3 million. In the space between said time, the purchase/sale agreement was not perfected (closed) due to the debtor not performing, and construction defects not being resolved as negotiations continued right up to the time Stonebridge filed for Bankruptcy. As a matter of fact, Stonebridge never insinuated that Mr. Colangelo was in breach for not paying the balance of the purchase price ($2,595,000.) prior to their Bankruptcy filing as the parties attempted to negotiate and remedy construction defects on the property. In fact negotiations remained ongoing right up to the time of the filing of Stonebridge's Bankruptcy filing. Adding insult to injury, Stonebridge consummated a construction loan with Brentwood allowing them to record on a lien without informing Brentwood that Stonebridge had entered into a purchase/sale agreement with Mr. Colangelo. Thus by the time Stonebridge, LLC filed for Bankruptcy relief, the property in question was doomed to present the headache of epic proportions which is now before this Honorable Court. From the perspective of Mr. Colangelo, the motion to sell can and should move forward under the circumstances. The distribution of funds, however, should be reconfigured in a way to ensure that Colangelo's equitable claims are not lost regardless of the legal mechanism chosen for resolution.

Dated: June 27, 2023

Respectfully submitted,

By: /s/ Christopher Hewitt

CHRISTOPHER HEWITT, ESQ
ATTORNEY FOR JOE COLANGELO

Christopher Hewitt, Esq. (SBN: 236568)
Law Office of Christopher Hewitt
74361 Highway 111, Suite 7
Palm Desert, California 92260
Telephone: 760.459.2438
Facsimile: 877.241.6366
Email: Hewittesq@yahoo.com

*Attorney for Debtor:*
Joe Colangelo

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br>STONEBRIDGE VENTURES, LLC<br><br>Debtor. | Case No.: 6:22-bk-11556-TA<br><br>Chapter 7<br><br>DECLARATION OF CHRISTOPHER HEWITT IN SUPPORT OF OPPOSITION TO MOTION TO SELL REAL PROPERTY<br><br>*[Property: 2 Makena Lane, Rancho Mirage, CA 92270]*<br><br>Date: 7/11/23<br>Time: 11:00AM<br>Crtrm.: Via Zoom Teleconference<br>Place: USBC<br>      411 West Fourth Street<br>      Santa Ana, CA 92701 |

I, Christopher Hewitt Declare as follows:

1

DECLARATION OF CHRISTOPHER HEWITT

1. I am the attorney of record for the Debtor stated herein. I have personal knowledge of the matters stated herein and, if called, we could and would competently testify thereto.

2. Attached and incorporated herein is a true and correct copy of the Declaration of Joe Colangelo in support of his Opposition to the Chapter 7 Trustee's Motion for Authority to Sell Real Property.

3. The Debtor does not per se oppose the Chapter 7 Trustee's request for an Order authorizing the sale of real property located at 2 Makena Lane, Rancho Mirage, California 92270.

4. That said, there are a number of significant equitable factors that Mr. Colangelo has raised in his Opposition which warrant a through overview before deciding whether or not to allow the Chapter 7 Trustee to distribute the sale proceeds without further adjudication.

5. It is the position of Mr. Colangelo that pursuant to *California Civil Code §3050* Mr. Colangelo has a statutory lien. The facts as presented inclusive of the fraudulent transactions of Stonebridge warrant an adjudication to determine if in fact Mr. Colangelo does have a lien pursuant to *California Civil Code §3050*, and whether or not said lien has priority over that of Brentwood.

6. The pace at which the Chapter 7 Trustee has pushed this matter along has prevented such an adjudication to date. Furthermore as described in both the Opposition to the Motion as well as Mr. Colangelo's Declaration, his former spouse has prevented him access to his electronic communications. This has prevented Mr. Colangelo with sharing said evidence with me to determine the proper legal vehicle on how to proceed in dealing with the issues

2

DECLARATION OF CHRISTOPHER HEWITT

presented. It has also prevented me from being able to present evidence to the Court to substantiate Mr. Colangelo's legal position.

7. It is therefore requested that assuming the Court does grant an Order for Authority to sell the 2 Makena Lane Property, that an additional Order be made that the Trustee keep the sale proceeds in escrow until such time as Mr. Colangelo's equitable claims have been adjudicated as to his statutory lien rights.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this the 27th day June 2023, at Palm Desert, California.

Christopher Hewitt
Declarant

3

DECLARATION OF CHRISTOPHER HEWITT

Christopher Hewitt, Esq. (SBN: 236568)
Law Office of Christopher Hewitt
74361 Highway 111, Suite 7
Palm Desert, California 92260
Telephone: 760.459.2438
Facsimile: 877.241.6366
Email: Hewittesq@yahoo.com

*Attorney for Debtor:*
Joe Colangelo

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In Re: | ) Case No.: 6:22-bk-11556-TA |
|---|---|
| | ) Chapter 7 |
| STONEBRIDGE VENTURES, LLC | ) DECLARATION OF JOE COLANGELO IN SUPPORT OF OPPOSITION TO MOTION TO SELL REAL PROPERTY |
| Debtor. | ) [Property: 2 Makena Lane, Rancho Mirage, CA 92270] |
| | ) Date: 7/11/23 |
| | ) Time: 11:00AM |
| | ) Crtrm.: Via Zoom Teleconference |
| | ) Place: USBC |
| | )        411 West Fourth Street |
| | )        Santa Ana, CA 92701 |

I, Joe Colangelo Declare as follows:

1.  I am a secured creditor and pre-petition purchaser of property located at 2 Makena Lane, Rancho Mirage, California, 92270.

1

DECLARATION OF JOE COLANGELO

2. I have personal knowledge of the matters stated herein and, if called, I could and would competently testify thereto.

3. On April 24, 2020, I along with Monika Jensen entered into a residential purchase agreement and purchased *2 Makena Lane, Rancho Mirage, California 92270.*

4. At the time of the purchase the sum of $100,000 was deposited into escrow.

5. I moved into the property on December 11th, 2020. By January of 2021, I had provided Stonebridge Ventures with $1.3 Million of the purchase price.

6. Subsequent to moving onto the premises various construction deficiencies were discovered. Discussions became ongoing with Stonebridge Ventures, LLC on how to resolve these issues.

7. On going discussions were not acrimonious. As we attempted to resolve the issues, I invested considerable sums of money into the home including adding fixtures, purchasing furniture, and investing in other home improvement projects.

8. At no time between entering into escrow and Stonebridge's filing for Chapter 11 Bankruptcy relief, was I ever informed by them that I was in breach of our purchase/sale agreement.

9. At no time between entering into escrow and Stonebridge's filing for Chapter 11 Bankruptcy relief was I ever informed by Stonebridge that they had taken out a loan with Brentwood. It was not until Stonebridge filed for Bankruptcy relief that I discovered that Brentwood had secured a lien that was in first position on my Makena property.

10. In fact it was not until Stonebridge's filing of their Bankruptcy that I learned about the jeopardy of my equity in the Makena Property.

11. As a result of the Stonebridge Bankruptcy filing, and the Chapter 7 Bankruptcy

12. Trustee becoming a bon a fide purchaser of my property I was forced to vacate my Makena Property home.

13. As a result of the Stonebridge Bankruptcy filing, I was forced to hire counsel to represent my interests regarding the protection of the equity of my home.

14. In the aftermath of the Stonebridge Bankruptcy Monika Jensen and I encountered irreconcilable differences leading to the initiation of divorce proceedings. The divorce has been acrimonious. Ms. Jensen has locked me out of all my electronic devices and changed the passwords to my email accounts. At present I do not have access to any of my past electronic communications making it impossible right now to support my litigation theories pertaining to the Makena Property.

15. Without access to these communications I cannot provide my attorney with crucial information to allow him to make strategic decisions on whether or not to file my own Adversary Complaint, Object to Proof of Claims, an on how to negotiate with the other parties in this ongoing litigation and Bankruptcy.

16. Based on my current predicament, I am requesting that should this Honorable Court Order a sale of the Makena Property, that an additional Order be made that the Trustee keep the sale proceeds in escrow until such times as my own equitable claims have been adjudicated as to my statutory lien rights.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this the 27th day June 2023, at Palm Desert, California.

Joe Colangelo
Declarant

3

DECLARATION OF JOE COLANGELO

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

74361 Highway 111, Suite 7, Palm Desert, California 92260

A true and correct copy of the foregoing document entitled (*specify*): Secured Creditor and Pre-Petition Buyer Joe Colangelo's Opposition to Chapter 7 Trustee's Motion for Authority to Sell Property located at 2 Makena Lane, Rancho Mirage, CA 92270; Declarations in Support Thereof

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/27/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 06/27/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Judge Theodor C. Albert
USBC - Central District of California
411 W. Fourth Street, suite 5085
Santa Ana, California 92701

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/27/2023 | Christopher Hewitt | |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                        **F 9013-3.1.PROOF.SERVICE**

## PROOF OF SERVICE CONTINUED PAGE

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- **James C Bastian**    jbastian@shulmanbastian.com
- **Arturo Cisneros**    arturo@mclaw.org, CACD_ECF@mclaw.org
- **Arturo Cisneros (TR)**    amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Rika Kido**    rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **William Malcolm**    bill@mclaw.org, cvalenzuela@mclaw.org
- **W. Derek May**    wdmlaw17@gmail.com, r48266@notify.bestcase.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Thomas J Polis**    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Lee S Raphael**    ecfcca@ecf.courtdrive.com, cmartin@pralc.com
- **Timothy M Ryan**    tryan@theryanfirm.com, ecf@theryanfirm.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **Summer M Shaw**    ss@shaw.law, shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- **Nathan F Smith**    nathan@mclaw.org, CACD_ECF@mclaw.org;mcecfnotices@ecf.courtdrive.com;cvalenzuela@mclaw.org
- **Diana Torres-Brito**    dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov